# EXHIBIT E

Westlaw.

Not Reported in F.Supp.

Page 1

1997 WL 727611 (N.D.N.Y.), 44 U.S.P.Q.2d 1309

(Cite as: 1997 WL 727611 (N.D.N.Y.))

H

**Motions, Pleadings and Filings**

United States District Court, N.D. New York.
Gerald MOSS, Plaintiff,
v.
MOSS TUBES, INC., Defendant.
No. 96 CV 1407.

Aug. 21, 1997.

Gleason, Dunn, Walsh & O'Shea, Albany, NY, for plaintiff.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, and Mayer, Brown & Platt, Chicago, IL, for defendants, Michael Warnecke, Wayne L. Tang, James Blackmore, Michael Ravalli, of Counsel.

**MEMORANDUM-DECISION & ORDER**

MCAVOY, Chief J.

**I. BACKGROUND**

*1 This is essentially an action for patent infringement. Plaintiff Gerald Moss is the inventor of the "Moss Devices," which are four medical devices used in providing nutrients to individuals unable to ingest food on their own. Plaintiff was issued the following patents by the U.S. Patent & Trademark Office: Gastrointestinal Feeding Apparatus and Device, Patent No. 4,543,089 ("089 patent"); Moss Nasal Tube Mark IV, Patent No. 4,642,092 ("092 patent"); Surgical Fastener, Patent No. 5,470,337 ("337 patent"); Dilator/Introducer Apparatus, Patent No. 5,536,255 ("255 patent").

In January of 1986, Plaintiff formed the defendant corporation, Moss Tubes, Inc. ("MTI"), for the purposes of marketing the Moss devices and to shield Plaintiff against liability claims from users of the devices. The outstanding shares were issued as follows: Plaintiff, 25%; Plaintiff's wife, Katherine Moss, 50%, and the remaining 25% owned jointly by Plaintiff's two children.

Shortly after MTI was formed, Plaintiff and Defendant entered into a licensing agreement in March of 1986, whereby Defendant was provided an "unlimited right and license, including the right to sublicense, to manufacture, use and vend" devices under certain patents. In return, Defendant agreed to pay Plaintiff a royalty of 60% on the net sales of the products covered by the agreement, as well as payments of $130,000 per year for the first three years.

In September of 1995, the licensing agreement was amended to reflect that it was terminable upon written notice that Defendant was in default. Moss thereafter resigned as president of MTI in November of 1995. On July 31, 1996, Plaintiff took advantage of the termination provision and terminated the agreement, allegedly due to Defendant's default in making the royalty payments. On August 8, 1996, Defendant, through counsel, repudiated the agreement, arguing that it "failed at its inception for lack of consideration."

On February 6, 1995, Gerald Moss filed for divorce against Katherine Moss in New York State court. *See Gerald Moss v. Katherine Moss,* Supreme Court County of Rensselaer (184615 RJI). Among the marital assets at issue in the divorce case are the controlling shares in MTI as well as the four patents that are being asserted against MTI in the present litigation. Indeed, the primary marital asset is the rights to the Moss tubes which are embodied in the patents.

Shortly after this case was filed, Katherine Moss moved in state court for a temporary restraining order against Gerald Moss to prevent the dissipation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 2

1997 WL 727611 (N.D.N.Y.), 44 U.S.P.Q.2d 1309

(Cite as: 1997 WL 727611 (N.D.N.Y.))

of marital assets being used to prosecute a number of cases Gerald Moss had filed in state court against MTI. On October 3, 1996, the state divorce court entered a TRO which enjoined Gerald Moss from dissipating marital assets through litigation. However, the state court order did not preclude Plaintiff from litigating the present suit as the state court reasoned it did not have jurisdiction over this Court.

*2 Plaintiff commenced the present lawsuit on August 28, 1996, alleging patent and trademark infringement. Plaintiff filed an Amended Complaint on September 17, 1996. In the Amended Complaint, Plaintiff seeks (1) a permanent injunction enjoining Defendant from infringing the patents; (2) compensatory damages for Defendant's acts of infringement, including treble damages for willful infringement; (3) attorney's fees and costs; and (4) a declaratory judgment stating that a) Plaintiff is the sole legal and equitable owner of the patents, and b) that the licensing agreement was valid and binding. On September 19, 1996, Plaintiff moved by Order to Show Cause for a temporary restraining order ("TRO") and preliminary injunction restraining and enjoining Defendant from infringing the patents. This Court granted the TRO by Order To Show Cause dated September 20, 1996.

Fortunately, the parties negotiated a stipulation and agreement ("the Agreement") withdrawing the request for a preliminary injunction. The stipulation was signed by all parties and ordered by this Court on November 5, 1996. The Agreement provides, *inter alia,* that half of MTI's net income be paid to Gerald Moss and the other half placed in an escrow account which will be disbursed on resolution of this litigation.

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment; Defendant's Motion for a Stay pending a determination in the matrimonial action; and Plaintiff's Cross-Motion seeking to rescind the Stipulation and Agreement.

II. DISCUSSION

A. Defendant's Motion for a Stay

As a general matter, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). However, in *Colorado River* the Supreme Court announced an abstention doctrine for use in limited situations in which state and federal courts exercise concurrent jurisdiction simultaneously. To determine whether *Colorado River* abstention is appropriate, the district court must weigh six factors, with the "balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *Bethlehem Contracting, Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986).

As the Second Circuit recently stated in *Burnett v. Physician's Online, Inc.,* 99 F.3d 72 (2d Cir.1996), the *Colorado River* factors include:
   (1) the assumption of jurisdiction by either court over any res or property,
   (2) the inconvenience of the federal forum,
   (3) the avoidance of piecemeal litigation, []
   (4) the order in which jurisdiction was obtained [,]
   (5) whether state or federal law supplies the rule of decision, and
   (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*3 99 F.3d at 76 (*citing Bethlehem Contracting,* 800 F.2d at 327). Although *Colorado River* abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (internal quotations omitted), the Court cautioned that abstention
   is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3

1997 WL 727611 (N.D.N.Y.), 44 U.S.P.Q.2d 1309

(Cite as: 1997 WL 727611 (N.D.N.Y.))

circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.
*Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 ( quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

For the following reasons, this Court concludes that a stay is appropriate in this instance because allowing the state divorce court to determine the disposition of marital assets will clearly serve important countervailing interests. First, jurisdiction over the property at issue favors a stay. Regardless of this Court's application of patent law, the state court's disposition of the marital assets at issue will have a profound impact here. For example, if Katherine Moss is equitably awarded the patents by the divorce court, Gerald Moss will lack standing in this suit since he will no longer own the patents-in-suit. Similarly, if the divorce court awards ownership of MTI and the patents to Gerald Moss, there will be no reason to pursue an infringement claim: i.e., a claim against himself.

Furthermore, although a cause of action for patent infringement is governed exclusively by federal law, *see* U.S. Const. art. I., § 8, cl. 8; *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the issue of the ownership of the patents is governed by state law. *Goldwater v. Smith Corona Corp.,* 817 F.Supp. 263, 275 (D.Conn.1993), *aff'd,* 26 F.3d 137 (Fed.Cir.1994); *see also Great Lakes Press Corp. v. Froom,* 695 F.Supp. 1440, 1445 (W.D.N.Y.1987) ; *E.F. Drew & Company, Inc. v. Reinhard,* 170 F.2d 679 (2d Cir.1948). Accordingly, the first factor weighs in favor of granting a stay.

Although the second and third factors are neutral, the fourth factor, the order in which jurisdiction was obtained, favors a stay. Gerald Moss filed the divorce action on February 6, 1995. The instant action was not commenced until August 28, 1996.
Thus, the state divorce court has superior jurisdiction. *See Colorado River,* 424 U.S. at 818 ("the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts").

The fifth factor, whether state or federal law supplies the rule of decision, also favors a stay. As previously noted, the issue of the ownership of the patents is primarily a state law issue. *See, e.g., Goldwater,* 817 F.Supp. at 275; *Great Lakes Press Corp.,* 695 F.Supp. at 1445.

*4 Finally, the sixth factor, whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction, neither weighs in favor nor weighs against granting a stay.
As already discussed, the present dispute will be obviated if the divorce court either awards the patents to Katherine Moss or awards ownership of MTI and the patents to Gerald Moss. However, if Gerald Moss is awarded the patents, but Katherine Moss retains ownership of MTI, Gerald Moss may return to this Court which retains jurisdiction during the stay. *See Lumbermens Mutual v. Connecticut Bank & Trust,* 806 F.2d 411, 41 (2d Cir.1986).
Furthermore, the stipulation signed by the parties and ordered by this Court on November 5, 1996, adequately protects Plaintiff's interests during the pendency of this stay.

After weighing the six *Colorado River* factors, the Court finds that a stay of the instant action is warranted pending a determination of the matrimonial action, *Gerald Moss v. Katherine Moss.*
Accordingly, the Court will not address Plaintiff's Motion for Partial Summary Judgment. Once this stay is lifted, Plaintiff may renew his motion for partial summary judgment if he so chooses.

**B. Plaintiff's Cross-Motion**

Plaintiff brings a cross-motion seeking to rescind the stipulation, or in the alternative, for an order removing Dale Jeffers as escrow agent. In support of his motion, Plaintiff submits a lengthy affidavit detailing the alleged actions of MTI and Jeffers, which Plaintiff asserts are defeating the "purpose of the stipulation." Essentially, Plaintiff alleges that MTI is "ignor[ing] its responsibilities and continu[ing] to incur expenditures outside its ordinary course of business." (Plf's Mem. of Law at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
1997 WL 727611 (N.D.N.Y.), 44 U.S.P.Q.2d 1309

**(Cite as: 1997 WL 727611 (N.D.N.Y.))**

10). In response, Defendant submits an equally lengthy affidavit from Dale Jeffers, Esq., C.P.A., explaining the expenditures that Plaintiff contests and rebutting Plaintiff's assertion that as escrow agent, Jeffers is ignoring his obligations.

Although Plaintiff's allegations are serious, they are insufficient to grant the relief Plaintiff requests. The Court notes that the stipulation grants Jeffers significant discretion to determine if the parties are in compliance with the stipulation. For example, paragraph 3(c) of the Agreement states:

> Jeffers shall make such inquiries and inspect such records as he, in his sole discretion, may deem necessary to satisfy himself that the intentions of the parties as expressed in this Stipulation and Agreement are satisfied. During the pendency of this Stipulation and Agreement, Jeffers shall be the sole arbiter as to whether or not such financial statements are prepared in accordance with the terms of this Stipulation and Agreement.

Similarly, Jeffers is granted broad discretion to determine the appropriateness of MTI's expenditures and obligations. For example, paragraph 6 of the Agreement states:

> MMPI and MTI shall submit to Jeffers for his determination all issues regarding MTI's claims of money due and owing it from MMPI, or money overpaid to MMPI. MMPI and MTI agree to be bound by Jeffers' determination on these issues....

*5 After examining the allegations in Plaintiff's affidavit and reviewing the Agreement and Stipulation, the Court sees no basis for rescinding the Agreement and Stipulation negotiated by all the parties and ordered by this Court. Accordingly, Plaintiff's cross-motion must be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for a Stay is GRANTED and Plaintiff's Cross-Motion is DENIED in its entirety. All proceedings under this action are STAYED pending a determination of the matrimonial action, *Gerald Moss v. Katherine Moss*, Supreme Court County of Rensselaer (184615 RJI). Furthermore, Defendant is ORDERED to submit a status report on the matrimonial action no later than ninety (90) days from the date of this order, and every ninety (90) days thereafter until this stay is lifted.

**IT IS SO ORDERED.**

1997 WL 727611 (N.D.N.Y.), 44 U.S.P.Q.2d 1309

**Motions, Pleadings and Filings (Back to top)**

- 1:96CV01407 (Docket)

(Aug. 28, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.