IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-1436 JJF |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, L.P., MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., MATSUSHITA ELECTRIC CORPORATION OF AMERICA, VICTOR COMPANY OF JAPAN, LTD., JVC COMPANY OF AMERICA, NOKIA CORPORATION, NOKIA, INC., HEWLETT-PACKARD COMPANY, EASTMAN KODAK COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**DECLARATION OF PATRICIA P. MCGONIGLE IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN OPPOSITION TO DEFENDANTS SAMSUNG, MATSUSHITA, NOKIA, AND HEWLETT-PACKARD'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO STAY ACTION**

I, Patricia P. McGonigle, declare as follows:

1. I am an attorney with the law firm of Seitz, Van Ogtrop & Green, counsel representing Plaintiff in the above-captioned action.

2. I am admitted to practice before this Court.

3. This Declaration is submitted in support of Plaintiff's Reply Brief in Opposition to Defendants Samsung, Matsushita, Nokia, and Hewlett-Packard's Supplemental Brief in Support of Their Motion to Stay Action, filed contemporaneously with this Court on July 20, 2005.

4. Attached to this Declaration as **Exhibit A** is a true and correct copy of *Rohm and Haas Co. v. Brotech Corp.*, No. 90-109-RRM, 1992 U.S. Dist. LEXIS 21721 (D. Del. July 16, 1992).

5. Attached to this Declaration as **Exhibit B** is a true an correct copy of Ex Parte Reexamination Filing Data – March 31, 2003, from the United States Patent and Trademark Office.

I declare under penalty of perjury that the foregoing is correct.

/s/ Patricia P. McGonigle
Patricia P. McGonigle, Esquire (No. 3126)
SEITZ, VAN OGTROP & GREEN
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

ATTORNEYS FOR PLAINTIFF ST.
CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC.

# EXHIBIT A

LEXSEE 1992 US DIST LEXIS 21721

**ROHM AND HAAS COMPANY, Plaintiff, v. BROTECH CORPORATION, Defendant.**

Civil Action No. 90-109(RRM)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1992 U.S. Dist. LEXIS 21721; 24 U.S.P.Q.2D (BNA) 1369*

**July 16, 1992, Decided**

**COUNSEL:** [*1] Rudolf E. Hutz, Esquire, N. Richard Powers, Esquire, and Jeffrey B. Bove, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; and William E. Lambert, III, Esquire, Rohm and Haas Company, Philadelphia, Pennsylvania, for plaintiff.

Robert K. Payson, Esquire, Potter Anderson & Corroon, Wilmington, Delaware; Raphael V. Lupo, Esquire, and Jack Q. Lever, Jr., Esquire, Willian, Brinks, Olds, Hofer, Gilson & Lione, Washington, D.C.; Herbert B. Keil, Esquire, Keil & Weinkauf, Washington, D.C.; and Paul R. Rosen, Esquire, and Niels Korup, Esquire, Spector, Gadon & Rosen, P.C., Philadelphia, Pennsylvania, for defendant.

**JUDGES:** McKELVIE

**OPINIONBY:** McKELVIE

**OPINION:**

OPINION

Wilmington, Delaware
July 16, 1992

McKELVIE, District Judge

This is a patent case. Rohm and Haas Company ("Rohm and Haas") alleges Brotech Corporation ("Brotech") is infringing four of its patents relating to ion exchange resins or adsorbents.

In March of this year, the Judge previously assigned to this case granted Brotech's motion to stay the proceedings pending completion of the Patent and Trademark Office's ("PTO") reexamination of one of the patents. Thereafter, this case was reassigned to me and Rohm and Haas requested that the stay [*2] be lifted. For the following reasons, the Court will grant the request, lift the stay, and schedule the case for trial.

1. Nature and Stage of the Proceedings

Rohm and Haas filed this action in March of 1990. It alleges Brotech is infringing four of its patents, Nos. 4,224,415 ("'415"), 4,256,840 ("'840"), 4,382,124 ("'124") and 4,818,733 ("'773"). The '415, '840 and '124 patents were invented by Erich Meitzner and James Oline, former Rohm and Haas employees. These patents relate to macroreticular cross-linked copolymer beads and adsorbents, ion exchange resins made from them, and their preparation. Rohm and Haas acquired rights under the fourth patent, '773, through the acquisition of Diamond Shamrock in the mid-1980's. It relates to specially synthesized alkylaminophosphonic chelating resins, the process of making such ion exchange resins, and the methods for using them.

These ion exchange resins or adsorbents are used for water softening and deionization, sugar refining, waste treatment, chemical analysis and a number of other applications. Macroreticular ion exchange resins or adsorbants give fast ion exchange, have low resistance to fluid flow, give good strength and rigidity, [*3] allow only small volume changes in various solvents and have an improved resistance to oxidation and shock.

The Court has entered a series of scheduling orders in the case. The most recent order provided for a cut-off of fact discovery in April of this year and a non-jury trial beginning in October.

In September of 1991, a law firm filed a request with the PTO for a reexamination of the '415 patent

Case 1:04-cv-01436-JJF   Document 55   Filed 07/20/2005   Page 5 of 11

Page 2

1992 U.S. Dist. LEXIS 21721, *; 24 U.S.P.Q.2D (BNA) 1369

pursuant to *35 U.S.C. §§ 301*-307. The firm filed the request on behalf of an undisclosed client, an anonymous third party requestor. The request alleged, among other things, that the '415 patent is anticipated by, or obvious in view of, a patent previously issued to Clarke.

In November of 1991, the PTO granted reexamination of the '415 patent on the basis that the Clarke patent raises a substantial new question of patentability as to claims 1, 2, and 4 through 12 of the patent.

In December of 1991, Brotech moved to stay this litigation. In its motion, Brotech argued that the Court should exercise its discretion to stay the case pending the outcome of the reexamination, as it was likely the PTO would invalidate or narrow the scope of the '415 patent and, [*4] by extension, the '840 and '124 patents.

In March of 1992, the Judge previously assigned to this case granted that motion and entered an order staying the proceedings pending completion of the reexamination. She found that the technical expertise to be gained by a PTO decision, which may clarify the issues with regard to discovery and ultimately for trial, weighed toward deferring to the reexamination procedure. She concluded that the benefits to be gained by staying the litigation pending reexamination outweighed the detrimental effects of a delay in the resolution of the litigation. She further noted that the Court could lift the stay at any time the Court finds it no longer appropriate.

This case was reassigned to me on March 31, 1992. On May 22nd, Rohm and Haas filed a status report on the reexamination and reported that, in a first office action, the PTO had found claims 3 and 10 of the '415 patent to be patentable over the prior art. It rejected claims 1, 2, 4, 5 through 9, 11 and 12 under *35 U.S.C. §§ 102*(b) and 103, as either anticipated by or unpatentable over Clarke. With that report, Rohm and Haas requested that the Court lift the stay. [*5]

The Court reviewed the request to lift the stay at a June 25th status conference. At that conference, Rohm and Haas' counsel reported that claims 3 and 10 of the '415 patent cover all of Brotech's ion exchange resin products that are at issue insofar as the '415 patent is concerned and argued that the litigation would, therefore, go forward in any event at the completion of the reexamination. As to the balance of the claims of the '415 patent, counsel reported that Rohm and Haas had requested a reconsideration of the initial action and, in late June, the Examiner had indicated in an interview claims 6 through 9, 11, and 12 are deemed to be patentable.

Counsel for Brotech argued that nothing had really changed since the Court had previously granted the stay. "Until the Patent Office says this is final, and until it goes out the door with a certificate of reexamination, anything can happen to those claims." Docket Item ("D.I.") 364 at 14. In opposing a lifting of the stay, he estimated that the reexamination process would take twelve to eighteen months from start to finish. D.I. 364 at 15. (As the PTO granted reexamination in November of 1991, this suggests the process will be completed [*6] between November of 1992 and May of 1993.)

2. Review of the Decision to Stay the Case

At the status conference, counsel for Brotech cited *Geibel v. United States*, 667 F. Supp. 215 (W.D.Pa. 1987), aff'd, 845 F.2d 1011 (3d Cir. 1988) and *Schultz v. Onan Corp.*, 737 F.2d 339 (3d Cir. 1984) for the proposition that the decision and order staying the case was the law of the case and could be set aside only if this Court found it clearly erroneous. This argument appears to be inconsistent with the arguments Brotech made in urging the Court to exercise its discretion to grant a stay. "Just as the Court has inherent discretionary power to order a stay of litigation pending reexamination, *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983), the Court has the power to lift or otherwise modify the stay if, in the Court's opinion, a stay is no longer warranted. . . . It is absurd to suggest that this Court would lose jurisdiction and control over the litigation before it." Brotech's Reply Brief in Support of its Motion for a Stay, D.I. 309 at 8.

Rohm [*7] and Haas' request to lift the stay is not a request that the Court modify or change the law of the case. Rather, it is a request that the Court reexamine the factual and procedural circumstances to determine whether maintaining the stay is appropriate.

3. Facts and Circumstances That Suggest the Stay Should be Lifted

There are two sets of facts and circumstances the Court has looked to in determining that the stay should be lifted. First, the information from the PTO confirms that at least some of the claims will survive reexamination. We know that those claims probably will have to be resolved in this litigation. With the current status of the Court's calendar, if we put the case back on track for trial, the trial would be scheduled to commence in approximately ten months, or May of 1993. Lifting the stay would ensure a relatively prompt trial at a time when there is a substantial probability that the PTO will have completed its reexamination. The advantages of setting a date certain for a trial that will probably have to go forward outweigh the disadvantages of the uncertainty of the impact that the reexamination may have and the

Case 1:04-cv-01436-JJF    Document 55    Filed 07/20/2005    Page 6 of 11

Page 3
1992 U.S. Dist. LEXIS 21721, *; 24 U.S.P.Q.2D (BNA) 1369

added expense the parties may incur in preparing [*8] the case for trial while the reexamination proceeds.

The second set of facts and circumstances that suggest the stay should be lifted relate to the Civil Justice Reform Act of 1990, by which Congress has attempted to address the problems of the costs and delays in our courts. See *28 U.S.C. § 471* note (Supp. 1992).

That Act provides that each United States district court shall develop a civil justice expense and delay reduction plan that shall consider and may include six principles and guidelines of litigation management to reduce costs and delays in litigation. They are: (1) a systematic, differential treatment of civil cases that tailors the level of individualized and case specific management to the nature of the case; (2) early and ongoing judicial involvement that includes, inter alia setting early, firm trial dates that occur within eighteen months after the filing of the complaint; (3) careful and deliberate monitoring of cases through case-management conferences; (4) encouraging cost-effective discovery; (5) requiring that discovery motions include a certification that counsel has made a good faith effort to resolve the matter; and [*9] (6) referring certain cases to alternative dispute resolution programs. See *28 U.S.C. § 473* (Supp. 1992).

Delaware has been designated under the Act as one of the districts responsible for developing a pilot program to implement an expense and delay reduction plan that will be reviewed and evaluated in a report the Judicial Conference is to submit to the Committees on the Judiciary of the Senate and House of Representatives no later than December 31, 1995. See *28 U.S.C. § 471* note (Supp. 1992). Pursuant to that designation, and with the assistance of a local advisory committee, the court has developed and adopted a plan and is in the process of amending its local rules consistent with that plan. See *28 U.S.C. § 471* note and § *478* (Supp. 1992). With the addition of a fourth active judge to the court at the end of March of 1992, and the development of proposed amendments to the local rules, the court is now moving to implement that plan.

From the Court's perspective, a primary theme of the plan is that we can reduce the costs and delays in litigation by working to [*10] shorten the time period from the date of filing of the complaint to the final disposition of the matter. With active case management and a goal of having cases tried within twelve months from the date of the filing, we can work to secure the just, speedy, and inexpensive determination of every action. See *Fed. R. Civ. P. 1*.

There is some question as to how our plan and this approach will work in patent cases, not just because counsel and the parties may see them as complex, but also because of procedural problems that may be unique to patent cases. One example of that type of problem is the reexamination process, which has the potential to delay cases for eighteen months.

The legislative history of The Patent Act of 1980 suggests that Congress established the patent reexamination procedure in an attempt to accomplish some of the very same goals it identified in the Civil Justice Reform Act. See e.g., H.R. Rep. No. 1307, 96th Cong., 2nd Sess. 1 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462-63 ("Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation. . . . A new [*11] patent reexamination procedure is needed to permit the owner of a patent to have the validity of his patent tested in the Patent office where the most expert opinions exist and at a much reduced cost. . . . The reexamination of issued patents could be conducted with a fraction of the time and cost of formal legal proceedings and would help restore confidence in the effectiveness of our patent system.")

The statistical information available on the procedure shows that the average time for the completion of a reexamination is approximately 18.2 months. PTO, Reexamination Filing Data, Mar. 31, 1991, at 3 (D.I. 306 at Attachment C). When the Patent Office orders reexamination, all claims were confirmed in approximately 24% of the cases, all claims were canceled in approximately 12% of the cases, and some claims were changed in approximately 64% of the cases. Id.

These statistics suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation, but that despite the PTO's steps to ensure special dispatch in reexamination, if a court stays litigation pending reexamination, the stay may add eighteen [*12] months to the time for the resolution of the case.

In this case, certain factors suggest that a stay does not serve the objectives of The Patent Act of 1980. For example, if a purpose of the statute is to provide an inexpensive method for the patent owner to test the validity of its patent, that interest is not being served here. First, the reexamination has been initiated at the request of an anonymous person, rather than the patent owner. Second, the reexamination probably will not resolve the disputes between the parties. Third, in light of the nature and extent of the litigation to date, it does not appear that the reexamination will have a substantial impact on reducing the costs of the litigation.

Case 1:04-cv-01436-JJF   Document 55   Filed 07/20/2005   Page 7 of 11

Page 4

1992 U.S. Dist. LEXIS 21721, *; 24 U.S.P.Q.2D (BNA) 1369

The added factor of the experimental nature of the court's role as a pilot district under the Civil Justice Reform Act also suggests that the stay should be lifted. During this period when we are testing and evaluating our plan to see if it can help solve the problems Congress has identified, the court should be prepared to see if the experiment works on as broad a spectrum of cases as possible. It may be that the court and others will conclude in a few years that the approach the [*13] court has taken in the plan will have to be modified in certain types of cases, such as this one. On the other hand, we may find that for parties such as we have here, with a dispute of this nature, a stay for reexamination tends to defeat, rather than accomplish the goal of a just, speedy, and inexpensive determination of the dispute.

The Court will enter an order lifting the stay and setting the case for trial.

# EXHIBIT B



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
Washington, D.C. 20231
www.uspto.gov

Ex Parte Reexamination Filing Data - March 31, 2003

1. Total requests filed since start of ex parte reexam on 07/01/81 .................... 6580

    a. By patent owner                                             2820    43%
    b. By other member of public                                   3609    55%
    c. By order of Commissioner                                     151     2%

2. Number of filings by discipline

    a. Chemical Operation                                          2087    32%
    b. Electrical Operation                                        2061    31%
    c. Mechanical Operation                                        2432    37%

3. Annual Ex Parte Reexam Filings

    | Fiscal Yr. | No.         | Fiscal Yr. | No. | Fiscal Yr. | No.     |
    |------------|-------------|------------|-----|------------|---------|
    | 1981       | 78 (3 mos.) | 1989       | 243 | 1997       | 376     |
    | 1982       | 187         | 1990       | 297 | 1998       | 350     |
    | 1983       | 186         | 1991       | 307 | 1999       | 385     |
    | 1984       | 189         | 1992       | 392 | 2000       | 318     |
    | 1985       | 230         | 1993       | 359 | 2001       | 296     |
    | 1986       | 232         | 1994       | 379 | 2002       | 272     |
    | 1987       | 240         | 1995       | 392 | 2003       | 186 YTD |
    | 1988       | 268         | 1996       | 418 |            |         |

4. Number known to be in litigation ................................ 1338    20%

5. Determinations on requests ...................................... 6386

    a. No. granted ............................................5763 ......... 90%

        (1) By examiner                                              5658
        (2) By Director (on petition)                                 105

    b. No. denied.............................................. 623 ......... 10%

        (1) By examiner                                               589
        (2) Order vacated                                              34

1

6. Total examiner denials (includes denials reversed by Director) .................... 694

    a. Patent owner requester    304    44%
    b. Third party requester    390    56%

7. Overall reexamination pendency (Filing date to certificate issue date)

    a. Average pendency    21.1 (mos.)
    b. Median pendency    16.5 (mos.)

8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 23% | 30% | 14% | 26% |
| b. All claims cancelled | 7% | 12% | 18% | 10% |
| c. Claims changes | 70% | 58% | 68% | 64% |

9. Total ex parte reexamination certificates issued (1981 - present) ................ 4687

    a. Certificates with all claims confirmed    1239    26%
    b. Certificates with all claims canceled    465    10%
    c. Certificates with claims changes    2983    64%

10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a. Certificates - PATENT OWNER REQUESTER ........................ 2065

        (1) All claims confirmed    470    23%
        (2) All claims canceled    148    7%
        (3) Claim changes    1447    70%

    b. Certificates - 3rd PARTY REQUESTER ............................ 2497

        (1) All claims confirmed    752    30%
        (2) All claims canceled    294    12%
        (3) Claim changes    1451    58%

    c. Certificates - COMM'R INITIATED REEXAM ........................ 125

        (1) All claims confirmed    17    14%
        (2) All claims canceled    23    18%
        (3) Claim changes    85    68%

## CERTIFICATE OF SERVICE

I, Patricia P. McGonigle, Esquire, hereby certify that on this 20th day of July 2005, I electronically filed the following document with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.

**DECLARATION OF PATRICIA P. MCGONIGLE IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN OPPOSITION TO DEFENDANTS SAMSUNG, MATSUSHITA, NOKIA, AND HEWLETT-PACKARD'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO STAY ACTION**

/s/ Patricia P. McGonigle
_____
Patricia P. McGonigle (ID No. 3126)
pmcgonigle@svglaw.com

49313 v1