# EXHIBIT B

**(ENDORSED)**
**FILED**

JAN 0 4 2006

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| MIRAGE SYSTEMS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JERRY A. SPEASL, et al.,<br><br>Defendants. | Case No. 1-05-CV-039164<br><br><br>ORDER RE: MOTIONS FOR ADMISSION *PRO HAC VICE*/ DEMURRERS |

The (1) Motion for Admission *Pro Hac Vice* of Nora Q.E. Passamaneck, Caren Khoo, Eric J. Ward, Amy L. Fici, and Catherine Corlett by plaintiff Mirage Systems, Inc.; (2) Motion for Admission *Pro Hac Vice* of Michael J. Summersgill by plaintiff Mirage Systems, Inc.; (3) Motion for Admission *Pro Hac Vice* of Jordan L. Hirsch by plaintiff Mirage Systems, Inc.; (4) Demurrer and Request for Judicial Notice by defendant St. Clair Intellectual Property Consultants, Inc.; (5) Motion for Admission *Pro Hac Vice* of Jake M. Holdreith, Becky R. Thorson, Ronald J. Schultz, Carrie M. Lambert and Annie Huang by defendant St. Clair Intellectual Property Consultants, Inc.; and (6) Demurrer to Amended and Supplemental Complaint by defendants Jerry A. Speasl, Marc K. Roberts, and Matthew A. Chikosky came on

1

1    for hearing before the Honorable Jamie Jacobs-May on January 3, 2006, at 9:00 a.m. in

2    Department 4.  The matters having been submitted, the Court orders as follows:

3

4        Plaintiff Mirage Systems, Inc.'s motion for admission *pro hac vice* of Nora Q.E.

5    Passamaneck, Caren Khoo, Eric J. Ward, Amy L. Fici, Catherine A. Corlett, Michael J.

6    Summersgill, and Jordan L. Hirsch is GRANTED.

7

8        Defendant St. Clair Intellectual Property Consultants, Inc.'s motion for admission *pro*

9    *hac vice* of Jake M. Holdreith, Becky R. Thorson, Ronald J. Schutz, Carrie M. Lambert, and

10   Annie Huang is GRANTED.

11

12       Defendant St. Clair Intellectual Property Consultants, Inc.'s request for judicial notice is

13   GRANTED, but only insofar as the court takes judicial notice of the existence of such

14   documents, not the truth of the matters asserted therein.  (*People v. Woodell* (1998) 17 Cal.4th

15   448, 455.)

16

17       Defendants Jerry A. Speasl, Marc K. Roberts, and Matthew A. Chikosky's demurrer to

18   the first through fifth and seventh through fourteenth causes of action on the ground that they fail

19   to state facts sufficient to constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)]

20   (barred by statute of limitations and/or barred by the doctrine of laches) is OVERRULED.

21   Plaintiff alleges it did not discover the misappropriation, fraud, etc. until shortly before the

22   complaint was filed and the causes of action accrue upon discovery.

23       Defendants argue that the recordation of applications and patents put plaintiff on

24   constructive notice that the invention plaintiff claims belongs to it had been misappropriated and

25   patented by these individual defendants.

26       While it is true that the issuance and recordation of patents constitutes constructive notice

27   "to the world of its existence", mere constructive notice of a patent's existence does not always

28   trigger the accrual of a claimant's cause of action.  (Frugoli v. Fougnies (Dist.. Ariz. 2003) 2003

2

1    U.S. Dist. LEXIS 26551. "The fact that the evidence would also support an inference that [a

2    plaintiff] was on constructive notice even if such an inference is stronger, is not a sufficient basis

3    for granting summary judgment…'Even if the parties' alternative interpretations were doubtful,

4    the question of what a reasonable investor would have done is not so certain as to allow a

5    determination as a matter of law.'" *(General Bedding Corporation v. Echeyarria 9th Cir. 1991)*

6    *947 F.2d 1395, 1398).*

7          Here, plaintiff contends that it was entitled to rely on the defendants' fiduciary duty to

8    disclose and assign any of their inventions to plaintiff, and for this reason, constructive notice

9    was inadequate. As Witkin points out, constructive notice is generally not a bar to actions based

10   on fraud. "[The recording acts are designed for the protection of bona fide purchasers, not

11   persons guilty of fraud." (Witkin, 5  Summary of California Law, 10th Ed., Torts, §814).  For

12   these reasons, the complaint is not barred by the statute of limitations as a matter of law.

13         Defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the second,

14   sixth, thirteenth, and fourteenth causes of action on the ground that they fail to state facts

15   sufficient to constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)] (barred by the

16   statute of limitations) is OVERRULED.

17         Though  St. Clair is not a fiduciary of plaintiff, when a cause of action against a fiduciary

18   for conversion accrues upon discovery of the theft, the cause of action does not commence to run

19   against a third party purchaser of the stolen goods until discovery as well.  Even if the third party

20   has no knowledge of the fiduciary's wrongdoing, discovery triggers accrual as to them because

21   they received possession of items from one who had no legal title and therefore no right to

22   transfer the items. (See, *Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421;

23   *Strasberg v. Odyssey Group, Inc* (1996) 51 Cal.App.4th 906).  If this is the result with bona fide

24   purchasers, certainly it must follow that a third party *with* knowledge of the wrongful conversion,

25   as alleged here, cannot claim protection by the statute of limitations.   For these reasons,

26   defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the second, sixth,

27   thirteenth, and fourteenth causes of action on the ground that they fail to state facts sufficient to

28

1  constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)] (barred by the doctrine of

2  laches) is OVERRULED

3

4       Defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the Amended

5  and Supplemental Complaint on the ground that three other actions are pending in the United

6  States District Court for the District of Delaware is OVERRULED.  Code of Civil Procedure

7  section 430.10, subdivision (c) allows a demurrer to be had on the ground that "there is another

8  action pending between the same parties on the same cause of action."  However, the special

9  demurrer does not lie where the action is pending in a federal court.  (Weil & Brown, CAL.

10  PRAC. GUIDE: CIV. PRO. BEFORE TRIAL (The Rutter Group 2005) ¶7:77.1, p. 7-32 citing

11  *Gregg v. Superior Court* (1987) 194 Cal.App.3d 134, 136.)  "The appropriate procedure in such

12  a case is a motion to stay or dismiss the action on ground of forum non conveniens."  (*Id.* at

13  ¶77.2, p. 7-32 citing *Leadford, supra*, 6 Cal.App.4th at p. 575; *County of Fresno v. Shelton* (1998)

14  66 Cal.App.4th 996, 1009.)

15

16  Dated:  1/3/06

17                                           Hon. Jamie Jacobs-May

18                                           Judge of the Superior Court

19

20

21

22

23

24

25

26

27

28

4

**IN THE SUPERIOR COURT OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| Plaintiff:    MIRAGE SYSTEMS, INC | |
| Defendant:  JERRY SPEASL, et al. | |
| **PROOF OF SERVICE BY MAIL OF:  ORDER RE: MOTIONS FOR ADMISSION *PRO HAC VICE* / DEMURRERS** | **Case No:  1-05-CV-039164** |

(ENDORSED)
**FILED**
JAN 0 4 2006
KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

CLERK'S CERTIFICATE OF SERVICE:    I certify that I am not a party to this case and that a true copy of this document was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below and the document was mailed at SAN JOSE, CALIFORNIA on January 4, 2006.

Kiri Torre, Chief Executive Officer/Clerk

BY _____, Deputy
        C. Collins

Gregory Storey, Esq.
80 North First Street
San Jose, CA 95113

Caroline McIntyre, Esq.
303 Almaden Blvd, Ste. 500
San Jose, CA 95110

Kenneth L. Nissly, Esq.
225 Santa Clara Street, 12th Floor
San Jose, CA 95112

Proof of service by mail
Clerk's Certificate of Service

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 MAY -6  PM 3: 29

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., a Michigan corporation, | ) ) ) | Civil Action No _____   05 - 2 7 3 |
| Plaintiff, | ) ) ) | |
| v | ) ) | **COMPLAINT** |
| MIRAGE SYSTEMS, INC., a California corporation, GEORGE J. MOUSSALLY, an individual, and KENNETH L. FORD, an individual, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants | ) ) | |

Plaintiff St. Clair Intellectual Property Consultants, Inc., ("St Clair") for its complaint against Defendants Mirage Systems, Inc., George J. Moussally, and Kenneth L. Ford (collectively referred to as "the Defendants"), states and alleges as follows:

### NATURE OF THE ACTION

1    This is action for judicial declaration of ownership rights and to quiet title to certain intellectual property of St Clair and for tort damages against the Defendants for undermining St Clair's ownership rights and interfering with its ability to license its patents: United States Patent Nos 5,138,459 (the "'459 patent"), 5,576,757 (the "'757 patent"), 6,094,219 (the "'219 patent"), 6,233,010 (the "'010 patent"), 6,323,899 (the "'899 patent"), and 6,496,222 (the "'222 patent"), together with all divisions, continuations, applications, foreign patents and applications, and all reissues and re-examinations (collectively, the "patents-in-suit")  The invention claimed in the patents-in-suit together with all right, title and interest to the invention and patents-in-suit is the "St Clair Intellectual Property "

1

## THE PARTIES

2      Plaintiff St Clair is a Michigan corporation having its principal place of business at 16845 Kercheval Avenue, Suite Number Two, Grosse Pointe, Michigan 48230-1551

3      On information and belief, Defendant Mirage Systems, Inc ("Mirage"), is, and at all relevant times has been, a corporation organized and incorporated under the laws of the State of California  Mirage's principal place of business is at 1031 E Duane Street, Suite F, Sunnyvale, California 94085

4      On information and belief, Defendant George J Moussally, is, and at all relevant times has been, an officer of Mirage, currently residing at 33185 Lark Way, Fremont, California 94555.

5      On information and belief, Defendant Kenneth L Ford, is, and at all relevant times has been, an officer of Mirage, currently residing at 1040 Vista Oak, San Jose, California 95132.

## OTHER ENTITY

6      On information and belief, Mount and Stoelker, P C has its place of business at River Power Tower, Suite 1700, 333 West San Carlos, San Jose, California 95110-2740  Mount and Stoelker, P.C is an unnamed co-conspirator as alleged in this complaint

## JURISDICTION

7      An actual controversy has arisen and now exists between St Clair and the Defendants concerning their respective rights to the St Clair Intellectual Property

8      This action arises under the federal patent statute, 35 U S C § 261, the Federal Declaratory Judgment Act, 28 U S C §§ 2201 and 2202, and under California and Delaware

2

State law between diverse parties where the amount in dispute exceeds $75,000  This Court therefore has subject matter jurisdiction under 28 U S C §§ 1331, 1332, 1338(a) and 2201

      9.     Personal jurisdiction over Defendants comports with the United States Constitution and 10 Del C § 3104 because Defendants have done business in Delaware and have caused and continue to cause tortious injury to St Clair in the State of Delaware as alleged in this complaint. In addition or in the alternative, the Defendants have submitted themselves to the jurisdiction of the U S District Court for the District of Delaware through several declarations filed in *St. Clair v Canon Inc., et al.*, Civil Action No 03-241 (JJF), and by voluntarily appearing in court, prepared to testify in the *St. Clair v Canon Inc., et al.* trial

## VENUE

      10     Venue is proper in this district under 28 U S C § 1391(a) because a substantial part of the events giving rise to St Clair's allegations occurred in the State of Delaware

## FACTUAL BACKGROUND

      11.     St Clair owns the St Clair Intellectual Property, including United States Patent Nos 5,138,459 (the "'459 patent"), 5,576,757 (the "'757 patent"), 6,094,219 (the "'219 patent"), 6,233,010 (the "'010 patent"), 6,323,899 (the "'899 patent"), and 6,496,222 (the "'222 patent").

      12     The St Clair Intellectual Property revolutionized the digital camera industry, enabling the rapid growth and commercial success of digital cameras

      13     St Clair has licensed its patents to many of the largest manufacturers of digital cameras in the world including: (1) Sony Corporation; (2) Nikon Corporation; (3) Minolta Co , Ltd ; (4) Olympus Optical Co , Ltd ; (5) Seiko Epson Corporation; (6) Casio Computer Co ; (7) Kyocera Corporation; (8) Pentax Corporation; and (9) Samsung Techwin Co. Ltd

3

14     The named inventors on the patents-in-suit are Marc K. Roberts, Matthew K. Chikosky and Jerry A. Speasl ("the Inventors")

15     The Inventors conceived their digital camera invention no later than the holiday season in 1989. Between the conception of their digital camera invention in 1989 and the filing of their original patent application in the United States Patent and Trademark Office on November 20, 1990, the Inventors worked with their patent attorney, Paul W. Fish, to refine their patent application

16     At the time the Inventors conceived their invention, all three of them were Mirage employees. On information and belief, Mirage was at the time a defense contractor that provided products and services to the military and intelligence communities related to radar technology

17     During the time period in which the Inventors' digital camera invention was conceived and reduced to practice, Mirage was never involved in digital camera technology of any kind.

18     On June 29, 1987, Mirage hired Jerry A. Speasl as Director of Business Development. Mr. Speasl left Mirage's employ on August 9, 1991.

19     On March 27, 1989, Mirage hired Marc K. Roberts as Director of Business Development, C3I Systems. Mr. Roberts left Mirage's employ on January 31, 1992.

20     On August 28, 1989, Mirage hired Matthew A. Chikosky as Manager of Special Projects Engineering. Mr. Chikosky left Mirage's employ around April 1996

21.     Both prior to and after the filing their patent application for their digital camera invention, the Inventors disclosed their digital camera invention to officers of Mirage

4

22    By way of example only, at a lunch meeting on or about December 1, 1992, Mr. Roberts met with Fred J. Heinzmann, Mirage's Co-Founder, Vice President of Engineering and Senior Technical Advisor, and described his digital camera invention in detail.

23    At no time during the lunch meeting or any point thereafter did Mr. Heinzmann state that he believed the Inventors' digital camera invention would be the property of Mirage.

24    The Inventors each had one or more conversations with high-ranking executives within Mirage about their digital camera invention during the period prior to the '459 patent's issuance on August 11, 1992 and shortly thereafter. At no point did any of these executives, including George J. Moussally, Fred J. Heinzmann, Daniel F. Wiener, or Phillip A. Fialer, assert or indicate that they believed that the digital camera invention was the property of Mirage.

25.    The Inventors worked on their invention on their own time during nights and weekends. During the time between their conception of their digital camera invention and the filing of their original patent application, the Inventors met frequently in Mr. Speasl's basement, hotels, restaurants, and other places separate from Mirage's offices to discuss their digital camera invention.

26.    The Inventors did not use any Mirage resources in the conception of their invention. In addition, the Inventors were not aware of any business or actual or demonstrably anticipated research or development of Mirage to which their invention related, and based on information available to them, their invention was not related to the business or actual or demonstrably anticipated research or development of Mirage.

27.    On November 20, 1990, the Inventors filed their original patent application with the United States Patent and Trademark Office that ultimately issued on August 11, 1992 as the '459 Patent. A true and correct copy of the '459 patent is attached as Exhibit A.

5

28    On July 29, 1993, the Inventors filed a related patent application with United States Patent and Trademark Office that ultimately became the '757 patent, issued on November 19, 1996  A true and correct copy of the '757 patent is attached as Exhibit B

29    On May 22, 1996, St Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '219 patent, issued on July 25, 2000  A true and correct copy of the '219 patent is attached as Exhibit C

30    On February 19, 1999, St Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '010 patent, issued on May 15, 2001  A true and correct copy of the '010 patent is attached as Exhibit D

31    On April 3, 2000, St Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '899 patent, issued on November 27, 2001  A true and correct copy of the '899 patent is attached as Exhibit E

32    On November 27, 2000, St Clair filed a related patent application with the United States Patent and Trademark Office that ultimately became the '222 patent, issued on December 17, 2002  A true and correct copy of the '222 patent is attached as Exhibit F

33    On January 9, 1992, United States Patent and Trademark Office recorded the Inventors' assignment of the entire right, title and interest in their digital camera invention, including the patents-in-suit, to Personal Computer Cameras, Inc ("PCC")  A true and correct copy of the recorded assignment is attached as Exhibit G

34    The Inventors assigned the entire ownership rights to PCC  The assignment included not only the '459 patent, but all patents arising from the same application

35    On the face of the '459 patent, PCC is listed as the assignee

6

36      On November 1, 1995, St. Clair purchased the '459 patent and all related patents and applications together with all of the St. Clair Intellectual Property from PCC with the execution of a Patent Purchase Agreement between the two companies. A true and correct copy of the Patent Purchase Agreement is attached as Exhibit H.

37.     Under the terms of the Patent Purchase Agreement, St. Clair agreed to pay PCC $60,000 up front as well as 50% of net licensing revenue related to the enforcement and licensing of the patent rights. PCC assigned "all right, title and interest in and to the [St. Clair Intellectual Property]" to St. Clair. The assignment assigned not only the '459 patent, but the invention disclosed therein and all related patents arising from the same application.

38      Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St. Clair Intellectual Property]."

39      Prior to purchasing the St. Clair Intellectual Property from PCC, St. Clair diligently investigated PCC's claim of title and took title with no knowledge of any contrary claim of ownership.

40.     On January 16, 1996, St. Clair duly recorded PCC's assignment of the '459 patent and all related patents to St. Clair with the United States Patent and Trademark Office. A true and correct copy of the recorded assignment is attached as Exhibit 1.

41      On the face of the '757 patent, the '219 patent, the '010 patent, the '899 patent, and the '222 patent, St. Clair is listed as the assignee.

42      St. Clair has enforced its patent rights by filing the following patent infringement lawsuits in U.S. District Court for the District of Delaware: (1) *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp., et al.*, Civil Case No. 01-557 (JJF), filed on August 14, 2001; (2) *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc., et al.*, Civil Case No. 03-241

7

(JJF), filed on February 28, 2003; and (3) *St. Clair Intellectual Property Consultants, Inc. v. Samsung Electronics, et al.*, Civil Case No. 04-1436 (JJF), filed on November 9, 2004.

43    In enforcing St. Clair's patent rights, St. Clair has received the following damage awards: (1) On February 23, 2003, a unanimous jury in Civil Action No. 01-557 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $25,000,000.00 for Sony Corporation's infringement of several of the patents-in-suit; (2) On October 8, 2004, a unanimous jury in Civil Action No. 03-241 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $34,716,482.49 for Canon Inc.'s infringement of several of the patents-in-suit; and (3) On October 25, 2004, a majority jury verdict in Civil Action No. 03-241 (JJF) in the U.S. District Court for the District of Delaware awarded damages to St. Clair in the amount of $3,003,465.00 for Fuji Photo Film Co., Ltd.'s infringement of several of the patents-in-suit.

44    On April 12, 2005, St. Clair had substantially completed negotiations related to license agreements with several companies including, but not limited to, defendants in pending Civil Action No. 04-1436 (JJF) in U.S. District Court for the District of Delaware.

45    To allow settlement discussions to continue, St. Clair agreed to extensions of time for several defendants to answer St. Clair's patent infringement complaint.

46    Many draft agreements had been exchanged between St. Clair and prospective licensees including, but not limited to, defendants in pending Civil Action No. 01-1436 (JJF) in the U.S. District Court for the District of Delaware. License agreements were on the verge of being signed.

47    The license agreements would have led to payments of several tens of millions of dollars to St. Clair.

8

48    In addition, St. Clair was in active negotiations with numerous other digital camera manufacturers.

49    A license agreement with any manufacturer of digital cameras would represent a significant economic benefit for St. Clair.

50    On April 12, 2005, Defendant Mirage filed a Complaint in California State court alleging ownership of the patents-in-suit.

51    One or more of the defendants in Civil Action No. 04-1436 (JJF) in the U S District Court for the District of Delaware and other potential licensees have withdrawn or substantially limited their settlement offers specifically because of the allegations in Mirage's Complaint and/or other non-privileged communications by Mirage and its agents regarding ownership of the St. Clair Intellectual Property.

**COUNT I**
**DECLARATORY JUDGMENT OF OWNERSHIP**
**PURSUANT TO 28 U.S.C. § 2201**

52    St. Clair restates and realleges each of the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53.    An actual controversy exists between Mirage and St. Clair over ownership of the St. Clair Intellectual Property.

54.    On April 30, 2004, Mirage entered into an agreement entitled "Consulting Agreement and Covenant Not to Sue" ("Consulting Agreement") with Canon U S A., Inc , one of the defendants in Civil Action No. 03-241 (JJF) in the U S. District Court for the District of Delaware.

9

55    The agreement was signed by Defendant Kenneth L Ford, the Vice-President of Operations for Mirage, and Seymour Liebman, the Executive Vice-President of Canon U S A , Inc ("Canon")

56.    The agreement called for Canon to pay Mirage $75,000 for purported rights to practice the technology claimed in the '459, '219, '010, and '899 patents

57    Canon agreed to pay Mirage for its travel expenses, office expenses, and reimbursement for lost time incurred in cooperating with Canon to prove that Mirage owns the patents-in-suit  The agreement called for Canon to pay Mirage for lost time for any Mirage employee at the rate of $300 per hour

58    On July 22, 2004, Canon filed its Motion to Dismiss for Lack of Standing and Subject Matter Jurisdiction in Civil Action No. 03-241 (JJF) in the U S  District Court for the District of Delaware  The motion to dismiss alleged that St. Clair did not own the asserted patents and further alleged that Mirage was the true owner of the asserted patents

59.    Defendants George J. Moussally and Kenneth L  Ford, along with former and current Mirage employees, Fred J  Heinzmann, Phillip A  Fialer and Daniel F  Wiener, all submitted one or more declarations in support of Canon's motion to dismiss

60    On September 30, 2004, during the middle of trial in Civil Action No  03-241 (JJF) in the U S  District Court for the District of Delaware, minutes before Defendant George J. Moussally was going to take the stand to testify, Canon produced for the first time a copy of the Consulting Agreement by and between Mirage and Canon to St. Clair

61    Defendant Kenneth L  Ford was also in the courtroom at the time  If called by Canon, Mr  Ford was prepared to testify

10

62    Under the Consulting Agreement with Canon, Mirage was paid for Defendants George J Moussally's and Kenneth L Ford's time spent in Delaware

63    After St Clair informed the Court of the production of the Consulting Agreement, the Court severed Canon's ownership defense from trial. The Court then initiated proceedings with a Special Master to determine whether Canon timely produced the Consulting Agreement to St Clair and, if not, what sanctions should be recommended

64    The Defendants have been and continue to be participants in the proceedings before the Special Master in the District of Delaware

65    St Clair purchased the '459 patent and all related patents together with the St. Clair Intellectual Property on November 1, 1995 from PCC for $60,000 plus one half of future net licensing revenue

66    To date, St Clair has paid PCC millions of dollars as a result of licensing the patents-in-suit to manufacturers of digital cameras. St Clair's payments to PCC represent valuable consideration

67    St Clair duly recorded its assignment with the United States Patent and Trademark Office on January 16, 1996

68    St Clair purchased the '459 patent and related patents in 1995 from PCC without knowledge of any claim of ownership by Mirage or any other defendant. Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St Clair Intellectual Property]."

69    St Clair conducted a duly diligent inquiry to determine if there were any contrary claims against the title of the '459 patent together with the St Clair Intellectual Property owned by PCC. Despite a duly diligent inquiry, St Clair did not uncover any claim against the title of

11

the '459 patent, and purchased the St Clair Intellectual Property without notice of any claim to title by Mirage, any other defendant, or any other person or entity

70     St Clair is entitled to a declaratory judgment that it owns the patents-in-suit and the St Clair Intellectual Property

## COUNT II
### QUIET TITLE AND DECLARATION OF OWNERSHIP
### PURSUANT TO 35 U.S.C. § 261

71     St. Clair restates and realleges each of the allegations set forth in paragraphs 1 through 70 as if fully set forth herein

72     St Clair has legal title to the patents-in-suit pursuant to 35 U S C. § 261   Section 261 requires an alleged assignee such as Mirage to record its title with the United States Patent and Trademark Office:

> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage

73.     Mirage has never recorded an assignment, grant or conveyance of the patents-in-suit from the Inventors with the United States Patent and Trademark Office

74     On January 9, 1992, United States Patent and Trademark Office recorded the Inventors' assignment of their interests in the their invention and all patents to PCC

75     St. Clair purchased the '459 patent and all related patents together with the St Clair Intellectual Property on November 1, 1995 from PCC for $60,000 plus one half of future net licensing revenue

12

76   St. Clair duly recorded its assignment with the United States Patent and Trademark Office on January 16, 1996

77   To date, St. Clair has paid PCC millions of dollars as a result of licensing the patents-in-suit to manufacturers of digital cameras   St. Clair's payments to PCC represent valuable consideration.

78   St. Clair purchased the '459 patent and related patents in 1995 from PCC without knowledge of any claim of ownership by Mirage or any other defendant.  Under the terms of the Patent Purchase Agreement, PCC warranted that it was "the owner of all right, title and interest in and to the [St. Clair Intellectual Property]."

79   St. Clair conducted a duly diligent inquiry to determine if there were any contrary claims against the title of the '459 patent together with the St. Clair Intellectual Property owned by PCC.  Despite a duly diligent inquiry, St. Clair did not uncover any claim against the title of the '459 patent, and purchased the St. Clair Intellectual Property without notice of any claim to title by Mirage, any other defendant, or any other person or entity.

80   St. Clair is the only owner of the patents-in-suit and the St. Clair Intellectual Property   Mirage has no rights of ownership

## COUNT III
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT CAL. LABOR CODE § 2870

81.   St. Clair restates and realleges each of the allegations set forth in paragraphs 1 through 80 as if fully set forth herein

82   Each of the employment agreements entered into by the Inventors was governed by Section 2870 of the California Labor Code, which states:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an

13

invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable

83.    The invention conceived by Messrs Speasl, Chikosky, and Roberts and claimed in the patents-in-suit was developed entirely on the Inventors' own time without the equipment, supplies, facilities, or trade secret information of Mirage

84.    The invention did not relate at either the time of conception or reduction to practice to Mirage's business, or actual or demonstrably anticipated research or development The invention also did not result from work performed by the Inventors for Mirage

85    The protections of California Labor Code § 2870 cannot be waived by the employee  Mirage cannot claim ownership over the patents-in-suit because they fall within the safe harbor created by California Labor Code § 2870

86    The Inventors owned the patents covering their digital camera invention, duly and legally assigned the '459 patent all related patents and applications to PCC  PCC duly and legally assigned the '459 patent and all related patents and applications to St Clair together with all of the St Clair Intellectual Property

87    St Clair has legal, equitable, and all other title to the patents-in-suit together with all of the St Clair Intellectual Property

14

## COUNT IV
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT TO CALIFORNIA STATUTE OF LIMITATIONS

88      St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 87 as if fully set forth herein

89      Under California Code of Civil Procedure § 337(1), Mirage must assert any claim of ownership based the Inventors' employment agreements with Mirage within four years of the alleged breach of contract

90      Issuance of a United States patent and recordation of title in the United States Patent and Trademark Office constitute notice to the world of the patent's existence and ownership

91      Mirage had notice of the first of the patents-in-suit when the '459 patent issued on August 11, 1992

92      The Inventors also disclosed their digital camera invention to various officers within Mirage including Fred J Heinzmann, George J Moussally, Phillip A Fialer, and Daniel F Wiener, from at least before the '459 patent issued on August 11, 1992 and/or soon thereafter

93      Mirage or its officials never took any of the steps to claim ownership or sought a judicial declaration of ownership within the four-year time period

94      Any claim by Mirage to ownership of the patents-in-suit is time-barred under California law

## COUNT V
## QUIET TITLE AND DECLARATION OF OWNERSHIP
## PURSUANT TO LACHES AND ESTOPPEL

95      St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 94 as if fully set forth herein

15

96    Issuance of a United States patent and recordation of title in the United States Patent and Trademark Office constitute notice to the world of the patent's existence and ownership

97    Mirage had notice of the first of the patents-in-suit when the '459 patent issued on August 11, 1992

98    The Inventors also disclosed their digital camera invention to various officers within Mirage including Fred J Heinzmann, George J Moussally, Phillip A Fialer, and Daniel F Wiener, either before the '459 patent issued on August 11, 1992 and/or soon thereafter

99    Despite being aware of the Inventors' digital camera invention by at least 1992, neither Mirage nor any other defendant asserted any right of ownership over the Inventors' intellectual property rights

100    Mirage and its officers by their words and conduct demonstrated an intent not to claim any ownership in the inventions of Mirage employees

101    The Inventors, their company PCC, and St Clair relied upon the words, actions, and silence of Mirage and the other defendants to invest in, develop, and license the technology claimed in the patents-in-suit

102    Despite its awareness of the patents-in-suit, Mirage and the other defendants remained silent for an unreasonable period and misled the Inventors, PCC, and St Clair into believing that Mirage either had no ownership interest or had waived or abandoned any such interest

103    PCC's and St Clair's reliance on Mirage's and the other defendants' words, actions, and silence is and was reasonable

16

104. Therefore, it would be inequitable for Mirage or any other defendant to be permitted to assert any ownership interest in patents-in-suit or any of the St Clair Intellectual Property

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

105  St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 104 as if fully set forth herein.

106  St Clair has licensed the patents-in-suit to at least nine major manufacturers of digital cameras

107. In April 2005, St. Clair had substantially completed negotiations related to additional license agreements including, but not limited to, license agreements with several defendants in the pending Civil Action No 04-1436 (JJF) in U S District Court for the District of Delaware.

108. To allow settlement discussions to continue, St Clair agreed to extensions of time for several defendants to answer St Clair's patent infringement complaint

109  Many draft agreements had been exchanged between St Clair and potential licensees including, but not limited to, the defendants in the pending Civil Action No 04-1436 (JJF) in U S District Court for the District of Delaware  The licenses were on the verge of being signed

110  The license agreements would have led to a payments of several tens of millions of dollars to St Clair

111  In addition, St Clair was in active negotiations with numerous other digital camera manufacturers

17

112. A license agreement with any manufacturer of digital cameras would represent a significant economic benefit for St. Clair

113. The Defendants had knowledge of St. Clair's past licenses and ongoing licensing efforts of the patents-in-suit

114. On April 12, 2005, Defendant Mirage filed a Complaint in California State court alleging ownership of the patents-in-suit

115. On information and belief, Defendants George J. Moussally and Kenneth L. Ford conspired with Defendant Mirage to intentionally and maliciously interfere with St. Clair's business relations with potential licensees by disseminating the contents of Mirage's Complaint and by making other unfounded claims of ownership of the patents-in-suit in verbal and written communications

116. At least one of St. Clair's potential licensees learned of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership through Mirage's agent, Mount and Stoelker, P.C.

117. But for the dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, at least one or more of the defendants in Civil Action No. 04-1436 in the U.S. District Court for the District of Delaware would have settled and paid a license fee.

118. As a result, several defendants in Civil Action No. 04-1436 (JJF) in the U.S. District Court for the District of Delaware have now alleged that St. Clair does not own the patents-in-suit

119. The delay and failure in licensing that has resulted from the Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's

18

claim of ownership has caused St. Clair substantial damages in an amount to be proven at trial. Damages include at least St. Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

## COUNT VII
## SLANDER OF TITLE

120    St. Clair restates and realleges each of the allegations set forth in paragraphs 1 through 119 as if fully set forth herein

121.    The Defendants had knowledge of St. Clair's past licenses and ongoing licensing efforts of the patents-in-suit

122    Despite the fact that St. Clair is the record title holder of the patents-in-suit, Defendants conspired to intentionally and maliciously interfere with St. Clair's business relations with potential licensees by disseminating the contents of Mirage's Complaint and by making other unfounded claims of ownership of the patents-in-suit in verbal and written communications to disparage St. Clair's ownership of the patents-in-suit

123    By publishing the false statements to third parties, the publications were outside the course of judicial proceedings and not privileged   The Defendants' false statements have been relied on by third parties to the detriment of St. Clair

124    But for the disseminations of the allegations in Mirage's complaint and/or other allegations of Mirage's claim of ownership, one or more of the defendants in Civil Action No 04-1436 in the U.S. District Court for the District of Delaware would have settled and paid a license fee.

19

125    The Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership has undermined the marketability of St Clair's title to the patents-in-suit

126    Because of Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, St Clair has been unable to license the technology claimed in the patents-in-suit and this delay and failure in licensing has caused St Clair substantial damages in an amount to be proven at trial. Damages include at least St Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

## COUNT VIII
## UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

127.    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 126 as if fully set forth herein

128    The Defendants had knowledge of St Clair's past licenses and ongoing licensing efforts of the patents-in-suit

129    Despite the fact that St Clair is the record title holder of the patents-in-suit, Defendants conspired to intentionally and maliciously interfere with St Clair's business relations with potential licensees by disseminating the allegations of Mirage's Complaint and by making other unfounded claims of ownership of the patents-in-suit in verbal and/or written communications to disparage St Clair's ownership of the patents-in-suit

130    The Defendants' false claims of ownership of the patents-in-suit create confusion and are misleading to St Clair's potential licensees

20

131    But for the dissemination of allegations in Mirage's complaint and/or other allegations of Mirage's claim of ownership, one or more of the defendants in Civil Action No 04-1436 in the U S District Court for the District of Delaware would have settled and paid a license fee

132    The Defendants' conduct has undermined the marketability of St Clair's title to the patents-in-suit

133    The Defendants, acting individually and in conspiracy with one another, have engaged in unfair competition and deceptive trade practices under 6 Del C § 2532, *et seq*

134    Because of the Defendants' dissemination of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership, St Clair has been unable to license the technology claimed in the patents-in-suit and this delay and failure in licensing has caused St Clair substantial damages in an amount to be proven at trial   Damages include at least St Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

<u>COUNT IX</u>
<u>CONSPIRACY</u>

135    St Clair restates and realleges each of the allegations set forth in paragraphs 1 through 134 as if fully set forth herein

136    The Defendants had knowledge of St Clair's past licenses and ongoing licensing efforts of the patents-in-suit

137    Defendants acted in conspiracy with one another and Mirage's agent, Mount and Stoelker, P C , to intentionally, maliciously, and unlawfully interfere with St Clair's business relations with potential licensees by disseminating the contents of Mirage's Complaint and by

21

making unfounded claims of ownership of the patents-in-suit in verbal and/or written communications to disparage St. Clair's ownership of the patents-in-suit

138    Each defendant agreed with the other defendants and Mirage's agent, Mount and Stoelker, P C , to disseminate the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership to St Clair's potential licensees

139    At least one of St Clair's potential licensees learned of the allegations in Mirage's Complaint and/or other allegations of Mirage's claim of ownership through Mirage's agent, Mount and Stoelker, P C

140    But for the dissemination of the allegations in Mirage's complaint, at least one or more of the defendants in Civil Action No  04-1436 in the U S  District Court for the District of Delaware would have settled and paid a license fee

141    The delay and failure in licensing that has resulted from the Defendants' conspiracy to disseminate the allegations in Mirage's complaint and/or other allegations of Mirage's claim of ownership has caused St Clair substantial damages in an amount to be proven at trial  Damages include at least St Clair's expenses and burden of continuing litigation of cases against defendants who would have settled but for the Defendants' tortious conduct together with lost licensing revenue in the tens of millions of dollars

## DEMAND FOR JURY TRIAL

142    Pursuant to Fed. R. Civ P  38(a), St Clair demands a trial by jury on all issues so triable

## REQUEST FOR RELIEF

**WHEREFORE** St. Clair requests the following relief against the Defendants:

22

A       A declaration that St. Clair owns full legal and equitable title to the patents-in-suit together with the St. Clair Intellectual Property

B       A declaration that Defendants are liable to St. Clair for tortious interference with prospective business relations and damages in an amount greater than $75,000 sufficient to compensate St. Clair for its damages

C       A declaration that Defendants are liable to St. Clair for slander of title and damages in an amount greater than $75,000 sufficient to compensate St. Clair for its damages

D       A declaration that Defendants are liable to St. Clair for unfair competition and deceptive trade practices pursuant to 6 Del. C. § 2532, et seq., an injunction, and damages in amount greater than $75,000 to compensate St. Clair for its damages

E       A declaration that Defendants are liable to St. Clair for conspiracy and damages in an amount greater than $75,000 sufficient to compensate St. Clair for its damages

F       An award of prejudgment interest, costs and disbursements, and attorney fees

G       Granting such other and further relief as the Court may deem just and appropriate

Date: May 6, 2005

OF COUNSEL:
Ronald J. Schutz, Esq.
Jake M. Holdreith, Esq.
Becky R. Thorson, Esq.
Carrie M. Lambert, Esq.
Kimberly G. Miller, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

Frederick L. Cottrell, III, Esq. (#2555)
cottrell@rlf.com
Chad M. Shandler, Esq. (#3797)
shandler@rlf.com
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

ATTORNEYS FOR PLAINTIFF
ST. CLAIR INTELLECTUAL
PROPERTY CONSULTANTS, INC.

23