# EXHIBIT 11



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

**UNITED STATES DEPARTMENT OF COMMERCE**

United States Patent and Trademark Office

**September 29, 2004**

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF A DOCUMENT RECORDED ON JANUARY 16, 1996.

By Authority of the

COMMISSIONER OF PATENTS AND TRADEMARKS

*Gloria A. Murray*

**GLORIA A MURRAY**

**Certifying Officer**

FORM PTO-1595
(Rev. 6-93)
OMB No. 0651-0011 (exp. 4/94)

REC    05-13-1996    HEET    U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

Tab settings ⟶ ▼ ▼    ▼

100171382

To the Honorable Commissioner of Pa    ched original documents or copy thereof.

**1. Name of conveying party(ies):**

PERSONAL COMPUTER CAMERAS, INC.

Additional name(s) of conveying party(ies) attached? ☐ Yes ☒ No

**2. Name and address of receiving party(ies)**

Name: ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC.
Internal Address: _____
16845 Kercheval Ave., Suite 2
Grosse Pointe, Michigan 48230

Street Address: 16845 Kercheval Ave., Suite 2

City: Grosse Pointe State: MI ZIP: 48230

Additional name(s) & address(es) attached? ☐ Yes ☒ No

**3. Nature of conveyance:**

☒ Assignment    ☐ Merger
☐ Security Agreement    ☐ Change of Name
☐ Other _____

Execution Date:  January 9, 1996

**4. Application number(s) or patent number(s):**  4

If this document is being filed together with a new application, the execution date of the application is: _____

A. Patent Application No.(s)
08/098,787
08/445,010
08/445,009

B. Patent No.(s)  5,138,459

Additional numbers attached? ☐ Yes ☒ No

**5. Name and address of party to whom correspondence concerning document should be mailed:**

Name:  Gordon K. Harris, Jr., Esq.

Internal Address: _____

Street Address:  HARNESS, DICKEY & PIERCE
P.O. Box 828

City: Bloomfield Hill State: MI ZIP: 48303

**6. Total number of applications and patents involved:** [ 4 ]

**7. Total fee (37 CFR 3.41)............ $ 160.00**
x  Previously submitted (per enclosed)
☐  Enclosed

☒ Authorized to be charged to deposit account
for any deficiencies

**8. Deposit account number:**
08-0750

(Attach duplicate copy of this page if paying by deposit account)

DO NOT USE THIS SPACE

Chg 30 spec Fee

**9. Statement and signature.**
To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of
the original document.

Gordon K. Harris, Jr.
Name of Person Signing

Signature

May 10, 1996
Date

Total number of pages including cover sheet, attachments, and document:

Mail documents to be recorded with required cover sheet information to:
Commissioner of Patents & Trademarks, Box Assignments
Washington, D.C. 20231

PATENT
REEL: 7803 FRAME: 0944

ARD 1-16-96

## ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.

SUITE NUMBER TWO
16845 KERCHEVAL AVENUE
GROSSE POINTE, MICHIGAN 48230 U.S.A.

160.00 581

02-09-1996

|||||||||||||||||||||||||||||
100131949

Commissioner Of Patents And Trademarks
Attn: Assignment Branch
2800 Crystal Drive
10th Floor
Arlington, VA  22202                    **VIA FEDEX**

Re:  Recording Of Patent Assignment

Dear Sir:

We have enclosed a fully executed and notarized patent assignment
for the assignment of one issued U.S. patent and three U.S.
patent applications from Personal Computer Cameras, Inc. to St.
Clair Intellectual Property Consultants, Inc.. Please record the
enclosed assignment in the official records of the U.S. Patent
and Trademark Office.

Our bank check number 1500 made out to the Commissioner of
Patents and Trademarks in the amount of $160.00 has been enclosed
as payment of the fee due for recording the enclosed assignment.

Thank you for your kind attention to this matter.

Very truly yours,

Thomas W. Baumgarten, Jr.

270 MM 02/08/96 5138459              2 581    160.00 OP
                                         160.00 CK

PATENT
REEL: 7803 FRAME: 0945

010496

# U.S. PATENT ASSIGNMENT

WHEREAS, Personal Computer Cameras, Inc. a corporation of the Commonwealth of Virginia, having offices at 10497 Chace Drive, Cupertino, California 95014 ("PCC") is the owner of all right, title and interest in and to the following United States patents and patent applications, hereinafter collectively referred to as the "PATENTS":

| Patent / Application | Filing Date | Issue Date | Inventors |
|---|---|---|---|
| 5,138,459 | 11/20/90 | 08/11/92 | Roberts et al. |
| 08/098,787 | 07/29/93 | N/A | Roberts et al. |
| 08/445,010 | 05/19/95 | N/A | Roberts et al. |
| 08/445,009 | 05/19/95 | N/A | Roberts et al. |

WHEREAS, St. Clair Intellectual Property Consultants, Inc., a Michigan corporation having offices at 16845 Kercheval Ave., Suite 2, Grosse Pointe, Michigan 48230 ("SCI") is desirous of acquiring all right, title and interest in, and to the PATENTS.

NOW, THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, PCC hereby sells, assigns, transfers and conveys unto SCI, its successors and assigns all right, title and interest in and to the following:

A.  The PATENTS;

B.  All divisions, continuations, continuations-in-part and reissues of the PATENTS; and

C.  All claims, demands, or causes of action that PCC has or might have by reason of any infringement of the PATENTS prior to the effective date of this assignment, including the right

Page 1 of 2

PATENT
REEL: 7803 FRAME: 0946

to collect damages for such past infringement in the name of SCI.

Personal Computer Cameras, Inc.

By: _____
Jerry R. Speasl
President

Date: 1-9-96 _____

State of _California_ )
County of _Alameda_ )

Signed before me this _____9th_____ of January, 1996.

_____
Notary Public



Page 2 of 2

RECORDED: 01/16/1996

PATENT
REEL: 7803 FRAME: 0947

# EXHIBIT 12

# CONSULTING AGREEMENT
# AND COVENANT NOT TO SUE

This Consulting Agreement and Covenant Not to Sue (the "Agreement") is made and entered into as of the 20th day of April, 2004 (the "Effective Date") by and between Mirage Systems Inc., a California corporation with offices at 1031 E. Duane Ave, Suite F, Sunnyvale CA 94085 ("Mirage") and Canon U.S.A., Inc., a New York Corporation with offices at One Canon Plaza, Lake Success, NY 11042 ("Canon").

## RECITALS

**WHEREAS**, St. Clair Intellectual Property Consultants, Inc ("St. Clair") has brought a patent infringement action in the United States District Court for the District of Delaware, No. 03-241 (JJF) (the "Action") against Canon and others;

**WHEREAS**, Canon is defending St. Clair's claims of patent infringement in the Action by asserting various defenses, including that the Patents (defined below) are not infringed, invalid and/or unenforceable;

**NOW, THEREFORE**, in consideration of the premises and the mutual promises recited below, the Parties (defined below) hereto agree as follows:

## AGREEMENT

## ARTICLE 1. DEFINITIONS

1.1    "Patents" shall mean U.S. Patent Nos. 5,138,459, 6,094,219, 6,233,010, and 6,323,899.

1.2    "Family of Patents" shall refer to patents and patent applications that claim to be a continuation, division, or are otherwise related to the Patents or that claim priority to U.S.S.N. 615,848, including patents that may be issued in the future and all counterpart foreign patent applications and patents.

1.3    "Person" shall refer to any natural, legal or other person or entity, including any corporation, partnership, joint venture or association, whether public, private, governmental or other.

1.4    "Party" shall refer to Canon or Mirage. "Parties" shall refer to Canon and Mirage collectively. "Third Party" shall refer to any Person other than the Parties.

## ARTICLE 2. CONSULTING OBLIGATIONS

2.1    Mirage shall cooperate and provide assistance to Canon in determining whether Mirage has ownership or other rights in the Patents and/or the Family of Patents, including, but not limited to, at Canon's request, searching for and providing necessary documents and records, providing testimony in Court and by

KL3:2334730.1

GOVERNMENT
EXHIBIT
5

deposition, locating and identifying additional resources that may aid in establishing Mirage's ownership of the Patents and/or the Family of Patents, and any other reasonable efforts necessary to assist in determining whether Mirage has ownership or other rights in the Patents and/or the Family of Patents ("Consulting Obligations").

      2.2     If the Action and all other possible actions brought by St. Clair (or a Third Party) against Canon concerning the Family of Patents are settled or dismissed prior to establishing that Mirage has ownership of the Patents and/or the Family of Patents, the Parties shall terminate this Agreement pursuant to Article 9 herein.  In such an instance, Mirage's Consulting Obligations under this Agreement shall cease, provided, however, that, nothing in this Agreement shall preclude Mirage from independently pursuing ownership rights or other interests in the Patents and/or the Family of Patents.

## ARTICLE 3.  CONVENANTS NOT TO SUE

      3.1     Mirage hereby covenants that Mirage, its assignees, licensees, transferees, or other designees, shall not, directly or indirectly, alone or in participation with any other Person, seek to enjoin, or file, prosecute, maintain, or assist in any lawsuit, legal or other action or proceeding for damages or seek any legal, equitable or other relief against Canon and its parent and their subsidiaries, suppliers, distributors, manufacturers, customers, affiliates and joint venture partners, and all of their present and future officers, directors, employees, partners, consultants, representatives, agents, and Persons acting or purporting to act on behalf of Canon, for infringement of any of the Patents or for any of the Family of Patents.  This provision shall not apply to (1) any other camera manufacturer to the extent such manufacturer makes, uses or sells non-Canon products or components; and/or (2) to any of the named defendants in the Action other than Canon or Canon Inc.

      3.2     The Parties shall not, directly or indirectly, alone or in participation with any other Person, file, prosecute, maintain or assist in any lawsuit, legal or other action or proceeding for damages or any legal, equitable or other relief against each other because it was not established that Mirage is the owner of, or has an interest in, the Patents or the Family of Patents.

      3.3     Mirage, its assignees, licensees, transferees, or other designees agree to incorporate these provisions of Article 3 into any license, assignment, designation, or other transfer of any right in the Patents or the Family of Patents.

## ARTICLE 4.  CONFIDENTIAL AND PRIVILEGED INFORMATION

      4.1     All materials that are marked "Confidential" ("Marked") and exchanged between and among the Parties are to be provided solely on a confidential basis for the use of the Parties hereto in connection with researching, developing and pursuing the determination of whether Mirage has rights in the Patents and/or the Family of Patents, or as to defenses with regard to, and responding to or defending against, claims or assertions made by St. Clair concerning the Patents and/or the Family of Patents. The Marked and exchanged materials and information contained therein are not

to be used for any other purpose, unless the Party which disclosed the materials consents in writing to such alternative use.

      4.2    All Marked and exchanged materials, and derivative works incorporating information contained therein, shall be treated on a confidential basis and are privileged and protected from disclosure to any Third Party (except pursuant to court order), as well as by the attorney-client privilege, the attorney work product immunity and/or by any other applicable privileges or immunities.

      4.3    All persons permitted access to any Marked and exchanged materials, including the Parties, their counsel, paralegals, support staff, and/or consultants ("authorized persons"), shall be expressly informed that such material is privileged and subject to the terms of this Agreement. The Parties further agree that any Marked and exchanged materials, or information derived therefrom, received pursuant to this Agreement will not be disclosed to anyone except these authorized persons, unless written approval is obtained from the other Party.

      4.4    If any Person or entity, whether by subpoena or otherwise, requests or demands the production or disclosure by a Party of any or all of the Marked materials exchanged pursuant to this Agreement, the affected Party shall immediately notify the other Party and permit the Party which disclosed the material to participate to the extent necessary to protect the disclosing Party's interest in defending against the production of these materials. The cost of such participation shall be reimbursed by Canon in accordance with paragraphs 6.2 and 6.3 of Article 6.

      4.5    At a mutually convenient time to be agreed upon by the Parties, each Party shall return such Marked and exchanged materials (including all copies in their possession) to the producing Party or destroy all such materials and confirm such destruction.

## ARTICLE 5. WARRANTY

      5.1    Mirage warrants that it has not assigned or otherwise transferred any interests in the Patents or the Family of Patents.

## ARTICLE 6. CERTAIN CONSIDERATION

      6.1    In consideration of the foregoing, Canon hereby agrees to pay to Mirage a lump sum payment in the amount of $75,000.00 (seventy-five thousand dollars) within five business days after Mirage executes this Agreement.

      6.2    In consideration of the foregoing, Canon further agrees to compensate Mirage for its reasonable travel expenses, office expenses (e.g., copying, postal, phone) and reimbursement for lost time that may be incurred in connection with this Agreement. Mirage agrees to provide invoices and supporting documentation to Canon, c/o Kramer Levin Naftalis & Frankel, Attention Donald L. Rhoads, 919 Third Avenue, New York, NY, 10022, outlining expenses incurred at Mirage's actual cost.

     6.3    The reimbursement for lost time for any Mirage employees in connection with this Agreement is $300 per hour.

## ARTICLE 7. INDEMNITY

     7.1    Canon shall at all times while this Agreement is in effect indemnify and hold harmless Mirage from and against any and all claims, damages, liabilities, judgments, settlements, costs and expenses, including providing reasonable legal representation, arising directly out of Mirage's Consultation Obligations under this Agreement, provided, however, that such indemnification shall not apply to any claims, damages, liabilities, judgments, settlements, costs and expenses arising out of criminal, fraudulent, willful, reckless or negligent acts, false testimony or breach of confidentiality or contractual obligations to any Third Party by Mirage.

     7.2    Canon shall not indemnify Mirage for any claim or action arising out of Mirage's enforcement of any rights in the Patents or the Family of Patents, including, without limitation, any claim, counterclaim, cross-claim, or other action concerning ownership of, or an interest in, the Patents or Family of Patents that may be asserted against Mirage arising out of an action brought by Mirage to enforce any rights in the Patents or the Family of Patents.

## ARTICLE 8. CONSTRUCTION

     8.1    Section captions and headings are used herein for convenience of reference only and shall in no way be construed as in any manner to modify, define, enlarge or restrict any of the provisions of this Agreement. The Parties acknowledge and agree that they have had ample opportunity to consider the terms and conditions hereof, that they have understood the terms and conditions contained herein, and that the language of all provisions of this Agreement shall be construed according to their fair meaning and shall not be construed strictly against either Party as the drafter.

     8.2    The provisions set forth in this Agreement represent the entire set of undertakings, obligations and commitments of the Parties and supersedes all prior agreements, negotiations, representations and proposals, written or oral, relating to its subject matter.

     8.3    The provisions of this Agreement are severable. In the event any court, arbitrator(s) or other authority having jurisdiction over the Parties and subject matter of this Agreement shall determine that any provision in this Agreement is not enforceable as written, the Parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible consistent with the original intent of the Parties, under the laws of the jurisdiction in which enforcement is sought.

     8.4    This Agreement shall be construed and interpreted in accordance with, and all disputes arising hereunder shall be governed by, the laws of the State of New York.

8.5    This Agreement may be executed in counterparts, all of which comprise one agreement.

## ARTICLE 9.  TERMINATION

9.1    This Agreement shall be terminated if any one of the following is satisfied:

9.1.1    The Parties agree in writing to terminate the Agreement;

9.1.2    The Action and all other possible actions brought by St. Clair (or a Third Party) concerning the Family of Patents are settled or dismissed; or

9.1.3    Mirage obtains ownership of the Patents.

9.2    The provisions of Article 3 of this Agreement shall survive termination of this Agreement.

9.3    The provisions of Article 4 of this Agreement shall survive termination of this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date noted below.

Mirage Systems, Inc.

By: _____ 4/30/04

Name: KENNETH L. FORD
        VICE-PRESIDENT
        OPERATIONS

Title: _____

Canon U.S.A., Inc.

By: _____

Name: _Executive Vice President_

Title: _SEYMOUR LIEBMAN_

KL3:2334710.1

5

# EXHIBIT 13

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

BEFORE THE HONORABLE JAMIE JACOBS-MAY, JUDGE

DEPARTMENT NO. 4

---oOo---

COPY

MIRAGE SYSTEMS, INC.,              )
                                   )
                                   )
          Plaintiff,               )
                                   )
     vs.                           )          Case No. 1-05-CV-039164
                                   )
MATTHEW CHIKOSKY, MARC K.          )
ROBERTS, JERRY SPEASL and ST.      )
CLAIR INTELLECTUAL PROPERTY        )
CONSULTANTS, INC.,                 )
                                   )
          Defendants.              )
_____   )

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Tuesday, January 3, 2006

---oOo---

A-P-P-E-A-R-A-N-C-E-S:

FOR THE PLAINTIFF:                  CAROLINE MCINTYRE,
                                    ERIC J. WARD &
                                    MICHAEL J. SUMMERSGILL,
                                    Attorneys at Law


FOR DEFENDANTS SPEASL,
ROBERTS & CHIKOSKY:                 LANI R. MILLER,
                                    Attorney at Law


FOR DEFENDANT ST. CLAIR:            JAMES D. MOORE,
                                    Attorney at Law


FOR DEFENDANT ST. CLAIR:            RONALD J. SCHUTZ,
                                    Attorney at Law



OFFICIAL COURT REPORTER:            PATRICK CROWLEY, C.S.R.
                                    Certificate No. 11271

```
                                                    2
```

1    San Jose, California                  Morning Session

2                    PROCEEDINGS

3           THE COURT:  Line item 1 is Mirage Systems versus

4    Speasl, et al.

5           MR. MOORE:  Good morning, Your Honor.  James Moore

6    for defendant St. Clair.

7           THE COURT:  Thank you.

8           MS. MILLER:  Good morning, Your Honor.  Lani

9    Miller for the inventor defendants, Speasl, Roberts and

10   Chikosky.

11          THE COURT:  Thanks a lot.

12          MR. SCHUTZ:  Good morning, Your Honor.  Ron Schutz

13   for St. Clair Intellectual Property Consultants, the other

14   defendant in the case.

15          MS. MCINTYRE:  Good morning, Your Honor.  Caroline

16   McIntyre for plaintiff Mirage Systems, Inc.

17          MR. WARD:  Good morning, Your Honor.  I'm Eric

18   Ward.  I'm also for Mirage.

19          MR. SUMMERSGILL:  And Michael Summersgill for

20   Mirage.

21          THE COURT:  Okay, so let's do the pro hac vice

22   issues first.  With respect to Mirage's motions for

23   admission pro hac vice, they're all granted.

24          MS. MCINTYRE:  Your Honor, we would like to

25   actually withdraw one of those.

26          THE COURT:  Okay.  Which one?

27          MS. MCINTYRE:  The application of William

28   Disalvatore.

3

1          THE COURT:  Okay, so any objection?

2          MR. SCHUTZ:  No, Your Honor.

3          MS. MILLER:  No, Your Honor.

4          THE COURT:  All right, so that one's withdrawn.

5  So, we have granted then I think -- well, we have

6  Summersgill granted, Hirsch granted, right?  And then

7  Passamaneck, Khoo, Ward, Fici and Corlett?

8          MS. MCINTYRE:  Yes.

9          THE COURT:  Okay.  Then with respect to St. Clair,

10  I just need to clarify something.  I know that initially --

11  this was a second go-around.

12          MR. MOORE:  That's correct.

13          THE COURT:  There had been a motion, and then I

14  guess it was taken off calendar or whatever.  And in terms

15  of your proof of service -- so, I know that first time

16  around you served everybody and you served the state bar.

17  Second time around I don't see a proof of service.

18          MR. MOORE:  There wasn't a proof service?

19          THE COURT:  No.

20          MR. MOORE:  With the pro hac vice?  Let me just

21  check the --

22          THE COURT:  Did you folks -- let me just ask this

23  question.  So -- did you folks get service of the second

24  motion, this motion for pro hac vice?

25          MS. MCINTYRE:  Yes, Your Honor, I believe so.

26          THE COURT:  Okay, and as an officer of the court,

27  are you telling me you did serve and you served the state

28  bar --

PATRICK K. CROWLEY, CSR, RPR, CRR

4

1          MR. MOORE:  Yeah.  We did absolutely, Your Honor.

2          THE COURT:  So, I'm accepting that.

3          MR. MOORE:  Thank you.

4          THE COURT:  So, it will be granted, and so that's

5   Holdreith, Thorson, Schutz, Lambert and Huang?

6          MR. MOORE:  That's correct.

7          THE COURT:  Okay, so those are all granted.

8          Okay, and then in terms of the Demurrer, the

9   tentative is to overrule the Demurrers.  And so briefly I'll

10  tell you what my reasoning is and allow you folks to argue.

11         In terms of the construction -- first of all, they

12  plead that it's the Roberts patents that were converted,

13  although they throw in their language about it's the

14  invention, it's the proprietary information.  To me, it's

15  the proprietary information, not the patents.

16         In other words, had -- and assuming that it's true

17  obviously for purposes of Demurrer -- the defendants taken

18  this secret information and never patented it, you still

19  have a conversion.

20         So, it's not the patent that was taken.  In fact,

21  the patent didn't exist.  The patent -- there was nothing to

22  convert.  The patent didn't belong -- the thing called a

23  patent wasn't held by the plaintiff and converted.  It was

24  the information that was patented.  And I think this goes

25  hand in hand with your argument.

26         I think it was Avant or -- that talks about it's a

27  secret that's taken, and no matter what its use it doesn't

28  change.  It's one -- it's one conversion, and I agree with

5

1   that.  And so I think that it's a little bit of a red

2   herring to talk about the patent.  I think you need to talk

3   about them because that may be the measure of damages, but

4   really what was taken, per the Complaint, is this digital

5   camera concept that then was patented.

6           So, then the question is, okay, well, did they

7   have notice of it, you know, because this whole thing is

8   about statute of limitations.  And your point is, yeah, but

9   the patent put them on notice.  That's why it's critical.

10  The patent put them on constructive notice, and you cite

11  some cases.

12          And to me even the cases that you cite, including

13  the Bedding case -- and I agree with you that Bedding is a

14  far worse case than our case, meaning worse for them.  It's

15  better for you.  So that in Bedding there was no way,

16  because of the name of the inventor, that you could figure

17  out that it was your guy that stole it.  That's not true in

18  our case.  The three individual defendants were named as the

19  inventors.

20          But even Bedding says even if this was stronger --

21  I'm reading the language to you.  The fact that the evidence

22  -- the fact that the evidence would also support an

23  inference that General Bedding was on constructive notice,

24  even if such an inference is stronger, is not a sufficient

25  basis for granting summary judgment.

26          That case, the Kimberly case, the <u>Frugoli versus</u>

27  <u>Fougnies</u>, F-o-u-g-n-i-e-s, 2003 -- I just have a Lexis cite,

28  2003, U.S. District, Lexis 26551.  And I think there was

6

1   actually another one, Acebey, A-c-e-b-e-y, versus Shearson

2   Lehman, 1993, U.S. District, Lexis 19659, a 1993 case, all

3   sort of review these 9th Circuit cases and say -- except for

4   one case, they all say this is a question of fact.

5         And their argument is -- and their strongest

6   argument I think is that because these three individuals

7   owed a fiduciary duty, we were allowed to rely on them to

8   tell us that the inventions happened and to tell us that,

9   you know, we're about -- do you want to disclose it to us

10  and to give it to us?  And because we had a right to rely on

11  that, we didn't have to go out looking.

12        And I think that becomes of a question of fact for

13  a fact finder to determine whether that was reasonable or

14  not reasonable.  So, that's my reasoning for that.

15        Although I agree with you that -- and you argue

16  something to the effect that, well, that didn't put us on

17  notice of anything, and I just disagree.  I think that when

18  you allege anything that these guys created during this time

19  span as ours and you know that these guys filed for the

20  public the application for a patent during this time frame,

21  and I think they even filed the first patent during the time

22  frame that some of them were still employed with you, that

23  -- I mean, what more do you need when you're saying

24  everything that they create is ours?  So, I think that's --

25  there's constructive notice there.  It's just a question of

26  whether that's enough.

27        And constructive notice alone is not enough.  In

28  other words, the fact that it exists is not enough.  The

7

1    question that -- the real question is is given the
2    constructive notice, should that person have acted?  And
3    that becomes the question of fact.
4         So, in Frugoli they say it is well established
5    that, quote, "Issuance of a patent and recordation in a
6    patent office constitute notice to the world of its
7    existence."  The dispositive issue is whether such notice --
8    is whether, with such notice, other claims connected to a
9    patent should be deemed to have accrued.  So, I think the
10   existence of the constructive notice alone is not enough and
11   that there's this question of fact that goes -- that follows
12   from it.
13        In other words, even given the constructive
14   notice, would a reasonable person have acted on it?  Their
15   argument is no because I was allowed to sit back in this
16   circumstance and -- because I was counting on my fiduciary.
17        The other little bit of support that they get is
18   Witkin Section 814, Summary of California Law of Torts.
19   It's in volume 5, and it says:
20             "In general, the plaintiff is not barred
21             by constructive notice where public records
22             disclose the falsity of representations.
23             Recording acts are designed for the
24             protection of bona fide purchasers, not
25             persons guilty of fraud."
26        And that sort of goes hand in hand with what
27   they're saying is when you get to rely on somebody and they
28   mislead you, that person can't take advantage of

PATRICK K. CROWLEY, CSR, RPR, CRR

8

1  constructive notice.  So, that's the answer to the

2  constructive notice issue, and I'll allow you to respond in

3  a minute.  And that has to do with the three individuals.

4          I had a tougher time with St. Clair.  Who's St.

5  Clair, you?

6          MR. SCHUTZ:  Yes, Your Honor.

7          THE COURT:  And your argument is, well, St. Clair

8  wasn't a fiduciary, and that's true.  And I struggled with

9  that a little bit.

10         There were two cases that hurt you.  One is

11 Strasberg, which is <u>Strasberg versus Odyssey Group</u>, 51 Cal

12 App. 4th 906, 1996.  And they cite -- and this is another

13 case that hurts you is -- it starts with an N.  I'll get you

14 the cite in a second; one second.  N-a-f-t-z-g-e-r, <u>Naftzger</u>

15 <u>versus American Numismatic Society</u>, 1996, 42 Cal App. 4th

16 421.  In both of those cases you had -- so, in the Naftzger

17 case -- are you familiar with it?

18         MR. SCHUTZ:  Not that one, Your Honor.  I've got

19 several cases here.  I don't have that one.

20         THE COURT:  So, Naftzger is a case where this

21 entity had, you know, very valuable coins, and a fiduciary

22 substituted invaluable coins for the valuable coins, so you

23 couldn't tell something was missing.

24         Many years later they discover it, and they go, oh

25 my God, you know, our valuable coins are gone.  This

26 fiduciary did a switch.  And a third party, innocent third

27 party had the real coins.  And the question is whether or

28 not that innocent party, you know, the statute ran on the

PATRICK K. CROWLEY, CSR, RPR, CRR

9

1    innocent party, and the answer was no because -- and they

2    said it makes no sense when the thief sells to a third party

3    -- these are my, you know, paraphrased quotes -- it would be

4    inconsistent to bar, you know, paren, the victim who was

5    unaware of the theft from suing the innocent purchaser whose

6    identity was unknown within the three years following the

7    undiscovered theft when the criminal limitations period

8    against the thief did not commence to run until the crime

9    was discovered.

10          In the other case, Strasberg, Lee Strasberg was

11    the beneficiary under Marilyn Monroe's will.  And someone

12    named Melson, who was a fiduciary to this estate --

13    everything was supposed to be turned over to Strasberg who

14    had inherited all this personal property.

15          Melson, the executor or special administrator in

16    the fiduciary role and Marilyn Monroe's personal secretary,

17    kept some stuff.  Many years later Melson gave the stuff to

18    her sister-in-law, and Melson died.  And the sister-in-law,

19    an innocent third party, puts it up for auction.

20          Strasberg has since died, but Strasberg then gives

21    everything to his wife, Anna.  Anna sees the auction and

22    sues, and the answer is, yeah, well, even if the suit was

23    good against Melson because it was tolled, is it good

24    against this innocent sister-in-law?  And the answer is yes,

25    it is because -- and the theory being if you don't have

26    valid title, you can't transfer.

27          So, our case is better for the plaintiff and worse

28    for you because we don't even have an innocent third party,

PATRICK K. CROWLEY, CSR, RPR, CRR

10

1    per the Complaint.  We have a third party who knows all
2    about everything, knows that, per the Complaint -- and I
3    have to assume it's true -- knows that this invention
4    rightfully belongs to Mirage and not to the three
5    individuals.  That's what their Complaint says.  So, I think
6    if it's good enough for an innocent person, third party,
7    it's good enough against a third party who knows that the
8    stuff is, quote, stolen.  Go ahead.
9            MR. SCHUTZ:  Cutting right to the chase, Your
10   Honor, the difference here between the Strasberg case and
11   the coin case, the Naftzberg [sic.] -- I may not be
12   pronouncing it --
13           THE COURT:  Naftzger, something like that.
14           MR. SCHUTZ:  Is that in our case my client, St.
15   Clair, in 1996 recorded in the United States Patent Office,
16   pursuant to Section 261 of the patent statute, an
17   assignment.
18           That was not the case in either the coin case or
19   the Marilyn Monroe case where the party without a fiduciary
20   tie -- there's no fiduciary tie.  There's no fraud
21   allegation.  Actually went -- declared to the world and to
22   the public, we own these patents.  They're ours.  Here's our
23   recordation of them.
24           And that is critical distinction of fact, and
25   that's what takes it outside of those cases and what
26   separates us, St. Clair, from the inventor defendants in
27   this case and -- you know, I don't know what else to say.  I
28   think that cuts right to the issue.

PATRICK K. CROWLEY, CSR, RPR, CRR

11

1          THE COURT:  What's your response?

2          MR. WARD:  The response to that, Your Honor, is

3   that it's as though the patents were issued.  First of all

4   --

5          THE COURT:  Say it again.

6          MR. WARD:  It's as -- it's the same argument as

7   the patents themselves, that that recording -- if you assume

8   there's constructive notice to Mirage, and I -- unlike your

9   analysis, our position on that is that that does not

10  constitute constructive notice.  But even if it --

11         THE COURT:  Well, there are a gazillion cases that

12  say it does.

13         MR. WARD:  So, even if it does though, what that

14  does then is raise this reasonable inquiry kind of issue

15  that you went through at the beginning of our conversation,

16  and we come right back to that law.  And it doesn't save --

17  it doesn't save them at all.

18         THE COURT:  So, what you're saying is assume that

19  it gives you constructive notice.  The constructive notice

20  analysis doesn't have anything to do with are you a

21  fiduciary or not.  It doesn't have anything to do with -- it

22  has to do with is constructive notice enough.  Except that

23  the most persuasive argument that you made to me on why the

24  constructive notice is not enough had to do with you could

25  rely on a fiduciary to tell you.  And here, St. Clair is not

26  a fiduciary.

27         MR. WARD:  But the only way that we can find out

28  about this is through those very -- the inventors who were

12

1  concealing this in connection or in conspiracy, if you will,

2  with St. Clair.  The two -- those two parties knew exactly

3  what was going on.  In fact, you know, the inventor

4  defendants that hammered us for not making any investigation

5  at all.

6       But the same thing can be said for St. Clair.  If

7  St. Clair was going to get in bed with these guys, then St.

8  Clair had an obligation to do some sort of investigation

9  itself.  It either did that investigation and is complicit

10  in the concealment or it did not do that investigation and

11  is in no different position than Mirage.

12       So that I think the analysis that we started with,

13  that you explained at the very beginning does in fact

14  pertain here regardless of whether they have a direct

15  fiduciary responsibility to Mirage.

16       MR. SCHUTZ:  Briefly, Your Honor.  There are four

17  causes of action alleged against St. Clair.  They are the

18  quiet title cause of action, the --

19       THE COURT:  Conversion.

20       MR. SCHUTZ:  Unfair competition, conversion and

21  unjust enrichment.

22       THE COURT:  But they all boil down to conversion.

23       MR. SCHUTZ:  I'm sorry?

24       THE COURT:  It all boils down to conversion.

25       MR. SCHUTZ:  It does, Your Honor.  But the point

26  that I think is important here is that there's no evidence,

27  and I'm not sure there are any allegations of a conspiracy

28  between them.  I think that if they pled that, they would be

PATRICK K. CROWLEY, CSR, RPR, CRR

13

1  subjected to sanctions because there is none, and I think
2  they know that from what's going on before.
3       They would not be left without a remedy if St.
4  Clair were dismissed from this case.  They have their remedy
5  against who they claim defrauded them and have a fiduciary
6  duty.
7       THE COURT:  But I don't decide a Demurrer based
8  upon whether there's an alternative remedy.  I decide a
9  Demurrer based upon whether or not it states a cause of
10  action.
11       MR. SCHUTZ:  And that's correct, Your Honor.  And
12  I just -- I point that out as another fact.
13       But the fact here remains that in 1996 we made,
14  you know, notice to the world that we had these patents and
15  recorded them.  That's the purpose of the recording statute
16  is to prevent exactly this kind of action, somebody coming
17  up years later after St. Clair has proven this to be
18  valuable property and invested millions.
19       Then Mirage comes along and says, whoa, you know,
20  maybe we'll take a piece of that.  I don't know where they
21  were when St. was spending millions of dollars going after
22  Sony, Canon and Fuji, being told by everybody that there's
23  no way you can beat these giants from Japan and we did.  Now
24  they want a piece of the money, and that's what the
25  recording statute is designed to prevent.
26       And in fact to this date I don't think that Mirage
27  has gone into the patent office and said, hey, it's really
28  us that owns it; we're going to record an interest in that.

14

1    THE COURT:  Does anyone else want to be heard?

2    MS. MILLER:  Yes, Your Honor.  On behalf of the

3  inventor defendants, our concern is if just because a

4  fiduciary duty exists between an employee and employer, if a

5  company like Mirage therefore has no obligation to exercise

6  any due diligence or conduct any type of investigation, the

7  discovery rule would apply in every single misappropriation

8  case if they just pled something -- the catch phrase is

9  fraud or concealment.

10    In the amended Complaint here today, there is not

11  one fact pled of any due diligence of any investigation

12  conducted.  So, what's the issue of fact there where there

13  are no facts that there was any investigation?

14    THE COURT:  Yeah.  I mean, to me the fact that you

15  can have a pleading that survives a Demurrer doesn't mean

16  you're going to win.  And the question becomes -- and you

17  start weighing different interests.

18    You know, their interest is I had a right to rely

19  on my employee who signed an agreement saying he would tell

20  me when he discovered something, and he would give it to me.

21  That's their argument.  Your argument is -- and actually St.

22  Clair is even in a stronger position to make this argument.

23  From a commerce perspective, how long, you know, how long is

24  someone vulnerable to be sued?  Because if you're vulnerable

25  forever, commerce sort of stops, and that's their argument.

26    All I'm saying is this is a Demurrer stage.

27    MS. MILLER:  Right.

28    THE COURT:  And I don't have the facts, and that's

PATRICK K. CROWLEY, CSR, RPR, CRR

15

1    the point.

2           MS. MILLER:  Well, the inventor defendants'

3    position is that even if the amended Complaint does plead

4    facts or fraud in concealment, which it appears to be most

5    of their amended Complaint, any concealment had to have

6    ended when the patent was publicly issued.

7           The difference between this case and the General

8    Bedding case is that there was no attempt to disguise or

9    hide their identities.  They -- patents were issued in their

10   own names.  There was no fictitious company or third party.

11   They put out their hand and said this is what we're doing,

12   this is the type of business we're conducting.

13          And I think it's really telling that this is 13

14   years later, twice the amount of laches.  It's just unheard

15   of.  It's really outrageous that they are bringing a case 13

16   years after a patent issued, and that's the difference

17   between St. Clair and the inventor defendants.  The statute

18   of limitations they claimed again running in 1996; whereas,

19   the latest time it could have begun running as to the

20   inventor defendants was when it was issued in 1992.

21          THE COURT:  Right, but, you know, in the Marilyn

22   Monroe case it was decades.  So, I guess my point is you're

23   making good points.  The points that you're making get

24   weighed against the points they're making, and I can't

25   decide as a matter of law.  That's kind of my point.

26          All right, so unless anybody else has anything

27   else to say for the record or otherwise, that's the

28   tentative and will be my ruling, and the Court will prepare

PATRICK K. CROWLEY, CSR, RPR, CRR

16

1   an order.

2           MR. SCHUTZ:  We had an alternative request for

3   relief, Your Honor, which was to stay this case in favor of

4   the --

5           THE COURT:  Right, and so it's a couple of things.

6   I wanted to thank you for bringing that up.  That's a motion

7   for forum nonconveniens, so you have to bring that separate

8   motion.

9           MR. SCHUTZ:  Well, it's actually not that the case

10  be transferred, just be stayed pending the outcome of those

11  cases.

12          THE COURT:  Well, let me just ask a couple -- I'm

13  not going to stay it, but isn't there some motion pending

14  there, motion to dismiss or something like that?

15          MR. WARD:  Yes, Your Honor.

16          THE COURT:  What's happening on that?

17          MR. WARD:  There is a motion to stay that is

18  pending in Delaware that has not been ruled upon.

19          THE COURT:  When was it brought?

20          MR. WARD:  The motion?

21          THE COURT:  When was it heard?

22          MR. WARD:  It was -- it hasn't -- there hasn't

23  been an argument on it.  It was submitted to the court about

24  six months ago.

25          THE COURT:  Ordinarily, isn't there a hearing on

26  motions?

27          MR. WARD:  Well, it depends upon the judge.  And

28  Judge Farnum (phonetic) sometimes does that and sometimes

PATRICK K. CROWLEY, CSR, RPR, CRR

17

1   simply rules on the papers.  But there has been nothing

2   that's been issued by the Court either calling for oral

3   argument or deciding that motion.  In fact, in those cases

4   in Delaware there's been virtually no activity for the last

5   year.

6           MR. SCHUTZ:  Well, there actually has been --

7   there are a lot of related cases in Delaware, and there's

8   been a ton of activity in the sanctions case against -- as

9   Your Honor may know from looking at the papers --

10          THE COURT:  Right.

11          MR. SCHUTZ:  -- against Canon and for their

12  conduct with respect to Mirage.

13          THE COURT:  I know that you've tried hard to sort

14  of smear them with the Canon issue.  To me the Canon issue

15  is -- that's not my -- that's not the problem that Mirage

16  has with me right now.  That's a problem that Canon has in

17  trying to buy off a witness.  But right now I have the party

18  before me.

19          What bugs me about Mirage -- and let me just tell

20  you -- is you take -- I mean, you make a judicial admission

21  that Mirage sold to Kodak.  You take a first amended

22  Complaint; you use the word "Kodak;" and then you cross out

23  Kodak and you initial it with a bunch of paragraphs that

24  make no sense with a crossed out name.

25          MR. WARD:  And that's because, Your Honor, when we

26  moved to substitute Kodak --

27          THE COURT:  Yeah.

28          MR. WARD:  -- and we did it on an ex parte motion,

PATRICK K. CROWLEY, CSR, RPR, CRR

18

1  the defendants objected to it.  So, the Court asked us to

2  submit that motion, which we did.  And before there was a

3  hearing on it, they removed the case to federal court.

4          THE COURT:  Okay, but then when it comes back

5  down, why don't you bring a motion?

6          MR. WARD:  We can do that.  We can do that at any

7  time, and in fact perhaps we can do it on stipulation.

8          MR. SCHUTZ:  The only objection we had at the

9  time, Your Honor, and an objection we still have is we

10  haven't seen the underlying deal document between Mirage and

11  Kodak.  They want to substitute -- Kodak wants to substitute

12  in.  They've made representations that they own and are in

13  the shoes of Mirage, you know, that's fine.  They can make

14  the representation, but we're entitled to see the document.

15  We've been asking for it for months, and they refused to

16  give it to us.

17          MR. WARD:  And by declaration have established

18  that they're the owner.  And when there is discovery, that

19  -- that document is certainly discoverable.

20          THE COURT:  So, quite frankly, it's just a bunch

21  of game playing, you know.  If they're entitled to

22  discovery, give it to them.  On the other hand, you're not

23  entitled to get it.  You know, if they want to amend, they

24  can amend.  I mean, you know, you don't need to have

25  discovery to amend.

26          But it's all -- it's a lot of contentiousness over

27  nothing, so give it to them.  You know, what's the big deal

28  if they're entitled to it anyway?  Anyway, I'm glad that I

PATRICK K. CROWLEY, CSR, RPR, CRR

19

1   brought it up, so please get that taken care of.  You know,

2   my suggestion obviously is get the stipulation.  They'll

3   stipulate if you give them the papers.  They're entitled to

4   the papers anyway; give it to them.  That's that issue.

5          I'm not going to stay it.  If you have a forum

6   nonconveniens argument, bring it -- you know, issue, bring

7   it.  And I think that was everything.  That was the last

8   loose end that I thought of.

9          Do you have a CMC coming up?

10         MR. WARD:  We are -- that's an issue for today.  I

11  think that you had suggested that we could do that today.

12         THE COURT:  Oh, did I?  Wait, hold on a second.

13  Let me -- we're going to look it up.  So, let me just fix it

14  up so that I don't make you come in needlessly.

15         THE CLERK:  There is nothing else pending.

16         THE COURT:  Okay, so let me give you a CMC date.

17  Does 60 days sound about right?  So, we're going to treat

18  today also as an informal case management.

19         Between now and then you're going to either

20  stipulate to amend the Complaint to the name Kodak, you

21  know.  And maybe the best way of doing it is -- I don't know

22  the best way of doing it, but you'll figure it out.

23         MR. WARD:  We'll have to take that up.

24         THE COURT:  All right.  And so 60 days from now is

25  March 7th.  Does that sound about right?  So, assuming --

26  let's just do March 7th then.  Between now and then you'll

27  fix up the pleading in terms of Kodak.

28         The Demurrer is overruled, and so you'll file an

PATRICK K. CROWLEY, CSR, RPR, CRR

20

1  Answer, and then the next one we end up talking about, you

2  know, ADR basically.  And then if you're going to bring a

3  forum nonconveniens motion, bring that.

4         It would be nice to get an update on what's

5  happening with that other case.  We don't like to have two

6  cases going at the same time that cover the same subject

7  matter, so it would be nice to get that taken care of.  I'd

8  like to know what's going on with the motion to dismiss.

9         MR. WARD:  If I might, Your Honor --

10        THE COURT:  And I think I have another question.

11  Why -- so, it was remanded from federal court; what was the

12  reason?

13        MR. WARD:  The lateness -- I'm sorry.

14        MR. SCHUTZ:  Lateness, I think.

15        MS. MILLER:  Service of the Complaint as to

16  following the first served defendant rule or the last served

17  defendant rule.  The federal court said the 30-day period

18  interval started when the first defendant was served rather

19  than the last defendant.

20        THE COURT:  Your basis for removal wasn't covered

21  --

22        MR. WARD:  No, it was diversity.

23        MS. MILLER:  Jurisdiction.

24        THE COURT:  Subject matter jurisdiction?

25        MS. MILLER:  Yeah.

26        THE COURT:  Meaning the patent?

27        MR. WARD:  No, no.  Diversity.

28        MS. MILLER:  No, it was diversity.

21

1       THE REPORTER:  One at a time.

2       THE COURT:  Okay, right.  Because under my theory,

3   we're not talking about patents.  We're talking about a

4   trade secret.  That's really state court.

5       MR. SCHUTZ:  Even if you're talking about patents,

6   ownership of patents is cognizable in state courts.

7       THE COURT:  Right, but if I ended up thinking of

8   this as a patent, then I'd have to figure out whether it

9   was, you know, the whole continuation, continuation and

10  part.  And I think that's something that federal courts do.

11  State courts generally don't do that.

12       And I guess just to clean up everything, I'm

13  granting judicial notice but not for the truth.  So, I know

14  that the patent says continuation, just like a court order

15  that has reasons.  We never take judicial notice of the

16  truth of it.  That would mean judges are infallible, which

17  isn't the case, nor are patent offices.  So, it's not for

18  the truth that the thing was a, quote, continuation patent

19  as opposed to a continuation in part patent or anything.

20  I'm just taking judicial notice of this existence for

21  purposes of injunctive notice.

22       MR. WARD:  Yeah.  In fact, Your Honor, that's our

23  theory here is that this is a -- it's an employment

24  agreement.  A California employment agreement involves

25  California individuals and businesses that belongs in the

26  California state court.  And in fact the Delaware action

27  that they're referring to was started after this one.

28       THE COURT:  Right, I understand that.  But I guess

22

1  my point is that you keep talking about the Roberts patents,
2  and I'm looking at this as the secret that exists in the
3  Roberts patents.
4          MR. WARD:  Point taken.
5          THE COURT:  Okay, everybody.  Thank you very much.
6              (Whereupon, the proceedings were concluded.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23

1   STATE OF CALIFORNIA      )
                             )
2   COUNTY OF SANTA CLARA    )

3

4           I, PATRICK K. CROWLEY, CSR #11271, HEREBY
    CERTIFY:

5

6       That the foregoing is a full, true, and correct

7   transcript of the testimony given, of the evidence offered

8   and received, and statements of the Court, also all

9   objections of counsel and all matters to which the same

10  relate, in the proceedings had, entitled:  IN THE MATTER OF:

11  MIRAGE SYSTEMS, INC. versus MATTHEW CHIKOSKY, MARC K.

12  ROBERTS, JERRY SPEASL and ST. CLAIR INTELLECTUAL PROPERTY

13  CONSULTANTS, INC., Case number 1-05-CV-039164, taken on

14  January 3, 2006;

15      That I reported the same in stenotype to the best of my

16  ability, being the duly-appointed, qualified, and acting

17  official stenographic reporter of said court, and thereafter

18  transcribed the same into typewriting as herein appears.

19      I further certify that I have complied with CCP § 237

20  (a) (2) in that all personal juror-identifying information

21  has been redacted, if applicable.

22

23      DATED:  January 5, 2006

24

25

26

27  _____

28          Patrick K. Crowley, CSR  #11271

PATRICK K. CROWLEY, CSR, RPR, CRR

# EXHIBIT 14

**(ENDORSED)**
# FILED

JAN 0 4 2006

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara

BY _____ DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

|  |  |
|---|---|
| MIRAGE SYSTEMS, INC., | Case No. 1-05-CV-039164 |
| Plaintiff, |  |
|  | ORDER RE: MOTIONS FOR |
| vs. | ADMISSION *PRO HAC VICE*/ |
|  | DEMURRERS |
| JERRY A. SPEASL, et al., |  |
| Defendants. |  |

The (1) Motion for Admission *Pro Hac Vice* of Nora Q.E. Passamaneck, Caren Khoo, Eric J. Ward, Amy L. Fici, and Catherine Corlett by plaintiff Mirage Systems, Inc.; (2) Motion for Admission *Pro Hac Vice* of Michael J. Summersgill by plaintiff Mirage Systems, Inc.; (3) Motion for Admission *Pro Hac Vice* of Jordan L. Hirsch by plaintiff Mirage Systems, Inc.; (4) Demurrer and Request for Judicial Notice by defendant St. Clair Intellectual Property Consultants, Inc.; (5) Motion for Admission *Pro Hac Vice* of Jake M. Holdreith, Becky R. Thorson, Ronald J. Schultz, Carrie M. Lambert and Annie Huang by defendant St. Clair Intellectual Property Consultants, Inc.; and (6) Demurrer to Amended and Supplemental Complaint by defendants Jerry A. Speasl, Marc K. Roberts, and Matthew A. Chikosky came on

1

1  for hearing before the Honorable Jamie Jacobs-May on January 3, 2006, at 9:00 a.m. in

2  Department 4.  The matters having been submitted, the Court orders as follows:

3

4       Plaintiff Mirage Systems, Inc.'s motion for admission *pro hac vice* of Nora Q.E.

5  Passamaneck, Caren Khoo, Eric J. Ward, Amy L. Fici, Catherine A. Corlett, Michael J.

6  Summersgill, and Jordan L. Hirsch is GRANTED.

7

8       Defendant St. Clair Intellectual Property Consultants, Inc.'s motion for admission *pro*

9  *hac vice* of Jake M. Holdreith, Becky R. Thorson, Ronald J. Schutz, Carrie M. Lambert, and

10  Annie Huang is GRANTED.

11

12      Defendant St. Clair Intellectual Property Consultants, Inc.'s request for judicial notice is

13  GRANTED, but only insofar as the court takes judicial notice of the existence of such

14  documents, not the truth of the matters asserted therein.  (*People v. Woodell* (1998) 17 Cal.4th

15  448, 455.)

16

17      Defendants Jerry A. Speasl, Marc K. Roberts, and Matthew A. Chikosky's demurrer to

18  the first through fifth and seventh through fourteenth causes of action on the ground that they fail

19  to state facts sufficient to constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)]

20  (barred by statute of limitations and/or barred by the doctrine of laches) is OVERRULED.

21  Plaintiff alleges it did not discover the misappropriation, fraud, etc. until shortly before the

22  complaint was filed and the causes of action accrue upon discovery.

23      Defendants argue that the recordation of applications and patents put plaintiff on

24  constructive notice that the invention plaintiff claims belongs to it had been misappropriated and

25  patented by these individual defendants.

26      While it is true that the issuance and recordation of patents constitutes constructive notice

27  "to the world of its existence", mere constructive notice of a patent's existence does not always

28  trigger the accrual of a claimant's cause of action.  (Frugoli v. Fougnies (Dist.. Ariz. 2003) 2003

2

1   U.S. Dist. LEXIS 26551. "The fact that the evidence would also support an inference that [a

2   plaintiff] was on constructive notice even if such an inference is stronger, is not a sufficient basis

3   for granting summary judgment...'Even if the parties' alternative interpretations were doubtful,

4   the question of what a reasonable investor would have done is not so certain as to allow a

5   determination as a matter of law.'" (*General Bedding Corporation v. Echeyarria 9th Cir. 1991*)

6   *947 F.2d 1395, 1398*).

7           Here, plaintiff contends that it was entitled to rely on the defendants' fiduciary duty to

8   disclose and assign any of their inventions to plaintiff, and for this reason, constructive notice

9   was inadequate. As Witkin points out, constructive notice is generally not a bar to actions based

10  on fraud. "[The recording acts are designed for the protection of bona fide purchasers, not

11  persons guilty of fraud." (Witkin, 5 Summary of California Law, 10th Ed., Torts, §814). For

12  these reasons, the complaint is not barred by the statute of limitations as a matter of law.

13          Defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the second,

14  sixth, thirteenth, and fourteenth causes of action on the ground that they fail to state facts

15  sufficient to constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)] (barred by the

16  statute of limitations) is OVERRULED.

17          Though  St. Clair is not a fiduciary of plaintiff, when a cause of action against a fiduciary

18  for conversion accrues upon discovery of the theft, the cause of action does not commence to run

19  against a third party purchaser of the stolen goods until discovery as well.  Even if the third party

20  has no knowledge of the fiduciary's wrongdoing, discovery triggers accrual as to them because

21  they received possession of items from one who had no legal title and therefore no right to

22  transfer the items.  (See, *Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421;

23  *Strasberg v. Odyssey Group, Inc* (1996) 51 Cal.App.4th 906).  If this is the result with bona fide

24  purchasers, certainly it must follow that a third party *with* knowledge of the wrongful conversion,

25  as alleged here, cannot claim protection by the statute of limitations.   For these reasons,

26  defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the second, sixth,

27  thirteenth, and fourteenth causes of action on the ground that they fail to state facts sufficient to

28

3

1   constitute a cause of action [Code Civ. Proc. §430.10, subd. (e)] (barred by the doctrine of

2   laches) is OVERRULED

3

4        Defendant St. Clair Intellectual Property Consultants, Inc.'s demurrer to the Amended

5   and Supplemental Complaint on the ground that three other actions are pending in the United

6   States District Court for the District of Delaware is OVERRULED.  Code of Civil Procedure

7   section 430.10, subdivision (c) allows a demurrer to be had on the ground that "there is another

8   action pending between the same parties on the same cause of action."  However, the special

9   demurrer does not lie where the action is pending in a federal court.  (Weil & Brown, CAL.

10  PRAC. GUIDE: CIV. PRO. BEFORE TRIAL (The Rutter Group 2005) ¶7:77.1, p. 7-32 citing

11  *Gregg v. Superior Court* (1987) 194 Cal.App.3d 134, 136.)  "The appropriate procedure in such

12  a case is a motion to stay or dismiss the action on ground of forum non conveniens."  (*Id.* at

13  ¶77.2, p. 7-32 citing *Leadford, supra*, 6 Cal.App.4th at p. 575; *County of Fresno v. Shelton* (1998)

14  66 Cal.App.4th 996, 1009.)

15

16  Dated:  1/3/06

17                                   Hon. Jamie Jacobs-May

                                     Judge of the Superior Court

18

19

20

21

22

23

24

25

26

27

28

                                        4

| IN THE SUPERIOR COURT OF CALIFORNIA<br>IN AND FOR THE COUNTY OF SANTA CLARA | (ENDORSED)<br>F I L E D<br>JAN 0 4 2006<br>KIRI TORRE<br>Chief Executive Officer/Clerk<br>Superior Court of CA County of Santa Clara<br>BY _____ DEPUTY |
|---|---|
| Plaintiff:    MIRAGE SYSTEMS, INC | |
| Defendant: JERRY SPEASL, et al. | |
| **PROOF OF SERVICE BY MAIL OF: ORDER RE: MOTIONS FOR ADMISSION *PRO HAC VICE* / DEMURRERS** | **Case No: 1-05-CV-039164** |

CLERK'S CERTIFICATE OF SERVICE:   I certify that I am not a party to this case and that a true copy of this document was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below and the document was mailed at SAN JOSE, CALIFORNIA on January 4, 2006.

Kiri Torre, Chief Executive Officer/Clerk

BY _____, Deputy
C. Collins

---

Gregory Storey, Esq.
80 North First Street
San Jose, CA 95113

Caroline McIntyre, Esq.
303 Almaden Blvd, Ste. 500
San Jose, CA 95110

Kenneth L. Nissly, Esq.
225 Santa Clara Street, 12th Floor
San Jose, CA 95112

Proof of service by mail
Clerk's Certificate of Service