# EXHIBIT 15

KENNETH L. NISSLY (SB# 77589)
SUSAN van KEULEN (SB# 136060)
JAMES D. MOORE (SB# 218187)
THELEN REID & PRIEST LLP
225 West Santa Clara Street, Suite 1200
San Jose, CA 95113-1723
Tel. 408.292.5800
Fax 408.287.8040

OF COUNSEL:
RONALD J. SCHUTZ (*pro hac vice*)
JAKE M. HOLDREITH (*pro hac vice*)
BECKY R. THORSON (*pro hac vice*)
CARRIE M. LAMBERT (*pro hac vice*)
ANNIE HUANG (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Ave
Minneapolis, MN 55492
Tel. 612.349.8500
Fax 612.339.4181

Attorneys for ST. CLAIR INTELLECTUAL
PROPERTY CONSULTANTS, INC.

ENDORSED

2006 JAN 17 P 4: 05

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY:
DEPUTY CLERK

M. Huerta

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| MIRAGE SYSTEMS, INC., | Case No.: 1-05-CV-039164 |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.'S MOTION TO SEVER AND TO STAY BASED ON FORUM NON CONVENIENS |
| vs. | |
| JERRY SPEASL, an individual; MARK K. ROBERTS, an individual; and MATTHEW CHIKOSKY, an individual; ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., a Michigan corporation; and JOHN DOES 1-50, inclusive, | |
| Defendants. | Date: February 16, 2006<br>Time: 9:00 a.m.<br>Judge: Hon. Joseph Huber<br>Dept.: 8<br><br>Date Action Filed: April 12, 2005<br>Date Set for Trial: Unknown |

MP3 20164406.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  PROCEDURAL BACKGROUND ..................................................................................... 2

III. SUMMARY OF THE FACTS ........................................................................................... 2

IV.  LEGAL ARGUMENT ........................................................................................................ 5

    A.   ST. CLAIR SHOULD BE SEVERED FROM THIS ACTION TO AVOID
        CONFUSION AND PREJUDICE TO ST. CLAIR ................................................ 5

    B.   IN THE INTEREST OF SUBSTANTIAL JUSTICE, THE CAUSES OF ACTION
        AGAINST ST. CLAIR SHOULD BE STAYED PENDING THE RESOLUTION
        OF THE OWNERSHIP ISSUE IN THE U.S. DISTRICT COURT FOR THE
        DISTRICT OF DELAWARE BASED ON FORUM NON CONVENIENS
        GROUNDS ................................................................................................................ 7

        1.   The District of Delaware is a Suitable Alternative Forum to Resolve the
            Ownership Dispute ...................................................................................... 8

        2.   The Balance of Relevant Factors Weighs in Favor of the District of
            Delaware ........................................................................................................ 9

        3.   This Action against St. Clair should be Stayed to Avoid the Possibility of
            Conflicting Judgments ............................................................................... 11

V.   CONCLUSION .................................................................................................................. 12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ST. CLAIR'S
MOTION TO SEVER AND STAY BASED ON FORUM NON CONVENIENS**

1

2

3

# TABLE OF AUTHORITIES

Page

**Cases**

4

5

*Berg v. MTC Elecs. Techs. Co.,*
61 Cal. App. 4th 349 (Cal. Ct. App. 1998) ........................................................ 11

6

7

*Caiafa Prof'l Law Corp. v. State Farm Fire & Cas. Co.,*
15 Cal. App. 4th 800 (Cal. Ct. App.1993) ......................................................... 12

8

*Caldwell v. Regents of Univ. of Cal.,*
35 Cal. App. 639 (Cal. 1917) ................................................................................. 5

9

10

*Campbell v. Parker-Hannifin Corp.,*
69 Cal. App. 4th 1534 (Cal. Ct. App. 1999) ....................................................... 8

11

12

*City of Oakland v. Darbee,*
102 Cal. App. 2d 493 (Cal. Ct. App. 1951) ......................................................... 6

13

*Dendy v. MGM Grand Hotels, Inc.,*
137 Cal. App. 3d 457 (Cal. 1982) ......................................................................... 11

14

15

*Finley v. Superior Court,*
80 Cal. App. 4th 1152 (Cal. Ct. App. 2000) ....................................................... 6

16

17

*In re Marriage of Taschen,*
134 Cal. App. 4th 681 (Cal. Ct. App. 2005) ............................................... 7, 8, 9

18

*In re Marriage of Tucker,*
226 Cal. App. 3d 1249 (Cal. Ct. App. 1991) ....................................................... 7

19

20

*Landau v. Salam,*
4 Cal. 3d 901 (Cal. 1971) ....................................................................................... 6

21

22

*Litmon v. Superior Court,*
123 Cal. App. 4th 1156 (Cal. Ct. App. 2004) ..................................................... 5

23

*Omaha Indem. Co. v. Superior Court,*
209 Cal. App. 3d 1266 (Cal. Ct. App. 1989) ....................................................... 6

24

25

*Rinauro v. Honda Motor Co., Ltd.,*
31 Cal. App. 4th 506 (Cal. Ct. App. 1995) ......................................................... 9

26

*Roy v. Superior Court,*
127 Cal. App. 4th 337 (Cal. Ct. App. 2005) ....................................................... 7

27

28

*Stangvik v. Shiley Inc.,*
54 Cal. 3d 744 (Cal. 1991) ............................................................................... 7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ST. CLAIR'S
MOTION TO SEVER AND STAY BASED ON FORUM NON CONVENIENS**

1

*Stencel Aero Eng'g Corp. v. Superior Court of San Francisco,*
    56 Cal. App. 3d 978 (Cal. Ct. App. 1976) .................................................. 5

2

*Thomson v. Continental Ins. Co.,*
    66 Cal. 2d 738 (Cal. 1967) ............................................................................ 11

3

4

## Statutes

5

6

35 U.S.C. § 261 ......................................................................................... 5, 12

7

CAL. CODE CIV. PROC. § 1048(b) ............................................................ 5

8

CAL. CODE CIV. PROC. § 410.30 ............................................................... 7

9

CAL. CODE CIV. PROC. § 418.10 ............................................................... 7

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ST. CLAIR'S MOTION TO SEVER
DEFENDANT ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS AND TO STAY PROCEEDINGS

# I.    INTRODUCTION

Plaintiff Mirage Systems, Inc.'s ("Mirage's") causes of action against Defendant St. Clair Intellectual Property Consultants, Inc. ("St. Clair") should be severed from the action against the individually named defendants ("Inventor Defendants") to avoid confusion and prejudice to St. Clair.  Indeed, this Court has acknowledged that St. Clair is not a fiduciary with respect to Mirage and stands in a different position than the Inventor Defendants.  Concurrently, the causes of action against St. Clair should also be stayed because California is an inconvenient forum to adjudicate ownership of the patents-in-suit.[1]  The Honorable Joseph J. Farnan, Jr. in U.S. District Court for the District of Delaware has presided over the patent ownership issue since July 2004 and Judge Farnan has analyzed the issues, ruled upon briefs, and presided over trials involving the patents-in-suit since August 2001.

The issue of St. Clair's ownership of the patents-in-suit is presently before Judge Farnan in two separate patent infringement actions filed by St. Clair in February 2003 (No. 03-CV-241-JJF) and November 2004 (No. 04-CV-1436-JJF), and in a declaratory judgment action based on ownership (No. 05-CV-273-JJF).  Mirage and Eastman Kodak Company ("Kodak"), the apparent successor-in-interest to Mirage, have appeared in those actions to assert their alleged rights to the patents-in-suit.  About a year before Mirage initiated this action, Mirage entered into a Consulting Agreement and Covenant Not to Sue ("Consulting Agreement") with Canon, a defendant in the *St. Clair v. Canon* litigation in Delaware, and chose to bring its ownership claim as a third party aligned with Canon.  Through this conduct, Mirage consented to litigate ownership of the patents-in-suit in Delaware.  In the *St. Clair v. Canon* litigation, Mirage asserted its ownership claims through several sworn declarations.  Two of Mirage's principals, George J. Moussally and Kenneth L. Ford, traveled to Delaware to testify in the *St. Clair v. Canon* trial.  All of the Delaware cases involving the patents have been assigned to Judge Farnan, who since August 2001 has become familiar with the patents and ownership issues currently before this Court.

---

[1]    The "patents-in-suit" are U.S. Patent Nos. 5,138,459 (the "'459 patent"), 5,576,757 (the "'757 patent"), 6,094,219 (the "'219 patent"), 6,233,010 ("the '010 patent"), 6,323,899 (the "'899 patent"), and 6,496,222 (the "'222 patent").  (Am. Compl. ¶ 2; Cross-Compl. ¶ 1.)  All the listed patents are continuations of the patent application that matured into the '459 patent.

MP3 201164406.1                                                              1

1  St. Clair therefore requests that this Court sever and stay the causes of action against St. Clair

2  pending the outcome of litigation in Delaware.

3  ## II.    PROCEDURAL BACKGROUND

4      Mirage filed its Complaint in this action on April 12, 2005. All defendants, except for

5  Marc K. Roberts, were served shortly thereafter. In response to Mirage's Complaint, St. Clair

6  filed a demurrer on May 12, 2005. On the same day, Defendant Jerry Speasl also filed a

7  demurrer. On June 15, 2005, in addition to opposing the demurrers, Mirage filed its Amended

8  and Supplemental Complaint ("Amended Complaint") alleging fourteen causes of action. Of

9  those fourteen, only four are directed at St. Clair: (1) declaratory judgment of ownership and

10  quiet title, (2) conversion, (3) unfair competition, and (4) unjust enrichment.

11      On June 25, 2005, Mirage served Defendant Marc Roberts with the Amended Complaint.

12  On July 15, 2005, all the defendants removed the case to federal court. Basing its decision on the

13  rule that removal must be exercised within 30 days of the first-served defendant, rather than the

14  last-served defendant, the federal court remanded the case to this Court on October 19, 2005.

15      On December 1, 2005, St. Clair filed a demurrer to Mirage's Amended Complaint on

16  grounds of statute of limitations and laches. In the alternative, St. Clair also requested in its

17  demurrer that the Court dismiss or stay this action in favor of pending actions in Delaware. The

18  Inventor Defendants also filed a demurrer to Mirage's Amended Complaint on December 1,

19  2005. On January 3, 2006, the Court held a hearing and overruled St. Clair's and the Inventor

20  Defendants' demurrers. In declining to grant St. Clair's alternative request, however, the Court

21  stated the proper procedure for such a request is through a motion for a stay on the ground of

22  forum non conveniens. (Moore Decl., Exs. A-B.)[2]

23  ## III.    SUMMARY OF THE FACTS

24      Plaintiff Mirage, and now apparently Kodak, claims an ownership interest in patents

25  relating to, among other things, digital cameras with multiple file formats. All the rights to these

26  patents, however, were properly assigned to St. Clair over a decade ago. Indeed, on November 1,

27

28  [2]    All exhibits cited herein are attached to the Declaration of James D. Moore in Support of
St. Clair's Motion to Sever and Stay Based on Forum Non Conveniens ("Moore Decl.").

1    1995, St. Clair purchased the '459 patent and all related patents, applications, reissues, and

2    reexaminations, which includes all the patents-in-suit, from the company formed by the inventors,

3    Personal Computer Cameras, Inc. ("PCC"). (Cross-Compl. ¶ 38; Moore Decl., Exs. C-D.)  On

4    January 16, 1996, St. Clair recorded PCC's assignment of the '459 patent and its progeny to St.

5    Clair with the U.S. Patent and Trademark Office.  (Cross Compl. ¶ 42; Moore Decl., Exs. E-F.)

6    While Mirage (and now Kodak) allege that employment agreements with the inventors assigned

7    the invention to Mirage, to date neither Mirage nor Kodak have recorded any interest the U.S.

8    Patent and Trademark Office.

9          Mirage's action in California state court follows several lawsuits St. Clair filed in the U.S.

10   District Court for the District Court of Delaware to enforce its patents rights:

11          (1) August 14, 2001:  *St. Clair v. Sony, et al.*, No. 01-CV-557-JJF;

12          (2) February 28, 2003:  *St. Clair v. Canon, et al.*, No. 03-CV-241-JJF; and

13          (3) November 9, 2004:  *St. Clair v. Samsung, et al.*, No. 04-CV-1436-JJF;[3]

14   (Cross Compl. ¶ 44.)   In enforcing its patent rights, St. Clair has received the following damage

15   awards:

16          (1) $25,000,000.00 on February 25, 2003 in *St. Clair v. Sony, et al.*;

17          (2) $34,716,482.49 on October 8, 2004 against Canon in *St. Clair v. Canon, et al.*; and

18          (3) $3,003,465.00 on October 25, 2004 against Fuji in *St. Clair v. Canon, et al.*

19   (Cross Compl. ¶ 47, Moore Decl., Exs. G-I.)  St. Clair has also licensed its patents to many of the

20   largest manufacturers of digital cameras in the world including:  (1) Sony Corporation; (2) Nikon

21   Corporation; (3) Minolta Co., Ltd.; (4) Olympus Optical Co., Ltd.; (5) Seiko Epson Corporation;

22   (6) Casio Computer Co.; (7) Kyocera Corporation; (8) Pentax Corporation; and (9) Samsung

23   Techwin Co. Ltd.  (Cross Compl. ¶ 13.)

24          Although Mirage asserts that it first learned of the patents-in-suit in November 2003

25   during discovery in the *St. Clair v. Canon* case,[4] Mirage chose not to contact St. Clair, the record

26   _____

27   [3]      Kodak is one of the defendants in the *St. Clair v. Samsung, et al.* litigation.

[4]      St. Clair alleges that Mirage and/or its officers knew of the '459 patent and the patented

28   technology long before November 2003.  (Cross Compl. ¶¶ 23-26.)

1   titleholder, to claim ownership of the patents-in-suit. (Am. Compl. ¶ 127.) In fact, instead of

2   publicly asserting any alleged rights to the patents, Mirage worked behind the scenes with Canon

3   under the auspices of a secret Consulting Agreement and Covenant Not to Sue ("Consulting

4   Agreement"). (Am. Compl. ¶ 129; Moore Decl., Ex. J.) In exchange for a $75,000 lump-sum

5   payment and additional payments, Mirage agreed to cooperate and assist Canon in defending its

6   litigation and to testify against St. Clair at trial. (Am. Compl. ¶ 129; Cross-Compl. ¶¶ 48-49,

7   Moore Decl., Ex. J.) Under the terms of the Consulting Agreement, Canon has paid Mirage at

8   least $167,693.97. (Cross-Compl. ¶ 50.)

9          St. Clair learned of the Consulting Agreement for the first time in the middle of trial

10  against Canon on September 30, 2004. (*Id.* ¶ 53.) At the time, two of Mirage's principals,

11  George J. Moussally and Kenneth L. Ford, were in the courtroom ready to testify on behalf of

12  Canon. Because of the surprise disclosure of the Consulting Agreement, Judge Farnan severed

13  Canon's ownership defense from the trial and initiated proceedings with a Special Master to

14  determine whether Canon timely produced the Consulting Agreement to St. Clair and, if not, what

15  sanctions should be recommended. (*Id.* ¶¶ 53, 55.) Mirage was an active participant in the

16  proceedings before the Special Master. (*Id.* ¶ 55.) On November 18, 2005, the Special Master

17  issued his Report and Recommendations, which recommended several sanctions against Canon and

18  its attorneys. In the report, the Special Master made specific mention of the "obviously

19  questionable ethical propriety" of the substantial payments from Canon to Mirage. (*Id.* ¶ 56; Moore

20  Decl., Ex. K.)

21         During the Special Master's investigation into the Consulting Agreement, Mirage

22  apparently sold any alleged rights it had in the patents to Kodak. Mirage alleges that Kodak

23  purchased Mirage's rights to the patents through an asset purchase agreement on June 10, 2005

24  and became Mirage's successor-in-interest. (Am. Compl. ¶¶ 14-16.) Soon after selling its

25  alleged rights, Kodak moved to be substituted in *St. Clair v. Mirage, et al.*, No. 05-CV-273-JJF,

26  in the District of Delaware, which was granted by the Court.[5] (Moore Decl., Ex. L.)

27  _____
     [5]      The defendants in the *St. Clair v. Mirage* litigation in Delaware are Mirage, George J.
28  Moussally, Kenneth L. Ford, and Kodak. On June 21, 2005, the defendants in *St. Clair v.
     Mirage*, moved to dismiss, or, in the alternative, to stay this Delaware action. The Court has not

1    Mirage also moved to substitute Kodak into this action after Mirage allegedly sold its

2    claimed rights to the patents-in-suit to Kodak. St. Clair's stipulation, however, requested

3    production of the asset purchase agreement to understand the nature and extent of Kodak's true

4    interest before St. Clair could agree to substitution of Kodak for Mirage. During the hearing on

5    January 3, 2006, the Court agreed that St. Clair is entitled to receive the asset purchase agreement

6    and directed Mirage to produce it to St. Clair so the parties could discuss an appropriate

7    stipulation for substitution. (Moore Decl., Ex. A at 18:26-29.) Since the hearing, St. Clair has

8    sent two letters to Mirage's counsel requesting the agreement. (Moore Decl., Exs. M-N.) Mirage

9    finally produced the agreement hours before the filing of this motion.

10                              **IV.   LEGAL ARGUMENT**

11   **A.    ST. CLAIR SHOULD BE SEVERED FROM THIS ACTION TO AVOID**
12   **       CONFUSION AND PREJUDICE TO ST. CLAIR.**

13                  Mirage's claims against St. Clair and St. Clair's defenses to these claims are legally and

14   factually distinct from the claims against the Inventor Defendants and should be severed to avoid

15   confusion and prejudice to St. Clair. California courts have long held that granting separate trials

16   between a plaintiff and separate defendants is well within a court's sound discretion. *Caldwell v.*

17   *Regents of Univ. of Cal.*, 35 Cal. App. 639, 640 (Cal. 1917); *see Litmon v. Superior Court*, 123

18   Cal. App. 4th 1156, 1177 (Cal. Ct. App. 2004). This discretion is also conferred by statute,

19   stating that a court may order separate trials on any cause of action if doing so would further

20   convenience, avoid prejudice, expedite, improve economy or further the interests of justice. CAL.

21   CODE CIV. PROC. § 1048(b).

22                  Severing an action is particularly favored when doing so would avoid or minimize

23   prejudice to a defendant. *See Stencel Aero Eng'g Corp. v. Superior Court of San Francisco*, 56

24   Cal. App. 3d 978, 988 (Cal. Ct. App. 1976) (noting prejudice resulting from requiring a

25   decedent's personal representative to associate $10 million punitive-damages claim with $200

26   property-damages claim). The four causes of action asserted against St. Clair are legally and

27   _____

28   ruled on this motion. No pending litigation involving the ownership dispute in Delaware has
     been stayed.

MP3 20164406.1                              - 5 -

1   factually distinct from the ten causes of action asserted against the Inventor Defendants. Even

2   where any claims overlap, St. Clair's defenses are legally and factually distinct. As just one

3   example, the Patent Recording Statute, 35 U.S.C. § 261, bars Mirage's claims against St. Clair.

4   Here, an undivided presentation of all claims and defenses would be inconvenient and would

5   likely cause unfair prejudice to St. Clair. For example, Mirage's causes of action against the

6   Inventor Defendants center around Mirage's allegations that the Inventor Defendants had a

7   fiduciary duty to Mirage through employment agreements. In contrast, St. Clair has never had a

8   fiduciary relationship with Mirage. St. Clair has also never been a party to the employment

9   agreements. Indeed, in ruling on St. Clair's and the Inventor Defendants' demurrers, this Court

10  expressed that it had a "tougher time with St. Clair" and acknowledged that "St. Clair is not a

11  fiduciary" to Mirage and is therefore in a different position. (Moore Decl., Ex. A at 8:4, 11:25-

12  26; Ex. B at 3.) As illustrated by its earlier motion practice on defendants' demurrers, Mirage can

13  too easily blur the distinction between St. Clair and the Inventor Defendants to create prejudicial

14  confusion against St. Clair. Severance is necessary to prevent prejudicial factual arguments that

15  are completely irrelevant to any of the allegations against St. Clair. Therefore, only severance

16  will avoid confusion and prejudice to St. Clair.

17      The severing of parties under Section 1048 is a proper remedy where the joinder of

18  defendants "works inconvenience to a particular defendant," as it does here against St. Clair. *See*

19  *Landau v. Salam*, 4 Cal. 3d 901, 908 (Cal. 1971); *see also Omaha Indem. Co. v. Superior Court*,

20  209 Cal. App. 3d 1266 (Cal. Ct. App. 1989). Granting a motion to sever is also particularly

21  appropriate where, as here, a severance request is coupled with a motion that another court should

22  consider the instant issues "based upon the ground of convenience of the parties." *See City of*

23  *Oakland v. Darbee*, 102 Cal. App. 2d 493, 504 (Cal. Ct. App. 1951) (affirming severance where

24  court transferred matters to another court); *see also Finley v. Superior Court*, 80 Cal. App. 4th

25  1152, 1162-64 (Cal. Ct. App. 2000) (affirming severance of affirmative defense where coupling

26  that defense with case's other issues would have required substantial additional discovery).

27  Because the basis of Mirage's claims against St. Clair are different from the Inventor Defendants,

28  and because St. Clair does not share the alleged fiduciary duties of the Inventor Defendants and

1   has distinct defenses, Mirage should not be allowed to confuse the issues between the defendants.

2   Only a severance will ensure that St. Clair is not prejudiced by Mirage's attempts to blur the legal

3   and factual distinctions between St. Clair and the Inventor Defendants.

4   **B.    IN THE INTEREST OF SUBSTANTIAL JUSTICE, THE CAUSES OF ACTION**

5   **AGAINST ST. CLAIR SHOULD BE STAYED PENDING THE RESOLUTION OF**
    **THE OWNERSHIP ISSUE IN THE U.S. DISTRICT COURT FOR THE DISTRICT**

6   **OF DELAWARE BASED ON FORUM NON CONVENIENS GROUNDS.**

7           While this Court may have overruled St. Clair's demurrer, it also declined St. Clair's

8   alternative request to dismiss or stay the case, suggesting instead that the proper procedural

9   mechanism is a motion for a stay on the ground of forum non conveniens. (Moore Decl., Ex. A at

10  16:2-8; Ex. B at 4.) A California court may, in its discretion, choose to refrain from exercising its

11  jurisdiction for cases more appropriately tried elsewhere. *In re Marriage of Taschen*, 134 Cal.

12  App. 4th 681, 686-87 (Cal. Ct. App. 2005) (citing *Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 751

13  (Cal. 1991)); *see* CAL. CODE CIV. PROC. §§ 410.30 (codifying principle of forum non conveniens)

14  and 418.10 (permitting motion to stay on ground of inconvenient forum). Motions for forum non

15  conveniens are governed by statute. *See In re Marriage of Taschen*, 134 Cal. App. 4th at 687.

16  Section 410.30 provides that when a district court finds that, in the interest of substantial justice,

17  an action should be heard in another forum, "the court shall stay or dismiss the action in whole or

18  in part on any conditions that may be just." CAL. CODE CIV. PROC. § 410.30. Section 418.10

19  similarly states that a defendant may file a motion to stay or dismiss an action on the ground of

20  inconvenient forum. CAL. CODE CIV. PROC. § 418.10. The language of these sections has been

21  found to be concordant. *In re Marriage of Taschen*, 134 Cal. App. 4th at 692 (noting that

22  "[e]very provision of section 418.10 is fully compatible with our plain-language construction of

23  section 410.30").[6]

24

25

---

26  [6]      A party may make a motion under Section 418.10 and, as St. Clair has done here,
    simultaneously file an answer containing affirmative defenses. *Roy v. Superior Court*, 127 Cal.

27  App. 4th 337, 342-43 (Cal. Ct. App. 2005); *see In re Marriage of Tucker*, 226 Cal. App. 3d 1249,
    1259 (Cal. Ct. App. 1991) (noting that under both state and federal law, a party need not raise

28  forum non conveniens defenses prior to filing responsive pleadings).

1    Litigating the ownership issue in California is a significant inconvenience because the

2    ownership issue has been before Judge Farnan in the U.S. District Court for the District of

3    Delaware since July 2004 and because Judge Farnan has been very familiar with the patents-in-

4    suit and the relevant multiple file format digital camera technology since St. Clair's first patent

5    infringement lawsuit against Sony in August 2001. In the interests of justice and sound judicial

6    administration, and to avoid the possibility of conflicting judgments, this Court should exercise

7    its discretion and refrain from asserting its jurisdiction over the causes of action against St. Clair

8    and allow Judge Farnan to resolve the ownership issue in Delaware. Indeed, this Court

9    recognizes that courts "don't like to have two cases going at the same time that cover the same

10   subject matter," which is what would happen if this action against St. Clair is not stayed. (Moore

11   Decl., Ex. A at 20:5-7.)

12   **1.    The District of Delaware is a Suitable Alternative Forum to Resolve the
13   Ownership Dispute.**

14   A two-step analysis is required for a court to grant a motion for forum non conveniens.

15   Initially, the court must determine whether a suitable alternative forum exists outside California.

16   *Taschen*, 134 Cal. App. 4th at 690. This initial step constitutes the principal evidentiary showing.

17   *Campbell v. Parker-Hannifin Corp.*, 69 Cal. App. 4th 1534, 1542 (Cal. Ct. App. 1999). A court

18   should not give any weight to the fact that an alternative jurisdiction's law may be less favorable

19   to a litigant than the law of the forum; rather, the alternative forum must merely afford *some*

20   remedy. *Stangvik v. Shiley, Inc.*, 54 Cal. 3d 744, 753 (Cal. 1991).

21   The U.S. District Court for the District of Delaware is a suitable alternative forum to

22   resolve the ownership issue between Mirage/Kodak and St. Clair. Currently, there are three

23   pending cases before Judge Farnan that contain issues regarding ownership of the patents-in-suit.

24   When Mirage first elected to publicly assert its alleged ownership claim in the patents-in-suit, it

25   did so in the District of Delaware. Mirage spent several months negotiating the Consulting

26   Agreement with Canon, and then collaborated, as a third party, with Canon on Canon's Motion to

27   Dismiss for Lack Standing in Delaware. For example, Mirage principals George J. Moussally

28   and Kenneth L. Ford crafted lengthy declarations in support of Canon's Motion to Dismiss.

MP3 20164406.1                                    - 8 -

1  Through its voluntary actions back in 2004, Mirage consented to allow the District Court in

2  Delaware to decide the ownership issue and therefore must concede the District of Delaware

3  clearly affords Mirage a remedy.

4        Significant judicial resources have been dedicated to analyzing the very issues Mirage

5  now puts forth before this Court in its claims against St. Clair. Ownership is an issue in three

6  pending cases before Judge Farnan. Since the Sony case was filed in 2001, Judge Farnan has

7  issued two claims construction orders and presided over three trials. His extensive knowledge of

8  the technology relating to the patents-in-suit places him in a much better position to determine

9  whether the invention relates to Mirage's business. The District of Delaware is therefore a

10  suitable alternative forum, and staying this case pending the resolution of those matters would

11  result in an efficient use of judicial resources.

12      **2.**     **The Balance of Relevant Factors Weighs in Favor of the District of Delaware.**

13        Because a suitable alternative forum exists, the second step in the forum non conveniens

14  analysis is a court must consider the litigants' private interest, as well as the public's interest, in

15  retaining the action in California. *Taschen*, 134 Cal. App. 4th at 690. Private-interest factors

16  include (1) making trial and judgment-enforceability expeditious and relatively inexpensive,

17  (2) access to sources of proof, (3) cost of obtaining attendance of witnesses, and (4) availability of

18  compulsory process for attendance of unwilling witnesses. *Id.* Public-interest factors include

19  (1) avoiding overburdening local courts with congested calendars, (2) ensuring that potential

20  jurors are not asked to decide cases in which the local community has little concern, and

21  (3) weighing California's interests with those of the alternate jurisdiction. *Id.* at 690-91. No one

22  factor should determine the outcome; instead, a court should carefully balance all relevant factors

23  in exercising its discretion. *Rinauro v. Honda Motor Co., Ltd.,*, 31 Cal. App. 4th 506, 510 (Cal

24  Ct. App. 1995).

25        The private-interest factors support staying the causes of action against St. Clair in favor

26  of the District of Delaware. Mirage has demonstrated that it is prepared to provide access to

27  proof in the District of Delaware. When the trial began against Canon in *St. Clair v. Canon* in

28  Delaware on September 27, 2004, Canon was ready to put on its ownership defense because of

1    the cooperation and assistance provided by Mirage. Mirage's principals, George J. Moussally

2    and Kenneth L. Ford, were in Delaware and prepared to testify for Canon. Mirage also provided

3    any proof it needed to support its ownership claim through documents it produced and

4    declarations submitted from five of Mirage's current or former principals detailing Mirage's

5    alleged ownership claim. The only reason the ownership defense did not go forward in the Canon

6    trial was because of the concealment of the Consulting Agreement. After over one year in a

7    proceeding before a Special Master, the Special Master has recommended that Canon's

8    ownership defense be stricken due to the concealment of Mirage's agreement with Canon, but

9    allowed the defense to go forward for co-defendant Fuji. Prior to the severance of the ownership

10   defense, Fuji was also prepared to go forward with the ownership defense.

11          Moreover, Mirage has no legitimate cost concerns with respect to litigating the ownership

12   dispute in Delaware. Mirage's principals, George J. Moussally and Kenneth L. Ford, traveled to

13   Delaware to have Mirage's ownership challenge be determined by Judge Farnan. As the apparent

14   owner of the patents-in-suit, Kodak has even fewer cost concerns about litigating its ownership

15   claim in Delaware. Indeed, Kodak has already made appearances in Delaware in the *St. Clair v.*

16   *Samsung* patent infringement action and Kodak substituted itself for Mirage in *St. Clair v.*

17   *Mirage.* Kodak is a New Jersey corporation with its lead attorneys from Boston, New York City,

18   and Rochester, New York, making the litigation of the ownership dispute in Delaware actually

19   more cost effective and convenient for Kodak, the alleged real party-in-interest.

20          Likewise, the public-interest factors also support the stay of the causes of action against

21   St. Clair in favor of the District of Delaware. This Court should never have been burdened with

22   the ownership dispute between Mirage and St. Clair because Mirage first chose to litigate

23   ownership by cooperating with Canon in Delaware. Mirage, however, apparently decided it no

24   longer wanted Judge Farnan to decide the ownership dispute after Judge Farnan denied Canon's

25   Motion to Dismiss and a jury awarded St. Clair a $34.7 million verdict against Canon. After

26   Canon's motion was denied, and the Special Master proceeding over the Mirage/Canon

27   Consulting Agreement was initiated, Mirage filed this action in California. This created the

28   possibility of conflicting outcomes and is harassing to St. Clair by forcing St. Clair to defend the

MP3 20164406.1                                    - 10 -

1   ownership claim in California. Since 2001, Judge Farnan and the District of Delaware have

2   already expended substantial resources by presiding over three trials in which three juries have

3   rendered verdicts regarding the patents-in-suit. The District of Delaware will also expend

4   additional resources in the three pending lawsuits involving the ownership dispute. Therefore, the

5   public-interest factors support resolving St. Clair's ownership of the patents-in-suit in the District

6   of Delaware.

7          **3.     This Action against St. Clair should be Stayed to Avoid the Possibility of
           Conflicting Judgments.**
8

9          Sound judicial administration weighs heavily in favor of a stay pending resolution of the

10  ownership dispute in Delaware. In determining whether to stay an action, a court should look at

11  whether other suits considering the same or similar issues are already underway in another forum.

12  *See Dendy v. MGM Grand Hotels, Inc.*, 137 Cal. App. 3d 457, 462 (Cal. 1982) (approving of

13  California court's grant of stay because numerous other suits from same fire were already

14  underway in foreign jurisdiction). In this case, the Court should consider that over the last four

15  years, Judge Farnan has presided over or is currently presiding over four lawsuits and three trials

16  regarding these very patents. By staying these actions, rather than dismissing them, this Court

17  would continue to retain jurisdiction to decide additional issues, if necessary. *See Dendy*, 137

18  Cal. App. 3d at 463 (noting that district court expressly retained jurisdiction on damages issue, if

19  needed).

20         In particular, the decided and pending cases before Judge Farnan are complex and well-

21  developed; both are factors that weigh in favor of granting a stay. *See Berg v. MTC Elecs. Techs.*

22  *Co.*, 61 Cal. App. 4th 349, 363 (Cal. Ct. App. 1998) (affirming stay in well-developed securities

23  case in federal court). California courts should discourage multiple litigation of "substantially

24  identical" actions that may result in "unseemly conflict between federal and state courts, and

25  cause the potential for conflicting rulings." *Thomson v. Continental Ins. Co.*, 66 Cal. 2d 738, 747

26  (Cal. 1967) (citations and footnotes omitted) (reversing dismissal but noting that state court has

27  discretion to stay when substantially identical suit is pending in federal court); *see Berg*, 61 Cal.

28  App. 4th at 357. This is especially true where the alternative jurisdiction would best decide the

1  matter "because of the nature of the subject matter, the availability of witnesses, or the stage to

2  which the proceedings in the other court have already advanced." *Thomson*, 66 Cal. 2d at 747

3  (citations and footnotes omitted).

4         Avoiding an "unseemly conflict" with a federal court is especially appropriate where

5  state-court issues are a mere subset of broader issues currently being decided by a federal court.

6  *See Caiafa Prof'l Law Corp. v. State Farm Fire & Cas. Co.*, 15 Cal. App. 4th 800, 807 (Cal. Ct.

7  App.1993) (affirming stay where state-court consideration of *Cumis* fees was single issue in

8  broader federal RICO action). Here, the nature of the wider intellectual-property dispute favors

9  consideration in a federal court that has exclusive jurisdiction over patent matters, including St.

10  Clair's defense based on the Patent Recording Statute, 35 U.S.C. § 261. Further, staying the

11  matter is also favored where, as here, the alternative court is deeply familiar with the patents,

12  parties, and issues at hand—resulting in a more efficient use of judicial resources.

13         A stay pending resolution of the ownership issue in the Delaware will not only avoid of

14  the possibility of conflicting judgments, it would also reduce the number of causes of action in

15  this litigation. If Judge Farnan were to determine that St. Clair is the owner of the patents-in-suit,

16  then this Court would only have to resolve any remaining breach of contract claims against the

17  Inventor Defendants. Therefore, the interests of judicial economy and the convenience

18  considerations for resolving the ownership dispute weigh in favor of staying the action against St.

19  Clair in favor of litigation in Delaware.

20                          **V.    CONCLUSION**

21         For the foregoing reasons, St. Clair respectfully requests that the causes of action against

22  St. Clair be separated and that the Court stay these proceedings pending resolution of the

23  ownership issue in Delaware.

24

25

26

27

28

1   Dated:  January 17, 2006.

2                                              THELEN REID & PRIEST LLP

3                                              By

4                                                  KENNETH L. NISSLY
                                                   SUSAN van KEULEN
5                                                  JAMES D. MOORE

6                                                  Attorneys for Defendant
7                                                  ST. CLAIR INTELLECTUAL
                                                   PROPERTY CONSULTANTS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MP3 20164406.1

- 13 -

# EXHIBIT 16



ROBINS, KAPLAN, MILLER & CIRESI

ATTORNEYS AT LAW

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

RONALD J. SCHUTZ
612-349-8435
RJSchutz@rkmc.com

January 4, 2006

**VIA FACSIMILE**

Mr. Eric J. Ward
Ward Norris Heller & Reidy LLP
300 State Street
Rochester, New York 14614

Re:    St. Clair v. Mirage
Our File: 121865.0012

Dear Eric:

Following up on the Judge's comments and our conversation after the hearing, would you please send us all of the deal documents relating to the transaction between Kodak and Mirage.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Ronald J. Schutz

RJS/ll

# EXHIBIT 17

**ROBINS, KAPLAN, MILLER & CIRESI** LLP

ATTORNEYS AT LAW

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

RONALD J. SCHUTZ
612-349-8435
RJSchutz@rkmc.com

January 13, 2006

**VIA FACSIMILE**

Mr. Eric J. Ward
Ward Norris Heller & Reidy LLP
300 State Street
Rochester, New York 14614

Re:    *Mirage v. St. Clair*
Our File:  121865.0012

Dear Eric:

I am writing to follow up on my January 4, 2006 letter to you requesting all of the deal documents relating to the transaction between Kodak and Mirage. I reviewed the transcript of the hearing on January 3, 2006. The Court made it clear that Kodak must turn over all of the documents relating to the Kodak-Mirage transaction when it stated "[t]hey're entitled to the papers anyway; give it to them." 1/3/06 Hearing Transcript at 19. We view this as a direct order from the Court. Please produce these documents immediately.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Ronald J. Schutz

cc:    Michael J. Summersgill, Esq.
Caroline McIntyre, Esq.

MP3 20164319.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

# EXHIBIT 18

ROBINS KAPLAN MILLER & CIRESI LLP

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 Fax: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

RONALD J. SCHUTZ
612-349-8435
RJSchutz@rkmc.com

January 24, 2006

**VIA FACSIMILE**

Mr. Eric J. Ward, Esq.
Ward Norris Heller & Reidy LLP
300 State Street
Rochester, New York 14614

Re:     *St. Clair v. Samsung, et al.*
        Case No. 04-CV-1436-JJF
        Our File: 121865.0011

        *Mirage Systems, Inc. v. Speasl, et al.*
        Case No. 1-05-CV-039164
        Our File: 121865.0012

Dear Eric:

I write in response to your letter dated January 13, 2006, which discusses Kodak's production of its Asset Purchase Agreement. St. Clair will maintain the confidentiality as requested until a protective order is entered into or there is some other agreement in place. To note, this approach is consistent with the Delaware Local Rule 26.2.

To the extent your production of the Asset Purchase Agreement is further "conditioned" on the <u>use</u> of the agreement in the California action only, we disagree. As you know, it is St. Clair's position that resolution and discovery of the ownership dispute should move forward in Delaware and that the claims against St. Clair in California stayed. The Asset Purchase Agreement you finally provided is responsive to outstanding discovery in the *St. Clair v. Samsung* matter and we are entitled to use it in other litigation involving the Roberts patents.

We should further discuss what materials you are referring to in your new request for "transcripts, declarations and any documents." Even though there was no pending document request in the *St. Clair v. Samsung* case, as a courtesy, we provided you with copies of numerous declarations back in July 2004. Further, we offered Kodak the opportunity to inspect St. Clair's initial disclosure documents over seven months ago. *See* St. Clair's Initial Disclosures Pursuant to Rule 26(a)(1) in the *St. Clair v. Samsung* litigation dated June 3, 2005. Perhaps the next step

Ward, Eric J.
 January 24, 2006
Page 2


is for Kodak to set forth its January 13th request in the form of written discovery requests in the *St. Clair v. Samsung* case. Of course, please understand, St. Clair cannot disclose documents that contain confidential information of third parties without the permission of the third party or a court order allowing such disclosure.

St. Clair has repeatedly demanded Kodak's production of the Asset Purchase Agreement and other deal documents. Finally, after months of stonewalling, Judge Jacobs-May directed Kodak to produce the Asset Purchase Agreement immediately to facilitate processing Kodak's substitution in the California action. Your belated production of this agreement (which is the direct subject of our discovery in Delaware) was not part of any agreed upon document production from St. Clair in the California case. It is our position that the case should be severed and stayed and the ownership issue should proceed on an expedited basis in Delaware.


Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


Ronald J. Schutz

RJS/ll

cc:    Kenneth L. Nissly, Esq.
       Lani R. Miller, Esq.
       Michael J. Summersgill, Esq.
       Caroline McIntyre, Esq.


MP3 20164852.1

# EXHIBIT 19

# WARD NORRIS HELLER & REIDY LLP

### ATTORNEYS AT LAW

---

300 STATE STREET
ROCHESTER, NEW YORK 14614
585.454.0700
Fax: 585.423.5910

Eric J. Ward
(585) 454-0714
ejw@wnhr.com

January 13, 2006

Ronald J. Schutz, Esq.                    Lani R. Miller, Esq.
Robins, Kaplan, Miller & Ciresi, LLP      O'Melveny & Myers, LLP
2800 LaSalle Plaza                        1625 Eye Street NW
800 LaSalle Avenue                        Washington, D.C. 20006-4001
Minneapolis, MN 55402-2015

     *Re:*    *Mirage Systems, Inc. v. St. Clair, et al.*
          *Ca. Superior Court (Santa Clara County) 1-05-CV-039164*

Dear Ron and Lani:

    I have Ron's letters of January 4 and January 13, 2006. We do not believe that Judge Jacobs-May's comments amount to an order. As an accommodation, however, I enclose the Asset Purchase Agreement between Kodak and Mirage for production in the above-referenced matter (Bates Numbers CA 000001 - CA 000031). We are producing this to you on the condition that the Agreement and the terms therein remain confidential, and limited to use by outside counsel in this action only. In other words, neither the document nor its contents should be disclosed to your clients or any third parties. Ultimately, I expect that there will be a protective order entered in this case, and this Agreement will be subject to that order.

    I understand that several current and former of employees of Mirage, the inventor-defendants and the principals of St. Clair have given depositions and/or submitted declarations in actions commenced by St. Clair arising from the various patents that form the basis of this case. In return for our production of the Asset Purchase Agreement, I ask that you forward to me immediately those transcripts, declarations and any documents to which they refer. Thank you for your cooperation.

              Very truly yours,

              Eric J. Ward

Ronald J. Schutz, Esq.
Lani R. Miller, Esq.
January 13, 2006
Page 2


EJW/mmc
Enclosure

cc:     Joshua D. Baker, Esq.  (without encl.)
        Kenneth L. Nissly, Esq.  (without encl.)

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-1436 JJF |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, L.P., MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., MATSUSHITA ELECTRIC CORPORATION OF AMERICA, VICTOR COMPANY OF JAPAN, LTD., JVC COMPANY OF AMERICA, NOKIA CORPORATION, NOKIA, INC., HEWLETT-PACKARD COMPANY, EASTMAN KODAK COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO EASTMAN KODAK COMPANY

PLEASE TAKE NOTICE that, pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") hereby requests that you produce for inspection and/or copying the following documents at the offices of Robins, Kaplan, Miller & Ciresi L.L.P., 2800 LaSalle Plaza, 800 LaSalle Avenue South, Minneapolis, Minnesota 55402-2015, or such other mutually agreed upon location, within thirty (30) days of the date of service of these requests upon you.

## INSTRUCTIONS

1.      In producing documents, furnish all documents known or available to you, grouped by response to each document request, regardless of whether documents are possessed

48852 v1

directly by you, or any parent, subsidiary or affiliated corporation, or any of your officers, directors, employees, agents, representatives, present or former contractors, consultants or attorneys.

2.      Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering of the materials intelligible.

3.      With respect to each document or thing that you contend is privileged or otherwise excludable from discovery, state the document production (i.e. "Bates") number(s), the basis for the privilege claimed, the name and address of the author(s) and addressee(s), the date, the type of document, the subject matter of the document, and the name and address of every recipient of the original or any copy of the document.

4.      This Request is continuing and requires, to the extent authorized by Rule 26(e) of the Federal Rules of Civil Procedure, production of any additional responsive document that may be located or acquired by you or your employees after the date of your original production.

## DEFINITIONS

For purposes of these requests, the following terms shall have the meaning set forth below.

1.      The term "Plaintiff" or "St. Clair " shall mean St. Clair Intellectual Property Consultants, Inc. and its officers, agents, employees, and representatives, including the individuals Thomas W. Baumgarten, Jr. and Edmund Chung.

2.      The term "PCC" shall mean Personal Computer Cameras, Inc. and its officers, agents, employees and representatives.

MP3 20140119.1                    2

3.    The terms "Defendants", "Kodak", "you," or "your" shall refer to named Defendants Eastman Kodak Company.

4.    The term "Mirage" shall refer to Mirage Systems, Inc. and includes without limitation its divisions, subsidiaries, directors, agents, representatives, attorneys, employees, and any predecessor with an interest.

5.    The term "Kodak" shall refer to Eastman Kodak Company and includes without limitation on its divisions, subsidiaries, directors, agents, representatives, attorneys, employees and any predecessor with an interest.

6.    The term "the inventors" shall mean Marc Roberts, Jerry Speasl and Matt Chikosky.

7.    The term "Complaint" shall mean the Complaint and any amended Complaints filed by Plaintiff in this action.

8.    The phrase "referring or relating to" as used herein includes, but is not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, in connection with, pertaining to, respecting, regarding, responding to, or in any way logically or factually relevant to the matter described in the request.

9.    The term "person" shall mean any individual, partnership, incorporated or unincorporated association, and any other legal or commercial entity.

10.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

11.    The term "document" shall mean all writings, drawings, graphs, charts, photographs, recordings, or other data compilations, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or

otherwise as contemplated by Fed. R. Civ. P. 26 in any form, whether on paper, in electronic form, on tape, video, film or microfilm, or otherwise.

12.    The term "identify" when used in reference to a person means to provide the following information:

    a.  Full name;

    b.  Present or last known address; and

    c.  Present or last known telephone number.

13.    The terms "St. Clair patents," "St. Clair patents-in-suit" and "patents-in-suit" mean United States Letters Patent No. 5,138,459 ("'459 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" United States Letters Patent No. 6,094,219 ("'219 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" United States Letters Patent No. 6,233,010 ("'010 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" and United States Letters Patent No. 6,323,899 ("'899") entitled "Process For Use In Electronic Camera."

## DOCUMENT REQUESTS

Produce the following:

## REQUEST NO. 1:

All documents identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories.

**REQUEST NO. 2:**

All documents referring or relating to your knowledge of any third party's, other than St. Clair's, asserted ownership rights of the patents-in-suit.

**REQUEST NO. 3:**

All documents referring or relating to the circumstances of your knowledge of any third party's, other than St. Clair's, asserted rights of the patents-in-suit.

**REQUEST NO. 4:**

All documents referring or relating to your contact with any person associated with any third party, other than St. Clair, regarding ownership of the patents-in-suit.

**REQUEST NO. 5:**

All documents referring or relating to your review, evaluations and discussions regarding any third party's, other than St. Clair's, asserted ownership rights of the patents-in-suit.

**REQUEST NO. 6:**

All documents referring or relating to written communications of any employee or agent of Defendants with any third party, other than St. Clair, regarding any third party's asserted ownership rights of the patents-in-suit.

**REQUEST NO. 7:**

All documents referring or relating to Mirage's employment agreements during the period of 1988 – 1993.

**REQUEST NO. 8:**

All documents referring or relating to Mirage's or Kodak's procedures for disclosing an invention by an employee.

MP3 20140119.1                            5

**REQUEST NO. 9:**

All document referring or relating to Mirage's or Kodak's knowledge of the invention claimed in the patents-in-suit.


**REQUEST NO. 10:**

All documents referring or relating to a) Jerry Speasl; b) Marc Roberts; c) Matthew Chikosky; d) PCC; e) St. Clair.

**REQUEST NO. 11:**

All documents referring or relating to Defendants' statement that "Defendant Kodak's recent acquisition of Mirage's interests, if any, in the patents-in-suit...." (*see Answering Brief of Defendants Samsung, Matsushita, Nokia, JVC and Hewlett Packard dated June 17, 2005*) including, but not limited to the agreement demonstrating Kodak's acquisition of Mirage's rights in the patents-in-suit.

**REQUEST NO. 12:**

All documents referring or relating to the scope of Mirage's business or research or development from 1988 through 1993.

**REQUEST NO. 13:**

All documents that you believe demonstrate that the inventions in the patents-in-suit are related to or useful in the business or research or development of Mirage.

**REQUEST NO. 14:**

All documents that you believe demonstrate that the inventors of the patents-in-suit have not complied with Sec. 2870 of the California Labor Code.

MP3 20140119.1                              6

Dated: 6/24/05

Of Counsel:                                    SEITZ, VAN OGTROP & GREEN

Ronald J. Schutz, Esquire
Jake M. Holdreith, Esquire
Becky R. Thorson, Esquire                      By:_____
Carrie M. Lambert, Esquire                     George H. Seitz, III, Esquire (No. 667)
Kimberly G. Miller, Esquire                    James S. Green, Esquire (No. 481)
ROBINS, KAPLAN, MILLER &                       Patricia P. McGonigle, Esquire (No. 3126)
  CIRESI LLP                                    222 Delaware Avenue, Suite 1500
2800 LaSalle Plaza                             P.O. Box 68
800 LaSalle Avenue                             Wilmington, DE 19899
Minneapolis, MN 55402                          (302) 888-0600
(612) 349-8500

                                               Attorneys for St. Clair Intellectual Property
                                               Consultants, Inc.

MP3 20140119.1                          7

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-1436 JJF |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, L.P., MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., MATSUSHITA ELECTRIC CORPORATION OF AMERICA, VICTOR COMPANY OF JAPAN, LTD., JVC COMPANY OF AMERICA, NOKIA CORPORATION, NOKIA, INC., HEWLETT-PACKARD COMPANY, EASTMAN KODAK COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS EASTMAN KODAK COMPANY

PLEASE TAKE NOTICE that, pursuant to Rules 33 and 26 of the Federal Rules of Civil Procedure, Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") hereby requests that you answer the following interrogatories within thirty (30) days of the date of service of these requests upon you.

## INSTRUCTIONS

1.    Defendants should answer each and every interrogatory separately and fully, including each subdivision thereof, unless it is objected to, in which event the reason for all objections shall be specifically and separately stated. Where a complete answer to an

48857 v1

interrogatory is not possible, the interrogatory shall be answered to the extent possible and a statement shall be made indicating why only a partial answer is given.

2.    In the event that any information or document or part thereof subject to this request is withheld on the basis of claim of privilege, Defendants shall furnish to St. Clair a list identifying each document withheld, together with the following information:

a.  A statement of the nature of the privilege upon which Defendants base its objection to disclosure;

b.  A written listing, or "cast of characters," with the name, job title, and present address of each person who has received or otherwise had access to the information or document involved or copies thereof, or with whom the information or document was discussed, and the capacity in which the person had access thereto, or in which it was discussed;

c.  The subject matter of the information or document in question;

d.  The date of the preparation of the information or document;

e.  The sender(s) and recipient(s) of the information or document in question including all those persons who received copies thereof; and

f.  The name, job title and address of the present custodian of the information or document.

3.    If any "communication," "conversation," or "statement" is withheld under a claim of privilege, please furnish a list signed by the person supervising your response identifying each such communication, conversation or statement for which the privilege is claimed together with the following information:

a.  The date of such conversation, communication, or statement;

48857 v1

b. The place at which it occurred and the medium involved;

c. The identity of each person involved, together with his or her job title at the time of the communication;

d. The subject matter and nature of the conversation, communication or statement;

e. The basis on which the privilege is claimed; and

f. Whether any non-privileged matter was contained in the conversation, communication, or statement.

## DEFINITIONS

For purposes of these requests, the following terms shall have the meaning set forth below.

1.     The term "Plaintiff" or "St. Clair " shall mean St. Clair Intellectual Property Consultants, Inc. and its officers, agents, employees, and representatives, including the individuals Thomas W. Baumgarten, Jr. and Edmund Chung.

2.     The term "PCC" shall mean Personal Computer Cameras, Inc. and its officers, agents, employees and representatives.

3.     The terms "Defendants", "Kodak", "you," or "your" shall refer to named Defendants Eastman Kodak Company and includes, without limitation, its divisions, subsidiaries, directors, agents, representatives, attorneys, employees, and any predecessor with an interest.

4.     The term "Mirage" shall refer to Mirage Systems, Inc. and includes without limitation its divisions, subsidiaries, directors, agents, representatives, attorneys, employees, and any predecessor with an interest.

48857 v1

5.    The term "the inventors" shall mean Marc Roberts, Jerry Speasl and Matt Chikosky.

6.    The term "Complaint" shall mean the Complaint and any amended Complaints filed by Plaintiff in this action.

7.    The phrase "referring or relating to" as used herein includes, but is not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, in connection with, pertaining to, respecting, regarding, responding to, or in any way logically or factually relevant to the matter described in the request.

8.    The term "person" shall mean any individual, partnership, incorporated or unincorporated association, and any other legal or commercial entity.

9.    The term "date" shall mean the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

10.    The term "document" shall mean all writings, drawings, graphs, charts, photographs, recordings, or other data compilations, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise as contemplated by Fed. R. Civ. P. 26 in any form, whether on paper, in electronic form, on tape, video, film or microfilm, or otherwise.

11.    The term "identify" when used in reference to a person means to provide the following information:

　　　　a.  Full name;

　　　　b.  Present or last known address; and

　　　　c.  Present or last known telephone number.

48857 v1

12.    The terms "St. Clair patents," "St. Clair patents-in-suit" and  "patents-in-suit" mean United States Letters Patent No. 5,138,459 ("'459 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" United States Letters Patent No. 6,094,219 ("'219 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" United States Letters Patent No. 6,233,010 ("'010 patent") entitled "Electronic Still Video Camera With Direct Personal Computer (PC) Compatible Digital Format Output;" and United States Letters Patent No. 6,323,899 ("'899") entitled "Process For Use In Electronic Camera."

## INTERROGATORIES

### INTERROGATORY NO. 1:

If you contend that any third party, other than St. Clair, including but not limited to Mirage and/or Kodak, has any ownership rights in or owns the patents-in-suit for any reason, set forth in detail the bases for your contention, including the relevant factual or legal support, and identify with specificity all documentation and activities on which you base your contention, including, without limitation, agreements, memoranda, or contracts.

### INTERROGATORY NO. 2:

Identify by name, address, and telephone number of each person with knowledge of any and all third party asserted ownership rights of the patents-in-suit.

Dated: _6/24/05_

Of Counsel:

Ronald J. Schutz, Esquire
Jake M. Holdreith, Esquire
Becky R. Thorson, Esquire
Carrie M. Lambert, Esquire
Kimberly G. Miller, Esquire
ROBINS, KAPLAN, MILLER &
  CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

SEITZ, VAN OGTROP & GREEN

By: _____
George H. Seitz, III, Esquire (No. 667)
James S. Green, Esquire (No. 481)
Patricia P. McGonigle, Esquire (No. 3126)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

Attorneys for St. Clair Intellectual Property
Consultants, Inc.

48857 v1

# EXHIBIT 22

LEXSEE 2004 U.S. DIST. LEXIS 14831

**CORNING INCORPORATED and ARTIFICIAL SENSING INSTRUMENTS ASI AG, Plaintiffs, v. SRU BIOSYSTEMS, LLC, SRU BIOSYSTEMS, INC., and SRU HOLDINGS, LLC, Defendants.**

**Civil Action No. 03–633 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 14831*

**July 7, 2004, Decided**

**SUBSEQUENT HISTORY:** Patent interpreted by *Corning Inc. v. SRU Biosystems, LLC, 2004 U.S. Dist. LEXIS 12738 (D. Del., July 9, 2004)*
Reconsideration denied by *Corning Inc. v. Biosystems, 2004 U.S. Dist. LEXIS 16025 (D. Del., Aug. 13, 2004)*

**PRIOR HISTORY:** *Corning Inc. v. SRU Biosystems, LLC, 223 F.R.D. 189, 2004 U.S. Dist. LEXIS 12784 (D. Del., July 7, 2004)*

**DISPOSITION:** [*1] Plaintiff's second motion to compel production of documents granted. Defendants' motion for protective order denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a civil suit, defendant businesses filed a counterclaim against plaintiff businesses, alleging tortious interference with advantageous relationships. One plaintiff filed a second motion to compel production of documents. Defendants moved for issuance of a protective order pursuant to Fed. R. Civ. P. 26(c).

**OVERVIEW:** Arguing that the documents were relevant to defendants' tortious interference counterclaim, plaintiff sought documents related to a third party's offer to acquire defendants. Defendants responded that the documents were not relevant because defendants did not accept the bid and because the damages defendants claimed were based on lost profits from lost sales, and bids for its acquisition were not relevant to such damages. Plaintiff replied that the third party's bid likely involved an assessment of defendants' sales projections, and that such information would be relevant to defendants' claim of lost sales and profits. The court agreed with plaintiff. Even though the bid did not have a direct relationship to defendants' claim for damages, under the broad discovery standards of Fed. R. Civ. P. 26, the court could not conclude that

the bid would not assist in illuminating the reasonableness of defendants' damages claim. Further, after balancing the equities, defendants were not entitled to a protective order. It was unlikely that allowing the discovery would have a "chilling effect" on other acquisition bids, and an existing protective order would protect defendants' interests.

**OUTCOME:** The court granted the motion to compel and denied the motion for a protective order.

**LexisNexis(R) Headnotes**

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN1] See Fed. R. Civ. P. 26(b)(l).

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN2] In the Third Circuit, it is well recognized that the federal rules allow broad and liberal discovery.

*Torts > Business & Employment Torts > Interference With Prospective Advantage*
[HN3] A tortious interference with advantageous relationships counterclaim requires that the counterclaim plaintiff establish that it was injured by the counterclaim defendant's allegedly tortious actions.

*Torts > Business & Employment Torts > Interference With a Contract*
*Torts > Business & Employment Torts > Interference With Prospective Advantage*
[HN4] Delaware courts follow the definition of tortious interference with advantageous relationship found in the Restatement (Second) of Torts. Tortious interference with advantageous relationship encompasses two torts: tortious interference with contract and tortious interference with prospective contractual relations. Both tortious interference with contract and tortious interference with prospective contractual relations require a plaintiff to prove damages or injury.

2004 U.S. Dist. LEXIS 14831, *1

*Civil Procedure > Disclosure & Discovery > Protective Orders*
[HN5] See Fed. R. Civ. P. 26(c).

*Civil Procedure > Disclosure & Discovery > Protective Orders*
[HN6] Fed. R. Civ. P. 26 requires striking a balance between the countervailing legitimate interests and accommodating the needs of both parties.

*Civil Procedure > Discovery Methods > Requests for Production & Inspection*
*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
[HN7] As provided by Fed. R. Civ. P. 26(e), a litigant is subject to a continuing obligation to supplement its production of documents if such further production is necessary to complete and correct past productions.

**COUNSEL:** Richard L. Horwitz, Esquire, and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Of Counsel: Kenneth E. Krosin, Esquire, Andrew E. Rawlins, Esquire, Larry L. Shatzer, Esquire, and George C. Best, Esquire of FOLEY & LARDNER, Washington, D.C. Attorneys for Plaintiffs Corning Incorporated and Artificial Sensing Instruments ASI AG.

Steven J. Balick, Esquire, and John G. Day, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Of Counsel: John J. McDonnell, Esquire, Daniel A. Boehnen, Esquire, Matthew J. Sampson, Esquire, Richard A. Machonkin, Esquire, Patrick G. Gattari, Esquire, and Lisa M. Hillman, Esquire of McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, Illinois. Attorneys for Defendants SRU Biosystems, LLC, SRU Biosystems, Inc., and SRU Biosystems Holdings, LLC.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

[*2] **Farnan, District Judge.**

Presently before the Court is the Second Motion To Compel Production Of Documents filed by Corning Incorporated ("Corning") (D.I. 105) and the Motion For A Protective Order filed by SRU Biosystems, LLC, SRU Biosystems, Inc., and SRU Biosystems Holdings, LLC (collectively "SRU"). (D.I. 111.) For the reasons discussed, the Court will grant the Motion To Compel and deny the Motion For A Protective Order.

**I. Second Motion To Compel (D.I. 105)**

A. Contentions

By its Motion, Corning requests the Court to compel SRU to produce documents related to Discovery Labware Division of Becton Dickinson's ("BD") offer to acquire SRU. Corning contends that the documents it seeks are discoverable because they are relevant to SRU's claim for damages due to Corning's alleged tortious interference with SRU's advantageous relationships.

SRU responds that the documents are not relevant to its claim for tortious interference because it did not accept BD's bid. Further, SRU maintains that the damages from its tortious interference with advantageous relationships claim is based on lost profits from lost sales, and therefore, bids for its acquisition are not relevant [*3] to this figure.

B. Decision

In relevant part, *Rule 26* provides that [HN1] "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b)(1).* [HN2] In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999)* (citing *Titan Sports, Inc. v. Turner Broad. Sys. (In re Madden), 151 F.3d 125, 128 (3d Cir. 1998)).*

The Court concludes that the evidence sought by Corning is relevant under the broad discovery standards of *Rule 26.* [HN3] SRU's tortious interference with advantageous relationships counterclaim requires that SRU establish that it was injured by Corning's allegedly tortious actions. n1 Corning seeks production of documents related to BD's bid for SRU's acquisition because it contends that BD's offer is a third-party's assessment of the reasonableness of SRU's damage claim. Although the Court agrees with SRU that BD's bid does not [*4] have a direct relationship to its claim for damages, the Court cannot conclude that BD's bid will not assist in illuminating the reasonableness of SRU's claim of damages due to lost sales. In the Court's view, BD's bid for SRU's acquisition likely involved an assessment of SRU's sales projections.

Moreover, the Court does not view the fact that BD's bid was rejected by SRU as establishing that BD's bid is irrelevant, but instead goes to the weight of this evidence. In sum, the Court concludes that the evidence sought by Corning is relevant evidence under *Rule 26*.

> n1 As discussed in the Court's November 20, 2003, Memorandum Opinion, [HN4] Delaware courts follow the definition of tortious interference with advantageous relationship found in the Second Restatement. See *Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983 (Del. Ch. 1987)*. Tortious interference with advantageous relationship encompasses two torts: tortious interference with contract and tortious interference with prospective contractual relations. Restatement (Second) of Torts Div. 9 (1979). Both tortious interference with contract and tortious interference with prospective contractual relations require a plaintiff to prove damages or injury. See *In re Frederick's of Hollywood, Inc. Shareholders' Litig., 1998 Del. Ch. LEXIS 111, No. 15944, 1998 WL 398244, *5 (Del. Ch. July 9, 1998)*(describing the elements of interference with prospective contractual relations); *Irwin & Leighton, 532 A.2d at 992* (describing the elements of tortious interference with contract).

**[*5]**

## II. Protective Order (D.I. 111)

The Court has determined that the production sought by Corning is relevant under *Rule 26*, and therefore, the Court must determine whether SRU is entitled to a protective order. For the following reasons, the Court concludes that SRU is not.

### A. Contentions

SRU contends that the Court should grant it a protective order because disclosure of the documents Corning seeks would be unduly oppressive to SRU's attempts at negotiating its acquisition. SRU maintains that permitting Corning to obtain discovery of the documents at issue: 1) will deter other businesses from bidding for it; 2) will give Corning an unfair advantage on bidding; and 3) is unduly oppressive because of the discovery request's continuing nature. SRU further contends that the "white–knight privilege" or "business strategy doctrine" protects against discovery into bids for its acquisition.

In response, Corning contends that it has not contemplated any bid for SRU, and thus, SRU's claims of oppression are misplaced. Further, Corning asserts that the protective order in this case prevents SRU from exposure

to abuse of the bidding process for its sale. Also, Corning contends **[*6]** that the information it seeks is highly relevant to SRU's tortious interference counterclaim, and therefore, it needs this information to adequately prepare a defense.

### B. Decision

In pertinent part, *Rule 26(c)* provides that [HN5] "upon motion by a party or by the person from whom discovery is sought ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Fed. R. Civ. P. 26(c)*. [HN6] "*Rule 26* requires striking a balance between the countervailing legitimate interests and accommodating the needs of both parties." *BNS Inc. v. Koppers Co., 683 F. Supp. 454, 457 (D. Del. 1988)*. After balancing the equities of Corning's need for the documents at issue against SRU's assertions of oppression, the Court concludes that the Motion For A Protective Order should be denied.

SRU's assertion of oppression centers on the potential "chilling effect" the disclosure of documents relating to third-party bids for SRU will have on future bids for its acquisition. SRU maintains that cases applying the business strategy doctrine and protecting companies **[*7]** from discovery require the Court to issue a protective order in this case.

In *BNS Inc. v. Koppers Co., Inc., 683 F. Supp. 454 (D. Del. 1988)*, the court held that the balance of the equities required the denial of a motion to compel the production of documents requested by the plaintiff, who was attempting a hostile tender offer for the defendant corporation. The court reasoned that because the defendant target company had not yet rejected the plaintiff's hostile tender offer, it would be detrimental to the defendant's ability to negotiate a higher offer for its shareholders to permit discovery at that time. *Id. at 457*. The Court concludes that *BNS*, and the other cases relied on by SRU in support of its request for a protective order, n2 are inapposite to the facts in this case.

> n2 *Parsons v. Jefferson–Pilot Corp., 141 F.R.D. 408 (M.D.N.C. 1992)*, and *Stena Finance B.V. v. Sea Containers Ltd., 131 F.R.D. 361 (D. D.C. 1989)*, both rely on BNS.

**[*8]**

In the instant case, Corning has represented to the Court that it is not contemplating a bid for acquiring SRU. (D.I. 113.) Thus, the Court finds the danger that potential bidders will find threatening the fact that Corning, a party not in competition to acquire SRU, has access to

documents relating to their bids for SRU's acquisition to be minimal.

Additionally, the Court is persuaded that the Protective Order in place in this case ensures that the limited disclosure permitted will not chill the bidding environment. n3

> n3 The Court is not persuaded by SRU's contention that it will be unduly oppressed because of the continuing nature of Corning's discovery requests. [HN7] As provided by *Rule 26(e)*, SRU is already subject to a continuing obligation to supplement its production of documents if such further production is necessary to complete or correct past productions.

**CONCLUSION**

Thus, for the reasons discussed, the Court will grant the Motion To Compel and deny the Motion For A Protective Order.

An appropriate [*9] Order will be entered.

**ORDER**

At Wilmington, this 7th day of July, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Second Motion To Compel Production Of Documents filed by Corning Incorporated (D.I. 105) is **GRANTED;**

2) The Motion For A Protective Order filed by SRU Biosystems, LLC, SRU Biosystems, Inc., and SRU Biosystems Holdings, LLC (D.I. 111) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE