EXHIBIT 1

01/26/2006  17:08 FAX                                                                    ☑ 003/004

# KIRKLAND & ELLIS LLP
#### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Jordan N. Malz
To Call Writer Directly:
(212) 446-4854
jmalz@kirkland.com

212 446-4800

www.kirkland.com

Facsimile:
212 446-4900

January 26, 2006

## VIA FACSIMILE AND FIRST CLASS MAIL

Carrie M. Lambert, Esq.
Robins, Kaplan, Miler & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

> Re:   *St. Clair Intellectual Property Consultants, Inc. v. Samsung Electronics
> Co. et al.*, C.A. No. 04-1436 (JFF) (D. Del.)

Dear Carrie:

I write on behalf of the below-named defendants[1] in response to your January 24th letter, which again misstates the Defendants' position regarding St. Clair's motion to bifurcate.

As repeatedly stated in our prior correspondence, we support the motion to stay this case pending resolution of the California law ownership dispute between St. Clair and Mirage/Kodak in *Mirage Systems, Inc. v. Jerry Speasl*, et al., Case No. 105-CV-039164 (Cal. Sup. Ct.). Furthermore, we believe that the California law ownership dispute should be determined in the *Mirage v. Speasl* case currently proceeding in California state court and that it need not be re-litigated in Delaware federal court.

While bifurcating the ownership issue is preferable to litigating all merits issues in this action simultaneously, resolution of the California law ownership dispute in California state court in a direct action between St. Clair, Mirage/Kodak and the inventors clearly presents the optimal forum for resolving this issue. Subsequent developments in *Mirage v. Speasl* and this case have confirmed our view. Among other things, we have learned from the public record about the inventors' material breaches of their California employment agreements, making a California state court with jurisdiction over these inventors the most appropriate forum in which to litigate these issues of California law. We have also learned from the public record that the California judge recently has overruled St. Clair's demurrer and that the *Mirage v. Speasl* case

---

[1]   This letter is on behalf of Defendants Samsung Electronic Co. Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, L.P., Matushita Electric Corporation of America, Victor Company of Japan, Ltd., JVC Company of America, Nokia Corporation, Nokia, Inc., and Hewlett-Packard Company.

Chicago            London            Los Angeles            San Francisco            Washington, D.C.

01/26/2006 17:09 FAX                                    ☑ 004/004

# KIRKLAND & ELLIS LLP

Carrie M. Lambert, Esq.
January 26, 2006
Page 2

will be proceeding in California in all respects, including discovery. Moreover, despite the fact that the above-named defendants are not parties to the ownership dispute, St. Clair has burdened each of them with dozens of discovery requests on ownership and an irrelevant surveillance issue, which was neither contemplated nor expected during defendants' briefing regarding the motions to stay and bifurcate. Overall, because the California law ownership dispute is going forward in California Superior Court with all the necessary parties, it simply makes no sense to re-litigate this issue in Delaware federal court. To do so would be wasteful of judicial resources, raise the possibility of inconsistent rulings (and resulting delay), and needlessly burden defendants that are not parties to the ownership dispute.

We are hopeful that our amended discovery responses, which are being made subject to the caveats set forth in our January 10th letter and without prejudice to our pending motion to stay and Kodak's motion for a protective order, will make clear that we are not a party to the ownership dispute, not the proper focus of St. Clair's discovery requests, and not necessary to determining the threshold issue of patent ownership.

Sincerely,

Jordan N. Malz

cc:    Ronald J. Schutz                    Stuart Lubitz
       Jake M. Holdreith                   Laurence H. Pretty
       Becky R. Thorson                    David A. Ben-Meir
       Kimberly G. Miller                  Steven J. Balick
       William P. DiSalvatore              John G. Day
       Caren K. Khoo                       Tiffany Geyer Lydon
       Nora Q.E. Passamaneck               John E. Daniel
       William F. Lee                      Donald L. Rhoads
       Mark D. Selwyn                      Vito J. DeBari
       Louis W. Tompros                    Jack B. Blumenfeld
       Richard L. Horwitz                  Josy W. Ingersoll
       David E. Moore                      John W. Shaw
       Sharon R. Barner                    Karen E. Keller
       Sheldon Karon                       Paul M. Lukoff
       Marianne C. Holzhall                David E. Brand
       Naikang Tsao                        George Seitz
       Bruce D. Kuyper

# KIRKLAND & ELLIS LLP

*Fax Transmittal*

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Phone: 212 446-4800
Fax: 212 446-4900

---

Please notify us immediately if any pages are not received.

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL.

**IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AT: 212 446-4800.**

---

| *To:* | *Company:* | Fax #: | Direct #: |
|---|---|---|---|
| Ronald J. Schutz<br>Jake M. Holdreith<br>Becky R. Thorson<br>Carrie M. Lambert<br>Kimberly G. Miller | Robins, Kaplan, Miller & Ciresi LLP | 612-339-4181 | 612-349-8500 |
| William P. DiSalvatore<br>Caren K. Khoo<br>Nora Q.E. Passamaneck | Wilmer Cutler Pickering Hale and Dorr LLP | 212-937-7300 | 212-937-7202 |
| William F. Lee<br>Mark D. Selwyn<br>Louis W. Tompros | Wilmer Cutler Pickering Hale and Dorr LLP | 617-526-5000 | 617-526-6556 |
| Richard L. Horwitz<br>David E. Moore | Potter Anderson & Corroon LLP | 302-658-1192 | 302-658-6027 |
| Sharon R. Barner<br>Sheldon Karon<br>Marianne C. Holzhall | Foley & Lardner LLP | 312-832-4700 | 312-832-4500 |
| Naikang Tsao | Foley & Lardner LLP | 608-258-4258 | 608-2580-4250 |
| Bruce D. Kuyper | Latham & Watkins LLP | 213-891-8763 | 213-891-8001 |
| Stuart Lubitz<br>Laurence H. Pretty<br>David A. Ben-Meir | Hogan & Hartson LLP | 213-337-6701 | 213-337-6700 |
| Steven J. Balick<br>John G. Day<br>Tiffany Geyer Lydon | Ashby & Geddes | 302-654-2067 | 302-654-1888 |

01/26/2006 17:08 FAX                                                              ☒ 002/004

Page 2

# KIRKLAND & ELLIS LLP
### *Fax Transmittal*

| | | | |
|---|---|---|---|
| John E. Daniel<br>Donald L. Rhoads<br>Vito J. DeBari | Kramer Levin Naftalis & Frankel LLP | 212-715-8195 | 212-715-9195 |
| Jack B. Blumenfeld | Morris, Nichols, Arsht & Tunnell | 302-658-3989 | 302-658-9200 |
| Josy W. Ingersoll<br>John W. Shaw<br>Karen E. Keller | Young Conaway Stargatt & Taylor LLP | 302-576-3301 | 302-571-6600 |
| Paul M. Lukoff<br>David E. Brand | Prickett, Jones & Elliott, P.A. | 302-658-8111 | 302-888-6500 |
| George Seitz | Seitz, Van Ogtrop & Green, P.A. | 302-888-0606 | 302-888-0600 |

| *From:* | *Date:* | *Pages w/cover:* | *Fax #:* | *Direct #:* |
|---|---|---|---|---|
| Jordan N. Malz | January 26, 2006 | 3 | 212 446-4900 | 212 446-4854 |

*Message*:

EXHIBIT 2

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 Fax: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

**FROM:**    Ronald J. Schutz

The information contained in this facsimile message is privileged and confidential information intended for the use of the addressee listed below and no one else. If you are not the intended recipient or the employee or agent responsible to deliver this message to the intended recipient, please do not use this transmission in any way, but contact the sender by telephone.

DATE:    January 27, 2006

TO:    **NAME:**

Eric J. Ward, Esq.
**Fax:    585.423.5910**
Phone:    585.454.0722

Lani R. Miller, Esq.
**Fax:    202.383.5414**
Phone:    202.383.5300

Kenneth L. Nissley, Esq.
**Fax:    408.287.8040**
Phone:    408.292.5800

Michael J. Summersgill, Esq.
**Fax:    617.526.5000**
Phone:    617.526.6556

Caroline McIntyre, Esq.
**Fax:    408.297.6000**
Phone:    408.291.6200

FILE NO.:    121865.0011

NUMBER OF PAGES *INCLUDING COVER SHEET:*    3

**If transmission problems occur, or you are not the intended recipient, please call 612-349-8730 or contact Sharon George at 612.349.8216.**

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

RONALD J. SCHUTZ
612-349-8435
RJSchutz@rkmc.com

January 27, 2006

**VIA FACSIMILE**

Mr. Eric J. Ward
Ward Norris Heller & Reidy LLP
300 State Street
Rochester, New York 14614

Re:    St. Clair v. Mirage
       Our File: 121865.0012

Dear Eric:

I am responding to your January 25, 2006 correspondence. At this point, we need to agree that we disagree on where the ownership should be litigated and whether discovery should proceed in California or Delaware. How this plays out will obviously be guided by the courts in addressing the parties various motions in California and Delaware.

As to the last paragraph of your letter, our position that discovery on ownership should proceed in the *St. Clair v. Samsung* case does not make *St. Clair v. Mirage* unnecessary. We've maintained all along that ownership issues should be decided in the District of Delaware for all of the reasons you are well aware of from the briefing in these cases. We are pursuing discovery in the *Samsung* case because discovery proceeded last summer after the parties met and conferred as required by 26(f). Since we have not yet conferred in the *St. Clair v. Mirage* matter, we have not yet sought discovery, but hope to soon. Our discovery demands in *St. Clair v. Samsung* should not be interpreted to mean we do not fully intend to pursue our claims against all of the defendants in *St. Clair v. Mirage*.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Ronald J. Schutz

RJS/scg

MP3 20165811.1
ATLANTA·BOSTON·LOS ANGELES   MINNEAPOLIS  NAPLES·SAINT PAUL·WASHINGTON D.C.

Ward, Eric J.
January 27, 2006
Page 2


cc:   **Via Facsimile**
      Lani R. Miller, Esq.
      Kenneth L. Nissly, Esq.
      Michael J. Summersgill, Esq.
      Caroline McIntyre, Esq.

MP3 20165811.1

EXHIBIT 3

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

BEFORE THE HONORABLE JAMIE JACOBS-MAY, JUDGE

DEPARTMENT NO. 4

---oOo---



MIRAGE SYSTEMS, INC.,          )
                               )
                               )
        Plaintiff,             )
                               )
        vs.                    )          Case No. 1-05-CV-039164
                               )
MATTHEW CHIKOSKY, MARC K.      )
ROBERTS, JERRY SPEASL and ST.  )
CLAIR INTELLECTUAL PROPERTY    )
CONSULTANTS, INC.,             )
                               )
        Defendants.            )
_____)

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Tuesday, January 3, 2006

---oOo---

A-P-P-E-A-R-A-N-C-E-S:

FOR THE PLAINTIFF:              CAROLINE MCINTYRE,
                               ERIC J. WARD &
                               MICHAEL J. SUMMERSGILL,
                               Attorneys at Law

FOR DEFENDANTS SPEASL,
ROBERTS & CHIKOSKY:            LANI R. MILLER,
                               Attorney at Law

FOR DEFENDANT ST. CLAIR:       JAMES D. MOORE,
                               Attorney at Law

FOR DEFENDANT ST. CLAIR:       RONALD J. SCHUTZ,
                               Attorney at Law

OFFICIAL COURT REPORTER:       PATRICK CROWLEY, C.S.R.
                               Certificate No. 11271

2

1   San Jose, California                    Morning Session

2                    PROCEEDINGS

3        THE COURT:  Line item 1 is Mirage Systems versus

4   Speasl, et al.

5        MR. MOORE:  Good morning, Your Honor.  James Moore

6   for defendant St. Clair.

7        THE COURT:  Thank you.

8        MS. MILLER:  Good morning, Your Honor.  Lani

9   Miller for the inventor defendants, Speasl, Roberts and

10  Chikosky.

11       THE COURT:  Thanks a lot.

12       MR. SCHUTZ:  Good morning, Your Honor.  Ron Schutz

13  for St. Clair Intellectual Property Consultants, the other

14  defendant in the case.

15       MS. MCINTYRE:  Good morning, Your Honor.  Caroline

16  McIntyre for plaintiff Mirage Systems, Inc.

17       MR. WARD:  Good morning, Your Honor.  I'm Eric

18  Ward.  I'm also for Mirage.

19       MR. SUMMERSGILL:  And Michael Summersgill for

20  Mirage.

21       THE COURT:  Okay, so let's do the pro hac vice

22  issues first.  With respect to Mirage's motions for

23  admission pro hac vice, they're all granted.

24       MS. MCINTYRE:  Your Honor, we would like to

25  actually withdraw one of those.

26       THE COURT:  Okay.  Which one?

27       MS. MCINTYRE:  The application of William

28  Disalvatore.

3

1        THE COURT:  Okay, so any objection?

2        MR. SCHUTZ:  No, Your Honor.

3        MS. MILLER:  No, Your Honor.

4        THE COURT:  All right, so that one's withdrawn.

5   So, we have granted then I think -- well, we have

6   Summersgill granted, Hirsch granted, right?  And then

7   Passamaneck, Khoo, Ward, Fici and Corlett?

8        MS. MCINTYRE:  Yes.

9        THE COURT:  Okay.  Then with respect to St. Clair,

10  I just need to clarify something.  I know that initially --

11  this was a second go-around.

12       MR. MOORE:  That's correct.

13       THE COURT:  There had been a motion, and then I

14  guess it was taken off calendar or whatever.  And in terms

15  of your proof of service -- so, I know that first time

16  around you served everybody and you served the state bar.

17  Second time around I don't see a proof of service.

18       MR. MOORE:  There wasn't a proof service?

19       THE COURT:  No.

20       MR. MOORE:  With the pro hac vice?  Let me just

21  check the --

22       THE COURT:  Did you folks -- let me just ask this

23  question.  So -- did you folks get service of the second

24  motion, this motion for pro hac vice?

25       MS. MCINTYRE:  Yes, Your Honor, I believe so.

26       THE COURT:  Okay, and as an officer of the court,

27  are you telling me you did serve and you served the state

28  bar --

4

1        MR. MOORE:  Yeah.  We did absolutely, Your Honor.

2        THE COURT:  So, I'm accepting that.

3        MR. MOORE:  Thank you.

4        THE COURT:  So, it will be granted, and so that's

5  Holdreith, Thorson, Schutz, Lambert and Huang?

6        MR. MOORE:  That's correct.

7        THE COURT:  Okay, so those are all granted.

8        Okay, and then in terms of the Demurrer, the

9  tentative is to overrule the Demurrers.  And so briefly I'll

10  tell you what my reasoning is and allow you folks to argue.

11        In terms of the construction -- first of all, they

12  plead that it's the Roberts patents that were converted,

13  although they throw in their language about it's the

14  invention, it's the proprietary information.  To me, it's

15  the proprietary information, not the patents.

16        In other words, had -- and assuming that it's true

17  obviously for purposes of Demurrer -- the defendants taken

18  this secret information and never patented it, you still

19  have a conversion.

20        So, it's not the patent that was taken.  In fact,

21  the patent didn't exist.  The patent -- there was nothing to

22  convert.  The patent didn't belong -- the thing called a

23  patent wasn't held by the plaintiff and converted.  It was

24  the information that was patented.  And I think this goes

25  hand in hand with your argument.

26        I think it was Avant or -- that talks about it's a

27  secret that's taken, and no matter what its use it doesn't

28  change.  It's one -- it's one conversion, and I agree with

5

1   that. And so I think that it's a little bit of a red

2   herring to talk about the patent.  I think you need to talk

3   about them because that may be the measure of damages, but

4   really what was taken, per the Complaint, is this digital

5   camera concept that then was patented.

6        So, then the question is, okay, well, did they

7   have notice of it, you know, because this whole thing is

8   about statute of limitations.  And your point is, yeah, but

9   the patent put them on notice.  That's why it's critical.

10  The patent put them on constructive notice, and you cite

11  some cases.

12        And to me even the cases that you cite, including

13  the Bedding case -- and I agree with you that Bedding is a

14  far worse case than our case, meaning worse for them.  It's

15  better for you.  So that in Bedding there was no way,

16  because of the name of the inventor, that you could figure

17  out that it was your guy that stole it.  That's not true in

18  our case.  The three individual defendants were named as the

19  inventors.

20        But even Bedding says even if this was stronger --

21  I'm reading the language to you.  The fact that the evidence

22  -- the fact that the evidence would also support an

23  inference that General Bedding was on constructive notice,

24  even if such an inference is stronger, is not a sufficient

25  basis for granting summary judgment.

26        That case, the Kimberly case, the <u>Frugoli versus</u>

27  <u>Fougnies</u>, F-o-u-g-n-i-e-s, 2003 -- I just have a Lexis cite,

28  2003, U.S. District, Lexis 26551.  And I think there was

6

1  actually another one, <u>Acebey</u>, A-c-e-b-e-y, <u>versus Shearson</u>

2  <u>Lehman</u>, 1993, U.S. District, Lexis 19659, a 1993 case, all

3  sort of review these 9th Circuit cases and say -- except for

4  one case, they all say this is a question of fact.

5           And their argument is -- and their strongest

6  argument I think is that because these three individuals

7  owed a fiduciary duty, we were allowed to rely on them to

8  tell us that the inventions happened and to tell us that,

9  you know, we're about -- do you want to disclose it to us

10  and to give it to us?  And because we had a right to rely on

11  that, we didn't have to go out looking.

12           And I think that becomes of a question of fact for

13  a fact finder to determine whether that was reasonable or

14  not reasonable.  So, that's my reasoning for that.

15           Although I agree with you that -- and you argue

16  something to the effect that, well, that didn't put us on

17  notice of anything, and I just disagree.  I think that when

18  you allege anything that these guys created during this time

19  span as ours and you know that these guys filed for the

20  public the application for a patent during this time frame,

21  and I think they even filed the first patent during the time

22  frame that some of them were still employed with you, that

23  -- I mean, what more do you need when you're saying

24  everything that they create is ours?  So, I think that's --

25  there's constructive notice there.  It's just a question of

26  whether that's enough.

27           And constructive notice alone is not enough.  In

28  other words, the fact that it exists is not enough.  The

PATRICK K. CROWLEY, CSR, RPR, CRR

7

1  question that -- the real question is is given the

2  constructive notice, should that person have acted?  And

3  that becomes the question of fact.

4        So, in Frugoli they say it is well established

5  that, quote, "Issuance of a patent and recordation in a

6  patent office constitute notice to the world of its

7  existence." The dispositive issue is whether such notice --

8  is whether, with such notice, other claims connected to a

9  patent should be deemed to have accrued.  So, I think the

10  existence of the constructive notice alone is not enough and

11  that there's this question of fact that goes -- that follows

12  from it.

13        In other words, even given the constructive

14  notice, would a reasonable person have acted on it?  Their

15  argument is no because I was allowed to sit back in this

16  circumstance and -- because I was counting on my fiduciary.

17        The other little bit of support that they get is

18  Witkin Section 814, Summary of California Law of Torts.

19  It's in volume 5, and it says:

20            "In general, the plaintiff is not barred

21            by constructive notice where public records

22            disclose the falsity of representations.

23            Recording acts are designed for the

24            protection of bona fide purchasers, not

25            persons guilty of fraud."

26        And that sort of goes hand in hand with what

27  they're saying is when you get to rely on somebody and they

28  mislead you, that person can't take advantage of

8

1   constructive notice.  So, that's the answer to the

2   constructive notice issue, and I'll allow you to respond in

3   a minute.  And that has to do with the three individuals.

4        I had a tougher time with St. Clair.  Who's St.

5   Clair, you?

6        MR. SCHUTZ:  Yes, Your Honor.

7        THE COURT:  And your argument is, well, St. Clair

8   wasn't a fiduciary, and that's true.  And I struggled with

9   that a little bit.

10       There were two cases that hurt you.  One is

11  Strasberg, which is Strasberg versus Odyssey Group, 51 Cal

12  App. 4th 906, 1996.  And they cite -- and this is another

13  case that hurts you is -- it starts with an N.  I'll get you

14  the cite in a second; one second.  N-a-f-t-z-g-e-r, Naftzger

15  versus American Numismatic Society, 1996, 42 Cal App. 4th

16  421.  In both of those cases you had -- so, in the Naftzger

17  case -- are you familiar with it?

18       MR. SCHUTZ:  Not that one, Your Honor.  I've got

19  several cases here.  I don't have that one.

20       THE COURT:  So, Naftzger is a case where this

21  entity had, you know, very valuable coins, and a fiduciary

22  substituted invaluable coins for the valuable coins, so you

23  couldn't tell something was missing.

24       Many years later they discover it, and they go, oh

25  my God, you know, our valuable coins are gone.  This

26  fiduciary did a switch.  And a third party, innocent third

27  party had the real coins.  And the question is whether or

28  not that innocent party, you know, the statute ran on the

9

1   innocent party, and the answer was no because -- and they

2   said it makes no sense when the thief sells to a third party

3   -- these are my, you know, paraphrased quotes -- it would be

4   inconsistent to bar, you know, paren, the victim who was

5   unaware of the theft from suing the innocent purchaser whose

6   identity was unknown within the three years following the

7   undiscovered theft when the criminal limitations period

8   against the thief did not commence to run until the crime

9   was discovered.

10          In the other case, Strasberg, Lee Strasberg was

11  the beneficiary under Marilyn Monroe's will.  And someone

12  named Melson, who was a fiduciary to this estate --

13  everything was supposed to be turned over to Strasberg who

14  had inherited all this personal property.

15          Melson, the executor or special administrator in

16  the fiduciary role and Marilyn Monroe's personal secretary,

17  kept some stuff.  Many years later Melson gave the stuff to

18  her sister-in-law, and Melson died.  And the sister-in-law,

19  an innocent third party, puts it up for auction.

20          Strasberg has since died, but Strasberg then gives

21  everything to his wife, Anna.  Anna sees the auction and

22  sues, and the answer is, yeah, well, even if the suit was

23  good against Melson because it was tolled, is it good

24  against this innocent sister-in-law?  And the answer is yes,

25  it is because -- and the theory being if you don't have

26  valid title, you can't transfer.

27          So, our case is better for the plaintiff and worse

28  for you because we don't even have an innocent third party,

10

1  per the Complaint. We have a third party who knows all

2  about everything, knows that, per the Complaint -- and I

3  have to assume it's true -- knows that this invention

4  rightfully belongs to Mirage and not to the three

5  individuals. That's what their Complaint says. So, I think

6  if it's good enough for an innocent person, third party,

7  it's good enough against a third party who knows that the

8  stuff is, quote, stolen. Go ahead.

9          MR. SCHUTZ: Cutting right to the chase, Your

10 Honor, the difference here between the Strasberg case and

11 the coin case, the Naftzberg [sic.] -- I may not be

12 pronouncing it --

13         THE COURT: Naftzger, something like that.

14         MR. SCHUTZ: Is that in our case my client, St.

15 Clair, in 1996 recorded in the United States Patent Office,

16 pursuant to Section 261 of the patent statute, an

17 assignment.

18         That was not the case in either the coin case or

19 the Marilyn Monroe case where the party without a fiduciary

20 tie -- there's no fiduciary tie. There's no fraud

21 allegation. Actually went -- declared to the world and to

22 the public, we own these patents. They're ours. Here's our

23 recordation of them.

24         And that is critical distinction of fact, and

25 that's what takes it outside of those cases and what

26 separates us, St. Clair, from the inventor defendants in

27 this case and -- you know, I don't know what else to say. I

28 think that cuts right to the issue.

11

1          THE COURT:  What's your response?

2          MR. WARD:  The response to that, Your Honor, is

3    that it's as though the patents were issued.  First of all

4    --

5          THE COURT:  Say it again.

6          MR. WARD:  It's as -- it's the same argument as

7    the patents themselves, that that recording -- if you assume

8    there's constructive notice to Mirage, and I -- unlike your

9    analysis, our position on that is that that does not

10   constitute constructive notice.  But even if it --

11         THE COURT:  Well, there are a gazillion cases that

12   say it does.

13         MR. WARD:  So, even if it does though, what that

14   does then is raise this reasonable inquiry kind of issue

15   that you went through at the beginning of our conversation,

16   and we come right back to that law.  And it doesn't save --

17   it doesn't save them at all.

18         THE COURT:  So, what you're saying is assume that

19   it gives you constructive notice.  The constructive notice

20   analysis doesn't have anything to do with are you a

21   fiduciary or not.  It doesn't have anything to do with -- it

22   has to do with is constructive notice enough.  Except that

23   the most persuasive argument that you made to me on why the

24   constructive notice is not enough had to do with you could

25   rely on a fiduciary to tell you.  And here, St. Clair is not

26   a fiduciary.

27         MR. WARD:  But the only way that we can find out

28   about this is through those very -- the inventors who were

PATRICK K. CROWLEY, CSR, RPR, CRR

12

1    concealing this in connection or in conspiracy, if you will,

2    with St. Clair.  The two -- those two parties knew exactly

3    what was going on.  In fact, you know, the inventor

4    defendants that hammered us for not making any investigation

5    at all.

6            But the same thing can be said for St. Clair.  If

7    St. Clair was going to get in bed with these guys, then St.

8    Clair had an obligation to do some sort of investigation

9    itself.  It either did that investigation and is complicit

10   in the concealment or it did not do that investigation and

11   is in no different position than Mirage.

12           So that I think the analysis that we started with,

13   that you explained at the very beginning does in fact

14   pertain here regardless of whether they have a direct

15   fiduciary responsibility to Mirage.

16           MR. SCHUTZ:  Briefly, Your Honor.  There are four

17   causes of action alleged against St. Clair.  They are the

18   quiet title cause of action, the --

19           THE COURT:  Conversion.

20           MR. SCHUTZ:  Unfair competition, conversion and

21   unjust enrichment.

22           THE COURT:  But they all boil down to conversion.

23           MR. SCHUTZ:  I'm sorry?

24           THE COURT:  It all boils down to conversion.

25           MR. SCHUTZ:  It does, Your Honor.  But the point

26   that I think is important here is that there's no evidence,

27   and I'm not sure there are any allegations of a conspiracy

28   between them.  I think that if they pled that, they would be

13

1   subjected to sanctions because there is none, and I think
2   they know that from what's going on before.

3        They would not be left without a remedy if St.
4   Clair were dismissed from this case. They have their remedy
5   against who they claim defrauded them and have a fiduciary
6   duty.

7        THE COURT: But I don't decide a Demurrer based
8   upon whether there's an alternative remedy. I decide a
9   Demurrer based upon whether or not it states a cause of
10  action.

11       MR. SCHUTZ: And that's correct, Your Honor. And
12  I just -- I point that out as another fact.

13       But the fact here remains that in 1996 we made,
14  you know, notice to the world that we had these patents and
15  recorded them. That's the purpose of the recording statute
16  is to prevent exactly this kind of action, somebody coming
17  up years later after St. Clair has proven this to be
18  valuable property and invested millions.

19       Then Mirage comes along and says, whoa, you know,
20  maybe we'll take a piece of that. I don't know where they
21  were when St. was spending millions of dollars going after
22  Sony, Canon and Fuji, being told by everybody that there's
23  no way you can beat these giants from Japan and we did. Now
24  they want a piece of the money, and that's what the
25  recording statute is designed to prevent.

26       And in fact to this date I don't think that Mirage
27  has gone into the patent office and said, hey, it's really
28  us that owns it; we're going to record an interest in that.

PATRICK K. CROWLEY, CSR, RPR, CRR

14

1          THE COURT:  Does anyone else want to be heard?

2          MS. MILLER:  Yes, Your Honor.  On behalf of the

3   inventor defendants, our concern is if just because a

4   fiduciary duty exists between an employee and employer, if a

5   company like Mirage therefore has no obligation to exercise

6   any due diligence or conduct any type of investigation, the

7   discovery rule would apply in every single misappropriation

8   case if they just pled something -- the catch phrase is

9   fraud or concealment.

10         In the amended Complaint here today, there is not

11  one fact pled of any due diligence of any investigation

12  conducted.  So, what's the issue of fact there where there

13  are no facts that there was any investigation?

14         THE COURT:  Yeah.  I mean, to me the fact that you

15  can have a pleading that survives a Demurrer doesn't mean

16  you're going to win.  And the question becomes -- and you

17  start weighing different interests.

18         You know, their interest is I had a right to rely

19  on my employee who signed an agreement saying he would tell

20  me when he discovered something, and he would give it to me.

21  That's their argument.  Your argument is -- and actually St.

22  Clair is even in a stronger position to make this argument.

23  From a commerce perspective, how long, you know, how long is

24  someone vulnerable to be sued?  Because if you're vulnerable

25  forever, commerce sort of stops, and that's their argument.

26         All I'm saying is this is a Demurrer stage.

27         MS. MILLER:  Right.

28         THE COURT:  And I don't have the facts, and that's

15

1  the point.

2          MS. MILLER:  Well, the inventor defendants'

3  position is that even if the amended Complaint does plead

4  facts or fraud in concealment, which it appears to be most

5  of their amended Complaint, any concealment had to have

6  ended when the patent was publicly issued.

7          The difference between this case and the General

8  Bedding case is that there was no attempt to disguise or

9  hide their identities.  They -- patents were issued in their

10  own names.  There was no fictitious company or third party.

11  They put out their hand and said this is what we're doing,

12  this is the type of business we're conducting.

13          And I think it's really telling that this is 13

14  years later, twice the amount of laches.  It's just unheard

15  of.  It's really outrageous that they are bringing a case 13

16  years after a patent issued, and that's the difference

17  between St. Clair and the inventor defendants.  The statute

18  of limitations they claimed again running in 1996; whereas,

19  the latest time it could have begun running as to the

20  inventor defendants was when it was issued in 1992.

21          THE COURT:  Right, but, you know, in the Marilyn

22  Monroe case it was decades.  So, I guess my point is you're

23  making good points.  The points that you're making get

24  weighed against the points they're making, and I can't

25  decide as a matter of law.  That's kind of my point.

26          All right, so unless anybody else has anything

27  else to say for the record or otherwise, that's the

28  tentative and will be my ruling, and the Court will prepare

16

1   an order.

2           MR. SCHUTZ:  We had an alternative request for

3   relief, Your Honor, which was to stay this case in favor of

4   the --

5           THE COURT:  Right, and so it's a couple of things.

6   I wanted to thank you for bringing that up.  That's a motion

7   for forum nonconveniens, so you have to bring that separate

8   motion.

9           MR. SCHUTZ:  Well, it's actually not that the case

10  be transferred, just be stayed pending the outcome of those

11  cases.

12          THE COURT:  Well, let me just ask a couple -- I'm

13  not going to stay it, but isn't there some motion pending

14  there, motion to dismiss or something like that?

15          MR. WARD:  Yes, Your Honor.

16          THE COURT:  What's happening on that?

17          MR. WARD:  There is a motion to stay that is

18  pending in Delaware that has not been ruled upon.

19          THE COURT:  When was it brought?

20          MR. WARD:  The motion?

21          THE COURT:  When was it heard?

22          MR. WARD:  It was -- it hasn't -- there hasn't

23  been an argument on it.  It was submitted to the court about

24  six months ago.

25          THE COURT:  Ordinarily, isn't there a hearing on

26  motions?

27          MR. WARD:  Well, it depends upon the judge.  And

28  Judge Farnum (phonetic) sometimes does that and sometimes

17

```
1   simply rules on the papers.  But there has been nothing
2   that's been issued by the Court either calling for oral
3   argument or deciding that motion.  In fact, in those cases
4   in Delaware there's been virtually no activity for the last
5   year.
6           MR. SCHUTZ:  Well, there actually has been --
7   there are a lot of related cases in Delaware, and there's
8   been a ton of activity in the sanctions case against -- as
9   Your Honor may know from looking at the papers --
10          THE COURT:  Right.
11          MR. SCHUTZ:  --'against Canon and for their
12  conduct with respect to Mirage.
13          THE COURT:  I know that you've tried hard to sort
14  of smear them with the Canon issue.  To me the Canon issue
15  is -- that's not my -- that's not the problem that Mirage
16  has with me right now.  That's a problem that Canon has in
17  trying to buy off a witness.  But right now I have the party
18  before me.
19          What bugs me about Mirage -- and let me just tell
20  you -- is you take -- I mean, you make a judicial admission
21  that Mirage sold to Kodak.  You take a first amended
22  Complaint; you use the word "Kodak;" and then you cross out
23  Kodak and you initial it with a bunch of paragraphs that
24  make no sense with a crossed out name.
25          MR. WARD:  And that's because, Your Honor, when we
26  moved to substitute Kodak --
27          THE COURT:  Yeah.
28          MR. WARD:  -- and we did it on an ex parte motion,
```

18

1   the defendants objected to it. So, the Court asked us to

2   submit that motion, which we did. And before there was a

3   hearing on it, they removed the case to federal court.

4           THE COURT: Okay, but then when it comes back

5   down, why don't you bring a motion?

6           MR. WARD: We can do that. We can do that at any

7   time, and in fact perhaps we can do it on stipulation.

8           MR. SCHUTZ: The only objection we had at the

9   time, Your Honor, and an objection we still have is we

10  haven't seen the underlying deal document between Mirage and

11  Kodak. They want to substitute -- Kodak wants to substitute

12  in. They've made representations that they own and are in

13  the shoes of Mirage, you know, that's fine. They can make

14  the representation, but we're entitled to see the document.

15  We've been asking for it for months, and they refused to

16  give it to us.

17          MR. WARD: And by declaration have established

18  that they're the owner. And when there is discovery, that

19  -- that document is certainly discoverable.

20          THE COURT: So, quite frankly, it's just a bunch

21  of game playing, you know. If they're entitled to

22  discovery, give it to them. On the other hand, you're not

23  entitled to get it. You know, if they want to amend, they

24  can amend. I mean, you know, you don't need to have

25  discovery to amend.

26          But it's all -- it's a lot of contentiousness over

27  nothing, so give it to them. You know, what's the big deal

28  if they're entitled to it anyway? Anyway, I'm glad that I

PATRICK K. CROWLEY, CSR, RPR, CRR

19

1  brought it up, so please get that taken care of.  You know,

2  my suggestion obviously is get the stipulation.  They'll

3  stipulate if you give them the papers.  They're entitled to

4  the papers anyway; give it to them.  That's that issue.

5      I'm not going to stay it.  If you have a forum

6  nonconveniens argument, bring it -- you know, issue, bring

7  it.  And I think that was everything.  That was the last

8  loose end that I thought of.

9      Do you have a CMC coming up?

10      MR. WARD:  We are -- that's an issue for today.  I

11  think that you had suggested that we could do that today.

12      THE COURT:  Oh, did I?  Wait, hold on a second.

13  Let me -- we're going to look it up.  So, let me just fix it

14  up so that I don't make you come in needlessly.

15      THE CLERK:  There is nothing else pending.

16      THE COURT:  Okay, so let me give you a CMC date.

17  Does 60 days sound about right?  So, we're going to treat

18  today also as an informal case management.

19      Between now and then you're going to either

20  stipulate to amend the Complaint to the name Kodak, you

21  know.  And maybe the best way of doing it is -- I don't know

22  the best way of doing it, but you'll figure it out.

23      MR. WARD:  We'll have to take that up.

24      THE COURT:  All right.  And so 60 days from now is

25  March 7th.  Does that sound about right?  So, assuming --

26  let's just do March 7th then.  Between now and then you'll

27  fix up the pleading in terms of Kodak.

28      The Demurrer is overruled, and so you'll file an

20

1    Answer, and then the next one we end up talking about, you

2    know, ADR basically.  And then if you're going to bring a

3    forum nonconveniens motion, bring that.

4              It would be nice to get an update on what's

5    happening with that other case.  We don't like to have two

6    cases going at the same time that cover the same subject

7    matter, so it would be nice to get that taken care of.  I'd

8    like to know what's going on with the motion to dismiss.

9              MR. WARD:  If I might, Your Honor --

10             THE COURT:  And I think I have another question.

11   Why -- so, it was remanded from federal court; what was the

12   reason?

13             MR. WARD:  The lateness -- I'm sorry.

14             MR. SCHUTZ:  Lateness, I think.

15             MS. MILLER:  Service of the Complaint as to

16   following the first served defendant rule or the last served

17   defendant rule.  The federal court said the 30-day period

18   interval started when the first defendant was served rather

19   than the last defendant.

20             THE COURT:  Your basis for removal wasn't covered

21   --

22             MR. WARD:  No, it was diversity.

23             MS. MILLER:  Jurisdiction.

24             THE COURT:  Subject matter jurisdiction?

25             MS. MILLER:  Yeah.

26             THE COURT:  Meaning the patent?

27             MR. WARD:  No, no.  Diversity.

28             MS. MILLER:  No, it was diversity.

PATRICK K. CROWLEY, CSR, RPR, CRR

21

1       THE REPORTER:  One at a time.

2       THE COURT:  Okay, right.  Because under my theory,

3  we're not talking about patents.  We're talking about a

4  trade secret.  That's really state court.

5       MR. SCHUTZ:  Even if you're talking about patents,

6  ownership of patents is cognizable in state courts.

7       THE COURT:  Right, but if I ended up thinking of

8  this as a patent, then I'd have to figure out whether it

9  was, you know, the whole continuation, continuation and

10  part.  And I think that's something that federal courts do.

11  State courts generally don't do that.

12       And I guess just to clean up everything, I'm

13  granting judicial notice but not for the truth.  So, I know

14  that the patent says continuation, just like a court order

15  that has reasons.  We never take judicial notice of the

16  truth of it.  That would mean judges are infallible, which

17  isn't the case, nor are patent offices.  So, it's not for

18  the truth that the thing was a, quote, continuation patent

19  as opposed to a continuation in part patent or anything.

20  I'm just taking judicial notice of this existence for

21  purposes of injunctive notice.

22       MR. WARD:  Yeah.  In fact, Your Honor, that's our

23  theory here is that this is a -- it's an employment

24  agreement.  A California employment agreement involves

25  California individuals and businesses that belongs in the

26  California state court.  And in fact the Delaware action

27  that they're referring to was started after this one.

28       THE COURT:  Right, I understand that.  But I guess

22

1   my point is that you keep talking about the Roberts patents,

2   and I'm looking at this as the secret that exists in the

3   Roberts patents.

4           MR. WARD:  Point taken.

5           THE COURT:  Okay, everybody.  Thank you very much.

6               (Whereupon, the proceedings were concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

1   STATE OF CALIFORNIA        )
                               )
2   COUNTY OF SANTA CLARA      )

3

4              I, PATRICK K. CROWLEY, CSR #11271, HEREBY
    CERTIFY:

5

6        That the foregoing is a full, true, and correct

7   transcript of the testimony given, of the evidence offered

8   and received, and statements of the Court, also all

9   objections of counsel and all matters to which the same

10  relate, in the proceedings had, entitled:  IN THE MATTER OF:

11  MIRAGE SYSTEMS, INC. versus MATTHEW CHIKOSKY, MARC K.

12  ROBERTS, JERRY SPEASL and ST. CLAIR INTELLECTUAL PROPERTY

13  CONSULTANTS, INC.; Case number 1-05-CV-039164, taken on

14  January 3, 2006;

15       That I reported the same in stenotype to the best of my

16  ability, being the duly-appointed, qualified, and acting

17  official stenographic reporter of said court, and thereafter

18  transcribed the same into typewriting as herein appears.

19       I further certify that I have complied with CCP § 237

20  (a) (2) in that all personal juror-identifying information

21  has been redacted, if applicable.

22

23       DATED:  January 5, 2006

24

25

26

27   _____

28            Patrick K. Crowley, CSR  #11271

         PATRICK K. CROWLEY, CSR, RPR, CRR

**PATRICK K. CROWLEY,    CSR #11271, RPR #846186**

Superior Court
191 N. 1st Street
Department 4
San Jose , CA 95113
◆
Phone (408) 882-2145

## Transcript Receipt

January 05, 2006

ORDERED BY:  Elizabeth M.

RE:  Mirage v. Speasl, et al.
Case No. 1-05-CV-039164
DATE(S):  1-3-05
PAGES:  22

      Your payment in the the amount of $89.10 was received on 1-5-06.   If you have any questions, please feel free to contact me at the above number.

THANK  YOU  FOR  YOUR  ORDER.

PATRICK K. CROWLEY,
Certified Shorthand Reporter