# EXHIBIT B

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### WASHINGTON, D.C. 20436

In the Matter of

CERTAIN DIGITAL CAMERAS AND
COMPONENT PARTS THEREOF

Investigation
No. 337-TA-_____

## COMPLAINT UNDER SECTION 337 OF
## THE TARIFF ACT OF 1930, AS AMENDED

**Complainant:**

St. Clair Intellectual Property Consultants, Inc.
16845 Kercheval Avenue, Suite No. 2
Grosse Pointe, Michigan 48230
(313) 884-8427

**Counsel for Complainant:**

Ronald J. Schutz
Becky R. Thorson
Carrie M. Lambert
Bruce D. Manning
David B. Zucco
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

**Proposed Respondent:**

Eastman Kodak Company
343 State Street
Rochester, New York 14650

# TABLE OF CONTENTS

1.  INTRODUCTION ................................................................................................ 1

2.  COMPLAINANT ST. CLAIR ............................................................................ 2

3.  PROPOSED RESPONDENT KODAK ............................................................. 3

4.  BACKGROUND OF THE ROBERTS PATENTS ........................................... 3

    a.  Nontechnical Description of the Roberts patents.................................... 3

    b.  PCC's and St. Clair's History with the Roberts Patents ....................... 5

        i.   St. Clair Assists PCC in Finding Business Opportunities ...................... 5

        ii.  PCC Discusses a Business Relationship with Kodak ............................ 5

        iii. St. Clair Purchases All Right, Title, and Interest in and to the Roberts
             Patents ................................................................................................ 7

5.  THE ROBERTS PATENTS ............................................................................. 10

6.  INFRINGEMENT OF THE ROBERTS PATENTS ......................................... 13

7.  IMPORTATION BY KODAK ......................................................................... 14

8.  DOMESTIC INDUSTRY ................................................................................ 15

    a.  St. Clair's Domestic Activity.............................................................. 15

    b.  St. Clair's Licensees' Domestic Activities ......................................... 20

9.  RELATED LITIGATION ................................................................................ 21

10. REQUEST FOR RELIEF ................................................................................ 24

## LIST OF EXHIBITS AND APPENDICES

### Exhibits

| No. | Description |
| --- | --- |
| 1 | U.S. Patent No. 5,138,459 |
| 2 | U.S. Patent No. 6,094,219 |
| 3 | U.S. Patent No. 6,233,010 |
| 4 | U.S. Patent No. 6,323,899 |
| 5 | U.S. Patent No. 6,496,222 |
| 6 | The recorded assignment of U.S. Patent Application Serial No. 37/615,848, which matured into U.S. Patent No. 5,138,459, from the inventors, Marc K. Roberts, Matthew A. Chikosky, and Jerry A. Speasl, to Personal Computer Cameras, Inc., dated January 9, 1992 |
| 7 | The Patent Purchase Agreement between St. Clair Intellectual Property Consultants, Inc. and Personal Computer Cameras, Inc. dated November 21, 1995 |
| 8 | The recorded assignment of U.S. Patent No. 5,138,459 and related patent applications from Personal Computer Cameras, Inc. to St. Clair Intellectual Property Consultants, Inc. dated January 16, 1996 |
| 9 | Article entitled "California Company Develops Floppy-Disk Color Digital Camera" in *Photo Marketing*, dated February 10, 1993 |
| 10 | Article entitled "Personal Computer Cameras, Inc." from Dataquest, dated February 17, 1993 |
| 11 | Article entitled "Focusing on the Future" from the *Tri-Valley Herald* by David Berkowitz, dated June 14, 1993 |
| 12 | Article entitled "Digital Camera Eliminates Film" in the *Valley Times* by Lesley Guth, dated June 28, 1993 |
| 13 | Facsimile and attachment from David Lewis to Marc Roberts dated January 15, 1992 |
| 14 | Written agenda for Personal Computer Cameras, Inc.'s February 5, 1992 meeting at Eastman Kodak Company |

| 15 | Letter from Marc Roberts to David Lewis dated February 13, 1992 |
| 16 | Letter from David Lewis to Marc Roberts dated March 18, 1992 |
| 17 | Handwritten notes regarding a telephone conversation between Jerry Speasl and David Lewis on June 29, 1992 |
| 18 | Letter from Jerry Speasl to David Lewis dated August 17, 1992 |
| 19 | Letter from David Lewis to Jerry Speasl dated September 11, 1992 |
| 20 | Letter from David Woods to Jerry Speasl dated October 7, 1992 |
| 21 | Personal Computers Cameras, Inc. press release entitled "Personal Computer Cameras, Inc. announces digital camera product," dated February 2, 1993, routed at Kodak by Anthony Kelly on February 10, 1993 |
| 22 | A facsimile with attachments from Marc Roberts to Anthony Kelly dated February 17, 1993 |
| 23 | Memorandum Opinion and Order from *St. Clair v. Sony Corp.*, Civil Action No. 01-557-JJF (D. Del.), dated September 3, 2002 |
| 24 | Memorandum Opinion and Order from *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, Civil Action No. 03-241-JJF (D. Del.), dated August 31, 2004 |
| 25 | Notice of Intent to Issue Ex Parte Reexamination Certificate from *In re Reexamination of U.S. Patent No. 5,138,459*, Control No. 90/006,435, dated August 10, 2005 |
| 26 | Notice of Intent to Issue Ex Parte Reexamination Certificate from *In re Reexamination of U.S. Patent No. 6,094,219*, Control No. 90/006,436, dated August 10, 2005 |
| 27 | Notice of Intent to Issue Ex Parte Reexamination Certificate from *In re Reexamination of U.S. Patent No. 6,233,010*, Control No. 90/006,437, dated April 3, 2006 |
| 28 | Notice of Intent to Issue Ex Parte Reexamination Certificate from *In re Reexamination of U.S. Patent No. 6,323,899*, Control No. 90/006,438, dated April 3, 2006 |
| 29 | Ex Parte Reexamination Certificate for U.S. Patent No. 6,323,899 dated November 28, 2006 |

| | |
|---|---|
| 30 | Ex Parte Reexamination Certificate for U.S. Patent No. 6,094,219 dated December 19, 2006 |
| 31–35 | Claim charts demonstrating Eastman Kodak Company's infringement of U.S. Patent Nos. 5,138,459, 6,092,219, 6,233,010, 6,323,899, and 6,496,222 |
| 36 | Eastman Kodak Company press release entitled "Kodak Announces Agreement with Flextronics for Design, Production and Distribution of its Consumer Digital Cameras" dated August 1, 2006 |
| 37 | Article entitled "Kodak Passes Sony in Digital Camera Sales" in *The New York Times* dated February 3, 2005 |
| 38 | **CONFIDENTIAL:** Declaration regarding domestic industry |
| 39 | Special Verdict Form from *St. Clair v. Sony Corp.*, Civil Action No. 01-557-JJF (D. Del.), dated February 25, 2003 |
| 40 | Special Verdict Form from *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, Civil Action No. 03-241-JJF (D. Del.), dated October 8, 2004 |
| 41 | Special Verdict Form from *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, Civil Action No. 03-241-JJF (D. Del.) dated October 25, 2004 |
| 42 | Page from Nikon U.S.A.'s website entitled "Nikon, Inc. Factory Service Facilities" |

## Appendices

| No. | Description |
|---|---|
| A | Certified copies of U.S. Patent Nos. 5,138,459, 6,092,219, 6,233,010, 6,323,899, and 6,496,222 (*see* Rule 210.12(a)(9)(i)) |
| B | Certified copies of the recorded assignment of U.S. Patent Application Serial No. 37/615,848, which matured into U.S. Patent No. 5,138,459, from the inventors, Mark K. Roberts, Matthew A. Chikosky, and Jerry A. Speasl, to Personal Computer Cameras, Inc., dated January 9, 1992 and the recorded assignment of U.S. Patent No. 5,138,459 and related patent applications from Personal Computer Cameras, Inc. to St. Clair Intellectual Property Consultants, Inc., dated January 16, 1996 (*see* Rule 210.12(a)(9)(ii)) |
| C | One (1) certified copy and three (3) duplicate copies of the prosecution history for U.S. Patent No. 5,138,459 (*see* Rule 210.12(c)(2)) |

| D | One (1) certified copy and three (3) duplicate copies of the prosecution history for U.S. Patent No. 6,092,219 (*see* Rule 210.12(c)(2)) |
|---|---|
| E | One (1) certified copy and three (3) duplicate copies of the prosecution history for U.S. Patent No. 6,233,010 (*see* Rule 210.12(c)(2)) |
| F | One (1) certified copy and three (3) duplicate copies of the prosecution history for U.S. Patent No. 6,323,899 (*see* Rule 210.12(c)(2)) |
| G | One (1) certified copy and three (3) duplicate copies of the prosecution history for U.S. Patent No. 6,496,222 (*see* Rule 210.12(c)(2)) |
| H | Physical Exhibits: one (1) certified CD-ROM and three (3) duplicate CD-ROMs containing the prosecution history for *In re Reexamination of U.S. Patent No. 5,138,459*, Control No. 90/006,435 (*see* Rule 210.12(c)(2)) |
| I | Physical Exhibits: one (1) certified CD-ROM and three (3) duplicate CD-ROMs containing the prosecution history for *In re Reexamination of U.S. Patent No. 6,094,219*, Control No. 90/006,436 (*see* Rule 210.12(c)(2)) |
| J | Physical Exhibits: one (1) certified CD-ROM and three (3) duplicate CD-ROMs containing the prosecution history for *In re Reexamination of U.S. Patent No. 6,233,010*, Control No. 90/006,437 (*see* Rule 210.12(c)(2)) |
| K | Physical Exhibits: one (1) certified CD-ROM and three (3) duplicate CD-ROMs containing the prosecution history for *In re Reexamination of U.S. Patent No. 6,323,899*, Control No. 90/006,438 (*see* Rule 210.12(c)(2)) |
| L | Four (4) copies of each material technical reference mentioned in the prosecution histories and/or reexamination proceedings for U.S. Patent Nos. 5,138,459, 6,092,219, 6,233,010, 6,323,899, and 6,496,222 (*see* Rule 210.12(c)(3)) |
| M | Physical Exhibits: Eastman Kodak Company's C643, P880, V705, Z710, and EasyShare One model digital cameras (*see* Rule 210.12(b)) |
| N | **CONFIDENTIAL:** Three (3) copies of each of St. Clair Intellectual Property Consultants, Inc.'s agreements related to U.S. Patent Nos. 5,138,459, 6,092,219, 6,233,010, 6,323,899, and 6,496,222 with digital camera manufacturers (*see* Rule 210.12(c)(1)) |

## 1.    INTRODUCTION

1.1    Complainant St. Clair Intellectual Property Consultants, Inc. ("St. Clair") files this Complaint and hereby requests that the United States International Trade Commission institute an investigation into violations of Section 337 of the Tariff Act, as amended, 19 U.S.C. § 1337.

1.2    St. Clair brings this action to remedy violations of Section 337 arising from the unlawful and unauthorized importation into the United States, the sale for importation, and/or the sale within the United States after importation, of certain digital cameras that directly, contributorily, or by inducement, infringe one or more claims of U.S. Patent Nos. 5,138,459 (the "'459 patent"); 6,094,219 (the "'219 patent"); 6,233,010 (the "'010 patent"); 6,323,899 (the "'899 patent"); and 6,496,222 (the "'222 patent") (collectively, the "Roberts patents"). Copies of the Roberts patents are attached as Exhibits 1–5.

1.3    The Roberts patents revolutionized the digital camera industry, enabling the rapid growth and commercial success of digital cameras. Certain claims of the Roberts patents asserted here cover digital cameras that allow the formatting of captured images in the camera in a choice of file formats to make it easy to use the captured images in popular software programs on personal computers. Other claims of the Roberts patents asserted here cover digital cameras that can format digital storage media, such as a memory card, in a compatible memory format.

1.4    The named inventors on the Roberts patents are Marc K. Roberts, Matthew A. Chikosky, and Jerry A. Speasl (the "Inventors"). The Inventors conceived of the subject matter claimed in the Roberts patents in late 1989 and filed their first patent application on November 20, 1990. The inventors assigned all right, title and interest in and to the Roberts patents to their company, Personal Computer Cameras, Inc. ("PCC"), in 1991, and the respective assignments were duly recorded with the United States Patent and Trademark Office ("PTO") on January 9, 1992. (Ex. 6.)

1

1.5    On November 21, 1995, Complainant St. Clair acquired by assignment all right, title, and interest in and to the Robert patents. (Ex. 7.) St. Clair duly recorded its assignment with the PTO on January 16, 1996. (Ex. 8.)

1.6    St. Clair has devoted substantial time and resources to enforce and license the Roberts patents. St. Clair has and continues to maintain a program to license the Roberts patents from its Michigan headquarters. To date, St. Clair has entered into agreements to license the Roberts patents and/or settle patent litigation related to the Roberts patents with many of the world's largest companies selling digital cameras in the United States, namely: Canon, Casio, Seiko Epson, Kyocera, Minolta, Nikon, Olympus, Pentax, Samsung Techwin, and Sony.

1.7    Eastman Kodak Company ("Kodak") sells digital cameras manufactured abroad and imported into the United States that directly, contributorily, or by inducement, infringe the Roberts patents. These infringing products are being sold in the United States at the direct expense of St. Clair's U.S.-based licensing program and of those digital-camera manufacturers selling products in the United States that have agreements with St. Clair related to the Roberts patents. St. Clair here seeks an exclusion order and a cease-and-desist order to prevent Kodak from continuing to import products that infringe the Roberts patents into the United States and sell those products once imported.

## 2.    COMPLAINANT ST. CLAIR

2.1    St. Clair Intellectual Property Consultants, Inc. ("St. Clair") is a Michigan corporation having its principal place of business at 16845 Kercheval Avenue, Suite Number Two, Grosse Pointe, Michigan 48230. St. Clair specializes in consulting with companies and individuals on intellectual property issues. St. Clair also has its own intellectual property portfolio. As titleholder to the digital-camera-technology patents at issue in this Complaint, St.

Clair has devoted substantial time and resources to enforcing its patents, prosecuting additional, related patents, and offering licenses.

**3.    PROPOSED RESPONDENT KODAK**

3.1    Eastman Kodak Company ("Kodak") is a New Jersey corporation with its principal place of business at 343 State Street, Rochester, New York 14650. Kodak sells digital cameras, among other things, in the United States. The infringing digital cameras at issue in this Complaint are manufactured by or on behalf of Kodak in Asia and are imported, sold for importation, and/or sold after importation by Kodak in the United States.

**4.    BACKGROUND OF THE ROBERTS PATENTS**

    **a.    Nontechnical Description of the Roberts patents**

4.1    The Roberts patents relate to digital-camera technology. Each patent claims different variations of the multiple inventive aspects and embodiments described in a common specification.

4.2    The claims of the Roberts patents asserted here can be separated into two basic groups. The first group of asserted claims covers technology that relates to a digital camera's formatting of captured images in a choice of file formats. The second group of asserted claims covers technology that relates to a digital camera's formatting of storage media.

4.3    The asserted claims of the '459, '219, '010, and '899 patents fall into the first group. Specifically, the asserted claims of the '459, '219, '010, and '899 patents cover digital cameras that allow the formatting of captured images in the camera in a choice of file formats, such as JPEG, MPEG, or TIFF, to make it easy to use the captured images in popular software programs on personal computers. Some but not all of the asserted claims of the '459, '219, '010, and '899 patents also specify that the covered digital cameras' memory be removable storage

media, such as a memory card or floppy disk. The asserted claims of the '219 and '010 patents are apparatus claims, while the asserted claims of the '459 and '899 patents are method claims.

4.4     The asserted claims of the '222 patent fall into the second group. These asserted claims cover digital cameras that can format digital storage media, such as a memory card, in a compatible memory format. For example, certain asserted claims of the '222 patent cover digital cameras that can reformat a memory card from an Apple-compatible memory format to an IBM-compatible memory format.

4.5     In the case styled *Eastman Kodak Co. v. Speasl* (*see* paragraph 9.5 below), Kodak has described the Roberts invention as a digital camera that can format data into one of a plurality of file formats which can be used in multiple applications.

4.6     Kodak's digital cameras can format data into one of a plurality of file formats which can be used in multiple applications.

4.7     Kodak's digital cameras can detect whether a memory card is in a non-IBM-compatible format and then reformat that memory card so that it is IBM compatible.

4.8     Although digital cameras as described above are ubiquitous today, the Roberts inventions were pioneering and revolutionized the field of digital-camera technology. A detailed description of the prior art is contained in the Roberts patents' common specification.

4

### b.    PCC's and St. Clair's History with the Roberts Patents

#### i.    St. Clair Assists PCC in Finding Business Opportunities

4.9    In 1990, the Inventors formed a company, Personal Computer Cameras, Inc. ("PCC"), and obtained start-up funding to develop and market their new digital camera.

4.10    In 1992, PCC worked with St. Clair to find and develop business opportunities for PCC's new digital-camera technology.

4.11    In May 1992, St. Clair's Employees' Profit Sharing Trust invested in PCC with a $35,000 loan. In January 1993, St. Clair invested in PCC with an additional $15,000 loan.

4.12    Around this time, PCC and/or St. Clair approached a number of entities about PCC's digital-camera invention, including, but not limited to, Kodak, Sony, Fujitsu, Canon, Samsung Electronics, Hitachi, and Toshiba. All of the entities contacted by PCC and/or St. Clair declined the opportunity to invest in or to participate in the development of PCC's digital-camera technology.

4.13    PCC's public marketing of its digital-camera technology and prototype was widespread and covered in the press. (*See* Exs. 9-12.)

#### ii.    PCC Discusses a Business Relationship with Kodak

4.14    On January 15, 1992, David Lewis, Kodak's Manager of Concepts & Markets Development, sent inventor Marc Roberts a Kodak non-disclosure agreement in response to correspondence that Mr. Roberts had sent to Kodak concerning PCC. (Ex. 13.)

4.15    On February 5, 1992, PCC met with Kodak representatives at Kodak headquarters. At this meeting, Kodak discussed its newly formed Electronic Imaging Division and proposed four options for its relationship with PCC: (1) acquiring or merging with PCC; (2) licensing PCC's technology; (3) becoming a minority investor in PCC; or (4) creating an original-equipment-manufacturing arrangement with PCC. (Ex. 14.)

4.16    After the February 5, 1992 meeting, Mr. Roberts sent Kodak's Mr. Lewis a copy of PCC's most recent business plan and a video. (Ex. 15.) Mr. Roberts noted that PCC was "excited at the potential business opportunities associated with Kodak" and that "[t]he synergies that have been identified are limitless."

4.17    In early March 1992, Mr. Lewis met with PCC at PCC's headquarters in California. (*See* Ex. 16.)

4.18    On March 18, 1992, Mr. Lewis, then in Kodak's New Business Engineering department, wrote Mr. Roberts as a follow up to his meeting with PCC, stating "I continue to share your enthusiasm for the development of PCC's computer camera offering. We at Kodak are certainly interested in computer cameras and the use of pictures as information and as a computer data type." (Ex. 16.) Mr. Lewis also stated that Kodak was "eager to review the PCC patent as soon as it is available in the public domain."

4.19    Over the next few months, Mr. Roberts and Jerry Speasl, another named inventor, had numerous telephone conversations with Mr. Lewis, who had become Kodak's Manager of Computer Camera Products Marketing and Sales in North America and Europe. In a conversation on June 29, 1992, Mr. Lewis told Mr. Speasl that Kodak's new strategy for digital camera products was similar to PCC's. (Ex. 17.) Mr. Speasl advised Mr. Lewis that PCC's patent would issue on August 11, 1992, and that he would contact David Woods, Kodak's patent counsel, when that happened.

4.20    On August 17, 1992, Mr. Speasl sent Mr. Lewis a copy of PCC's recently issued patent. (Ex. 18.)

4.21    On September 8, 1992, Mr. Speasl sent Mr. Lewis a letter regarding a business relationship between Kodak and PCC. (*See* Ex. 19.)

4.22    Mr. Lewis formally declined a business opportunity with PCC in a letter dated September 11, 1992. (Ex. 19.) In this letter, however, Mr. Lewis noted that "[i]n the spirit of our many telephone conversations I have been careful to point out that strategies are subject to change over time and I feel it is important that we maintain contact."

4.23    On October 7, 1992, David Woods, Kodak's patent counsel, wrote PCC. (Ex. 20.) Mr. Woods had been asked to evaluate PCC's patent "in relation to an electronic still, computer-input camera effort with which Mr. Lewis [was] involved." In his letter, Mr. Woods stated that his study led him to conclude that PCC's patent is not applicable to such a camera "as currently envisioned by Kodak." The letter continued: "Kodak has nothing underway at this time that would require a license under your patent."

4.24    On February 2, 1993, PCC issued a press release entitled "Personal Computer Cameras, Inc. announces digital camera product." (Ex. 21.) This press release was distributed at Kodak by a Kodak employee named Anthony Kelly. (*Id.*) Mr. Kelly requested PCC literature soon thereafter, and Mr. Roberts sent Mr. Kelly information about PCC in response. (Ex. 22.)

4.25    Despite what Kodak told PCC in the early 1990s, Kodak went on to incorporate the digital-camera technology embodied in the Roberts patents in its digital cameras.

### iii.    St. Clair Purchases All Right, Title, and Interest in and to the Roberts Patents

4.26    After the digital-camera manufacturers contacted by PCC and/or St. Clair declined PCC's invitations to invest or participate in the development of PCC's digital-camera technology, PCC entered into a business relationship with a Silicon Valley disk-drive manufacturer called Aura Associates ("Aura"), which included a proposed merger. PCC and Aura continued to openly market PCC's patented digital-camera technology, but eventually, the

business alliance between PCC and Aura failed.  Facing potential bankruptcy, PCC once again turned to St. Clair for assistance.

4.27    St. Clair agreed to help sort out all outstanding disputes between PCC and Aura. At this time, PCC was deep in debt, had no viable prospects for generating revenue, and risked losing its patents through foreclosure.  As one of PCC's creditors, St. Clair could have enforced its promissory notes worth approximately $50,000.

4.28    On November 21, 1995, St. Clair entered into a Patent Purchase Agreement with PCC to purchase all right, title and interest in and to the Roberts patents.  (Ex. 7.)  The purchase price of $60,000 was to allow PCC to satisfy and pay off its immediate debts.  The agreement also included payments to PCC of half of any net future revenue from licenses or settlements relating to the Roberts patents.  St. Clair agreed to take over management and maintenance of the entire Roberts patent portfolio worldwide, which included full responsibility for the costs, attorney's fees, PTO fees, and any other expenses associated with preparing and filing related patent applications and maintaining issued patents.

4.29    St. Clair conducted its own due diligence on PCC's title before purchasing the patents.

4.30    As a result of St. Clair's investment in PCC, St. Clair had become familiar with PCC and had knowledge of the identity and backgrounds of a number of PCC's investors, the inventors' incorporation and subsequent patent assignments to PCC, PCC's open communications with various camera manufacturers regarding the patented technology, and PCC's public marketing and press relating to the patented technology.

4.31    St. Clair performed or caused to be performed a search of the assignment records of the PTO.

8

4.32    St. Clair confirmed through Jerry Speasl in his capacity as an officer of PCC that the Inventors had not signed any agreements specifically relating to the assignment of patents to any previous employers, including Mirage Systems, Inc. ("Mirage").  Mr. Speasl told St. Clair that the only assignment of the Roberts patents was to PCC.

4.33    St. Clair further confirmed through Mr. Speasl that Mirage had no "shop rights" to the patented technology.

4.34    St. Clair also confirmed through Mr. Speasl that Mirage's business, research, or development was completely unrelated to the patented technology.

4.35    St. Clair also learned through Mr. Speasl that the inventors were not employed by Mirage to invent or to develop new products.

4.36    St. Clair confirmed through Mr. Speasl that the Inventors worked on the invention on their own time, using their own resources.

4.37    St. Clair also confirmed, through Mr. Speasl, that the digital camera invention and the patenting of the invention had been disclosed to Mirage, including Mirage principal George Moussally, and that neither Mr. Moussally nor anyone else at Mirage expressed an interest in the disclosed digital-camera technology.

4.38    St. Clair examined each of the specified and identified potential encumbrances that PCC enumerated in the Patent Purchase Agreement.

4.39    St. Clair received a warranty and representation of title from PCC.

4.40    Upon completion of St. Clair's due diligence, which revealed no conflicting claims to PCC's title, St. Clair entered into the Patent Purchase Agreement with PCC on November 21, 1995 and timely recorded its assignment of the '459 patent and related patents and applications with the PTO on January 16, 1996 pursuant to 35 U.S.C. § 261.  As further detailed

9

below, in the decade that followed, St. Clair devoted, and continues to devote, substantial time and resources to enforcing these patents, prosecuting additional related patents, and offering licenses.

### 5.    THE ROBERTS PATENTS

5.1    On August 11, 1992, United States Letters Patent No. 5,138,459 (the "'459 patent") entitled "Electronic Still Video Camera with Direct Personal Computer (PC) Compatible Digital Format Output" was duly and legally issued to PCC, as assignee of the Inventors. (Ex. 1.) The '459 patent issued from U.S. application Serial No. 07/615,848, filed on November 20, 1990.

5.2    As described above, on or about November 21, 1995, St. Clair acquired ownership of PCC's digital camera patents and technology, including the '459 patent, by assignment. (Ex. 7.)    Within three months of St. Clair's purchase, St. Clair recorded its assignment with the PTO pursuant to 35 U.S.C. § 261. (Ex. 8.)

5.3    On July 25, 2000, United States Letters Patent No. 6,094,219 (the "'219 patent") entitled "Electronic Still Video Camera with Direct Personal Computer (PC) Compatible Digital Forma Output" was duly and legally issued to St. Clair as assignee.  (Ex. 2.)  The '219 patent issued from U.S. application Serial No. 08/651,562, filed on May 22, 1996, which is a continuation of U.S. application Serial No. 08/098,787, filed on July 29, 1993 (now U.S. Patent No. 5,576,757), which is a continuation of U.S. application Serial No. 07/878,603, filed May 5, 1992 (abandoned), which is a continuation of U.S. application Serial No. 07/615,848, filed on November 20, 1990 (now the '459 patent).

5.4    On May 15, 2001, United States Letters Patent No. 6,233,010 (the "'010 patent") entitled "Electronic Still Video Camera with Direct Personal Computer (PC) Compatible Digital Formal Output" was duly and legally issued to St. Clair as assignee.  (Ex. 3.)  The '010 patent

issued from U.S. application Serial No. 09/253,831, filed on February 19, 1999, which is a continuation of U.S. application Serial No. 08/712,433, filed September 11, 1996 (pending), which is a continuation of U.S. application Serial No. 08/098,787, filed on July 29, 1993 (now U.S. Patent No. 5,576,757), which is a continuation of U.S. application Serial No. 07/878,603, filed May 5, 1992 (abandoned), which is a continuation of U.S. application Serial No. 07/615,848, filed on November 20, 1990 (now the '459 patent).

5.5     On November 27, 2001, United States Letters Patent No. 6,323,899 (the "'899 patent") entitled "Process for Use in Electronic Camera" was duly and legally issued to St. Clair as assignee. (Ex. 4.) The '899 patent issued from U.S. application Serial No. 09/541,285, filed April 3, 2000, which is a continuation of U.S. application Serial No. 08/651,562, filed on May 22, 1996 (now the '219 patent), which is a continuation of U.S. application Serial No. 08/098,787, filed on July 29, 1993 (now U.S. Patent No. 5,576,757), which is a continuation of U.S. application Serial No. 07/878,603, filed May 5, 1992 (abandoned), which is a continuation of U.S. application Serial No. 07/615,848, filed on November 20, 1990 (now the '459 patent).

5.6     On December 17, 2002, United States Letters Patent No. 6,496,222 (the "'222 patent") entitled "Digital Camera with Memory Format Initialization" was duly and legally issued to St. Clair as assignee. (Ex. 5.) The '222 patent issued from U.S. application Serial No. 09/724,374, filed November 27, 2000, which is a continuation of U.S. application Serial No. 09/253,831, filed on February 19, 1999 (now the '010 patent), which is a continuation of U.S. application Serial No. 08/712,433, filed September 11, 1996 (pending), which is a continuation of U.S. application Serial No. 08/098,787, filed on July 29, 1993 (now U.S. Patent No. 5,576,757), which is a continuation of U.S. application Serial No. 07/878,603, filed May 5, 1992

11

(abandoned), which is a continuation of U.S. application Serial No. 07/615,848, filed on November 20, 1990 (now the '459 patent).

    5.7    Copies of the Roberts patents are attached as Exhibits 1-5.  Certified copies of the Roberts patents, certified copies of the Roberts patents' assignment record, certified copies of the PTO prosecution history for each of the Roberts patents, and copies of each material technical reference mentioned in the prosecution histories of each patent accompany this Complaint as Appendices A–G and L.

    5.8    St. Clair is the owner of all right, title and interest in and to the Roberts patents.

    5.9    The Roberts patents are valid.

    5.10    The Roberts patents are enforceable.

    5.11    The Roberts patents are valuable.

    5.12    The following are all of the issued foreign patents and/or patent applications that relate to the Roberts patents:

| Country | Status | Application No./ Filing Date | Patent No./ Issue Date |
|---|---|---|---|
| Canada | Granted | No. 2095817 November 20, 1991 | No. 2095817 January 1, 2002 |
| Germany | Granted | No. 92902180.6 November 20, 1991 | No. 69131138.2 April 14, 1999 |
| Great Britain | Granted | No. 92902180.6 November 20, 1991 | No. 0558670 April 14, 1999 |
| Japan | Abandoned | No. 4502638 November 20, 1991 | n/a |
| Japan | Granted | No. 200267371 March 12, 2002 | No. 3741656 November 18, 2005 |
| Japan | Pending | No. 200462416 March 5, 2004 | n/a |
| South Korea | Granted | No. 1993-701490 November 20, 1991 | No. 222359 July 5, 1999 |

    5.13    Claims of the '459, '219, '010, and '899 patents have been construed by the United States District Court for the District of Delaware in *St. Clair Intellectual Property*

*Consultants, Inc. v. Sony Corp.*, Civil Action No. 01-557 (JJF), by the Court's Memorandum Opinion and Order dated September 3, 2002. (Ex 23.)

5.14    Claims of the '459, '219, '010, and '899 patents have also been construed by the United States District Court for the District of Delaware in *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, Civil Action No. 03-241 (JJF), by the Court's Memorandum Opinion and Order dated August 31, 2004. (Ex 24.)

5.15    On August 10, 2005, and on April 3, 2006, in response to reexamination proceedings initiated by Sony, the PTO served notices that the reexamination proceedings were terminated and that it would issue ex parte reexamination certificates confirming patentability of all claims of the '459, '219, '010, and '899 patents. (Exs. 25–28.) On November 28, 2006, the PTO issued an ex parte reexamination certificate for the '899 patent. (Ex. 29.) On December 19, 2006, the PTO issued an ex parte reexamination certificate for the '219 patent. (Ex. 30.) The reexamination file histories for the '459, '219, '010, and '899 patents are submitted herewith as Appendices H–K.

## 6.    INFRINGEMENT OF THE ROBERTS PATENTS

6.1    Kodak infringes directly, contributorily, or by inducement at least claim 16 of the '459 patent, claims 1–3, 8, 10, 12, 16–18 of the '219 patent, claim 1 of the '010 patent, claims 1–4 of the '899 patent, and claims 5, 6, 9–12 of the '222 patent with certain digital cameras manufactured, imported, used, sold for importation, and/or sold after importation, including but not limited to Kodak's "C," "P" "V," "Z," and "Easyshare One" series digital cameras. Representative infringing digital cameras include the C643, P880, V705, Z710, and Easyshare One (6MP) models. Claim charts applying an exemplary claim of each of the Roberts patents to these representative infringing digital camera models are attached as Exhibits 31–35. Physical

samples of Kodak's models C643, P880, V705, Z710, and Easyshare One (6MP) digital cameras accompany this Complaint in Appendix M.

## 7.    IMPORTATION BY KODAK

7.1    Kodak sells digital cameras in the United States that infringe the Roberts patents.

7.2    The infringing digital cameras at issue in this Complaint are manufactured on behalf of Kodak in Asia and are imported, sold for importation, and/or sold after importation by Kodak in the United States.

7.3    As detailed on its packaging, Kodak's model C643 digital camera is made in China. (*See* App. M.)

7.4    As detailed on its packaging, Kodak's model P880 digital camera is designed in Japan and made in Korea. (*See* App. M.)

7.5    As detailed on its packaging, Kodak's model V705 digital camera is designed in Japan and made in Korea. (*See* App. M.)

7.6    As detailed on its packaging, Kodak's model Z710 digital camera is designed in Japan and made in China. (*See* App. M.)

7.7    As detailed on its packaging, Kodak's model EasyShare One (6MP) digital camera is designed in Japan and made in China. (*See* App. M.)

7.8    On August 1, 2006, Kodak announced that it would divest its entire digital camera manufacturing requirements to a Singapore-based company, including assembly, production, and testing. (Ex. 36.)

7.9    Kodak's sale of imported infringing products has had a significant negative impact on St. Clair's United States-based licensing program. Kodak's substantial share of the almost $7 billion U.S. digital camera market comes at the direct expense of those digital camera manufacturers selling products in the United States that have agreements with St. Clair related to

14

Roberts patents. In 2004, for example, Kodak became the top seller of digital cameras in the United States, passing St. Clair's licensee Sony. (Ex. 37.)

7.10    On information and belief, the accused products that infringe the Roberts patents are assigned a U.S. Harmonized Tariff Schedule Number under the 2006 Harmonized Tariff Schedule of the United States. Specifically, St. Clair believes that the unlawful importations occur under the following subheading: 9006 ("Photographic (other than cinematographic) cameras; photographic flashlight apparatus and flash bulbs other than discharge lamps of heading 8539; parts and accessories thereof"). This is an exemplary classification for illustration only and is not intended to restrict the accused products.

## 8.    DOMESTIC INDUSTRY

8.1    Kodak's importation and sale of digital cameras that infringe the Roberts patents hurt a domestic industry. A domestic industry exists with respect to St. Clair's digital-camera technology by virtue of St. Clair's and its licensees' extensive activities in the United States.

### a.    St. Clair's Domestic Activity

8.2    St. Clair has made a substantial investment in the domestic exploitation of the Roberts patents through its research, development, and licensing activities relating to the digital-camera technology protected by the Roberts patents' claims. *See* 19 U.S.C. § 1337(a)(3)(C).

8.3    As stated above, St. Clair specializes in consulting with companies and individuals on intellectual property issues, in addition to having its own intellectual property portfolio. St. Clair's licensing program related to the Roberts patents, which it has maintained for over a decade, is a significant part of St. Clair's business. St. Clair's licensing program related to the Roberts patent constitutes the vast majority of St. Clair's business activities and is the primary source of St. Clair's revenue.

15

8.4    St. Clair currently employs five (5) domestic employees in activities related to the Roberts patents.  These activities account for the majority of each employee's time and include, but are not limited to, the development, marketing, licensing, and enforcement of the Roberts patents.

8.5    St. Clair's expenditures to sustain its licensing program, which includes litigation to enforce its rights under the Roberts patents, are and have been substantial.  A detailed summary of St. Clair's expenditures related to licensing and enforcement of the Roberts patents is included as part of Confidential Exhibit 38.

8.6    In the decade that has followed St. Clair's purchase of all right, title, and interest in and to the Roberts patents, St. Clair has approached numerous entities about licensing the Roberts patents.

8.7    St. Clair invited Sony to license the Roberts patents, but Sony declined St. Clair's invitation.

8.8    Digital cameras sold in the United States by Sony incorporate the digital-camera technology covered by certain claims of the Roberts patents.

8.9    On August 14, 2001, St. Clair filed suit against Sony Corporation, Sony Electronics, Inc. and Sony Corporation of America in the United States District Court for the District of Delaware alleging infringement of the '459, '219, '010, and '899 patents.  (*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, Civil Action No. 01-557-JJF.)

8.10    By unanimous jury verdict on February 25, 2003, the jury in *St. Clair v. Sony Corp.* found 15 asserted claims of the '459, '219, '010, and '899 patents infringed by digital cameras sold in the United States by Sony Corporation, Sony Electronics, Inc. and Sony Corporation of America and awarded damages in the amount of $25,000,000.  (Ex. 39.)

16

8.11    Sony has since entered into an agreement with St. Clair to license the Roberts patents.    A summary of St. Clair's licensing revenue from its agreement with Sony is included as part of Confidential Exhibit 38.

8.12    St. Clair also invited Canon, Casio, Seiko Epson, Fuji, Kyocera, Minolta, Nikon, and Olympus to license the Roberts patents, but these entities declined St. Clair's invitation.

8.13    Digital cameras sold in the United States by Canon, Casio, Seiko Epson, Fuji, Kyocera, Minolta, Nikon, and Olympus incorporate the digital-camera technology covered by certain claims of the Roberts patents.

8.14    On February 28, 2003, St. Clair filed suit against Canon Inc., Canon U.S.A., Inc., Casio Computer Co., Ltd., Casio, Inc., Seiko Epson Corporation, Epson America, Inc., Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc., FujiFilm America, Inc., Kyocera Corporation, Kyocera International, Inc. Kyocera Optics, Inc., Minolta Co., Ltd, Minolta Corporation, Nikon Corporation, Nikon, Inc., Olympus Optical Co., Ltd., and Olympus America, Inc. in the United States District Court for the District of Delaware alleging infringement of the '459, '219, '010, and '899 patents. (*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, Civil Action No. 03-241-JJF.)

8.15    Casio, Seiko Epson, Kyocera, Minolta, Nikon, and Olympus have since entered into agreements with St. Clair to license the Roberts patents.    A summary of St. Clair's licensing revenue from its agreements with these companies is included as part of Confidential Exhibit 38.

8.16    By unanimous jury verdict on October 8, 2004, the jury in *St. Clair v. Canon, Inc.* found 16 asserted claims of the '459, '219, '010, and '899 patents not invalid and infringed by digital cameras sold in the United States by Canon, Inc. and Canon USA, Inc. and awarded damages to St. Clair in the amount of $34,716,482.49. (Ex. 40.)

17

8.17    St. Clair's action against Canon, Inc. and Canon U.S.A., Inc. has been resolved under confidential terms.  A summary of St. Clair's revenue from its agreement with Canon is included as part of Confidential Exhibit 38.

8.18    By majority verdict on October 25, 2004, the jury in *St. Clair v. Fuji* (part of the *St. Clair v. Canon, Inc.* litigation) found 16 asserted claims of the '459, '219, '010, and '899 patents not invalid and infringed by digital cameras sold in the United States by Fuji Photo Film, Co., Ltd., Fuji Photo Film U.S.A., Inc., and Fujifilm America, Inc., and awarded damages to St. Clair in the amount of $3,003,465.00.  (Ex. 41.)

8.19    St. Clair also invited Samsung, Matsushita, Nokia, Hewlett-Packard, and Kodak to license the Roberts patents, but these entities declined St. Clair's invitation.

8.20    Digital cameras sold in the United States by Samsung, Matsushita, Nokia, Hewlett-Packard, and Kodak infringe the Roberts patents.

8.21    On November 9, 2004, St. Clair filed suit against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, L.P., Matsushita Electric Industrial Co., Ltd., Matsushita Electric Corporation of America, Victor Company of Japan, Ltd., JVC Company of America, Nokia Corporation, Nokia, Inc., Hewlett-Packard Company, and Eastman Kodak Company alleging infringement of the '459, '219, '010, and '899 patents.  (*St. Clair Intellectual Property Consultants, Inc. v. Samsung Electronics Co.*, Civil Action No. 04-1436-JJF.)

8.22    St. Clair invited Siemens, Audiovox, and UTStarcom to license the Roberts patents, but these entities declined St. Clair's invitation.

8.23    Digital cameras sold in the United States by Siemens, Audiovox, UTStarcom, BenQ, Sprint Nextel, and Verizon infringe the Roberts patents.

8.24    On June 26, 2006, St. Clair filed suit against Siemens AG, Siemens Corporation, BenQ Corporation, BenQ America Corporation, BenQ Mobile GMBH & Co., Audiovox Communications Corporation, Audiovox Electronics Corporation, UTStarcom, Inc., Sprint Nextel Corporation, Cingular Wireless L.L.C., New Cingular Wireless Services, Inc., Verizon Communications, Inc., Vodafone Group PLC, and Cellco Partnership alleging infringement of the '459, '219, '010, and '899 patents.    (*St. Clair Intellectual Property Consultants, Inc. v. Siemens AG*, Civil Action No. 04-403-JJF.)

8.25    St. Clair also invited LG, Motorola, Palm, Sanyo, Concord Camera, Kyocera Wireless, Vivitar, and Aiptek to license the patents in suit, but these entities declined St. Clair's invitation.

8.26    Digital cameras sold in the United States by LG, Motorola, Palm, Sanyo, Concord Camera, Kyocera Wireless, Vivitar, Aiptek, Polaroid, High Tech Computer, and T-Mobile infringe the Roberts patents.

8.27    On June 26, 2006, St. Clair filed suit against LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Mobilcomm U.S.A., Inc. Motorola, Inc., Palm, Inc., Sanyo Electric Co., Ltd., Sanyo North America Corporation, Concord Camera Corporation, Kyocera Wireless Corporation, Vivitar Corporation, Petters Group Worldwide, L.L.C., Polaroid Holding Company, Polaroid Corp., Aiptek International, Inc., Aiptek, Inc., High Tech Computer Corp., H.T.C. (B.V.I.) Corp., HTC USA, Inc., Deutsche Telekom AG, T-Mobile International AG & Co. KG, and T-Mobile U.S.A., Inc. alleging infringement of the '459, '219, '010, and '899 patents.    (*St. Clair Intellectual Property Consultants, Inc. v. LG Electronics, Inc.*, Civil Action No. 04-404-JJF.)

19

8.28    In addition to those companies listed above, Pentax Corporation and Samsung Techwin, Inc. have entered into agreements with St. Clair to license the Roberts patents.    A summary of St. Clair's licensing revenue from its agreements with these two companies is included as part of Confidential Exhibit 38.

8.29    St. Clair's principal place of business is and has been, since the company's inception, in Grosse Pointe, Michigan.  All of St. Clair's business activities, including without limitation the development, marketing, licensing, and enforcement of the Roberts patents, is based at St. Clair's Michigan headquarters, which is approximately 2200 square feet.

**b.    St. Clair's Licensees' Domestic Activities**

8.30    St. Clair's licensees have made significant investments in domestic plant and equipment, significant domestic employments of labor or capital, and/or substantial investments in engineering and/or research and development related to the digital-camera technology embodied by the Roberts patents.  *See* U.S.C. § 1337(a)(3)(A), (B) and (C).

8.31    The digital camera market in the United States will generate close to $7 billion in revenue in 2006.  Sales of digital cameras in the United States by St. Clair's licensees account for the majority of this market.  To sustain their significant share of the U.S. digital camera market, St. Clair's licensees each have U.S. subsidiaries which employ many domestic employees to, among other things, market, develop and service digital cameras sold in the United States.  For example, Nikon maintains two facilities, one in Melville, NY, and one in El Segundo, CA, to service the digital cameras that it sells in the United States. (*See* Ex. 42.)

8.32    Submitted with this Complaint as Confidential Appendix N are copies of St. Clair's agreements with digital camera manufacturers, which specifically contemplate the Roberts patents.

## 9.    RELATED LITIGATION

9.1    On August 14, 2001, St. Clair filed suit against Sony Corporation, Sony Electronics, Inc., and Sony Corporation of America in the United States District Court for the District of Delaware (Civil Action No. 01-557-JJF) alleging infringement of the '459, '219, '010, and '899 patents. (*See* paragraphs 8.7–8.11 above.)

9.2    On October 28, 2002, Sony initiated reexamination proceedings for the '459, '219, '010, and '899 patents. (*In re Reexamination of U.S. Patent No. 5,138,459*, Control No. 90/006,435; *In re Reexamination of U.S. Patent No. 6,094,219*, Control No. 90/006,436; *In re Reexamination of U.S. Patent No. 6,233,010*, Control No. 90/006,437; and *In re Reexamination of U.S. Patent No. 6,323,899*, Control No. 90/006,438.)    As detailed in paragraph 5.15, on August 10, 2005 and April 3, 2006, the PTO served notices that the reexamination proceedings were terminated and that it would issue ex parte reexamination certificates confirming patentability of all claims of the '459, '219, '010, and '899 patents. On November 28, 2006, the PTO issued the ex parte reexamination certificate for the '899 patent. On December 19, 2006, the PTO issued the ex parte reexamination certificate for the '219 patent.

9.3    On February 28, 2003, St. Clair filed suit against Canon Inc., Canon U.S.A., Inc., Casio Computer Co., Ltd., Casio, Inc., Seiko Epson Corporation, Epson America, Inc., Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc., FujiFilm America, Inc., Kyocera Corporation, Kyocera International, Inc. Kyocera Optics, Inc., Minolta Co., Ltd, Minolta Corporation, Nikon Corporation, Nikon, Inc., Olympus Optical Co., Ltd., and Olympus America, Inc. in the United States District Court for the District of Delaware (Civil Action No. 03-241-JJF)  alleging infringement of the '459, '219, '010, and '899 patents. (*See* paragraphs 8.12–8.18 above.)

21

9.4    On November 9, 2004, St. Clair filed suit against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, L.P., Matsushita Electric Industrial Co., Ltd., Matsushita Electric Corporation of America, Victor Company of Japan, Ltd., JVC Company of America, Nokia Corporation, Nokia, Inc., Hewlett-Packard Company, and Eastman Kodak Company in the United States District Court for the District of Delaware (Civil Action No. 04-1436-JJF) alleging infringement of the '459, '219, '010, and '899 patents. (*See* paragraph 8.21 above.)    In answering St. Clair's Complaint on January 27, 2005, Kodak alleged that the '459, '219, '010, and '899 patents were invalid and unenforceable and did not challenge St. Clair's standing to sue or St. Clair's title to the '459, '219, '010, and '899 patents. Kodak has not made any allegation and has not asserted any defense that St. Clair is not the true owner of all right, title, and interest in and to the '459, '219, '010, and '899 patents. This action is presently stayed.

9.5    On April 12, 2005, Mirage Systems, Inc. filed suit against St. Clair and others in the Superior Court of the California, County of Santa Clara, claiming that Mirage owns the Roberts patents and seeking, among other things, title to the Roberts patents. (*Mirage Systems, Inc. v. Speasl*, Case No. 1-05-CV-039164.)    Through an agreement signed on May 20, 2005, Kodak—already a defendant in St. Clair's patent-infringement action filed in the District of Delaware on November 9, 2004—allegedly acquired Mirage's purported rights to the Roberts patents. On May 24, 2006, Kodak was substituted as the Plaintiff in this California action, and the action is now styled *Eastman Kodak Co. v. Speasl*. St. Clair has vigorously defended against this meritless suit and has filed a cross-complaint seeking to quiet title and alleging that Mirage and others intentionally interfered with St. Clair's business and the enforcement of its patents.

22

9.6    On May 6, 2005, St. Clair filed suit against Mirage Systems, Inc. and against two Mirage principals, George J. Moussally and Kenneth L. Ford, in the United States District Court for the District of Delaware, seeking to quiet title to the Roberts patents as well as to recover tort damages for undermining St. Clair's ownership rights and interfering with St. Clair's ability to license the Roberts patents. (*St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*, Civil Action No. 05-273-JJF.) Kodak was substituted for Mirage as a defendant with respect to certain counts in this action on June 23, 2005. Defendants Moussally and Ford were dismissed for improper venue on March 8, 2006. This action is presently stayed.

9.7    On June 26, 2006, St. Clair filed suit against Siemens AG, Siemens Corporation, BenQ Corporation, BenQ America Corporation, BenQ Mobile GMBH & Co., Audiovox Communications Corporation, Audiovox Electronics Corporation, UTStarcom, Inc., Sprint Nextel Corporation, Cingular Wireless L.L.C., New Cingular Wireless Services, Inc., Verizon Communications, Inc., Vodafone Group PLC, and Cellco Partnership alleging infringement of the '459, '219, '010, and '899 patents. (*St. Clair Intellectual Property Consultants, Inc. v. Siemens AG*, Civil Action No. 04-403-JJF.) This action is presently stayed.

9.8    Also on June 26, 2006, St. Clair filed suit against LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Mobilcomm U.S.A., Inc. Motorola, Inc., Palm, Inc., Sanyo Electric Co., Ltd., Sanyo North America Corporation, Concord Camera Corporation, Kyocera Wireless Corporation, Vivitar Corporation, Petters Group Worldwide, L.L.C., Polaroid Holding Company, Polaroid Corp., Aiptek International, Inc., Aiptek, Inc., High Tech Computer Corp., H.T.C. (B.V.I.) Corp., HTC USA, Inc., Deutsche Telekom AG, T-Mobile International AG & Co. KG, and T-Mobile U.S.A., Inc. alleging infringement of the '459, '219, '010, and

23

'899 patents. (*St. Clair Intellectual Property Consultants, Inc. v. LG Electronics, Inc.*, Civil Action No. 04-404-JJF.) This action is presently stayed.

9.9     There have not been any court or agency proceedings related to the Roberts patents other than those listed in this section.

## 10.     REQUEST FOR RELIEF

WHEREFORE, by reason of the foregoing, Complainant St. Clair requests that the United States International Trade Commission:

(a)     Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to violations of that section based on the importation into the United States, sale for importation, and/or the sale within the United States after importation, by Eastman Kodak Company, its affiliates, subsidiaries, successors, or assigns of digital cameras covered by or infringing one or more claims of U.S. Patent Nos. 5,138,459; 6,094,219; 6,233,010; 6,323,899; and 6,496,222;

(b)     Set a target date of not more than 12 months for completing the investigation;

(c)     Schedule and conduct a hearing pursuant to Section 337(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, for purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337, and following the hearing, determine that there has been a violation of Section 337;

(d)     Issue a permanent exclusion order pursuant to 19 U.S.C. § 1337(d) excluding entry into the United States of digital cameras covered by or infringing one or more of claims U.S. Patent Nos. 5,138,459; 6,094,219; 6,233,010; 6,323,899; and 6,496,222;

(e)     Issue a permanent cease-and-desist order pursuant to 19 U.S.C. § 1337(f) prohibiting Eastman Kodak Company, their affiliates, subsidiaries, successors, or assigns from engaging in the importation, sale for importation, marketing (including via the Internet or

24

electronic mail), offering for sale (including via the Internet or electronic mail), distribution, the

sale after importation (or otherwise transferring within the United States), and providing or

offering marketing, sales, or any engineering or technical support services related to all

unlicensed digital cameras covered by or infringing one or more claims of U.S. Patent Nos.

5,138,459; 6,094,219; 6,233,010; 6,323,899; and 6,496,222; and

(f) Issue such other and further relief as the Commission deems just and proper under the

law, based upon the facts determined by the investigation and the authority of the Commission.

Dated: January 19, 2007                    Respectfully submitted,

Ronald J. Schutz (PTO No. 32491; MN Bar No. 4130849)
Becky R. Thorson (MN Bar No. 254861)
Carrie M. Lambert (MN Bar No. 314067)
Bruce D. Manning (MN Bar No. 0312289)
David B. Zucco (MN Bar No. 0339799)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

MP3 20206709.1

*ATTORNEYS FOR ST. CLAIR INTELLECTUAL
PROPERTY CONSULTANTS, INC.*

## VERIFICATION OF COMPLAINT

I, Edmund M. Chung, President of St. Clair Intellectual Property Consultants, Inc., for and on behalf of St. Clair Intellectual Property Consultants, Inc., declare under penalty of perjury, in accordance with 19 C.F.R. §§ 210.4(c) and 210.12(a), that the following statements are true:

1.    I am duly authorized to execute this verification.

2.    I have read the foregoing Complaint and am familiar with the allegations and statements contained therein.

3.    To the best of my knowledge, information and belief, founded after reasonable inquiry, the allegations and other factual contentions in the Complaint are well grounded in fact, have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation for discovery.

4.    To the best of my knowledge, information and belief, founded after reasonable inquiry, the allegations, statements, and legal contentions made in the Complaint are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

5.    The foregoing Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed this 16 day of January, 2007.

Edmund M. Chung

26