# EXHIBIT E

```
 1            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                 IN AND FOR THE COUNTY OF SANTA CLARA
 3            BEFORE THE HONORABLE SOCRATES PETER MANOUKIAN, JUDGE
 4                              DEPARTMENT NO. 7
 5                                  --oOo--
 6
 7    EASTMAN KODAK COMPANY, et al.,    )
                                        )
 8        Plaintiffs,                   )
                                        )
 9    VS.                               )  CASE NO.
                                        )  1-05-CV039164
10    JERRY A. SPEASL, et al.,          )
                                        )
11        Defendants.                   )
                                        )
12    _____    )
                                        )
      AND RELATED CROSS-ACTIONS.        )
13    _____    )
14
15                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                        HELD ON AUGUST 18, 2006
17
18
19
20    A P P E A R A N C E S:
21    FOR THE PLAINTIFF:          CAROLINE McINTYRE
                                  ERIC WARD
22                                ATTORNEYS AT LAW

23    FOR THE INDIVIDUAL
      DEFENDANTS:                 LARRY BRENT GARRETT
24                                ATTORNEY AT LAW

25    FOR ST. CLAIR               ROBERT J. SCHUTZ
      INTELLECTUAL PROPERTY       JAMES MOORE
26    CONSULTANTS:                ATTORNEYS AT LAW

27    OFFICIAL COURT REPORTER:    GEORGEANN M. WILES, CSR
                                  LICENSE NO. 10339
28
```

COPY

Copying Prohibited Pursuant to GC 69954(d)

2

1  SAN JOSE, CALIFORNIA                    AUGUST 18, 2006
2                       PROCEEDINGS:
3          THE COURT: Matter of line 4, Mirage -- Kodak
4  versus Speasl. Or Mirage.
5          Starting from my left, appearances, please.
6          MS. McINTYRE: Good morning, Your Honor. Caroline
7  McIntyre for Plaintiff Eastman Kodak Company.
8          THE COURT: Yes.
9          MR. WARD: Eric Ward, Your Honor, for Kodak and
10 also Mirage.
11         THE COURT: Okay.
12         MR. SCHUTZ: My name is Ron Schutz. And I am
13 counsel for St. Clair Intellectual Property Consultants.
14         MR. GARRETT: Your Honor, Larry Garret5,
15 O'Melveny & Myers, counsel for the individual defendants.
16         MR. MOORE: Your Honor, I'm James Moore of Thelen
17 Reid & Priest, and I'm counsel for St. Clair.
18         THE COURT: Oh, so --
19         MR. MOORE: I'm local and Mr. Schutz is lead
20 counsel.
21         THE COURT: Okay.
22         There is no issue about filing the records under
23 seal. So that will be granted.
24         The motion to compel third party Wilmer Hale's
25 further responses is continued to September 22 by stip and
26 order. And what time did I assign it for, do you remember?
27         MR. MOORE: I think that's on the 10 a.m., Your
28 Honor.

Georgeann M. Wiles, CSR

Copying Prohibited Pursuant to GC 69954(d)                    3

1    MS. McINTYRE: I believe that's correct.
2    THE COURT: Okay. 10 o'clock.
3    Okay. Then, let me take up the motion to compel --
4 Plaintiffs' motion to compel Defendants' Speasl, S-P-E-A-S-L,
5 Roberts, Chikosky, C-H-I-K-O-S-K-Y, and St. Clair
6 Intellectual Property Consultants' further responses to first
7 set of discovery. Who wants to speak to that first?
8    MR. SCHUTZ: Your Honor, the --
9    THE COURT: Mr. Schutz, go ahead.
10    MR. SCHUTZ: Yes, Your Honor, thank you.
11    In the Court's tentative ruling it stated that we
12 waived interposing an objection under 2019. And I'd like to
13 point out a handful of things. First of all, Your Honor,
14 there was never in any meet and confer an assertion by the
15 plaintiffs that we waived our right to interpose this
16 objection. And that in their opening brief they did not
17 raise waiver as a basis to prevent us from interposing this
18 objection. It was only in their reply brief that they
19 brought it up.
20    In the Court's order, the Court cites the practice
21 guide and two cases for what appears to be some general
22 proposition that if an objection is not interposed, it cannot
23 be added at a later time. However, if you look at the
24 two cases that are cited in the practice guide and in which
25 appear in the Court's tentative order, those cases involve
26 issues of privilege, Your Honor. One of the cases involved
27 the attorney-client privilege. And what the court held in
28 that case was that if you fail to object on the

Copying Prohibited Pursuant to GC 69954(d)                    4

1   attorney-client privilege initially, you cannot later then
2   interpose the attorney-client privilege.
3          In the other case cited it involved what the Court
4   con -- classified as a trade secret action. And it was like
5   this: The defendant did not want to produce documents
6   claiming that they were trade secrets. And so it was an
7   issue of whether these documents had some type of privilege
8   attached to them. Again, the court held you can't interpose
9   a privilege objection like that.
10         There's no case, and none has been cited, that
11  deals with the issue of defining a trade secret to shake the
12  scope of discovery. And when we objected on the basis of
13  2019, it's basically just a variation of a relevance
14  objection or a burden objection. Because they defined it
15  trade secret in a fashion that it is going to govern
16  discovery going forward and without enough specificity.
17         THE COURT: Okay.
18         MR. SCHUTZ: So on the waiver issue, judge, there
19  is no case law to support waiver under these circumstances.
20  Even the defendants -- excuse me, even the plaintiffs at the
21  meet and confer stage do not believe that we waived it. Even
22  their initial brief does not believe we waived it because we
23  never raised it. It was only this last-minute waiver.
24         And again, if I may, Your Honor, then I'd like to
25  address the merits. I don't know if you want to --
26         THE COURT: Let me hear from Ms. McIntyre and
27  Mr. Ward on the waiver issue.
28         MR. WARD: Excuse me. Eric Ward.

Copying Prohibited Pursuant to GC 69954(d)                5

1       I think that the case law issue that Mr. Schutz
2  raised goes in both directions. That is, there is no case
3  out there that suggests that a 2019 objection is not
4  waiveable. And I believe, Your Honor, that when you look at
5  the purpose of Section 2019, it actually is similar to the
6  kinds of objections or privileges that were raised in the two
7  cases that are cited.
8       I might note, Your Honor, that this objection is --
9  this 2019 objection, is the primary reason that the
10 individual defendants have not disclosed a single document in
11 this case in the eight months that discovery has been
12 ongoing. And to focus on that one objection, I think raises
13 it at least to the realm of a privilege and the case law that
14 you cited in the tentative ruling is analogous to the
15 situation that we have here.
16      THE COURT: My observation is this, that insofar as
17 2019 is concerned on the trade secrets, there is no case one
18 way or the other. But isn't it true, generally, in legal
19 practice that if a right is not asserted it's deemed waived?
20 Now, you -- you know, like an objection during trial.
21 Question is asked, hearsay answer is given. If nobody
22 objects, it stands. Why shouldn't that apply to trade
23 secrets?
24      MR. SCHUTZ: Your Honor, I think as a general
25 proposition what you state is true; however, that's not the
26 situation here. If look at the cases that deal with
27 privilege, if you step back and say, there's a request for
28 documents and there's not an objection of some type, but no

Copying Prohibited Pursuant to GC 69954(d)                    6

1  privilege objection is interposed, and later, further
2  objection is interposed, that the cases cited are
3  fundamentally different than this situation.
4       Our situation was, they asked for documents, we
5  interposed several objections.  One of which, Your Honor, I
6  think this is important to keep in mind, was that at the time
7  there were various motions pending to have the case stayed
8  because there's related litigation in Delaware federal court,
9  and we said, among other things, that it's not timely.  We
10 don't think we should have to respond until the issue is
11 decided of which case is going forward because at that time
12 it wasn't clear whether the case in California was going to
13 be stayed; the court had not ruled on that.
14      Subsequently, after the court ruled on the motion
15 to stay, we interposed an objection on 2019.  So it's not as
16 if, Your Honor, you know, the first time around we said, you
17 know, we've got all that -- although we did interpose some
18 additional objections, and I would like to point that out.
19      So if you couple the procedural posture when the
20 first round of objections came with this, Your Honor, we
21 objected in addition to the procedural posture objections, we
22 objected on grounds of undue burden and relevance.  2019 is
23 not a new objection or a different objection.  It's just
24 really more specificity, perhaps, as to why the documents
25 don't have to be produced because of relevance issues, but
26 they haven't defined it.  It's a substantially different
27 situation than interposing the new objection of privilege.
28      THE COURT:  Let me digest that for a second.

Georgeann M. Wiles, CSR

Copying Prohibited Pursuant to GC 69954(d)                    7

1  Getting past waiver -- hang on.
2  Let's put the waiver issue aside and because I'm
3  going to have to look at this again. I know that there's no
4  case. I looked.
5  MR. WARD: Right.
6  THE COURT: Couldn't find one. And generally, the
7  default is that if something is not asserted, it's waived,
8  but getting past that.
9  MR. WARD: If I might, Your Honor, I'm sorry to
10 interrupt.
11 THE COURT: Are your hands in your pocket?
12 MR. WARD: It was, but it's no longer.
13 THE COURT: Okay.
14 MR. WARD: Your Honor, the -- I would -- what one
15 thing that Mr. Schutz said I think is very important here,
16 and that is that when the defendants objected to the
17 interrogatories in the very first instance, it was not as
18 though they only objected on the procedural basis. There
19 were the standard objections that were contained in response
20 to each of the specific questions and document demands. And
21 so 2019 was not among those general objections that they
22 made. And there was a whole litany of them. So to suggest
23 that -- that they -- and I don't think Mr. Schutz said this,
24 but to suggest that there was simply a procedural objection
25 and no other objections were raised to the discovery is
26 incorrect. In fact, they preserved all of the other
27 objections by raising them at the time, unlike in this
28 situation.

Georgeann M. Wiles, CSR

 

Copying Prohibited Pursuant to GC 69954(d)                                  8

```
 1          THE COURT:  Okay.  But getting past that, I also go
 2  on to note that California law does not require that a
 3  2019.020 statement be so specific that plaintiff can point to
 4  a line number in defendants' patents.  I've not -- where is
 5  the authority for that?
 6          MR. SCHUTZ:  Can I -- I'd like to address that
 7  issue.
 8          THE COURT:  Sure.  Yes.
 9          MR. SCHUTZ:  It's important to understand that this
10  really isn't a trade secret case.  It's really about patents.
11          THE COURT:  They disagree with you.
12          MR. SCHUTZ:  Well, actually, they don't, Your
13  Honor.  Let me point that out.
14          THE COURT:  Okay.
15          MR. SCHUTZ:  Here's what we have here.  My client,
16  St. Clair, is the record owner of several patents.  We have
17  filed several patent infringement cases on these patents.  No
18  trade secrets case on the patents.  I've tried to verdict on
19  behalf of St. Clair these patents, and we've won a total of
20  $62 million.  We've also settled with several other
21  companies.  All as a result of trade secrets of patent
22  litigation.  What they want is that money or some portion of
23  that money or all of the money.  We're going to get into
24  that.  They don't want anything for trade secrets.  They want
25  the money that St. Clair has gotten for patent infringement,
26  and they're somehow trying to say very early on there was a
27  trade secret, then it turned into patent.  And they've
28  defined the trade secret, Judge, not in a way that's related
```

Copying Prohibited Pursuant to GC 69954(d)                             9

1   at least directly and clearly to the patent. And it's the
2   patent that's at issue here.
3           Judge, we've asked something very simple, very
4   simple, we've got the patents. They've read them. They've
5   read them maybe a dozen or a hundred times. They've can take
6   the patents. They can pick up a highlighter, and they can
7   say this patent, which has the individual defendants' names
8   on them as inventors, they can pick them up, and they can
9   point, yes, right here where they went to the patent offices
10  and this is our invention, that's the trade secret. And they
11  won't do it. I mean, it's easy.
12          They can sit there and say, here's what the
13  inventor said that they invented. We think that's the trade
14  secret and they can highlight it. And then we can very
15  clearly know exactly what they are. But they got this broad
16  statement out there that really doesn't give us any
17  specificity about how that ties into what really is at stake
18  here. The patent's what generated the money. The trade
19  secret generated zero money.
20          THE COURT: What about that?
21          MR. WARD: Well, Your Honor, we're mixing things up
22  here quite significantly. The inventors, the three
23  individual defendants, conceived of an idea while employed by
24  Mirage under an employment contract which obligated them to
25  disclose the idea to Mirage and also assign the idea to
26  Mirage. Neither of which they did.
27          The important thing about the trade secret is that
28  it was a concept at the time. It eventually -- that concept

Georgeann M. Wiles, CSR

Copying Prohibited Pursuant to GC 69954(d)                    10

1  was eventually reduced to practice and patented. And at the
2  time it was patented, it became, by law, a matter of general
3  knowledge and no longer a trade secret. But for the period
4  of time that the inventors had the idea and they developed
5  it, which resulted in the patent, it was a trade secret. We
6  didn't know about it. It's unusual in trade secret law
7  because typically the plaintiff knows what the trade secret
8  is and it's misappropriated, taken from them, like a customer
9  list.
10         THE COURT: Sure.
11         MR. WARD: Or that sort of thing.
12         Here we had no idea of what it was. So we had to
13 define what we knew as of 1989 to 1992. What we've done is
14 described that idea in a way that's very specific. In fact,
15 the inventors know what they took. They used the same
16 terminology in their discovery requests to us. They knew
17 what it was. And as the Court pointed out in the tentative
18 ruling, it is not our obligation to go through and describe
19 in minute detail what the trade secret consists of.
20         THE COURT: Okay. Next point.
21         MR. SCHUTZ: Your Honor, may I respond?
22         THE COURT: Go ahead. I have the issue in mind.
23 I'm going to have to look at this again. Go on to the next
24 point.
25         MR. SCHUTZ: Briefly, Your Honor. Again, this is
26 an unusual dispute about defining trade secret. We're not
27 asking them to do something difficult. Because what the
28 inventors came up with they disclosed in their patent

 

Copying Prohibited Pursuant to GC 69954(d)            11

1  application, it issued it a patent. All the words are right
2  here. We're not asking them to do any real work. All they
3  have to do is say, okay, it's all written down here. See
4  these lines or see these columns numbers, that's what we they
5  have to define as trade secrets.
6       Judge, this is a unique case. You won't find any
7  case law that will provide guidance that's particularly
8  helpful on these issues.
9       THE COURT: I know that. I have a book put out by
10 an education committee for judges on trade secrets and they
11 say just that. There's no -- there's no case on this matter.
12      MR. SCHUTZ: Again, we're not asking them to do
13 something that's difficult. It's already here. All they
14 have to do is say that patent which is where the money is.
15 That's what this whole thing is about. These parts of the
16 patent, that's what the trade secret was. That's all we're
17 asking, judge. Very simple.
18      MR. WARD: Then they already know the information,
19 judge. We had described it in precisely the way that Mr.
20 Schutz has described it to a jury. So, you know, what is
21 there not to know about what we're talking about?
22      MR. SCHUTZ: There are 12 columns, 12 columns of
23 single-spaced text in the patent. They can go in there and
24 pick it out. They got one general sentence through which
25 they hope to drive a semi-truck, judge. And discovery isn't
26 about driving semi-trucks through holes.
27      THE COURT: Okay. Any other point that you wish to
28 argue on the merits?

Georgeann M. Wiles, CSR

 

1  MR. SCHUTZ: No, Your Honor. Thank you for hearing
2  me.
3  THE COURT: Ms. McIntyre, anything you want to add?
4  MS. McINTYRE: No, Your Honor.
5  THE COURT: Okay.
6  Mr. Garrett, Mr. Moore, anything?
7  MR. GARRETT: No, Your Honor.
8  MR. MOORE: No.
9  THE COURT: I'll take the matter under submission.
10 I just had a thought I want to double check. Actually, go
11 ahead.
12 MR. SCHUTZ: There is just one other issue in the
13 tentative we'd like to address, Your Honor. Sorry to
14 interrupt here.
15 THE COURT: Go ahead. That's why I was asking if
16 there was anything else. Go ahead.
17 MR. SCHUTZ: Are you ready? I didn't know if
18 wanted to make a note before I started.
19 THE COURT: Okay. Go ahead.
20 MR. SCHUTZ: There was another part of the
21 tentative, Your Honor, dealing with judicial notice.
22 THE COURT: Yes.
23 MR. SCHUTZ: They had requested certain testimony
24 that the Court take judicial notice of it.
25 THE COURT: Right.
26 MR. SCHUTZ: In the tentative you did.
27 They cited no support for the proposition that you
28 could take testimony under oath and enhance it and burnish it

 

Copying Prohibited Pursuant to GC 69954(d)                13

1  up --
2          THE COURT: I needed to clarify that. I don't know
3  whether it was true or not I can take notice that it was
4  said, but whether it's true or not that's another horse race.
5          MR. SCHUTZ: As long as there's a clarification on
6  that.
7          THE COURT: I need to add that. I normally do, and
8  I don't know why I didn't do it here.
9          So I'll just add, insofar of the existence of the
10 testimony but not of its truth.
11         MR. WARD: Thank you. That is what the law is.
12 We're in agreement with that, Your Honor. The point is, I
13 mean, Mr. Schutz referenced the patent infringement cases
14 that he's tried to verdict very successfully. To say that
15 the testimony in those cases have said that is irrelevant
16 would be incorrect. And I don't think that's what the
17 Court's saying. All we're dealing with is whether -- we know
18 they said it, whether it's true or not, we'll leave for
19 another day.
20         THE COURT: That's another horse race.
21         Okay. Anything else?
22         MR. SCHUTZ: No, Your Honor.
23         THE COURT: Okay, counsel. I'll take this under
24 submission, and I'll have this out by the end of the day.
25         MR. MOORE: Your Honor, one final question. I
26 apologize.
27         THE COURT: Yes, Mr. Moore.
28         MR. MOORE: I'm not sure what the practice is

 

Copying Prohibited Pursuant to GC 69954(d)                    14

         Mr. Schutz and others are pro hac vice.  Do you need local counsel to appear at all?
         THE COURT:  Yeah.
         MR. MOORE:  You do.
         THE COURT:  I prefer that only because something might happen and -- No. 1.  And No. 2, the bar rules sort of imply that by having the local contact point you're going be here.  I realize it might be duplication, but then, again, you know something about the local customs that Mr. Schutz might not.
         MR. MOORE:  Like putting my hands in my pockets, I wasn't aware of that.  Thank you, Your Honor.
         MR. SCHUTZ:  And I took his advise.
         **(Whereupon, a discussion was held off the record.)**
         **(Whereupon, the matter was adjourned.)**

 

### REPORTER'S CERTIFICATE

STATE OF CALIFORNIA    )
                       )  SS.
COUNTY OF SANTA CLARA  )

I, GEORGEANN M. WILES do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the above-entitled action held on the 18th day of August, 2006;

That I reported the same in stenotype to the best of my ability being the qualified and acting Official Court Reporter of the Superior Court of the State of California, in and for the County of Santa Clara, appointed to said court, and thereafter had the same transcribed into typewriting as herein appears.

I further certify that I have complied with CCP 237(a)(2) and that all personal juror identifying information has been redacted, if applicable.

Dated this 23rd day of August, 2006.

_____
GEORGEANN M. WILES, CSR
License No. 10339

Georgeann M. Wiles, CSR