Exhibit "1"



**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reexamination
of U.S. Patent No. 6,233,010
ROBERTS, et al.

Control No.: 90/006,437

Filed:     October 28, 2002

Art Unit:   2615

Examiner:   Brian C. Genco

Attorney Docket: 9329-001RXQ

| *Certificate of Mailing* |||
|---|---|---|
| *I hereby certify that this correspondence is being deposited in the United States Postal Service as express mail in an envelope addressed to: Director of the U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted on the date below.* |||
| *Typed or Printed Name:* Gordon K. Harris, Jr. | *Express Mail Label No.* ||
| *Signature* [signed] | *Date:* | August 22, 2005 |

Director of U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

### RESPONSE TO THE OFFICE ACTION MAILED JUNE 20, 2005

Sir:

    In response to the Office Action mailed June 20, 2005, please consider the following remarks and enclosures.

    **Remarks begin on page 2.**

## REMARKS

No claims have been amended. Claim 1 remains under reexamination.

**The Patent Owner Traverses the Examiner's Claim Construction**

The Patent Owner respectfully traverses the Examiner's claim interpretation. During reexamination, the Examiner is required to give claims their broadest reasonable interpretation without importing limitations from the specification. As stated in the Manual of Patent Examining Procedure ("M.P.E.P."):

> M.P.E.P. § 2258(I)(G) During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims (*In re Yamamoto*, 740 F.2d 1596, 222 USPQ 934 (Fed. Cir. 1984)).

The Patent Owner respectfully submits that the Examiner has failed to follow this directive on two counts. First, the Examiner has construed the claim term "computer format" more <u>narrowly</u> than reasonably necessary. Second, the Examiner's construction is inconsistent with the specification and the accompanying claim language itself.

The Patent Owner believes the Examiner has adopted an improperly narrow interpretation of the claims by reading limitations from the specification into the claims. The Examiner has construed the claim limitation "computer format" as "one of an IBM PC/Clone, Apple Macintosh, or other PC format" wherein the Examiner apparently believes that GIFF, TIFF, BMP, JFIF, etc. are not examples of such PC formats. (June 20 Action at 3.) The words "IBM PC/Clone, Apple Macintosh, or other PC format" do not appear in the claims, and the Examiner's apparent interpretation is thus narrower than the plain meaning of the words in the claims. The portion of M.P.E.P. § 2106 cited by the Examiner provides that claim language may be given a special and narrowed

definition based on the specification only when the patent owner has clearly set forth a definition that differs from ordinary meaning. The Patent Owner nowhere gave the phrase "computer format" a meaning that differs from the full and broad scope of ordinary meaning. It is believed that the Examiner has adopted a particular preferred embodiment to improperly narrow the scope of the phrase "computer format." The Patent Owner provided detailed argument to the District Court in the *Sony* and *Canon* litigations demonstrating the support in the specification for the District Court's claim construction in numerous *Markman* briefs (Pl.'s Opening Claim Constr. Br. (July 1, 2002) (*Sony*); Pl.'s Answering Claim Constr. Br. (Aug. 1, 2002) (*Sony*); Pl.'s Opening *Markman* Br. (Mar. 24, 2004) (*Canon*); Pl.'s Reply *Markman* Br. (Apr. 7, 2004) (*Canon*)).[1] The Patent Owner notes that the District Court confirmed the construction cited by Requester (from the *Sony* litigation) with a further and more detailed claim construction in the *Canon* litigation.

Litigation results aside, it is clear from the specification that image file format selection without reference to the brand of computer that will read the file is also an embodiment of the invention. See Column 2, lines 12-21 of the captioned patent undergoing reexamination, which reads:

> It is the object of this invention to provide an improved electronic still camera with operator selectable picture compression in one of a plurality of <u>operator selectable digital data formats</u> recordable on a standard removeable magnetic diskette common to personal computers.
>
> It is a further object of this invention to provide an improved electronic still camera that provides <u>digital image files for immediate</u>

---

[1] All documents cited in this Response are incorporated by reference and can be found in the binders of supporting material that accompanied the Patent Owner's Reply to the request for information pursuant to 37 C.F.R. 1.105 filed on February 18, 2005.

Case 1:04-cv-01436-JJF   Document 148-2   Filed 06/06/2008   Page 5 of 14

> and direct incorporation into popular word processing, desktop publishing, and other software programs on PCs.

And Column 9, lines 50-53, which reads:

> The Huffman coded image signals are then formatted into a form that facilitates format processing into various PC compatible formats (GIFF, PICT2, etc.).

And Column 11, lines 1-6, which reads:

> [T]he output of the image compression processor (12) is routed to the RAM memory (24) where the compressed image is formatted for either the PICT II or GIFF format depending on the setting of format switch (17). It should be noted that a large number of image formats for PCs exist.

The specification describes in the "BACKGROUND OF THE INVENTION" section that the camera provides a "digital image in a format compatible for immediate use with word processing, desktop publishing, data base, and multi-media applications." Col. 1, ll. 29-32. It is clear that the "format" is "compatible" for software applications such as word processing, desktop publishing, and multi-media applications. Such applications require file formats such as GIFF and PICT. In particular, the specification teaches that in one embodiment "formatting" in an "image file format" such as GIFF or PICT II is a step that occurs before the data are written into the disk input/output interface. *See* Col. 4, ll. 54-63. One of skill in the art realizes that at least in some embodiments formatting as disclosed is the arrangement of digital image data into an image file format such as GIFF or PICT II independent of the brand of computer that may ultimately read the file. Such a GIFF or PICT II file could, at the time of the application, be read on an IBM or a Macintosh computer.

It is therefore reasonable to construe the claims without reading a limitation as to the brand of computer that will read the file into the claim language. In the specification

taken as a whole, Switch 17 is disclosed to select any of the following: disk format (Fig. 12) image file format (Fig. 2A flag 57; Fig. 6B; Col. 2, ll. 12-21; Col. 9, ll. 50-53; Col. 11, ll. 1-6.) and disk format plus image file format (Col. 11, l. 57-Col. 12, l. 3). Additionally, the disk can be formatted in the Roberts et al. camera before ever taking a picture. *See* Fig. 12 where "PERFORM FORMAT INITIALIZATION" is indicated. One can observe from this figure, moreover, that the user could format a disk in the Roberts et al. camera, remove it, and use it later. In summary, in the Roberts et al. camera, disk formatting and file formatting are discrete and separable operations.

**REJECTION UNDER 35 U.S.C. §102(a).**

Claim 1 stands rejected under 35 U.S.C. §102(a) as being anticipated by WO 90/09717 to Kühberger. The rejection is respectfully traversed.

The Patent Owner appreciates the Examiner's confirmation that Claims 3 and 4 in the co-pending reexamination of related U.S. Patent No. 6,323,899 are allowable over the prior art of record. In stating the reasons for patentability and/or confirmation, the Examiner noted that "Kühberger does not disclose to select one of a plurality of computer formats." (June 20 Action at 5.) Claim 1 of the '010 patent is limited to "formatting [the] digital image signal in one of a plurality of computer formats." The Patent Owner submits that the "plurality" of computer formats in Claim 1 necessarily involves selecting at least one format from at least two formats. Accordingly, Claim 1 of the captioned patent undergoing reexamination is allowable for at least the same reasons as '899 Claims 3 and 4.

Under the Examiner's claim interpretation or under the District Court's claim interpretation, Claim 1 is not anticipated by the "Kühberger" reference (PCT Int'l Pub.

WO 90/09717) because Kühberger does not disclose every claim element. "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." M.P.E.P. § 2131 (quoting *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987)). Kühberger is not a "digital camera" as required by Claim 1. Kühberger instead discloses an analog video capture system tethered to a microcomputer. This distinction is important. While component by component, the video capture system of Kühberger contains a lens/CCD capture box, an external analog digital converter box, an external control unit box with LCD menu screen, and a separate microcomputer, these aggregated components cannot be fairly described as a self-contained "digital camera" in a single housing. These aggregated components are collected and used on a desktop, whereas in the Roberts et al. invention, as found by the District Court, all the processing takes place inside the camera.[2]

In contrast to the lack of any limiting definition of "computer format," the specification and file history make expressly clear that all of the elements of the Roberts et al. device patents are found in a single housing. Specifically, during prosecution of related U.S. Patent No. 6,094,219, the applicants distinguished various prior art systems by describing the claimed invention as follows: "The claimed device instead stores a plurality of computer-ready digitized images on removable mass memory elements in the device housing." Amend. C, Paper No. 13 at 8. During prosecution of related U.S. Patent No. 5,576,757, the applicants described their improvement as "eliminat[ing] the need for a physical connection or tether from the camera to the device

---

[2] The Table of Discussed Citations submitted as part of the Patent Owner's Reply to the request for information pursuant to 37 C.F.R. 1.105 filed on February 18, 2005 details where the Kühberger reference was discussed in litigation. These discussions are incorporated by reference.

or unit." Amend. D, Paper No. 17 at 12. These statements are consistent with the specification in that a stated object of the invention is to "provide an electronic still camera that is efficient in design and permits extended periods of <u>portable</u> operation . . . ." Col. 2, lines 59-61. Indeed, "[t]he digital diskette is removable <u>inserted into the housing</u> of the camera prior top [sic] use in recording digital image data." Abstract of related U.S. Patent No. 5,138,459.

The camera of the claims is a self-contained, portable camera that includes all of the claimed structure and performs all of the processes in a single housing. The computer-tethered video capture system of Kühberger seems to operate much like a desktop scanner in that images are generated and formatted by a desktop computer to which the scanner is attached. The Patent Owner thus asserts that Kühberger does not disclose a "digital camera." Because Kühberger does not teach every limitation of this claim, it cannot anticipate.

Additionally, Claim 1 is not anticipated by Kühberger because Kühberger's disclosure is inadequate, internally contradictory, and non-enabling. "The disclosure in an assertedly anticipating reference must provide an enabling disclosure of the desired subject matter; mere naming or description of the subject matter is insufficient, if it cannot be produced without undue experimentation." M.P.E.P. § 2121.01 (quoting *Elan Pharm., Inc. v. Mayo Foundation for Medical and Education Research*, 346 F.3d 1051, 1054, 68 USPQ2d 1373, 1376 (Fed. Cir. 2003)). Because of its mistakes and non-enablement, one of skill in the art could not make and use the Roberts et al. invention based on the Kühberger disclosure. Specifically, the Kühberger figures show that the microcomputer (9) pictured is outside the flow of image data (i.e., the thick arrows).

(Kühberger translation at 13-14.)[3] The figures indicate that microcomputer (9) controls the aggregated equipment, but does not participate in processing of digitized data. Figures aside, Kühberger lacks sufficient detail for one skilled in the art to make the system described. The description of Kühberger is particularly confusing in the description of the CCD/scanner device depicted in the figures. (*Id.* at 7.) There is a CCD (4) and a scanner (5) and the functional relationship between them, if any, is unclear. At best, the teachings are sketchy. At most, the disclosure suggests a video capture system and invites the reader to provide the necessary details on how to make and use the suggested system. More importantly, it certainly does not teach how to make and use the Roberts et al. claimed invention.

The arguments above distinguish Claim 1 over Kühberger regardless of the claim interpretation applied. The Patent Owner believes that Claim 1 is patentably distinguishable over Kühberger without acquiescing on claim interpretation and that Claim 1 is in condition for confirmation of patentability.

In the alternative, the Kühberger reference is not prior art. The Patent Owner submits herewith Declarations of the inventors pursuant to 37 C.F.R. §1.131. Because the Kühberger reference is not a statutory bar under 35 U.S.C. §§102(b), (c), or (d), the Patent Owner can overcome a 35 U.S.C. §102(a) rejection by swearing back of the reference. M.P.E.P. §§ 715 et seq. The attached Declarations show that the inventors conceived of their invention in the United States prior to the August 23, 1990 publication date of the Kühberger reference, and that the inventors then diligently worked to reduce

---

[3] The translation cited is that provided by the Requester and used by the Examiner. The Patent Owner does not necessarily agree with this translation and notes that other translations are available, including the translation submitted to the Patent Office by the Patent Owner.

their invention to practice by filing their parent application No. 07/615,848 on November 20, 1990. Accordingly, Kühberger is not available as prior art.

As a final matter, the Patent Owner wishes to note that two prior information submissions by the Patent Owner have not been addressed by the Examiner. The first is an Information Submission submitted December 17, 2003 including 26 sheets of Form 1449 listing U.S. and foreign patent documents and other documents. This submission was acknowledged by the Office as "IDS #4" in its Decision Granting Request For Reconsideration and Requiring Information Pursuant to 37 C.F.R. 1.105. The second is an Information Submission submitted May 5, 2005 with 14 pages of Form 1449 listing U.S. and foreign documents and other documents. Receipt of this submission by the Office was acknowledged by return postcard date stamped May 6, 2005, copy attached.

The Examiner is requested to consider the information in both these submissions and acknowledge same by returning initialed copies of the Forms 1449 therefor.

The Patent Owner therefore requests issuance of a Reexamination Certificate confirming patentability of Claim 1.

Dated: *August 22, 2005*

By: *[signature]*
Gordon K. Harris, Jr.
Reg. No. 28615
Attorney for Patent owner

HARNESS, DICKEY & PIERCE, P.L.C.
P.O. Box 828
Bloomfield Hills, Michigan 48303
(248) 641-1600

Exhibit "2"

**In The Matter Of:**

*St. Clair Intellectual Property Consultants   v.*
*Sony Corporation, et al.*

*Trial Volume Number 5*
*February 14, 2003*

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697    FAX: (302) 658-8418*

Original File 2141.V1, 206 Pages
Min-U-Script® File ID: 0649919667

**Word Index included with this Min-U-Script®**

St. Clair Intellectual Property Consultants   v.  
Sony Corporation, et al.

Trial Volume Number 5  
February 14, 2003

[9] Q: So let me put this in a very general way, [10] and you've read the Roberts patent?

[11] A: Yes.

[12] Q: Okay. Could you — I guess a good word [13] for you would be could you grade my order in a [14] candid way? In other words, the parties present [15] to the judge words in the patent that they say [16] require construction or interpretation. So then [17] they make a presentation as you know and then the [18] judge decides what he or she thinks the words in [19] the context of the patent mean.

[20] And so this is what I said the words [21] that were in dispute meant. This is how I [22] construed them.

[23] A: Sure. This actually came up during a [24] deposition, something I had talked to the lawyer

Page 880

[1] about and thought a little bit about myself, and

[3] Q: So if you think I got it right, tell us [4] that and why. If you think I got it wrong, tell [5] us that and why.

[6] A: The conclusion I come to, especially for [7] number two, your number two is much more relevant [8] to what I'm talking about than number one is, and [9] it's a subset of number one, anyways.

[10] For number two, there are a variety [11] of different ways to define image file format, [12] just to give another example that's very far [13] afield from this, is we often, you know, sitting [14] with my colleague, we might think of an image file [15] format in terms of what it takes to turn a JPEG [16] into a GIF, the actual software or hardware that's [17] going to

| Trial Volume Number 5 | St. Clair Intellectual Property Consultants v. |
| February 14, 2003 | Sony Corporation, et al. |

do that conversion, is that something [18] that has to under how a JPEG is imaged and how a [19] GIF is arranged in order to do the translation, so [20] the argument is that if you don't understand [21] French and German, then it's like that, that way [22] you understand the languages. I may have used [23] something like that to talk about the algorithm [24] rather than what you did.

Page 881

[1] I'm comfortable with it, with any of [2] these constructions. I didn't feel that your [3] construction got in my way of thinking about. [4] There was no point in doing my work on the case [5] where I said if only the judge had done this [6] rather than that, things would have been easier at [7] this point. If you were a Princeton sophomore and [8] wrote this definition description, I would [9] probably give you an A minus.