# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC.,

          Plaintiff,

      v.

SAMSUNG ELECTRONICS CO., LTD.,
ET AL.,

          Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

PUBLIC - REDACTED VERSION

C.A. No. 04-1436-JJF-LPS

**JURY TRIAL DEMANDED**

---

**PLAINTIFF ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.'S
COUNTER-STATEMENT CERTIFYING THAT GENUINE ISSUES OF MATERIAL
FACT EXIST PRECLUDING NOKIA'S MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOs. 6,094,219, 5,138,459,
and 6,323,899**

SEITZ, VAN OGTROP & GREEN, P.A.

*Of Counsel:*
Ronald J. Schutz, Esq.
Jake M. Holdreith, Esq.
Becky R. Thorson, Esq.
Carrie M. Lambert, Esq.
Annie Huang, Esq.
Seth A. Northrop, Esq.
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

George H. Seitz, III. (# 667)
gseitz@svglaw.com
Patricia P. McGonigle (# 3126)
pmcgonigle@svglaw.com
Jared T. Green (#5179)
jtgreen@svglaw.com
SEITZ, VAN OGTROP & GREEN
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

*Attorneys for Plaintiff St. Clair Intellectual
Property Consultants, Inc.*

# TABLE OF CONTENTS

Page

I.    Introduction...................................................................................................................... 1

II.   Background ....................................................................................................................... 1

III.  Disputed Material Facts ................................................................................................... 2

    1.    Claims 3 and 4 of the '899 Patent..................................................................... 3

    2.    Claims 10 and 12 of the '219 patent .................................................................. 8

        a.    "Removably mounted memory means"..................................................... 8

        b.    "Output data format control means" ....................................................... 11

        c.    "Logic means" ......................................................................................... 16

    3.    Claim 16 of the '459 patent .............................................................................. 17

        a.    Ordering of steps..................................................................................... 17

        b.    "Recording in selectable addressable memory means" ............................ 19

IV.   Conclusion ..................................................................................................................... 20

81463331.1

# TABLE OF AUTHORITIES

Page

## Cases

Al-Site Corp. v. VSI Int'l, Inc.
174 F.3d 1308 (Fed. Cir. 1999)................................................................................ 14

Amgen Inc. v. Hoechst Marion Roussel, Inc.
314 F.3d 1313 (Fed. Cir. 2003)............................................................................ 3, 6

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986)................................................................................................ 8

Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.
145 F.3d 1303 (Fed. Cir. 1998)............................................................................. 13

Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.
424 F.3d 1293 (Fed. Cir. 2005)............................................................................. 10

Golight, Inc. v. Wal-Mart Stores, Inc., v. Innovative Int'l (H.K.) Ltd.
355 F.3d 1327 (Fed. Cir. 2004)............................................................................. 12

Hap Corp. v. Heyman Mfg. Co.
311 F.2d 839 (1st Cir. 1962).................................................................................. 9

Hearing Components, Inc. v. Shure Inc.
___ F.3d ___, 2009-1364, 2010 U.S. App. LEXIS 6726 (Fed. Cir. Apr. 1 2010)....... 11, 14, 15

High Tech Medical Instrumentation v. New Image Indus.
49 F.3d 1551 (Fed. Cir. 1995)............................................................................. 8, 9

Johnson Worldwide Assocs., Inc. v. Zebco Corp.
175 F.3d 985 (Fed. Cir. 1999)............................................................................... 19

Mass Engineered Design, Inc. v. Ergotron, Inc.
633 F. Supp. 2d 361 (E.D. Tex. 2009) .................................................................... 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (U.S. 1986)........................................................................................ 1

Minks v. Polaris Indus.
546 F.3d 1364 (Fed. Cir. 2008)............................................................................. 14

Odetics, Inc. v. Storage Tech. Corp.
185 F.3d 1259 (Fed. Cir. 1999)............................................................................. 11

Welker Bearing Co. v. PHD, Inc.
550 F.3d 1090 (Fed. Cir. 2008)............................................................................. 14

## Statutes

Federal Rule of Civil Procedure 56(c) ...................................................................... 1

81463331.1

## I. Introduction

Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair"), pursuant to Paragraph 11 to this Court's Rule 16 Scheduling Order and April 29, 2010 order, hereby submits the following Counter-Statement certifying that a genuine issue of material facts exist related to Nokia's Motion for Partial Summary Judgment of Noninfringement of U.S. Patent Nos. 6,094,219 ("the '219 patent"), 5,138,459 ("the '459 patent"), and 6,323,899 ("the '899 patent").[1] Nokia has failed to demonstrate that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). Accordingly, Nokia has not met its burden and partial summary judgment is not appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (U.S. 1986).

Nokia's arguments for partial summary judgment are based on claim construction arguments Nokia never raised, strained readings of this Court's ultimate Claim Construction order, and an incorrect legal framework, as St. Clair would show if the factual record were undisputed. Full briefing is unnecessary, however, because Nokia has failed to establish that there are no disputed material facts related to noninfringement, even if Nokia's incorrect legal theory were accepted.

## II. Background

On November 25, 2008 this Court entered its Rule 16 Scheduling Order. (D.I. 166.) Within that order this Court outlined its procedure for addressing disputed claim terms. (*Id.* at ¶ 12.) Pursuant to that order, the parties exchanged claim terms each believed needed construction and their proposed construction of those terms on March 27, 2009. On April 9, 2009 the parties

---

[1] Nokia is not seeking partial summary judgment of St. Clair's claims of infringement of U.S. Patent No. 6,233,010 ("the '010 patent).

submitted their Joint Claim Construction Chart to the Court. (D.I. 248.) The parties conducted extensive briefing on the issue of claim construction and this Court heard argument on the issue. The Court entered its *Report and Recommendation Regarding Claim Construction* on November 13, 2009, (D.I. 531), and the Court adopted the Report and Recommendation on February 24, 2010. (D.I. 719.)

St. Clair first provided Nokia infringement contentions on January 15, 2009. (Ex. 1.)[2] Since then, St. Clair has provided Nokia numerous updated infringement contentions as discovery became available. (*See, e.g.,* Ex. 2.) St. Clair served the infringement report of Thomas A. Gafford on January 11, 2010. (Perry Decl. Ex. 4, Gafford Report.) Within that report St. Clair asserted infringement of claim 1 of the '010 patent, claims 3 and 4 of the '899 patent, claims 10 and 12 of the '219 patent, and claim 16 of the '459 patent. Attached to Mr. Gafford's report were 3,934 pages of detailed claim charts providing the evidentiary basis for St. Clair's claims of infringement against the accused Nokia products.[3] These charts contained both detailed product-specific evidence along with exemplary testimony by Nokia's 30(b)(6) witnesses. St. Clair has also provided Nokia extensive written discovery responses detailing its claims of infringement. (*See, e.g.,* Ex. 5 at 7-9, 12-29.)

### III.    Disputed Material Facts

A genuine issue of material fact prevents partial summary judgment on all of the issues raised by Nokia. Even assuming Nokia's newly raised claim construction arguments are correct, and assuming Nokia's proposed legal framework for evaluating infringement is correct—both are not—numerous fact disputes exist which are material to resolving the question of infringement. Because these facts prevent partial summary judgment in favor of Nokia, it is

---

[2] "Ex. _" refers to exhibits attached to the Declaration of Jared T. Green, filed concurrently herewith.
[3] Examples of claim charts which accompanied Mr. Gafford's report are attached exhibits 3 and 4

proper to deny summary judgment based on St. Clair's Counter-Statement Certifying Disputed Material Facts.

### 1. Claims 3 and 4 of the '899 Patent

Nokia's assertion of noninfringement of the '899 patent is premised on two claim limitations it never sought during the claim construction procedure outlined by this Court. First, Nokia seeks to import a limitation that a "user" must make a selection of a file format, (D.I. 821, Nokia Opening Br. at 3.) Second, Nokia argues that user must make the selection of a file format with knowledge that he is selecting a specific file format, apparently by name. (*Id.* at 6.) Nokia, in an attempt to avoid infringement, merely invents limitations without reference to any language of the claims or intrinsic record. The asserted claims of the '899 patent do not contain the word "user" let alone recite a user knowing the name of the specific file format. Reading such a limitation into the claims would be improper. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003).

Resolving Nokia's newly identified claim dispute is, however, unnecessary to dismissing its motion for partial summary judgment. Even were the claims to be limited to a selection of file formats by a users who know they are selecting a file format, Nokia has failed to meet its burden to demonstrate no genuine issue of material fact.

REDACTED

REDACTED

4

In other words, users know that by selecting "still" they would get a different file format—a still file format—than they would get if they selected "video"—a video file format. The evidence supports a factual finding that what Nokia calls a "mode" selection is the selection of a file format.

REDACTED

format. The jury is best suited to resolve any dispute between the experts whether the selection of a mode is a selection between different file formats. More importantly, a reasonable jury could agree with Mr. Gafford's conclusion.

Nokia's own briefing also establishes a genuine issue of material fact as to whether a mode selection can be a selection of different file formats. In Defendants' Motion for Summary Judgment of Invalidity—signed by Nokia's counsel—Nokia incorrectly argues that the claims, as construed by the Court, are invalid over Konishi. (D.I. 817 at 1-2.) To make its invalidity argument, Nokia admits that Konishi discloses a "mode selection unit" which, as Nokia claims, "allows for a user selection between still and movie mode." *Id.* at 5. According to Nokia, "[t]he mode selection unit includes a physical switch . . . that allows for the selection between the still and movie modes, which then results in the incoming signals being routed to either of a still

image generator or video generator and ultimately results in data being stored in a still image format or a video format on a storage medium (105)." Although Nokia is wrong on anticipation and on claim constrction, its explanation of how Konishi allegedly works, in Nokia's view, is an admission that a "mode" selection of "still" or "movie" can be a selection of a file format.[4] Nokia can not maintain at the same time that a mode selection on Nokia's accused cameras can not be a selection of a file format. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."). That contradiction, by itself, highlights the disputed material fact: namely, whether a selection of still or video mode is a selection of file formats.

There is also a dispute as to whether users "know" they are choosing a file format. This factual dispute is material to determining whether Nokia's proposed new limitation of a "knowing selection" is met in the accused devices. Nokia's own brief concedes that the state of mind of the user is disputed by arguing a user "may never know the image file format of a captured still image or video." (D.I. 821 at 6 (emphasis added).) The term "may" is a simple concession that a user "may" know what the selection is.

REDACTED

---

[4] St. Clair disputes Nokia's explanation of how the Konishi device works, and in particular disputes that Konishi includes different file formats for reasons unrelated to the mode switch. St. Clair is relying on Nokia's factual admissions that a mode selection of still or movie can be a user selection of a file format, notwithstanding the parties' disputes over whether Konishi stores data in file formats and whether they are different. St. Clair has filed its response to Defendants' Motion for Summary Judgment on Invalidity separately.

Nokia's documents also show that Nokia informs its users that a selection of mode is a selection of file formats. Nokia's manuals provide evidence that a user would know that a mode selection is a selection of file formats. A reasonable jury could rely on these manuals to conclude a user "knows" what file format is being selected. For example, the user guide for the Nokia 6085 states that a user "can take photos or record video clips with the built-in camera. The camera produces pictures in JPEG format and video clips in 3GPP format." (Ex. 8, at NOKSC000025450.) The manual also instructs the user on how to select between these formats by choosing either "camera" or "video" mode, and indicates that the files are stored "in the phone memory or an attached microSD memory card." (*Id.* at NOKSC000025450-51.). Nokia's promotional materials also establish that Nokia directly informs users of its devices that they allow a selection of file formats. For example, one advertisement promotes the fact that the Nokia 6131 NFC has a camera that provides "Image capture: JPEG" and "Video capture: 3GPP format." (Ex. 9, at NOKSC000027727.) A reasonable jury could conclude that Nokia's informational materials sufficiently inform users that a selection of mode is a selection of a file format.

Within a footnote Nokia unsuccessfully attempts to create an undisputed fact by merely stating that St. Clair has not articulated the "process" associated with the selection element of the asserted '899 claims. (D.I. 821 at 3 fn. 3.) Nokia never describes what additional description of

REDACTED

Assuming, however, that Nokia believes some additional "process" should be read in as a

REDACTED

Because a reasonable jury could conclude that a selection of either a still or movie mode is a knowing selection of a file format by a user, summary judgment is improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 2. Claims 10 and 12 of the '219 patent

Nokia attempts to seek partial summary judgment on three claim elements of the asserted '219 claims: (1) removably mounted memory means; (2) output data format control means; and (3) logic means. Nokia has failed for each element to meet its burden of demonstrating a lack of dispute as to materials facts.

#### a. "Removably mounted memory means"

Nokia has failed to demonstrate a lack of dispute of material facts related to the removably mounted memory means element. Instead, Nokia misstates the applicable legal standard and then claims St. Clair's proof fails to meet that wrong standard. "A device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim . . . . [but] *if a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent.*" *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (emphasis added); *see also Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 377 (E.D. Tex. 2009). In relying upon *High Tech*, Nokia ignores that its

8

devices can still be found to infringe if they are designed to be altered or assembled and that device infringes the Patents-in-suit. Namely, "[t]he question is not what [a device] might have been made to do, but what it was intended to do and did do..." *High Tech,* 49 F.3d at 1555 (citing *Hap Corp. v. Heyman Mfg. Co.,* 311 F.2d 839, 843 (1st Cir. 1962)) (emphasis added). What the device was intended to do and did do is a factually intensive inquiry. Here, the record supports St. Clair's position that the accused Nokia devices were designed to be altered or assembled into an infringing device prior to operation.

First, there is a factual inquiry whether Nokia's devices are designed to be altered or assembled. *High Tech,* 49 F.3d at 1556. There is no dispute that Nokia devices accused of infringement of the '219 patent "have a socket where a memory card may be inserted and removed." (D.I. 821 at 7.) These removable memory sockets are designed to allow the accused

REDACTED

Second, there is a factual inquiry as to whether Nokia's promotional materials reference or instruct users how to alter or assemble the devices. *High Tech,* 49 F.3d at 1556. Nokia's promotional materials, such as its user manuals, reference altering the device to include

removable memory. For example, Nokia's user manual for the N96 device provides instruction on how to insert and remove memory cards, what types of memory cards to use, and even indicate that a "memory card may be already inserted into the device." (*See, e.g.*, Ex. 11 at NOKSC000065267-8.) The Nokia N96 manual also provides instructions on how to set where captured images should be stored. (*Id.* at NOKSC000065321-2.)

Nokia's reliance on *Cross Medical* is not persuasive. There, the question of whether the device was *designed to be altered or assembled* was not before the Court. In contrast, Medtronic argued it did not design the device to be assembled in an infringing manner and instructed surgeons not to place the device in contact with a bone, a requirement for creating an infringing apparatus. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). Cross medical, the patent owner, incorrectly asserted that "Medtronic need only make devices that are capable of being converted into infringing devices." *Id.* St. Clair is not merely asserting that the devices are capable of being converted. St. Clair claims that Nokia has designed its removable memory sockets for one purpose: to allow the insertion of memory cards. Nokia further instructs its users on how to complete the infringing device by telling users what type of memory card to use and how to use the card. A reasonable jury could conclude that Nokia's devices were designed to be altered or assembled and that the altered or assembled device infringes the Patents-in-suit. Summary judgment is therefore improper.

Putting Nokia's legal error aside, however, does not resolve the factual dispute. Nokia merely argues that Mr. Gafford "cites to no proof to support his premise that Nokia Inc. or Nokia Corporation actually sells all of the Accused Products accused of infringing this claim with a removable memory component." (D.I. 821 at 7 (emphasis added).) St. Clair need not show all devices are sold with removable memory. Nor does Nokia contend it sells no devices with

removable memory. In fact, they do. (*See, e.g.,* REDACTED Ex. 13 at NOKSC000063420.) Whether Nokia sells particular devices with removable memory is itself a factual inquiry that prevents summary judgment here.

### b. "Output data format control means"

Nokia's motion misstates this Court's claim construction and the applicable law related to the recited 'output data format control means." Assuming, however, that Nokia's incorrect reading of the Court's claim construction order and its incorrect citation of the applicable legal standards are correct, its motion should still be denied because Nokia has failed to show there is no genuine issue of material fact. St. Clair can prevail on its claim of infringement under § 112, P 6 by showing "the relevant structure in the accused device perform[s] the identical function recited in the claim and [is] identical or equivalent to the corresponding structure in the specification." *Hearing Components, Inc. v. Shure Inc.*, ___ F.3d ___, 2009-1364, 2010 U.S. App. LEXIS 6726 at \*28-30 (Fed. Cir. Apr. 1 2010) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)). There are genuine issues of material fact related to both issues.

First, a genuine issue of material fact exists whether Nokia practices the identical function. The Court has identified the recited function of the "output data format control means" of claim 10 of the '219 patent as "storing in said camera at least one of a plurality of different

REDACTED

11

REDACTED

Nokia's proposed limitation improperly reads limitations into the claims from the specification. *Golight, Inc. v. Wal-Mart Stores, Inc., v. Innovative Int'l (H.K.) Ltd.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004). This dispute, however, need not be resolved to dismiss Nokia's claim for summary judgment. Even under Nokia's proposed limitation, material facts are in dispute.

REDACTED

In light of the factual record, a reasonable jury could conclude that a correspondence exists between the mode codes and particular file formats.

There is also a genuine issue of material fact whether Nokia's devices contain identical or equivalent corresponding structure to the structure disclosed in the specification. Nokia does not disagree with Mr. Gafford's conclusion as to what constitutes the corresponding structure for the "output data format control means":

> Magistrate Stark has recommended that "output data format control means" as used in claim 10 of the '219 patent be construed as a means-plus-function element, with a function of "storing in said camera at least one of a plurality of different output data format codes," and a structure of a microprocessor programmed to perform the relevant portions of the algorithm recited in Figure 14B. Based on Magistrate Stark's Report and Recommendation, I understand the relevant portions of the algorithm recited in Figure 14B to be "write switch codes and other file info to header." (Perry Decl. 4 at 30.)

Nokia instead constructs an incorrect legal framework and then asserts there is no fact dispute within its incorrect framework. Nokia is wrong about the law and wrong about the issues of material fact that remain within its incorrect framework. Nokia's position is premised on two legal inaccuracies.[5] First, Nokia states that St. Clair "needs to identify exactly where in the specification of the Patents-In-Suit any alleged structural equivalents is disclosed." (D.I. 821 at

---

[5] Nokia's incorrect legal framework originates from a flawed reading of the Federal Circuit's decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303 (Fed. Cir. 1998). That case does not state that a patent must disclose the asserted equivalent structure and does not state that the equivalent structure must exist at the time of the invention. Instead, *Chiuminatta* addresses the difference in analyzing later-arising technology from technology that existed prior to the invention in the context of the doctrine of equivalents and equivalent structure. 145 F.3d at 1311. Nokia simply quotes *Chiuminatta* out of context to support its incorrect legal framework. (D.I. 821, Nokia Br. at 11.) The full quote provides this context:

> That is not the case here, where the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself. In such a case, a finding of non-equivalence for § 112, P 6, purposes should preclude a contrary finding under the doctrine of equivalents. This is because, as we have already determined, the structure of the accused device differs substantially from the disclosed structure, and given the prior knowledge of the technology asserted to be equivalent, it could readily have been disclosed in the patent. 145 F.3d at 1311.

13

12.) This is wrong. Under Section 112, the analysis asks first, what corresponding structure is disclosed in the specification, and second, whether the accused structure is identical *or equivalent* to what is disclosed in the specification. *Hearing Components,* U.S. App. LEXIS 6726 at \*28-30 (Fed. Cir. Apr. 1 2010). If a structure is disclosed in the specification, it is the corresponding structure. It is nonsensical for Nokia to suggest the specification must disclose the *equivalent.* By definition, the equivalent to the disclosed corresponding structure are not disclosed in the specification. For structure in Nokia's devices to be equivalent it need only "perform[] in substantially the same way to achieve substantially the same result as the structure disclosed in the . . . patent." *Minks v. Polaris Indus.*, 546 F.3d 1364, 1379 (Fed. Cir. 2008). Second, Nokia argues that equivalent structure "must have been equivalent at the time of the invention, November 1990." (D.I. 821 at 11.) This is also wrong. An equivalent structure under Section 112 P 6 "must have been available at the time of the *issuance of the claim*." *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099-1100 (Fed. Cir. 2008) (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999)) (emphasis added). For the '219 patent, that date is July 25, 2000.

Once again, the Court need not resolve these legal issues because assuming Nokia's legal framework as correct does not eliminate the genuine disputes of material fact. First, there is a dispute as to whether the "corresponding structure" set forth in the specification is identical or

REDACTED

14

REDACTED

This factual dispute—whether there is interchangeability between the identified structure and the equivalent structure—is an important factor in determining equivalence. *Hearing Components,* 2010 U.S. App. LEXIS 6726 at *28-29. Here, a reasonable jury could conclude at least that the infringing structure identified by St. Clair is a known or suitable substitute to the structure explicitly disclosed in the Patents-in-suit. Whether Nokia's infringing structure is interchangeable is thus a material fact that is in dispute.

The specification's disclosure of the GIF file format is also relevant to Nokia's constructed legal requirement that the structure be equivalent at the time of the invention. The question of whether the equivalent existed at the time of the invention is a factual inquiry. A reasonable jury could conclude both that the Patents-in-suit disclosed the structure St. Clair identifies as equivalent, and, could also conclude that because it was within the specification, that technology existed in November 1990.

    **c.    "Logic means"**

Nokia does not dispute that its devices perform the function identified by this Court. Nor does Nokia dispute Mr. Gafford's recitation of the recited structure to perform the Court's identified structure, nor Mr. Gafford's conclusion that Nokia's devices contain that structure. Instead, Nokia focuses its argument on Mr. Gafford's conclusion that each Nokia device "stores[] an image in a file whose format was chosen by the user." Specifically, Nokia uses Mr. Gafford's language as a basis to read a limitation into the "logic means" element that a file format must be chosen by the user. Nokia has never requested such a limitation, the Court never identified such a limitation, and Mr. Gafford and St. Clair have never relied upon such a limitation.

There is undeniably a legal and factual dispute as to whether the "logic means" element includes a "user selection" limitation. Mr. Gafford's analysis of this claim element does not rely upon a user selection:

REDACTED

16

REDACTED

]

*e.g.*, Ex. 3 at 34-40)  Mr. Gafford's factual conclusion that the file format is selected by a user is not an admission or statement that the "logic means" element of the claim is limited in any way to a "user selection."

Even were there a "user selection" limitation in the "logic means" claim element, as has been discussed previously, there is a material dispute as to whether Nokia's devices allow users to select file formats.  Nokia's newly constructed limitation does not eliminate a genuine dispute of material fact.

### 3. Claim 16 of the '459 patent

Nokia cannot establish there is no genuine issue of material fact related to each of its two arguments for summary judgment of noninfringement of claim 16 of the '459 patent.

#### a. Ordering of steps

Nokia misapplies the Court's claim construction in an attempt to eliminate a factual dispute related to infringement.  Nokia's reading is inconsistent with the Court's order.  But,

even if it were not, Nokia has not demonstrated that its reading of the Court's order eliminates disputes of material fact.

Nokia appears to be asserting that the Court's order requires that the "generating," "converting" and "selecting" step be completed before the "storing" step can be initiated. St. Clair disputes this reading. Instead, St. Clair believes the Court's order merely requires that the "generating," "converting," and "selecting" steps occur, or be satisfied, prior to the storing step occurring or being satisfied. Obviously, something cannot be fully stored before it is fully generated or converted. Nokia, however, twists the Court's construction into a limitation that is inconsistent with the language of the claims and the intrinsic record. This Court, however, need not address this issue since Nokia has failed to meet its burden to demonstrate a lack of dispute as to material facts in light of its reading of the construction.

REDACTED

Nokia merely stating there are no disputed facts does not eliminate those very disputes. A reasonable jury could side with Mr. Gafford, particularly in light of Nokia pointing to no evidence to support its claim.

**b. "Recording in selectable addressable memory means"**

Nokia's noninfringement argument is premised on a claim construction it never sought, is inconsistent with the language of the claim, and improperly imports limitations from the specification. In essence, Nokia argues that the "recording" step requires a "pre-storage of the format codes." (D.I. 821 at 16.) Nokia points to no claim element where pre-storage is a limitation that must be performed as part of the claimed method. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999) ("[T]here must be a textual reference in the actual language of the claim with which to associate a proffered claim construction."). Notwithstanding Nokia's flawed construction, Nokia has failed to establish that no genuine issue of material fact exists under its newly proposed construction.

REDACTED

19

The balance of Nokia's arguments related to the "recording" element center around its attempt to once again read in a user selection of file format limitation into the claim. Numerous factual and legal disputes surround Nokia's assertion that a mode selection does not amount to a file format selection. Any one of these disputes defeats Nokia's attempt at partial summary judgment.

## IV. **Conclusion**

Genuine issues of fact exist regarding each of issues raised by Nokia in its Motion for Partial Summary Judgment of Noninfringement. Therefore, Nokia is not entitled to summary judgment, and Nokia's Motion for Partial Summary Judgment of Noninfringement should be denied. Should this Court disagree with St. Clair's position that a genuine issue of material fact exists for each issue raised by Nokia, St. Clair will fully brief why Nokia's positions are wrong as a matter of law.

Dated: May 6, 2010

SEITZ, VAN OGTROP & GREEN, P.A.

*Of Counsel:*
Ronald J. Schutz, Esq.
Jake M. Holdreith, Esq.
Becky R. Thorson, Esq.
Carrie M. Lambert, Esq.
Annie Huang, Esq.
Seth A. Northrop, Esq.
ROBINS, KAPLAN, MILLER
& CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500

George H. Seitz, III. (# 667)
gseitz@svglaw.com
Patricia P. McGonigle (# 3126)
pmcgonigle@svglaw.com
Jared T. Green (#5179)
jtgreen@svglaw.com
SEITZ, VAN OGTROP & GREEN
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-0600

*Attorneys for Plaintiff St. Clair Intellectual
Property Consultants, Inc.*

21

## CERTIFICATE OF SERVICE

I, Jared T. Green, Esquire, hereby certify that on this 13th day of May 2010, I electronically filed the following document with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.

/s/ *Jared T. Green*

_____

Jared T. Green (ID No. 5179)
jtgreen@svglaw.com

76195 v1