## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC.,

        Plaintiff,

    vs.

SAMSUNG ELECTRONICS CO., *et al.*,

        Defendants.

      )
      )
      )
      )
      )
      )
      )
      )
      )
      )

C.A. No. 04-1436-LPS

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## MEMORANDUM IN SUPPORT OF DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF NON-INFRINGEMENT

OF COUNSEL:

Charlene M. Morrow
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Heather N. Mewes
David D. Schumann
Bryan A. Kohm
Jeffrey V. Lasker
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

Dated:  June 3, 2011
Public Version Dated: June 10, 2011
1016280 / 28641

Richard L. Horwitz  (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Hewlett-Packard Company*

## TABLE OF CONTENTS

**Page(s)**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    INTRODUCTION ........................................................................................................2

III.    STATEMENT OF UNDISPUTED FACTS...................................................................3

    A.    The Asserted Claims..........................................................................................3

    B.    HP's PDA Products ............................................................................................4

    C.    Procedural History .............................................................................................5

    D.    The Federal Circuit's Decision in *Fujifilm*.......................................................8

    E.    Current Posture of this Matter ...........................................................................8

IV.    LEGAL STANDARDS ................................................................................................9

V.    ARGUMENT...............................................................................................................10

    A.    St. Clair Has Admitted that HP Camera and Certain iPAQ Products Do Not Infringe .....................................................................................................10

    B.    The Undisputed Facts Show that HP's iPAQs Use Only a Single, Architecture-Independent, Still-Image Format, and Thus Cannot Infringe ........11

        1.    The Patents-in-Suit Require a Plurality of Still Image Formats, but HP's iPAQs Format Still Images Only as JPEGs....................................11

        2.    Each Selectable Format Must Correspond with a Particular Computer Architecture, but JPEG is Architecture-Independent .............13

        3.    St. Clair Has Never Claimed That There Could Be Infringement Under HP's Proposed Constructions, Which Were Adopted by the Federal Circuit ........................................................................................14

    C.    St. Clair is Precluded From Asserting New (and Futile) Infringement Theories Years into the Case and After Discovery has Closed............................14

        1.    Amending Infringement Contentions Requires a Showing of Diligence, Lack of Prejudice, and that the Amendment Would Not Be Futile .....................................................................................................15

        2.    St. Clair Cannot Show Good Cause to Amend its Infringement Contentions to Assert Theories Not Based on New Evidence ................16

## TABLE OF CONTENTS
(cont'd)

**Page(s)**

3.   HP Would be Prejudiced if St. Clair were Permitted to Prolong this Litigation by Asserting Unsupportable New Infringement Theories .......18

4.   St. Clair's Amendment Would Be Futile.................................................19

VI.   CONCLUSION .............................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Altair Eng'g, Inc. v. LEDdynamics, Inc.,
  No. 07-CV-13150, 2009 WL 799184 (E.D. Mich. Mar. 24, 2009), rev'd on other
  grounds, 2011 WL 836440 (Fed. Cir. Mar. 9, 2011) ............................................................19

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ...........................................................................................................10

Bayer AG v. Elan Pharm. Research Corp.,
  212 F.3d 1241 (Fed. Cir. 2000) .........................................................................................10

CBS Interactive, Inc. v. Etilize, Inc.,
  257 F.R.D. 195 (N.D. Cal. 2009) .......................................................................................16

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .............................................................................................................9

Cureton v. Nat'l Collegiate Athletic Ass'n,
  252 F.3d 267 (3d Cir. 2001) ...............................................................................................15

Data Retrieval Tech., LLC v. Sybase, Inc.,
  No. C 08-5481, 2009 U.S. Dist. LEXIS 129454 (N.D. Cal. Sept. 11, 2009) .........................14

Gentry Gallery, Inc. v. Berkline Corp.,
  134 F.3d 1473 (Fed. Cir. 1998) ...........................................................................................9

In re Papst Licensing GMBH & Co. KG Litig.,
  No. 07-493, 2011 U.S. Dist. LEXIS 9848 (D.D.C. Feb. 2, 2011)........................................15

Jiminez v. All Am. Rathskeller, Inc.,
  503 F.3d 247 (3d Cir. 2007) ...............................................................................................20

Kemco Sales, Inc. v. Control Papers Co.,
  208 F.3d 1352 (Fed. Cir. 2000) .........................................................................................10

Lockheed Martin Corp. v. Space Sys./Loral, Inc.,
  324 F.3d 1308 (Fed. Cir. 2003) .........................................................................................10

Loral Fairchild Corp. v. Victor Co. of Japan,
  911 F. Supp. 76 (E.D.N.Y. 1996) ..................................................................................14, 17

Lorenz v. CSX Corp.,
  1 F.3d 1406 (3d Cir. 1993) .................................................................................................16

Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.,
  C.A. No. 07-127-LPS, 2011 WL 678707 (D. Del. Feb. 18, 2011).........................................18

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Nike, Inc. v. Adidas Am., Inc.,*
    479 F. Supp. 2d 664 (E.D. Tex. 2007)..........................................................................17, 18

*Novartis Corp. v. Ben Venue Labs., Inc.,*
    271 F.3d 1043 (Fed. Cir. 2001) ...................................................................................9

*Performance Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys., Inc.,*
    No. H-05-4251, 2007 WL 836904 (S.D. Tex. March 15, 2007) ...........................17

*Realtime Data, LLC v. Packeteer, Inc.,*
    No. 6:08cv144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) .............................19

*Rhodes v. Amarillo Hosp. Dist.,*
    654 F.2d 1148 (5th Cir. 1981) ....................................................................................16

*Sigram Schindler Beteilingungsgesell-Schaft mbH v. Cisco Sys., Inc.,*
    C.A. No. 09-072-SLR, 2010 WL 2977552 (D. Del. July 26, 2010).......................19

*St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.,*
    No. 2009-1052, 2011 U.S. App. LEXIS 515 (Fed. Cir. January 10, 2011)
    ("*Fujifilm*") ...................................................................................................*passim*

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,*
    270 F. Supp. 2d 519 (D. Del. 2003) ..................................................................14, 17

*V-Formation, Inc. v. Benetton Group SpA,*
    401 F.3d 1307 (Fed. Cir. 2005) ..................................................................................10

*Venetec Int'l, Inc. v. Nexus Med., LLC,*
    541 F. Supp. 2d 612 (D. Del. 2008) ...........................................................................16

*Villa v. City of Chicago,*
    924 F.2d 629 (7th Cir. 1991) .......................................................................................16

*Wahpeton Canvas Co. v. Frontier, Inc.,*
    870 F.2d 1546 (Fed. Cir. 1989) ..................................................................................10

**OTHER AUTHORITIES**

David L. Schwartz, *Practice Makes Perfect? An Empirical Study of Claim Construction
    Reversal Rates in Patent Cases,* 107 Mich. L. Rev. 223, 248 (2008) ....................15

Fed. R. Civ. P. 15.......................................................................................................15, 16

Fed. R. Civ. P. 16.......................................................................................................15, 16

# TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

Fed. R. Civ. P. 56(c) ...................................................................................................................9

Kimberly A. Moore, *Are District Court Judges Equipped to Resolve Patent Cases?*, 15
   Harv. J.L. & Tech. 1, 11-17 (2001) (finding a claim construction reversal rate of 33%
   from 1996-2000) ..................................................................................................................15

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case was stayed pending decision on the appeal of a related case, *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, No. 2009-1052, 2011 U.S. App. LEXIS 515 (Fed. Cir. January 10, 2011) ("*Fujifilm*"), involving the same patents-in-suit and infringement theories.  In *Fujifilm*, the Federal Circuit reversed this Court's claim construction. The Federal Circuit instead adopted the same claim construction that had been adopted by the United States Patent and Trademark Office during reexamination of those patents.  Applying this claim construction, the Federal Circuit determined that judgment of non-infringement as a matter of law should have been entered.  Following that decision, St. Clair dropped its suit against Fujifilm.  *See* Final Judgment (D.I. 1090), C.A. No. 03-241-LPS (D. Del. May 2, 2011).  The same should occur here.

Hewlett-Packard Company ("HP") asked new counsel for St. Clair, who appeared in this matter following the remand in *Fujifilm*, to confirm that St. Clair would also drop its claims of infringement as to HP.  While St. Clair admitted at the hearing before this Court on April 19, 2011 that "we're not going to proceed against digital cameras...." (Ex. 1 (Tr. of Telephone Conference dated April 19, 2011 ("4/19/11 Conf. Tr.")) at 26; *see also id.* at 13-14), St. Clair has refused to drop the suit against HP entirely.  First, while it has admitted it can no longer pursue claims against HP digital cameras, or HP personal digital assistants without cell phone capability, St. Clair has refused to stipulate to a judgment of noninfringement on those products. Ex. 2 (Rader to DeMarchi, 6/3/11).  Second, St. Clair is continuing to assert its patents against some of HP's personal digital assistants, those with cell phone capability.

Given the claim construction adopted by the Federal Circuit and the record in this action, St. Clair cannot raise a triable issue of fact that would warrant any further proceedings against HP.  Nor should new counsel for St. Clair be permitted at this late stage in the case to assert a

different theory of infringement that St. Clair has elected, over the six years this matter has been pending, never to assert. Accordingly, HP should be granted summary judgment or summary adjudication that it does not infringe any claim of the asserted patents.

## II. INTRODUCTION

1. HP moves for summary judgment or summary adjudication that its cameras and its personal digital assistants without cell phone capability do not infringe the patents-in-suit, because St. Clair has admitted that these devices are not infringing, and as such, HP is entitled to entry of an order it can rely on terminating these claims.

2. HP moves for summary judgment of non-infringement because St. Clair cannot carry its burden of proof of establishing that the HP iPAQ line of personal digital assistants practice each and every limitation of the claims of the patents-in-suit, including those that require a plurality of image file formats or selection of file format.

3. The claim construction adopted in *Fujifilm* applies to each of the claims still asserted against the HP iPAQS (claim 16 of the '459 patent, claims 10 and 12 of the '219 patent, claim 1 of the '010 patent, and claims 3 and 4 of the '899 patent). In *Fujifilm,* the Federal Circuit determined that these claims—each of which calls for a plurality of computer file formats—must be construed to require multiple file formats for still images, each format in one-to-one correspondence with a particular computer architecture. *Fujifilm,* 2011 U.S. App. LEXIS 515, at *6-7. The Federal Circuit also held that these file formats do not include video formats. *Id.* at *19-20. Under this construction, the Federal Circuit reversed a determination of infringement by cameras with only one still format. *Id.* at *21.

4. Given the Federal Circuit's construction, St. Clair similarly cannot prevail on any claim asserted against HP relating to the HP PDAs. On the current record, St. Clair cannot establish the existence of a triable issue of fact on these claims in this case because St. Clair has

only identified one still file format in the HP line of devices, the JPEG file format.

5.     At the April 19, 2011 Status Conference, St. Clair's new counsel expressed St. Clair's desire for a do-over on this case, where St. Clair would abandon its prior positions and start fresh with different infringement theories.  However, St. Clair cannot show the good cause necessary for such amendments.  Throughout fact and expert discovery, St. Clair was aware of Defendants' proposed constructions, which tracked those adopted by the Patent Office.  St. Clair made the tactical decision to assert infringement only under its own claim construction.  St. Clair's claim construction theory has now been rejected by the Federal Circuit.  Given that St. Clair could have timely disclosed any alternative infringement contentions it would have had under Defendants' proposed construction, it cannot show the diligence necessary to permit it to supplement its contentions.  Further, amendment would be futile as St. Clair's expert has already proffered contrary testimony.  In addition, permitting St. Clair to prolong and complicate this case would prejudice HP.[1]

6.     Should the court not find this matter ripe for summary judgment of non-infringement on all of the St. Clair patent claims by all of the HP camera and PDA products, HP requests partial summary adjudication that HP does not infringe the patent claims no longer asserted by St. Clair, and that its camera products are not infringing.

## III.   STATEMENT OF UNDISPUTED FACTS

### A.     The Asserted Claims

St. Clair is now asserting only claim 16 of the '459 patent, claims 10 and 12 of the '219 patent, claim 1 of the '010 patent, and claims 3 and 4 of the '899 patent against the HP PDAs. Ex. 3 (Expert Report of Thomas A. Gafford, dated January 11, 2010 ("Gafford Report")) at pp.

---

[1] Defendants Nokia, HTC, Kyocera, Palm, and RIM have also filed motions presenting alternate grounds why St. Clair should not be permitted to amend its contentions in this case, and HP hereby joins in those motions for the reasons stated therein.

3

8-9,[2] Ex. G (attached as Kohm Decl., Ex. 4).[3]  The asserted claims are reproduced in the

Appendix to this Motion.  The limitations referred to in this motion as the "plurality of formats

limitations" are italicized.

### B.   HP's PDA Products

The remaining HP devices at issue are iPAQ personal digital assistants.  Ex. 3 (Gafford

Report) at pp. 9-10, Ex. G (Kohm Decl., Ex. 4).  St. Clair had previously accused other iPAQ

models that do not include phone functionality, but it has since admitted that it cannot further

pursue these products.  Ex. 2 (Rader to DeMarchi, 6/3/11) ("St. Clair is no longer asserting the

Roberts patents against products that do not include both a phone and camera functionality.").

The remaining accused iPAQs include camera functionality, and can capture still images.

It is undisputed that HP's iPAQs capture still images only in the JPEG format.  Ex. 3 (St.

Clair Gafford Report) at 11-17, 26-31, 34-35, 37, 46, 48, 50; Declaration of Robert L. Stevenson,

Ph.D. In Support of HP's Motion for Summary Judgment or Summary Adjudication of Non-

Infringement ("Stevenson Decl.")) Ex. 1 (Expert Witness Report of Robert L. Stevenson, Ph.D.

Under Federal Rule 26(A)(2)(B), dated February 17, 2010 ("Stevenson Report")) at ¶¶ 39, 116;

Ex. 5 (Deposition of Chee Keat Fong, taken on Dec. 4, 2009 ("Fong Dep.")) at 41:13-24 (█████

████████████████████████████████████████████████████████ ).

It is undisputed that JPEG can be used with more than one computer architecture.  Ex. 3

(Gafford Report) at 5-6, Ex. C (Kohm Decl, Ex. 6); Stevenson Decl. Ex. 1 (Stevenson Report) at

¶¶ 96, 113.  St. Clair's technical expert has conceded that ██████████████████████████████

---

[2] Except where otherwise noted, exhibits are attached to the Declaration of Bryan A. Kohm in
Support of HP's Motion for Summary Judgment or Summary Adjudication of Non-infringement.
[3] During the course of this action St. Clair previously asserted numerous additional claims, but
during pretrial filings, narrowed the asserted claims to those listed here.  Accordingly, summary
judgment of non-infringement should be entered as to all of the claims of the patents-in-suit, as
St. Clair has now admitted it has no case on the other claims.

███████ Ex. 7 (Deposition of Thomas Gafford, Feb. 24, 2010 ("Gafford Dep.")) at 103:3-18.

## C.    Procedural History

St. Clair's entire infringement case has at all times depended on the Court accepting the

St. Clair proposed claim construction.  St. Clair served its first infringement contentions on

January 15, 2009, alleging that HP's iPAQ PDA products infringed by providing both "██████

███████████████" and the ability to select between them.  Kohm Decl., ¶ 9, Ex. 8 (St.

Clair's Preliminary Infringement Contentions, iPAQ 510) at p. 1.

St. Clair has known of Defendants' proposed constructions in this case since at least as

early as April 9, 2009, when the parties filed a joint claim construction chart.  (D.I. 248).  In fact,

St. Clair first learned of these constructions in 2002 in *St. Clair Intellectual Property*

*Consultants, Inc. v. Sony Corp.*, where Sony took the same positions.  Memo. in Support of

Claim Construction Ruling (D.I. 56) C.A. No. 01-557-JJF (D. Del. July 1, 2002).

When St. Clair supplemented its infringement contentions as to HP on December 28,

2009, it again chose not to assert infringement under Defendants' proposed constructions.  Kohm

Decl., ¶ 10, Ex. 9 (St. Clair's Supplemental Infringement Contentions, iPAQ 510).

Moreover, despite having received HP's technical documentation in discovery, which

discuss MMS text messaging at length, and having access to the HP products, St. Clair never

asserted that texting was relevant to any of its infringement claims.  *See, e.g.*, Ex. 10 (iPAQ 510

Product Guide) at HPSTC0000049, 51, 53, 55 (explaining text messaging functionality including

how to send images in MMS messages); Ex. 11 (iPAQ 910c Product Guide) at HPSTC0000282,

295, 299-301 (same); Ex. 12 (iPAQ hw6515 User's Guide) at HPSTC0000436, 456-57, 496,

500, 503, 510-12, 516-20 (same); Ex. 13 (iPAQ hw6925, hw6945, and hw6955 User Guide) at

HPSTC0000620-21, 647-48, 652, 669, 672 (same).

St. Clair's infringement contentions were subsequently adopted nearly verbatim by St.

Clair's technical expert. Kohm Decl., ¶ 15, Ex. 14 (Gafford Report Ex. H, iPAQ 510). Thus,
Mr. Gafford's January 2010 report asserts infringement only under St. Clair's proposed
constructions, not Defendants,' and only identifies one still image format in the iPAQs. Ex. 3
(Gafford Report ) at 11, 22, 41, 46-48, 50, 60, 65, Ex. H (Kohm Ex. 14); Ex. 15 (Expert Rebuttal
Report of Thomas A. Gafford, dated February 17, 2010).

Both Gafford reports were prepared prior to this Court entering its February 24, 2010
claim construction order. Memorandum Order (D.I. 719). In contrast, HP's technical expert
addressed both potential claim constructions in his non-infringement report. Stevenson Decl.,
Ex. 1 (Stevenson Report) at ¶¶ 28, 190. St. Clair's expert never responded to that portion of
HP's report that addressed whether there was infringement under the Defendants' proposed
construction. Had St. Clair believed at the time that it had a case to pursue if it lost on claim
construction, surely it would have had its expert address such an eventuality. It did not.

In addition to ignoring the Defendants' claim construction position, and the report of
HP's technical expert, St. Clair also ignored the expert advice of the Patent Office, which
reexamined the asserted patents. Reexamination certificates for each of the patents-in-suit were
issued in 2006 and 2007. Joint Claim Construction Chart (D.I. 248) Ex. A (D.I. 248.3) at
STCLR 000038 ('459 patent), Ex. C (D.I. 248.5) at STCLR 000073 ('219 patent), Ex. D (D.I.
249.2) at STCLR 000111 ('010 patent), Ex. E (D.I. 249.3) at STCLR 000149 ('899 patent). In
the reexamination, the Patent Office adopted the same claim construction urged by Defendants in
this case—that each of the claimed plurality of file formats must correspond on a one-to-one
basis with a particular computer architecture—as the broadest reasonable construction of the
patents-in-suit. Joint Claim Construction Chart (D.I. 248-252) Defendants' Ex. 6 (D.I. 251.3) at
3-4, Ex. 19 (D.I. 252.3) at 3, Ex. 27 (D.I. 252.4) at 3, Ex. 30 (D.I. 252.4) at 3. St. Clair therefore
had knowledge of this construction, and its adoption by the Patent Office, years before it

developed its infringement case against HP, and ignored that construction at its own risk.

Thus, St. Clair's entire infringement case depended on the Court ultimately applying the St. Clair claim construction. Yet, St. Clair only accused HP's iPAQs of meeting the plurality of formats limitation by their ability to capture still images in a single format, JPEG, and video files in a different format. For example, St. Clair contended that these products meet the limitation in Claim 3 of the '899 patent (and therefore of its dependent claim 4) of "████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████"
████████████████████████████████████████████████
████████████████" Ex. 3 (Gafford Report) at 10-11. St. Clair contended that the further limitation of formatting the image "in the selected computer file format" is fulfilled by "███████
████████████████████████████████████████████" *Id.* at 22. St. Clair also asserted that the accused devices fulfill the "formatting" limitation of claim 1 of the '010 patent by ████████████████████████████████████████" *Id.* at 41. It accused HP's iPAQs of infringing similar limitations in Claim 10 of the '219 patent (and its dependent claim 12) by "████████████████████████████████████████████
████████████████████████████████████████████████
████████████████" *Id.* at 46-47. Claim 16 of the '459 patent included the limitation of "recording in selectable addressable memory means at least one of a plurality of different digital output data format codes where each of said plurality of output data format codes corresponds respectively to one of a like plurality of different data formats for different types of computer apparatus"; St. Clair contended that this step is performed by "████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████" *Id.* at 59, 65.

On the eve of trial, this case was stayed pending the outcome of an appeal of the Court's

claim construction in *Fujifilm*. Order (D.I. 1031) (cancelling trials and staying all pending

deadlines); Order (D.I. 1038) (staying matters and requiring parties to notify the Court within ten

days of issuance of a decision in the *Fujifilm* appeal).

**D.      The Federal Circuit's Decision in *Fujifilm***

In *Fujifilm*, the Federal Circuit reversed the Court's claim construction, adopting instead

the narrower constructions previously adopted by the Patent Office during reexamination and

urged by Defendants in this case.  It construed "plurality of different data formats for different

types of computer apparatus" and similar limitations to require that "'each data format'

corresponds on a one-to-one basis to a different type of computer architecture (e.g., in the way

that GIFF corresponds to IBM and PICT corresponds to Apple)." *Fujifilm*, 2011 U.S. App.

LEXIS 515, at *6-8.  It further held that "movie formats do not satisfy the 'plurality of data

formats' limitation" in the asserted patents. *Id.* at *20-21.  Based on its claim construction, the

Federal Circuit held that Fujifilm, which St. Clair accused of infringing by permitting users to

choose between a single still image format and a video format, was entitled to judgment of

noninfringement as a matter of law. *Id.* at *21.

**E.      Current Posture of this Matter**

Following the Federal Circuit's decision in *Fujifilm*, the Court held a status conference.

Ex. 1 (4/19/11 Conf. Tr.) at 7.  New counsel for St. Clair, the Rader, Fishman & Grauer firm,

appeared for St. Clair.  During that status conference, St. Clair admitted that "we're not going to

proceed against digital cameras...." *Id.* at 26; *see also id.* at 13-14.

Instead, St. Clair's new counsel took the position that "we believe very much we have a

claim of infringement against smart phones and camera phones." *Id.* at 26; *see also id.* at 13-14.

St. Clair stated that its new infringement theory is based on sending JPEG files through MMS

text messaging versus email: "When you put [a JPEG] in a text message to another phone, a computer architecture, you use an MMS file to do that, so that is a different—that is one file format, whereas if you put the JPEG image into an e-mail to a PC, which is a different computer architecture, you use a specific file format to allow that image to be transmitted." *Id.* at 11-12.

This is an entirely new theory that St. Clair did not disclose in discovery, although it certainly could have done; St. Clair was on notice both of the Defendants' claim construction position and of the existence of this functionality on the HP devices. *See supra* § III.C. Indeed, in his infringement report, St. Clair's technical expert relied on numerous documents that discuss MMS and email. *See, e.g.*, Ex. 10 (iPAQ 510 Product Guide) at HPSTC0000049, 51, 53, 55 (explaining that "Multimedia Messaging Service (MMS) is a method of transmitting photographs, video clips, sound files, and short text messages over wireless networks," how MMS messages and email are sent, and how to insert pictures in them); Ex. 11 (iPAQ 910c Product Guide) at HPSTC0000282, 295, 299-301 (same); Ex. 12 (iPAQ hw6515 User's Guide) at HPSTC0000436, 456-57, 496, 500, 503, 510-12, 516-20 (same); Ex. 13 (iPAQ hw6925, hw6945, and hw6955 User Guide) at HPSTC0000620-21, 647-48, 652, 669, 672 (same).

## IV.  LEGAL STANDARDS

"Summary judgment is appropriate when, after opportunity for discovery and upon motion, there is no genuine dispute of material fact for trial and one party is entitled to judgment as a matter of law." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); *See* Fed. R. Civ. P. 56(c). Where the nonmoving party bears the burden of persuasion at trial, the moving party's burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to present

9

evidence that could permit a trier of fact to find in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-56 (1986).

The accused products can only be found to infringe the claims of the patents if they embody each and every claim limitation. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). If even one limitation is absent, "there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Because dependent claims incorporate all the limitations of the independent claims from which they depend, if even one limitation of an independent claim is not met, there can be no infringement of its independent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003). Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the same way, with substantially the same result. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

## V.   ARGUMENT

### A.   St. Clair Has Admitted that HP Camera and Certain iPAQ Products Do Not Infringe

St. Clair had admitted that HP digital cameras and iPAQs without phone capability do not infringe any claim of the patents-in-suit. Ex. 1 (4/19/11 Conf. Tr.) at 26 ("we're not going to proceed against digital cameras...."); *see also id.* at 13-14; Ex. 2 (Rader to DeMarchi, 6/3/11) ("We hereby confirm that St. Clair is no longer asserting the Roberts patents against products

that do not include both a phone and camera functionality."). However, St. Clair has refused to stipulate to an order reflecting those admissions. Given that, under the Federal Circuit's claim construction, HP has prevailed against St. Clair on these infringement claims, the Court should enter an order granting HP summary judgment or summary adjudication of non-infringement by HP camera products and iPAQS without phone functions.

**B.      The Undisputed Facts Show that HP's iPAQs Use Only a Single, Architecture-Independent, Still-Image Format, and Thus Cannot Infringe**

The accused iPAQs do not infringe as a matter of law. It is undisputed that they format still images only as JPEGs. Because they do not offer a plurality of still image formats, the accused products do not meet the plurality of formats limitations given the Federal Circuit's claim construction. In addition, because St. Clair's technical expert has taken the position that JPEG is a universal file format that is not associated with a particular computer architecture, JPEG files cannot serve at all as one of the necessary plurality of formats. HP is therefore entitled to summary judgment of non-infringement on each of these two grounds.[4]

1.      The Patents-in-Suit Require a Plurality of Still Image Formats, but HP's iPAQs Format Still Images Only as JPEGs

The HP iPAQ personal digital assistants employ only a single file format, JPEG, for still images, and therefore those devices do not practice the Plurality of Formats Limitations of the asserted patents. Each asserted claim recites (or depends from a claim which recites) at least one limitation requiring a plurality of file formats. Claim 16 of the '459 patent recites "recording in selectable addressible memory means at least one of a plurality of different digital output data format codes where each of said plurality of output data format codes corresponds respectively to

_____

[4] HP presently has several summary judgment motions pending. *See* D.I. 767 (willfulness and inducement); D.I. 780 (damages); D.I. 784 (non-infringement); D.I. 816 (invalidity). This motion addresses only the additional non-infringement issues raised by the Federal Circuit's claim construction in *Fujifilm*, and is without waiver or prejudice to the pending motions.

one of a like *plurality of different data formats for different types of computer apparatus*," as well as selecting an output data format code and storing a digital file in accordance with the selected code.  Claim 10 of the '219 patent, from which claim 12 depends, recites "output data format control means for storing in said camera at least one of a plurality of different output data format codes where each of said plurality of output data format codes corresponds respectively to at least one of *a plurality of different data file formats for different types of computer apparatus*," and further requires formatting image data in accordance with the selected code.  Claim 1 of the '010 patent calls for "a digital control unit for formatting said digital image signal in one of *a plurality of computer formats*."  Claim 3 of the '899 patent, from which claim 4 depends, recites "selecting one of *a plurality of computer image file formats* in the camera," "formatting the digital image signal in *the selected computer image file format*," and storing the formatted file. *See* Ex. 16 ('459 patent); Ex. 17 ('219 patent); Ex. 18 ('010 patent); Ex. 19 ('899 patent).

In the *Fujifilm* appeal, the Federal Circuit rejected St. Clair's argument that non-still image formats can constitute one of the plurality of different data formats required by each of the independent claims now asserted against HP. *Fujifilm*, 2011 U.S. App. LEXIS 515, at *5, *19-20.  The court held "that the use of the words 'still' and 'image' throughout the patents-in-suit *limits the claims to a single image or picture*." *Id.* at *20.  To infringe the asserted claims, therefore, an accused product must be capable of saving in multiple still image formats. *See id.* During discovery, all of the documentary evidence and relevant testimony, both fact and expert, unequivocally established that the HP PDAs employ only the JPEG file format for still images. *See, e.g.*, Ex. 5 (Fong Dep.) at 41:13-24 (████████████████████████████████
████████████████); Stevenson Decl., Ex. 1 (Stevenson Report) at ¶ 116 (████████████
████████████████████████████████████████████).

Indeed, St. Clair's own technical expert acknowledged that iPAQs are capable of formatting

images only in the JPEG format. Ex. 3 (Gafford Report) at 11-17, 26-31, 34-35, 37, 46, 48, 50.

Accordingly, it is undisputed that HP's accused products are not capable of formatting images in a plurality of still image file formats as required by the plurality of formats Limitations. As St. Clair's technical expert eloquently stated, "[i]f a camera has no capability whatsoever to record a second format, then I don't see how it would infringe." Ex. 7 (Gafford Dep.) at 224:22-24. Summary judgment is therefore appropriate on this ground.

      2.    <u>Each Selectable Format Must Correspond with a Particular Computer Architecture, but JPEG is Architecture-Independent</u>

In addition, the Federal Circuit held that each format must correspond "on a one-to-one basis to a different type of computer architecture (e.g., in the way that GIFF corresponds to IBM and PICT corresponds to Apple)." *Fujifilm*, 2011 U.S. App. LEXIS 515, at *7. This one-to-one correspondence is required by each of the plurality of formats limitations. *Id.* at *12-14.

The accused HP iPAQ devices do not format images in file formats corresponding to particular computer architectures. During discovery and in preparing for trial, St. Clair did not identify storage of still images in these devices in anything other than the JPEG format. Ex. 3 (Gafford Report) at 11-17, 26-31, 34-35, 37, 46, 48, 50; *see also* Ex. 5 (Fong Dep.) at 41:13-24, 54:19-55:18. JPEG is admittedly used in a wide array of computer architectures. Ex. 3 (Gafford Report) at 5-6, Ex. C (Kohm Decl., Ex. 6); Stevenson Decl., Ex. 1 (Stevenson Report) at ¶ 113. St. Clair's own technical expert has conceded that ████████████████████████ ████████ Ex. 7 (Gafford Dep.) at 103:3-18. Thus, the use of JPEG, a "data format that [is] not tailored to specific computer architectures," cannot infringe. *See Fujifilm*, 2011 U.S. App. LEXIS 515, at *12. HP is therefore entitled to summary judgment of noninfringement on this ground as well.

3.   St. Clair Has Never Claimed That There Could Be Infringement Under HP's Proposed Constructions, Which Were Adopted by the Federal Circuit

HP had previously articulated its position on infringement under its proposed claim constructions during expert discovery. Stevenson Decl., Ex. 1 (Stevenson Report) at ¶ 190. Dr. Stevenson's report also included a letter explaining this noninfringement position in detail. *See id.* at Ex. L. St. Clair made the tactical choice not to rebut these opinions, and thus must be considered to have waived the ability to assert infringement under HP's claim constructions. *See, e.g., Data Retrieval Tech., LLC v. Sybase, Inc.*, No. C 08-5481, 2009 U.S. Dist. LEXIS 129454, at *7-9 (N.D. Cal. Sept. 11, 2009) (finding plaintiff "has waived claims it did not include in its infringement contentions" and limiting plaintiff to the assertions in its contentions); *see also Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519 (D. Del. 2003) (A party who had adequate opportunity to conduct discovery and formulate expert opinions under the opposing party's claim construction is not prejudiced by being precluded from introducing new expert material and reopening discovery if the opposing party's construction is adopted on appeal); *Loral Fairchild Corp. v. Victor Co. of Japan*, 911 F. Supp. 76, 80 (E.D.N.Y. 1996) (finding plaintiff equitably estopped from changing its infringement theory after claim construction, where plaintiff "could have proceeded under alternative theories" and chose not to). Accordingly, HP is entitled on each of the aforementioned bases to summary judgment of non-infringement of the St. Clair patents.

**C.   St. Clair is Precluded From Asserting New (and Futile) Infringement Theories Years into the Case and After Discovery has Closed**

St. Clair disclosed its infringement theories during fact and expert discovery in this case, with full knowledge both of the claim construction proposed by Defendants, and of the fact that the Patent Office had applied that construction. Given the relatively high reversal rate before the Federal Circuit, St. Clair either took a known tactical risk not to develop an alternative theory, or

14

concluded that it could not assert infringement under an alternative theory. *See* David L.

Schwartz, *Practice Makes Perfect? An Empirical Study of Claim Construction Reversal Rates in Patent Cases*, 107 Mich. L. Rev. 223, 248 (2008) (finding the Federal Circuit reverses or modifies the construction of at least one claim in 38.2% of cases); Kimberly A. Moore, *Are District Court Judges Equipped to Resolve Patent Cases?*, 15 Harv. J.L. & Tech. 1, 11-17 (2001) (finding a claim construction reversal rate of 33% from 1996-2000).

Although St. Clair has not yet sought to amend its infringement contentions to state its new theory, should it move for leave to amend, St. Clair should not be permitted to do so.  Given that fact and expert discovery were both completed prior to the case being stayed, and that the parties had made their filings for the Pretrial Conference, St. Clair's new counsel cannot show good cause for it now to assert new theories of infringement.

1.   Amending Infringement Contentions Requires a Showing of Diligence, Lack of Prejudice, and that the Amendment Would Not Be Futile

To amend infringement contentions after the deadline to do so, a party must satisfy Rules 15 and 16 of the Federal Rules of Civil Procedure.  Rule 15, which governs amendments to pleadings generally, requires consideration of whether a proposed amendment would prejudice opposing parties, would be futile, or is sought out of bad faith or dilatory motive. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-273 (3d Cir. 2001).  Rule 16 comes into play when amendment would operate to modify a court's scheduling order; for example, to permit untimely supplementation of discovery responses. *See* Rule 16 Scheduling Order (D.I. 166) (requiring St. Clair to serve infringement contentions by January 15, 2009).

This set of rules applies to infringement contentions as well as to other pleadings in the case such as the Pretrial Order. *See In re Papst Licensing GMBH & Co. KG Litig.*, No. 07-493, 2011 U.S. Dist. LEXIS 9848, at *22 (D.D.C. Feb. 2, 2011) ("The good cause standard under

Federal Rule of Civil Procedure 16(b) applies to a request to amend asserted claims and infringement contentions."). Rule 16(b) states that such modifications may be made "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause" exists when the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Notes. Rule 16 hinges on the movant's diligence in seeking amendment, whereas Rule 15 turns on the prejudice to the non-moving party. *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment" under Rule 15.).

2.    St. Clair Cannot Show Good Cause to Amend its Infringement
      Contentions to Assert Theories Not Based on New Evidence

St. Clair's change of counsel does not give St. Clair *carte blanche* to re-write its positions in this lawsuit. *See, e.g., Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (denying amendment where plaintiff identified "no new facts or changes in the law... other than the fact that [plaintiff] was represented by a new attorney.") "The retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is itself no excuse" for a late motion to amend. *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981). St. Clair's decision to now retain different counsel does not justify amendment.

Moreover, in patent cases, "[t]he 'good cause' requirement disallows infringement contentions from becoming moving targets throughout the lawsuit." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (discussing local patent rules, which apply the same "good cause" standard for amendment of infringement claim charts ). To demonstrate it, the party seeking to amend its contentions must show that it acted diligently at every stage: obtaining relevant evidence, evaluating its potential contentions, and seeking leave to amend.

*Performance Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys., Inc.*, No. H-05-4251, 2007 WL 836904, at *2 (S.D. Tex. March 15, 2007).

The mere fact that a party's preferred claim construction is rejected, or that the lower court's claim construction is reversed, does not entitle a party to rewrite its contentions. In *Union Carbide Chems. & Plastics Tech. Corp.*, the defendants sought to reopen discovery and submit new expert reports after the Federal Circuit reversed the district court's claim construction and instead adopted plaintiff's proposed construction. 270 F. Supp. 2d at 524. This court denied their motion, because "defendants were on notice of plaintiff's proposed claim construction... and had the opportunity to prepare for the fact that the court may adopt plaintiff's construction." *Id.* This is precisely the situation St. Clair finds itself in: now, "with the benefit of hindsight and the Federal Circuit's ruling," it wants to reopen closed factual issues and "start over" with expert analysis. *Id.* St. Clair had the opportunity to address HP's proposed construction and chose not to; it may not now restart this lawsuit from the beginning. In short, "[a] party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions." *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667-68 (E.D. Tex. 2007); *see also Loral Fairchild Corp.*, 911 F. Supp. at 80-81 (prohibiting plaintiff from revising its infringement theory after the court narrowly interpreted the claims, where plaintiff chose not to proceed under alternate theories from the outset of the case). Indeed, routinely permitting parties to supplement their infringement contentions whenever their claim constructions were rejected "would encourage parties to file narrow proposed constructions with an eye towards hiding important contentions until shortly before trial." *Nike*, 479 F. Supp. 2d at 667-68.

Moreover, in this matter, St. Clair had access to HP documentation of the MMS feature, as well as to the HP devices themselves. *See supra* § III.C. St. Clair could have asserted its

"MMS" theory at any time since the outset of the case. It could have disclosed the theory as an alternative infringement theory under its own proposed claim construction, or as an alternative infringement theory under Defendants' proposed constructions during discovery.

St. Clair cannot justify its lack of diligence by arguing it was surprised by the Federal Circuit's constructions of the asserted claims. St. Clair has had knowledge of these proposed constructions since 2002, when defendants in the *Sony* action proposed them. *See Sony*, Memo. in Support of Claim Construction Ruling (D.I. 56), C.A. No. 01-557-JJF Del. July 1, 2002). St. Clair has known since 2006 or 2007 that the Patent Office considered these constructions to be the broadest possible constructions of the patents-in-suit. Moreover, the Court did not enter a claim construction order in this case until after the close of fact discovery and the exchange of expert reports setting forth St. Clair's position on infringement. At the time it formulated and disclosed its expert's opinions, the issue of claim construction was a live one. Because St. Clair knew during discovery that this construction might be adopted, it cannot claim to be surprised by the *Fujifilm* decision or use the decision to justify its failure to timely disclose these contentions.

> 3.   HP Would be Prejudiced if St. Clair were Permitted to Prolong this Litigation by Asserting Unsupportable New Infringement Theories

A party may suffer undue prejudice, and a request to amend should be denied, if the proposed amendment would cause surprise, result in additional discovery, or add significant costs to the litigation in defending against the new theories. *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS, 2011 WL 678707, at *1 (D. Del. Feb. 18, 2011); *see also Nike*, 479 F. Supp. 2d at 670 (denying amendment where amended contentions "would require the court at the very least to extend the expert report deadlines and discovery deadlines. Invariably, this will result in increased costs and delays.").

HP would be significantly prejudiced were St. Clair permitted to assert a new theory

against a new technology, further prolonging and complicating a case that was close to trial when it was stayed. *See, e.g., Sigram Schindler Beteilingungsgesell-Schaft mbH v. Cisco Sys., Inc.*, C.A. No. 09-072-SLR, 2010 WL 2977552, at *6 (D. Del. July 26, 2010) (rejecting patent holder's attempt to assert new infringement contentions after claim construction or summary judgment briefing); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *7 (E.D. Tex. Aug. 18, 2009) (significantly changing infringement contentions after nine months of discovery and a *Markman* hearing would cause "severe prejudice" to the defendants who had relied on the plaintiff's original contentions as the framework for the litigation).

The American Intellectual Property Association ("AIPLA") studied the typical costs of litigation and determined that in 2009, a patent infringement suit like this one was likely to cost a single defendant $2,500,000, of which $1,500,000 would be spent through the end of discovery. *Report of the Economic Survey*, AIPLA 2009, p. 29. The parties have already incurred the costs of conducting discovery once, and have also made their pretrial filings. St. Clair's assertion of a new theory against a new theory would require HP to do much of this work over again. *See Altair Eng'g, Inc. v. LEDdynamics, Inc.*, No. 07-CV-13150, 2009 WL 799184, at *8 (E.D. Mich. Mar. 24, 2009) ("This is not the time to be restarting discovery for what effectively amounts to a new lawsuit. To do so would violate Federal Rule of Civil Procedure 1 which requires the court 'to secure the just, speedy, and inexpensive determination of every action.' Such an onerous undertaking at this point in the proceeding would seriously prejudice [defendant]."), *rev'd on other grounds*, 2011 WL 836440 (Fed. Cir. Mar. 9, 2011) (unpublished).

    4.   St. Clair's Amendment Would Be Futile

Permitting St. Clair to amend its infringement contentions to assert a new infringement theory would be futile, because the only way St. Clair can advance this theory at this time would be to submit a declaration from its technical expert that contradicts his own prior opinions.

During a status conference following the issuance of the Federal Circuit's *Fujifilm* opinion, St. Clair asserted a new infringement theory premised on the transmission of JPEG images from a cell phone versus from a computer. Ex. 1 (4/19/11 Conf. Tr.) at 11-12. Although St. Clair has not fully articulated its theory, it appears that St. Clair contends that JPEG files (or potentially "a specific file format" for e-mail) correspond to one computer architecture, namely computers generally, while MMS files correspond to another computer architecture, cell phones.

However, St. Clair's own technical expert has already identified only a single still format in the HP PDAs, JPEG. Ex. 3 (Gafford Report) at 11-17, 26-31, 34-35, 37, 46, 48, 50. In addition, he has already conceded that JPEG is a single file format specifically developed to be a standard format capable of working with a wide array of computer architectures. *Id.* at 5-6, Ex. C (Kohm Decl., Ex. 6). Because he has already conceded there is only one still format and that that still format is not device-dependant, he cannot now create a material dispute of fact by opining in contradiction to himself. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251-54 (3d Cir. 2007) (parties cannot thwart the purpose of summary judgment by creating "sham" issues of fact with affidavits that contradict their prior sworn statements.). Accordingly, it would be futile to permit St. Clair to assert this theory.

## VI.   CONCLUSION

For the reasons stated above, HP respectfully requests that this Court grant it summary judgment of non-infringement of all claims of the St. Clair patents-in-suit, as against all of the HP camera and PDA products. In the alternative, HP respectfully requests summary adjudication of non-infringement on the patent claims St. Clair is no longer asserting—claims 1 and 2 of the '899 patent, claims 1-3, 8, and 16-18 of the '219 patent, and claim 17 of the '459 patent—and on the HP cameras and HP personal digital assistants without cell phone capability, as St. Clair had admitted they cannot infringe.

OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

Charlene M. Morrow
FENWICK & WEST LLP               By:   /s/ David E. Moore
801 California Street                    Richard L. Horwitz  (#2246)
Mountain View, CA 94041                  David E. Moore (#3983)
Tel: (650) 988-8500                      Hercules Plaza, 6th Floor
                                         1313 N. Market Street
Heather N. Mewes                         Wilmington, DE 19899-0951
David D. Schumann                        Tel:  (302) 984-6000
Bryan A. Kohm                            rhorwitz@potteranderson.com
Jeffrey V. Lasker                        dmoore@potteranderson.com
FENWICK & WEST LLP
555 California Street, 12th Floor     *Attorneys for Defendant*
San Francisco, CA 94104              *Hewlett-Packard Company*
Tel: (415) 875-2300

Dated:   June 3, 2011
Public Version Dated: June 10, 2011
1016280 / 28641

**APPENDIX**

1.    '459 Patent, Claim 16

16. A process for storing an electronically sensed video image comprising the steps of:

> generating an analog image signal corresponding to the imagewise pattern of radiant light incident on a plurality of light sensing pixel elements,

> converting the analog image signals into digital electronic information signals wherein a distinct digital electronic signal corresponds to the analog image signals corresponding to the intensity of radiant light falling on the light sensing pixel elements,

> temporarily storing the digital electronic information signals,

> recording in selectable addressible memory means at least one of a plurality of different digital output data format codes where *each of said plurality of output data format codes corresponds respectively to one of a like plurality of different data formats for different types of computer apparatus,*

> *selecting from said selectable addressible memory means one of said different digital output data format codes* to be associated with each said digital electronic information signals, and

> *storing said digital electronic information signals in a digital memory in accordance with said selected output data format code.*

2.    '219 Patent, Claims 10 and 12

10. An electronic camera comprising:

> means for capturing image data corresponding to a selected image;

> means for digitizing captured image data;

> removably mounted memory means for storing digitized image data;

> output data format control means for storing in said camera at least one of a plurality of different output data format codes where *each of said plurality of output data format codes corresponds respectively to at least one of a plurality of different data file formats for different types of computer apparatus;* and

> logic means responsive to said format control means for selectively controlling the *formatting of said digitized captured image data in accordance with a selected one of said plurality of different output data format codes.*

12. The device of claim 10 further comprising

> image resolution determining means for selectively determining which of a plurality of compression algorithm parameters are to be applied to said digitized image data.

3.      '010 Patent, Claim 1

1. A digital camera for taking pictures and storing them in a removable storage device in the camera, said digital camera apparatus comprising:

an image pick-up unit for generating and outputting a digital image signal photoelectrically converted from an image incident thereon, and

a digital control unit for *formatting said digital image signal in one of a plurality of computer formats.*

4.      '899 Patent, Claims 3 and 4

3. For use in an electronic camera having an image pick-up unit and a storage device, a process for taking and storing digital pictures, the process comprising:

*selecting one of a plurality of computer image file formats in the camera;*

generating a digital image signal corresponding to an image incident on the image pick-up unit;

*formatting the digital image signal in the selected computer image file format;* and

*storing the formatted computer image file in the storage device.*

4. A process as in claim 3,

wherein the storage device is removable.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 7, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on June 7, 2011, the attached document was electronically mailed to the following person(s)

George H. Seitz, III
James S. Green
Patricia Pyles McGonigle
Jared T. Green
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
gseitz@svglaw.com
jgreen@svglaw.com
pmcgonigle@svglaw.com
jtgreen@svglaw.com

Ronald J. Schutz
Jake M. Holdreith
Becky R. Thorson
Annie Huang
Seth A. Northrop
Carrie M. Lambert
Andrea L. Gothing
Tara F. Harkins
Trevor J. Foster
Brock J. Specht
Lars P. Taavola
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
StClairServiceList@rkmc.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

961457 / 28641