IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04-1436-LPS |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, L.P.; MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; MATSUSHITA ELECTRIC CORPORATION OF AMERICA; VICTOR COMPANY OF JAPAN, LTD.; JVC COMPANY OF AMERICA; NOKIA CORPORATION; NOKIA, INC.; HEWLETT-PACKARD COMPANY; EASTMAN KODAK COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.'S
MEMORANDUM IN OPPOSITION TO HEWLETT-PACKARD COMPANY'S
MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION
OF NON-INFRINGEMENT**

Of Counsel:

R. Terrance Rader
Charles W. Bradley
Glenn E. Forbis
RADER, FISHMAN & GRAUER PLLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
(248) 594-0600

Patricia P. McGonigle (DE 3126)
Jared T. Green (DE5179)
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19899
(302) 888-0600
pmcgonigle@svglaw.com
jtgreen@svglaw.com

*Attorneys for Plaintiff St. Clair Intellectual
Property Consultants, Inc.*

## TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

II.  SUMMARY OF ARGUMENT ..................................................................................... 2

III. STATEMENT OF FACTS ......................................................................................... 5

   A. HP's Statement Of Facts Do Not Establish Non-Infringement, Judicial Estoppel, Collateral Estoppel, Discovery Sanctions, Or Waiver ..................................................... 5

   B. Chronology Of Relevant Events .............................................................................. 6

   C. The Undisputed Evidence Presented By St. Clair Proves That HP's Accused Products Literally Infringe The Patent Claim Terms In Issue– "Plurality Of Different Data Formats For Different Types Of Computer Apparatus" ........................... 7

IV.  ARGUMENT .......................................................................................................... 9

   A. Collateral Estoppel Does Not Apply And St. Clair's Infringement Position Comports With The CAFC Claim Construction .......................................................... 11

   B. Collateral Estoppel Does Not Preclude Infringement By Products That Were Not The Same Or Essentially The Same As Those At Issue In The Prior Litigation .......... 11

   C. Judicial Estoppel Does Not Apply Without The Advancement Of A "Clearly Inconsistent" Position From An Earlier Successful Position ......................................... 13

   D. Waiver Does Not Apply ......................................................................................... 15

   E. St. Clair's Amendment Of Its Infringement Theory Is Not Precluded By Rules 15 Or 16 ................................................................................................................. 17

   F. St. Clair Did Not Violate Any Rules And Even So, Rule 37 Would Not Operate To Preclude Admission Of Crucial Infringement Evidence Absent Bad Faith ................. 18

      1.   St. Clair Did Not Violate Any Rule Or Order Of The Court ................................ 19

      2.   Rule 37 Does Not Exclude Crucial Infringement Evidence Absent Bad Faith .... 20

V.   CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.,*
  2011 U.S. Dist. LEXIS 53846 (D. Del. May 19, 2011)....................................................4, 21, 22

*Accenture Global Servs. GMBH v. Guidewire Software, Inc.,*
  691 F. Supp. 2d 577 (D. Del. 2010)...........................................................................................5

*Acumed LLC v. Stryker Corp.,*
  525 F.3d 1319 (Fed. Cir. 2008).................................................................................................12

*Altair Eng'g, Inc. v. LEDdynamics, Inc.,*
  2011 WL 836440 (Fed. Cir. Mar. 9, 2011)........................................................................3, 4, 14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)....................................................................................................................5

*B. Braun Melsungen AG v. Teramo Med. Corp.,*
  749 F. Supp. 2d 210 (D. Del. 2010)..........................................................................................22

*Biogenex Labs., Inc. v. Ventana Med. Sys.,*
  2006 U.S. Dist. LEXIS 57067 (N.D. Cal. Aug. 3, 2006)..........................................................17

*Biovail Labs v. Intelgenx Corp.,*
  2010 WL 5420144 (D. Del. Dec. 27, 2010)..............................................................................12

*Cordis Corp. v. Boston Sci. Corp.,*
  635 F. Supp. 2d 361 (D. Del. 2009)..........................................................................................12

*Data Retrieval Tech., LLC v. Sybase, Inc.,*
  No. C 08-5481, 2009 U.S. Dist. LEXIS 129454 (N.D. Cal. Sept. 11, 2009)............................16

*In re Papst Licensing GMBH & Co. KG Litig.,*
  No. 07-493, 2011 U.S. Dist. LEXIS 9848 (D.D.C. Feb. 2, 2011).......................................17, 18

*Loral Fairchild Corp. v. Victor Co.,*
  911 F. Supp. 76 (E.D.N.Y. 1996).......................................................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)....................................................................................................................5

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
  559 F.2d 894 (3d Cir. 1977).............................................................................................19, 21, 22

ii

*New Hampshire v. Maine,*
    532 U.S. 742 (2001).................................................................................................. 13

*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,*
    60 F.3d 153 (3d. Cir. 1995)....................................................................................... 21

*Quinn v. Consol. Freightways Corp. of Del.,*
    283 F.3d 572 (3d Cir. 2002)...................................................................................... 21

*St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.,*
    No. 2009-1052 et al., 2011 WL 66166 (Fed. Cir. Jan. 10, 2011) ............................... 1

*St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.,*
    2010 WL 1213367 (D. Del. Mar. 29, 2010) ....................................................... 16, 23

*Tessera, Inc. v. Advanced Micro Devices, Inc.,*
    2007 U.S. Dist. LEXIS 35957 (N.D. Cal. Apr. 30, 2007) ........................................ 17

*Tolerico v. Home Depot,*
    205 F.R.D. 169 (M.D. Pa. 2002)............................................................................... 21

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,*
    270 F. Supp. 2d 519 (D. Del. 2003)..................................................................... 20, 21

## Rules

Fed. R. Civ. P. 37(b) ........................................................................................................... 19

Fed. R. Civ. P. 37(c) ........................................................................................................... 19

Fed. R. Civ. P. 56(c) ............................................................................................................. 2

N.D. Cal. L.R. 3-6................................................................................................................. 4

## Treatises

8B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 2289, 2291
    (3d ed. 1998) ............................................................................................................. 20

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On January 10, 2011, the Federal Circuit held that "the district court erred in construing the asserted claims" and reversed the judgment of infringement in the *Fujifilm* case. The Federal Circuit changed the construction of the "plurality of different data formats for different types of computer apparatus" terms that had been adopted by this Court originally in 2002 and in both the *Fujifilm* case and this case. The Federal Circuit found that under the correct claim construction, judgment as a matter of law of non-infringement should have been granted in favor of Fujifilm. *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, No. 2009-1052 et al., 2011 WL 66166 (Fed. Cir. Jan. 10, 2011) ("*Fujifilm I*").

At the April 19, 2011 hearing (Ex. 1), St. Clair recommended that it provide new technical expert report(s) in view of the Federal Circuit's decision on claim construction, with the defendants being allowed time to submit their own expert report(s) and with St. Clair and the defendants being allowed time to take limited discovery on the new expert reports. The defendants responded that they preferred to submit summary judgment papers, even though this Court pointed out that St. Clair's response would consist of expert declarations under Rule 56. (Ex. 1, Hearing Tr., 18:21-19:25). Thereafter, each defendant filed a motion for summary judgment of non-infringement pursuant to Fed. R. Civ. P. 56.

Defendant Hewlett-Packard Company ("HP") has moved for summary judgment of non-infringement of claim 16 of U.S. Patent No. 5,138,459 ("the '459 Patent"); claims 10 and 12 of U.S. Patent No. 6,094,219 ("the '219 Patent"); claim 1 of U.S. Patent No. 6,233,010 ("the '010 Patent"); and claims 3 and 4 of U.S. Patent No. 6,323,899 ("the '899 Patent") (collectively, the "Roberts Patents"). St. Clair's Opposition to HP's motion for summary judgment under Rule 56 follows.

## II.    SUMMARY OF ARGUMENT

A court shall grant summary judgment <u>only if</u> "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The accused products in this case are devices, known as camera phones and smartphones, that include a wireless digital camera capable of selectively outputting image data in both a text message MMS data format and an SMTP/MIME email data format.  HP provides no evidence that the accused products do not have a "plurality of different <u>data formats</u> for different types of computer apparatus" (emphasis added), which is the claim language discussed by the Federal Circuit from the claims of the patents in suit.  Relying solely upon attorney argument, HP instead argues that the accused products have only one still *image file format* (i.e., a JPEG image file format).  But that argument simply does not address the issue of whether or not HP devices include a "plurality of different <u>data formats</u>" (emphasis added) under the CAFC construction.  As set forth by the expert testimony presented by St. Clair herein, the accused products literally infringe the claim words at issue from the asserted claims of the Roberts Patents under the Federal Circuit's claim construction because they can selectively output image data in both a text message MMS data format and an SMTP/MIME email data format.  Thus, St. Clair's infringement position under the Federal Circuit's claim construction is not suitable for summary judgment because there are genuine issues of material fact regarding infringement and HP is not entitled to a judgment as a matter of law.

The other issues raised by HP either directly or indirectly including judicial estoppel, collateral estoppel, and waiver are simply inapplicable to this case.  Judicial estoppel does not apply where St. Clair has not taken a position contrary to a previously successful position.  Collateral estoppel does not apply where the issue of infringement by the accused HP products

<u>was not litigated</u> in the related *Fujifilm I* case, which only related to conventional digital cameras, not devices that incorporate both a digital camera and a wireless phone; thus, the accused HP products are not the same or materially the same products as required for collateral estoppel/issue preclusion to apply.

Discovery sanctions and waiver also do not apply to this case. St. Clair did not violate any discovery rules or orders. Because the defendants, including HP, never moved to compel St. Clair to disclose any alternative infringement positions under the various claim constructions taken by the defendants, defendants are limited to arguing a violation of Rule 26(a) that would subject St. Clair to Rule 37(c) sanctions. St. Clair cannot be held to have violated its expert disclosure obligations by operating under a claim construction that was the law of the case since 2002 and clearly since the November 2009 Report and Recommendation of this Court – which was provided well prior to the commencement of expert discovery and with the objections to the claim construction being overruled prior to the close of expert discovery. Even if, notwithstanding no precedent to support it, St. Clair was in error for following the claim construction ruling of this Court and not addressing the multiple claim constructions of the defendants – which were all different and which were then <u>not the law of the case</u> – the Third Circuit is adverse to excluding important evidence, such as an expert report providing infringement contentions, absent a showing of willful deception or flagrant disregard of a court order.

Given the lack of any discovery violations by St. Clair, HP and the other defendants cite to cases from other districts that have local rules regarding amendment of infringement contentions. The cases relied upon by the defendants either support St. Clair or are inapposite. For example, in *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, 2011 WL 836440 (Fed. Cir. Mar. 9, 2011), the Federal Circuit reversed the district court's holding that judicial estoppel applied and

held: "While Altair may not ultimately prevail in its infringement suit based on its new characterization of the accused product, it is at least entitled to try." *Altair*, at *5. Similarly, the Northern District of California local patent rules now specifically recite a claim construction ruling as "good cause" for seeking amendment of infringement or invalidity contentions. ("Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Nonexhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: (a) <u>a claim construction by the Court different from that proposed by the party seeking amendment</u> ..." N.D. Cal. L.R. 3-6 (emphasis added). As stated by this Court in May, 2011: "It bears emphasis that exclusion of 'critical evidence,' <u>such as an expert report on infringement</u>, is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence'." *Abbott Labs. v. Lupin Ltd.*, 2011 U.S. Dist. LEXIS 53846 at *8-9 (D. Del. May 19, 2011) (emphasis added).

Not only was St. Clair substantially justified in its actions but also it is not unfair or prejudicial to have the defendants address the merits of St. Clair's position. Trial is not scheduled and the defendants possess the information concerning the technical operation of the accused products. St. Clair has only asked that it be permitted an opportunity to submit a new technical expert report(s), update its damages report since January, 2010 until the expiration of the patents in suit, and allow discovery by both St. Clair and the defendants relating to the new technical expert report(s). HP could then file its own technical expert report(s) and depose the technical and damages witnesses. Under this proposal, which was made by St. Clair at the April 19, 2011 hearing, the delay for this limited expert discovery is minimal. Without a trial being scheduled, time can be reasonably allotted by the Court to permit the defendants to address the merits of the case thereby curing any alleged prejudice.

Finally, the issue of whether other infringement theories might by advanced by St. Clair under an amended claim construction from the Federal Circuit has already been determined by the Court when it stated in its Order on defendants' motion to stay:

> Defendants assert that further proceedings in these actions should be stayed until after the Federal Circuit resolves the *Fujifilm I* appeal because the Federal Circuit's ruling there may otherwise necessitate relitigation of the instant actions. ... Notwithstanding Defendants' (and the PTO's) disagreement with this Court's claim construction, it remains possible that the Federal Circuit will affirm this Court's construction of the "different data format" terms. ... Moreover, even if the Federal Circuit construes the claims differently than this Court has done, it is not clear that such a ruling would be case-dispositive; whether some or all of Defendants' accused devices infringe under alternative constructions appears to be a disputed issue. (D.I. 342, Order, pp. 7-8).

## III.   STATEMENT OF FACTS

### A.   HP's Statement Of Facts Do Not Establish Non-Infringement, Judicial Estoppel, Collateral Estoppel, Discovery Sanctions, Or Waiver

St. Clair does not agree that HP's alleged statement of undisputed material facts are either "undisputed" or relevant to the issues raised in HP's motion for summary judgment. St. Clair does state that HP has failed to establish that there are no genuine issues as to any material fact and HP has failed to establish that it is entitled to judgment as a matter of law. HP bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Accenture Global Servs. GMBH v. Guidewire Software, Inc.*, 691 F. Supp. 2d. 577, 582 (D. Del. 2010) (denying summary judgment motions of defendant). Summary judgment is not warranted where the opposing party presents evidence that is more than merely colorable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, based upon the facts presented by St. Clair herein, there are genuine issues of material fact that prevent HP from summary judgment of non-infringement.

**B. Chronology Of Relevant Events**

- September 3, 2002:  First construction of claim terms at issue for the patents in suit. (See *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, D. Del. Case No. 1:01-cv-00557 ("*Sony*"), D.I. 112).

- February 2003: St. Clair obtains verdict of infringement against Sony.  (See *Sony*, D.I. 322).

- August 31, 2004:  Second construction of claim terms at issue for the patents in suit. (See *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, D. Del. Case No. 1:03-cv-00241 ("*Fuji*"), D.I. 749).

- October 2004: St. Clair obtains verdicts of infringement against Canon and against Fuji. (See *Fuji*, D.I. 880, D.I. 926).

- July 17, 2006:  Case stayed pending resolution of patent ownership dispute between Eastman Kodak Co. and St. Clair in separate litigation—*Mirage Systems, Inc. v. Speasl*, Cal. Sup. Ct. Civil Action No. 05-39164. (See D.I. 112).

- July 9, 2008:  Stay lifted.

- April/May 2009:  Claim Construction briefs filed.

- Nov. 13, 2009:  Claim Construction Report and Recommendation, confirming the claim construction *thrice* entered in the earlier litigations as decided by Judge Farnan. (D.I. 531).

- December 9, 2009:  Initial Notice of Appeal filed in *Fujifilm I*.

- December 18, 2009:  Fact discovery completed.

- January 11, 2010:  Opening expert reports served.

- February 25, 2010:   Judge Farnan overrules objections to Report and Recommendation. (D.I. 719).

- March 8, 2010:  Fuji files opening appeal brief, revealing appellate issues on claim construction.

- April 2010: Expert discovery closed.

- July 8, 2010:  Case stayed pending CAFC decision (cancelling scheduled trial of September 7, 2011).

- September 24, 2010:   CAFC rejects defendants' petition to accept Interlocutory Appeal.

- January 10, 2011:   CAFC decision in *Fujifilm I* regarding conventional digital cameras.

- April 19, 2011: Hearing re: Stay lifted and impact on *Fujifilm I* decision on case.

**C. The Undisputed Evidence Presented By St. Clair Proves That HP's Accused Products Literally Infringe The Patent Claim Terms In Issue– "Plurality Of Different Data Formats For Different Types Of Computer Apparatus"**

In essence, the defendants, including HP, agree with RIM's argument that the Federal Circuit limited the asserted claims to a single image or picture.  HP also argues that the alleged undisputed record proves that HP's accused products have "only a single, architecture-independent, still-image format", and therefore, do not infringe the Roberts Patents.  Thus, relying solely upon <u>attorney argument</u> that the accused products only have one still image file format, i.e., the JPEG image file format, HP provides no evidence that the accused products do not provide a "plurality of different <u>data formats</u> for different types of computer apparatus" (emphasis added).

At the outset, the Federal Circuit did not change the definition of "data format" which was defined by this Court as "the arrangement of digital data in a file including image, audio, text or other data and includes, at least, MPEG, JPEG, GIF, TIFF, PICT, BMP, JFIF, DCF, TXT, DOC, WPD and WAV." (Ex. 2, p. 3).  Instead, the Federal Circuit found that "each data format" must correspond on a one-to-one basis to a different type of computer architecture (e.g., in the way that GIFF corresponds to IBM and PICT corresponds to Apple).  (Ex. 2, p. 6).  Further, the Federal Circuit found that: "When a user selects a format, he makes a decision based on the desired architecture—not a particular data format."  Thus, the Federal Circuit did not find that the claimed "different data formats" are limited to "a single image or picture" format, and there is no undisputed record evidence that the accused products only have one still image <u>data format</u>.

As set forth in the Declarations of Ted Drake and Bill Mangione-Smith:

- The output data format used by an accused HP device for sending an image file to a wireless phone (a first computer architecture) includes an MMS text message file that is placed around the JPEG image data and includes a header.  Alternatively, the output data

format used by the same HP accused device for sending the same image file by e-mail to a personal computer (a second computer architecture) is an SMTP e-mail file, header, and JPEG image data after conversion to an MIME format. (Ex. 3, Drake Decl., ¶¶ 11-22; Ex. 4, Mangione-Smith Decl., ¶¶ 11-23).

- Wireless phones have particular computer architectures, including processors, memory devices, input/output devices, and operating systems, that are different and distinct from the computer architectures used in personal computers. The differences between the computer architectures used in wireless phones and personal computers are analogous to the differences in the computer architectures used in the personal computers sold by IBM and Apple and the high end work stations and servers sold by Sun Micro Systems and Digital Equipment in the 1990s, as identified by the Federal Circuit as exemplifying "different types of computer architecture." (Ex. 3, Drake Decl., ¶¶ 26-28; Ex. 4, Mangione-Smith Decl., ¶¶ 27-29).

- The MMS text message file, header, and associated JPEG image data is an "arrangement of digital data in a file including image, audio, text or other data" and is, therefore, a particular "data format" under the Federal Circuit's decision. Further, when a user selects the MMS data format, he/she "makes a decision based on the desired architecture– not a particular data format." That is, when a user chooses to send an image in an MMS format text message, he/she makes that decision based on the architecture of the desired recipient device (e.g., a computer architecture used in wireless phones), not the particular data format. (Ex. 3, Drake Decl., ¶ 19; Ex. 4, Mangione-Smith Decl., ¶ 20).

- The SMTP e-mail file with header and JPEG image with conversion to the MIME format is a specific "data format" that is different from the MMS data format, and it is an "arrangement of digital data in a file including image, audio, text or other data." It is,

therefore, a particular "data format" under the Federal Circuit's decision that is different than the MMS data format. Further, when a user selects the SMTP data format, he/she "makes a decision based on the desired architecture—not a particular data format." Hence, when a user chooses to send an image file in an SMTP e-mail format, he/she makes that decision based on the architecture of the desired recipient device (i.e., a computer architecture used in personal computers), not the particular data format. (Ex. 3, Drake Decl., ¶ 22; Ex. 4, Mangione-Smith Decl., ¶ 23).

- Using the Federal Circuit's claim construction ruling, the patent claim terms at issue in HP's motion for summary judgment of non-infringement, are literally infringed using the claim construction ruling from the Federal Circuit. (Ex. 3, Drake Decl., ¶¶ 11-28; Ex. 4, Mangione-Smith Decl., ¶¶ 11-29).

## IV.  ARGUMENT

At the April, 2011 hearing (Ex. 1), St. Clair sought permission to file an amended expert report(s) in view of the Federal Circuit's ruling on claim construction (Ex. 2). Defendants instead requested permission to file summary judgment papers with the expectation and knowledge that St. Clair would submit its amended expert report(s) in the form of declarations under Rule 56. As set forth in St. Clair's separately filed motion to amend its infringement contentions, St. Clair should be given an opportunity to detail the technical grounds for its infringement position in an expert report(s) in view of the change in claim construction resulting from the Federal Circuit decision. As recognized by this Court during the April 19 hearing, the defendants filed their summary judgment motions of non-infringement even though they knew that expert affidavits under Rule 56(d) would be filed by St. Clair in response to the summary judgment motions.

None of the defendants' arguments justify preventing this case from moving forward on the merits. The HP case was filed in 2004. Prior to its filing, three separate juries found infringement with respect to digital cameras using a claim construction that was first decided in September, 2002 and remained the same until January, 2011 when the Federal Circuit changed the claim construction for the words "plurality of different data formats for different types of computer apparatus." Three juries have found the Roberts Patents infringed; two juries have found the Roberts Patents valid in view of the prior art; and the Roberts Patents have been the subject of a separate litigation relating to patent ownership and of Reexaminations at the Patent Office.

When this Court entered its claim construction ruling on November 13, 2009, the claim construction of the "different data format" terms was the same as the construction of the Court adopted in *Fujifilm I*. However, this Court's construction differed from the construction endorsed by the U.S. Patent and Trademark Office ("PTO") during the reexamination of the Roberts Patents. While the defendants complained that St. Clair should have presented alternative infringement theories to match the varying proposed claim constructions of the defendants, there was no requirement from this Court or in the case law for St. Clair to do so and any such attempt to do so would have been futile since <u>the Federal Circuit did not adopt any one of the proposed claim constructions presented by Fuji or the PTO or any one of the defendants filing a motion for summary judgment of non-infringement.</u> As set forth in the attached chart (Ex. 5), the PTO, Fuji, and the present defendants, including HP, all presented various proposed claim constructions for the words "plurality of different data formats for different types of computer apparatus"—none of these proposed constructions were directly adopted by the Federal Circuit. Thus, for the foregoing reasons and the reasons set forth below, St. Clair has

done nothing wrong and should be allowed to amend its infringement contentions and technical expert report(s) to conform with the Federal Circuit's claim construction decision.

### A. Collateral Estoppel Does Not Apply And St. Clair's Infringement Position Comports With The CAFC Claim Construction

HP argues that collateral estoppel applies to St. Clair's previous infringement position against the defendants in this case where it is the same infringement theory that the CAFC decided in *Fujifilm I*. However, collateral estoppel or issue preclusion is determined by a comparison of the accused products between the cases, not the infringement theory alone. Collateral estoppel requires that the same or essentially-the-same products to have been before the CAFC in *Fujifilm I*, with the burden on defendants to prove that smartphones and camera phones are essentially the same products in regard to the pertinent claim limitations. Smartphones and camera phones were not before the CAFC. *Fujifilm I* only involved conventional digital cameras (without the ability to format image data for MMS wireless phone or SMTP email output. Defendants do not present admissible technical evidence in the form of any expert declaration that the products are essentially or materially the same product.

Moreover, as set forth in the Declarations of Drake and Mangione-Smith, St. Clair is not re-litigating claim construction but is explicitly applying the CAFC claim construction to devices that incorporate both a digital camera feature and a wireless phone feature, including smartphones and camera phones.

### B. Collateral Estoppel Does Not Preclude Infringement By Products That Were Not The Same Or Essentially The Same As Those At Issue In The Prior Litigation

The test for collateral estoppel requires that the <u>accused product</u> not be materially different, with the burden on the party asserting collateral estoppel to prove a lack of material differences to the product previously held to not be infringing. HP presents no evidence that the accused products are essentially the same as conventional digital cameras and have no material

differences. The CAFC has held that "two claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are 'essentially the same.'" *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008).

In the present case, the accused products differ substantially from conventional digital cameras with respect to the claim limitations at issue. The attached Declarations of Drake and Mangione-Smith detail the available output "data formats" in the accused products, which are not available in conventional digital cameras, thus rendering these accused products to be materially different in regard to the pertinent claim limitations. In *Cordis Corp. v. Boston Sci. Corp.*, 635 F. Supp. 2d 361, 366-67 (D. Del. 2009), the District of Delaware denied summary judgment after it determined that issue preclusion did not apply where stent product was structurally similar but modified to be drug-eluting. St. Clair dropped conventional digital cameras from the currently-pending cases because such cameras are not materially different from those litigated in *Fujifilm I*. Moreover, Defendants represented to the CAFC that the accused products in the ongoing action are a "different family of accused products second and third generation mobile phones, smartphones and PDAs as opposed to the first generation digital cameras that are at the heart of the [*Fujifilm I*] appeal." (Ex. 6, Motion for Leave to File Amicus Curae Brief, p.7 (3/15/2010)).

The same result can be drawn from the collateral estoppel factors set forth in the Third Circuit. "The Third Circuit has identified four requirements for collateral estoppel: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Biovail Labs v. Intelgenx Corp.*, 2010 WL 5420144 *11 (D. Del. Dec. 27, 2010) (J. Stark). These factors show that estoppel should not be applied to the issue of infringement by the accused products in this case.   The most crucial

factor is that estoppel does not apply to an issue that was <u>not decided</u> – i.e., infringement by devices including both a digital camera feature and a wireless phone feature under the alternative contention applying the CAFC claim construction.  The CAFC applied the prior infringement contention only against conventional digital cameras.

### C. Judicial Estoppel Does Not Apply Without The Advancement Of A "Clearly Inconsistent" Position From An Earlier Successful Position

Judicial estoppel precludes a party from changing its position from a prior contrary position that successfully convinced the court to find facts or law in its favor. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  The purpose of judicial estoppel is to protect the integrity of the court by preventing a party from taking inconsistent positions in the same or related litigation.  The Supreme Court has set forth several non-exclusive factors for courts to consider in deciding whether the doctrine of judicial estoppel applies: "(1) the parties later position must be 'clearly inconsistent' with its earlier position, (2) the party must have succeeded in persuading a court to adopt its earlier position, thereby posing a 'risk of inconsistent court determinations'; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *New Hampshire*, 532 U.S. 742 at 750-51.  Each of these factors militate against applying the doctrine to preclude St. Clair from presenting crucial infringement evidence that conforms to the CAFC's claim construction ruling.

There is nothing inconsistent with St. Clair's position that the accused products infringe under differing claim constructions.  St. Clair's current claim construction position is not *contrary* to any earlier position or expert testimony but rather is an *additional* infringing position to the position advanced under the prior operative claim construction. *See,* Drake Decl., ¶¶ 24-28; Mangione-Smith Decl., ¶¶ 25-29.  The integrity of the court is protected by permitting the

infringement contention/evidence to be conformed to the CAFC decision concerning claim construction, just as is commonly performed in situations of remand.

Cases relied upon by the defendants either support St. Clair or are inapposite. For example, HP relies upon *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, 2011 WL 836440 (Fed. Cir. Mar. 9, 2011), but the CAFC reversed the district court's holding that judicial estoppel applied. The district court refused to accept Altair's amended infringement contention redefining the infringing product from a product with 36 LEDs as one of 6 packages of 36, made in response to the court's adoption of the defendant's claim construction. *Altair*, at *1. The court applied judicial estoppel because it viewed that the court had adopted Altair's definition of LEDs in the accused device and its new argument "is clearly at odds with its consistent position during the Markman proceedings." *Altair*, at *2. The CAFC held that this was error because Altair never prevailed successfully in one phase of the case and then relied on a contradictory argument in another phase of the case. *Altair*, at *4. The contentions of 36 or 216 LEDs were never at issue and Altair never prevailed "on anything substantive." *Id.* Altair submitted an affidavit from a technical expert that the accused products meet the claim construction under the 216 LED contention.

The CAFC held:  "While Altair may not ultimately prevail in its infringement suit based on its new characterization of the accused product, it is at least entitled to try." *Altair*, at *5. Like *Altair*, St. Clair is entitled to present its infringement position under the new claim construction, because St. Clair is not taking an inconsistent position to any position upon which it prevailed in this case. Its infringement positions are not inconsistent.

Another case relied upon by the defendants which either supports St. Clair or is inapposite is *Loral Fairchild Corp. v. Victor Co.*, 911 F. Supp. 76 (E.D.N.Y. 1996). In the *Loral* opinion, Judge Rader stated that "At the Outset of this litigation Loral could have proceeded

under alternative theories." *Id.,* at 80. Judge Rader's ruling did not, however, rest on this factor. Rather, as Judge Rader pointed out, Loral had failed to supplement its expert reports to focus on its new position, as late as 17 days before trial. Further, Loral's discovery responses did not address its new position. Also, at an oral argument just before trial, Loral made no effort to supply updated discovery responses consistent with the requirements of the Federal Rules, and, lastly, the court had cautioned Loral in the past concerning the content of its discovery responses and expert reports.

As a consequence of all of these factors, not simply the failure to start off with alternate theories, the court found that Loral had failed to comply with the discovery updating requirement of Fed. R. Civ. P.26(e), to the substantial prejudice of Sony.

Also, the *Loral* court ruled that:

> While the Federal Rules of Civil Procedure clearly contemplate shifting or alternative positions in a single actions [sic], the court finds Loral judicially estopped under the unique facts and circumstances of this case. *Loral,* 911 F. Supp. at 80.

Thus, *Loral* clearly contemplates "shifting or alternative positions" in a single action but found under "the unique facts and circumstances of this case", Loral had failed to comply with the discovery updating requirement of Rule 26. The *Loral* facts simply do not exist in this case.

### D. Waiver Does Not Apply

All of the defendants variously invoke "waiver" or general "equitable principles" with no law to back up their amorphous assertions. In general, the defendants allege that St. Clair waived any right to assert any other infringement contentions now that the stay has been lifted because St. Clair did not do so in prior discovery materials (infringement contentions, expert

reports, or interrogatory responses) despite knowledge of defendants' objections to the November 2009 ruling, the PTO's claim constructions, and the Fuji appeal.[1]

HP argues that waiver resulted from the choice to not rebut its experts' non-infringement contentions under the defendants' claim construction position. The case relied upon by HP (*Data Retrieval*), however, does not relate to a failure to rebut an expert report or even any claim construction issue. *Data Retrieval Tech., LLC v. Sybase, Inc.*, No. C 08-5481, 2009 U.S. Dist. LEXIS 129454 (N.D. Cal. Sept. 11, 2009). The case involved the application of the Northern District of California local patent rules to a change in infringement contentions based on alleged new evidence. Under the current rules of the Northern District of California, while good cause is required to amend infringement/invalidity contentions, an adverse claim construction ruling is recited in the local rules as an example of good cause. Further, *Data* involved the egregious situation where plaintiff made no "diligent efforts" to obtain the discovery needed and failed to even move to amend its infringement contentions. In response to a summary judgment motion, plaintiff did not even provide a Rule 56 affidavit for more information. Thus, the *Data* case is inapposite.

HP is also wrong with respect to the timing of the expert reports. Given the fact that the operative decision on claim construction occurred in November of 2009, St. Clair had no reason to provide an infringement theory on a claim construction different from that determined by the Court, even if the defendants had objections pending. Moreover, those objections were overruled prior to the close of expert discovery. Had trial moved forward on schedule, only the claim construction determined in November, 2009 would have been at issue at trial.

---

[1] The pending Fuji appeal in another case is not pertinent to waiver and did not impose additional discovery obligations on St. Clair to attempt to guess at and apply possible CAFC constructions. Even in March, 2010, the court also felt that "the timing and outcome of the *Fujifilm I* appeal are speculative." *St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2010 WL 1213367 at *3 (D. Del. Mar. 29, 2010).

Not only do the defendants cite no relevant case support concerning alleged waiver, but the operative claim construction for the case was decided prior to the commencement of expert discovery, with defendants' objections ruled upon prior to the close of expert discovery. Waiver – just like Rule 37 discussed below – is inapposite given the failure of the defendants to move to compel additional contention information from St. Clair during discovery (precluding a complaint about discovery or application of Rule 37(b)) and given the November 2009 claim construction ruling that was operative during the expert discovery period (precluding application of Rule 37(c)).[2]

### E. St. Clair's Amendment Of Its Infringement Theory Is Not Precluded By Rules 15 Or 16

HP argues that St. Clair should not be permitted to submit technical evidence of infringement under the Federal Circuit's claim construction, based on its argument that the pleading requirements under Rules 15 or 16 apply to infringement contentions and require "good cause." HP relies solely upon *In re Papst* where new products were attempted to be added after an adverse claim construction ruling. *In re Papst Licensing GMBH & Co. KG Litig.*, No. 07-493, 2011 U.S. Dist. LEXIS 9848 (D.D.C. Feb. 2, 2011). In *Papst*, the district court permitted Papst to amend its infringement contentions against the digital camera products at issue to conform to the court's claim construction ruling. Instead of amending its infringement theory

---

[2] The N.D. Cal. local patent rules permit "amendments designed to take account of the district court's claim construction" in addition to amendments for 'good cause.'" *Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 U.S. Dist. LEXIS 35957 at * 7 (N.D. Cal. Apr. 30, 2007). The N.D. Cal.'s local patent rules specifically recite a claim construction ruling as "good cause:" "Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment . . ." N.D. Cal. Patent L.R. 3-6. Thus, even in the strictest districts, an amendment in view of a claim construction ruling has been recognized in the case law and the local patent rules. See, e.g., *Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. Dist. LEXIS 57067 at *11 (N.D. Cal. Aug. 3, 2006) (considering new theory despite non-compliance with patent local rules because "the Court is extremely reluctant to dispose of substantive infringement claims based upon procedural defects").

and facts to the accused products, Papst asserted infringement against products that had never been part of the Multi-District Litigation (MDL). HP is thus incorrect that Rules 15 or 16 apply to infringement contentions as well as to other pleadings. HP's quotation from *Papst* at *22 is misleading and incomplete. In determining the need for an amendment to the pleadings, the court rejected the rationale that the digital cameras and smartphones were similar to conventional digital cameras. Thus, the court refused to permit a pleading amendment that was necessitated by the particular amendment of the infringement contentions adding new accused products that had never been part of the case. Contrary to HP's assertions, Rules 15 or 16 do not apply to new infringement contentions asserted against products that have been part of the case since the beginning. St. Clair is not asserting infringement by additional products but instead proposes to amend its contentions of infringement to specify data formats and corresponding computer architecture in accordance with the Federal Circuit's ruling on claim construction. Moreover, the district court permitted Papst to amend his infringement contentions "to conform with" the claim construction order of the court. *Id. at *6.* As demonstrated by the Drake and Mangione-Smith declarations, amendment of St. Clair's infringement contentions is far from futile.

### F. St. Clair Did Not Violate Any Rules And Even So, Rule 37 Would Not Operate To Preclude Admission Of Crucial Infringement Evidence Absent Bad Faith

Because St. Clair's infringement contentions are neither judicially-estopped (not inconsistent with a prior successful position) nor collaterally estopped (not previously decided in the *Fujifilm I* litigation), the real issue is whether any sort of sanctions would apply to prevent St. Clair from amending its expert report at this stage in the case. Thus, all of the defendants argue that any expert report/declaration should not be considered under Rule 37. The defendants largely assume a violation of Rule 26(a), however, without establishing any actual violation. The best that the defendants can argue, without any legal support, is that St. Clair should have set forth multiple infringement positions for the various claim construction possible combinations:

(a) because the defendants had objected to the claim construction ruling of this Court; (b) because the *Fujifilm I* appeal was pending (without detail as to the exact issues at play); and (c) because the defendants' expert reports included non-infringement positions based on their claim construction. Even had St. Clair been obligated to disclose expert opinion on claim constructions different from the court's constructions (no precedent exists), the defendants also generally fail to set forth and apply the *Pennypack* factors for whether Rule 37 should operate to preclude evidence. The reason for the defendants' avoidance of the applicable caselaw is transparent: exclusion is far from warranted under the *Pennypack* factors and other Third Circuit cases.

### 1. St. Clair Did Not Violate Any Rule Or Order Of The Court

Defendants allude to violations during fact discovery concerning infringement contentions, interrogatory responses and the like but defendants never moved to compel such discovery and St. Clair has never been ordered to provide additional contention discovery. Fed. R. Civ. P. 37(b) sanctions are restricted to those situations where a party "fails to obey an order to provide or permit discovery." As a result, the defendants must rely only upon Fed. R. Civ. P. 37(c) which relates to the disclosure of expert reports under Fed. R. Civ. P. 26(a):[3]

> FRCP 37(c)(1) provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Nevertheless, because the expert reports were submitted after the November 2009 claim construction ruling by this Court, St. Clair did not violate any orders or rules in issuing its expert report with the infringement position in accordance with the claim construction that was then law of the case for seven years.

---

[3] Given the lack of any discovery violation by St. Clair, defendants cite to a number of cases from other districts applying their own local patent rules imposing different discovery obligations. Defendants' attempt to import requirements from other districts that have specific rules regarding amendment of infringement contentions should be rejected.

Indeed, St. Clair asserted its infringement position with the claim construction that was law of the case – and which had been the operative construction for several years and three prior trials. Further, all objections were overruled prior to the close of expert discovery and pre-trial submissions. St. Clair was not required to assert alternative positions for any possible assortment of constructions asserted by defendants. Indeed, there were substantial differences between the various claim constructions advanced by the Patent Office and each of the defendants. Defendants have, in fact, previously acknowledged that this Court's claim construction decision was controlling: "Defendants have never disputed that the 'district court's ruling regarding claim construction *controls*' in this case—i.e., the District Court is indisputably tasked with construing the relevant claims as a matter of law." D.I. 751, p.3. St. Clair was entitled to rely upon the claim construction that had been adopted by this Court in three separate trials and had been evaluated for the fourth time in November 2009.

### 2. Rule 37 Does Not Exclude Crucial Infringement Evidence Absent Bad Faith

Sanctions precluding the use of crucial evidence are an extreme remedy reserved for (1) violations of court orders or (2) especially egregious violations of discovery rules such as the destruction of evidence. 8B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 2289, 2291 (3d ed. 1998). Here, there is neither.

The *Union Carbide* case cited by the defendants is simply an appropriate evidentiary ruling by Judge Robinson. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519 (D. Del. 2003). The plaintiff and defendant in that case both submitted a proposed construction of a claim term. The district court selected the defendant's proposed construction. The CAFC reversed and adopted the plaintiff's proposed construction. On remand, the defendant sought to introduce eight new expert reports, four from new experts, and additional

testing. The plaintiff urged that if this is permitted substantial new discovery would be required. The district court found that both parties had already addressed the new claim construction adequately, when it was first proposed by the plaintiff, and that the defendant is not "prejudiced by being precluded from introducing its voluminous new discovery at this stage." *Id.*, at 524.

Even assuming *arguendo* that St. Clair would have been obligated to incorporate alternative infringement theories in its expert reports notwithstanding the claim construction ruling, the Third Circuit law in this regard is extremely favorable to St. Clair given the importance of the infringement contention. Exclusion of evidence is an "extreme" sanction, not normally imposed absent a showing of willful deception or "flagrant disregard of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977); *Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 577 (3d Cir. 2002) (finding that district court abused its discretion in excluding critical evidence where there was no indication that the plaintiff acted in bad faith). Generally, courts within the Third Circuit have been reluctant to exclude otherwise admissible evidence in the absence of extreme neglect or bad faith on the part of the proponent of the testimony. *See, e.g., Abbott Labs. v. Lupin Ltd.*, 2011 U.S. Dist. LEXIS 53846 at *8-9 (D. Del. May 19, 2011) (Judge Stark). This reluctance is magnified where a party has an opportunity to cure the prejudice it might otherwise suffer from another party's failure to disclose. *See, e.g., Tolerico v. Home Depot*, 205 F.R.D. 169, 177 (M.D. Pa. 2002).

"The imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d. Cir. 1995). The district court has discretion to determine if to apply sanctions and what sanctions should be applied. However, "notwithstanding Rule 37(c), the

district court may be found to have abused its discretion if its *exclusion of testimony* results in fundamental unfairness in the trial of the case." *Id.* (emphasis in original) (internal citations omitted). That discretion is guided by several factors:

> 1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the Pennypack factors). *B. Braun Melsungen AG v. Teramo Med. Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010) (J. Stark).

*Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894 (3d Cir. 1977) is the seminal Third Circuit case on the application of Rule 37 sanctions. In *Pennypack*, the Third Circuit held that the district court abused its discretion in precluding testimony of two witnesses that were not disclosed in discovery/pre-trial submissions, because the evidence conceivably could have led to a judgment for plaintiff rather than defendant. *Id. at* 904. Any prejudice was curable with three weeks left before trial and minimized by defendant's familiarity with at least one witness which was its former President.

Here, the evidence being sought to be excluded is so crucial that defendants assert through attorney argument that the exclusion is dispositive of the litigation. Second, St. Clair did not willfully withhold information for an unfair surprise advantage, as the case was progressing toward trial with the claim construction applied by St. Clair being the law of the case for seven years. The CAFC's ruling is the source of the substantially changed posture of this case. Without any evidence of bad faith on St. Clair's part, the crucial importance of the evidence makes consideration of the other *Pennypack* factors unnecessary. As stated by this Court in May 2011: "It bears emphasis that exclusion of 'critical evidence,' such as an expert report on infringement, is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Abbott Labs. v. Lupin Ltd.*, 2011 U.S. Dist. LEXIS 53846 at *8-9 (D. Del. May 19, 2011) (emphasis added).

Not only was St. Clair substantially justified in its actions but also it is not unfair or prejudicial to have defendants address the merits of St. Clair's position. Trial is not scheduled and the defendants possess the information concerning the technical operation of the accused products. In fact, certain defendants acknowledge that the information concerning the MMS transmission of files was produced during discovery. St. Clair only asked that it submit new technical expert reports providing the infringement position under the claim construction that is now the law of the case. Defendants could then file their own technical expert reports and the witnesses would be deposed. The delay for minor expert discovery is minimal. Without a trial date, time can be allotted to permit the defendants to address the merits of the case, curing any alleged prejudice.

The very issue of whether other infringement theories might be advanced by St. Clair under an amended claim construction had already been determined by the Court when it recognized that:

> The construction of these terms may not be fully dispositive - that is, as already noted, St. Clair may be able to prove infringement even under a construction that differs from the construction adopted by this Court - but a definitive, appellate ruling on the meaning of these terms will certainly have, at minimum, a substantial impact on the remaining proceedings in the instant cases.

*St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2010 WL 1213367 at *4 (D. Del. Mar. 29, 2010). In reasoning that "whether some or all of Defendants' accused devices infringe under alternative constructions appears to be a disputed issue," the court credited St. Clair's position that it still had viable infringement options under possible amendments of the claims construction by the CAFC. *Id.* at *3.

St. Clair has thus consistently asserted that infringement is likely and that a viable infringement theory could be provided for the various claim constructions advanced, including

that along the lines of the PTO comments.  The defendants have recognized these assertions in the past:

> St. Clair alludes to a purported ability to prove infringement under the PTO's construction... (D.I. 857, p.4, n.4 (4/27/2010)).

> There can be no serious dispute in this case that this Court's construction of the "different formats for different computers" and "image" terms could be dispositive of infringement, even though St. Clair now contends otherwise... (Ex. 7, Defendants' Fed. Cir. Interlocutory Appeal Reply, p.4 (8/17/2010)).

Despite the repeated recognition that St. Clair has asserted that a modification to the claim construction ruling would not be dispositive of infringement and that alternative infringement positions would likely be maintainable under a different claim construction, none of the defendants have ever moved to compel St. Clair to provide such positions.  In fact, St. Clair informed defendants prior to the close of expert discovery that St. Clair believed it had no obligation to articulate a theory of infringement under a claim construction contrary to the Court's ruling:

> St. Clair has never made a concession that Defendants' proposed claim construction would dispose of infringement issues. (D.I. 742, p.9 (3/11/2010)).

> Even if the Federal Circuit were to modify the Court's claim construction, St. Clair has never conceded that any defendant does not infringe the Roberts patents under the PTO's or Defendants' proposed claim construction.... St. Clair, however, has not waived any rights to argue infringement under alternative claim constructions.  Likewise, contrary to Defendants' suggestion, St. Clair need not articulate a theory of infringement under a claim construction that is contrary to this Court's ruling on claim construction. (D.I. 744, pp.10-11 (3/11/2010) (emphasis added)).

Defendants can hardly argue surprise that St. Clair will articulate an alternative infringement position now that the CAFC has altered the claim construction.

Defendants cite other cases involving local patent rules from other districts explicitly reciting a good cause standard to amend infringement or validity contentions, typically involving later claim construction rulings such that experts needed to address alternative constructions.

However, St. Clair had a claim construction ruling at the time of the expert reports and did not violate any court order or local or federal rule of civil procedure.

St. Clair's advancement of its infringement contentions was warranted by the then-existing law of the case: the claim construction was thrice previously adopted by Judge Farnan and evaluated for a fourth time and recommended by then Magistrate Judge Stark. This case was, in fact, stayed pending resolution of the claim construction issues before the CAFC in July, 2010, more than two months prior to the scheduled trial. The stay was for the purpose of waiting for a claim construction ruling by the Federal Circuit in the litigation. The CAFC construction is, in fact, different from that proposed by Fuji and the defendants in this case (see Ex. 5). The CAFC, e.g., made clear that Apple/IBM computer architectures and file types associated thereto were mere examples, where other file types might be singularly associated with other types of computer architecture. Now that the CAFC has ruled on the claim construction, St. Clair should be given an opportunity to present its technical expert report(s) in accordance with the new claim construction.

## V.    CONCLUSION

For the foregoing reasons, St. Clair respectfully requests that this Court deny HP's motion for summary judgment of non-infringement.

Date:  July 15, 2011                    Respectfully submitted,

Of Counsel:                             Patricia D. McGonigle (No. 3126)
                                        SEITZ, VAN OGTROP & GREEN, P.A.
                                        222 Delaware Avenue, Suite 1500
R. Terrance Rader                       P.O. Box 68
Charles W. Bradley                      Wilmington, DE  19899
Glenn E. Forbis                         (302) 888-0600
RADER, FISHMAN & GRAUER PLLC            pmcgonigle@svglaw.com
39533 Woodward Avenue
Bloomfield Hills, MI 48304              *Attorneys for Plaintiff St. Clair Intellectual*
(248) 594-0600                          *Property Consultants, Inc.*

## CERTIFICATE OF SERVICE

I, Patricia P. McGonigle, Esquire, hereby certify that on this 15th day of July 2011, I electronically filed the following document with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.

/s/ *Patricia P. McGonigle*

_____
Patricia P. McGonigle (ID No. 3126)
pmcgonigle@svglaw.com

81701 v1