# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1436-LPS |
| | ) | **PUBLIC VERSION** |
| v. | ) | |
| SAMSUNG ELECTRONICS CO., *et al.*, | ) | |
| Defendants. | ) | |
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-404-LPS |
| | ) | **PUBLIC VERSION** |
| v. | ) | |
| PALM, INC., *et al.*, | ) | |
| Defendants. | ) | |
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 08-371-LPS |
| | ) | **PUBLIC VERSION** |
| v. | ) | |
| RESEARCH IN MOTION LTD., *et al.*, | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT OPPOSITION TO ST. CLAIR'S
## MOTION TO SUPPLEMENT EXPERT REPORTS

OF COUNSEL:

Charlene M. Morrow
Virginia DeMarchi
FENWICK & WEST LLP
Mountain View, CA 94041

Heather N. Mewes
David D. Schumann
Bryan A. Kohm
Jeffrey V. Lasker
FENWICK & WEST LLP
San Francisco, CA 94104

Dated: August 1, 2011
Public Version Dated: August 8, 2011

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
*Attorneys for Defendant*
*Hewlett-Packard Company*

*Filed on Behalf of All Defendants*
1023157 / 28641

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.    SUMMARY OF ARGUMENT...................................................................................2

III.   STATEMENT OF FACTS......................................................................................3

IV.    ARGUMENT....................................................................................................5

    A.     There is Nothing "New" About St. Clair's Proposed Infringement
        Theories That Is Impacted By The Federal Circuit's Decision In Fujifilm
        And Therefore Necessitating New Infringement Expert Reports ..........................6

    B.     St. Clair's New Expert Reports Should Be Precluded Under Rule 37. .................7

        1.     St. Clair Created This Situation By Choosing Not To Assert
            Alternative Infringement Theories. ...........................................9

        2.     Re-opening Expert Discovery Would Severely Prejudice
            Defendants and Would Unduly Burden the Court...................................15

        3.     St. Clair Cannot Justify Its New Experts and New Opinions as
            Supplementation Under Rule 26..............................................17

    C.     St. Clair's Other Arguments Are Irrelevant.......................................18

V.     CONCLUSION ................................................................................................19

## TABLE OF AUTHORITIES

CASES

Page(s)

*Abbott Labs. v. Lupin Ltd.*,
   C.A. No. 09-152, 2011 U.S. Dist. LEXIS 53846 (D. Del. May 19, 2011) ............................ 14

*Altair Engineering, Inc. v. LEDdynamics, Inc.*,
   No. 2010-1118, 2011 WL 836440 (Fed. Cir. Mar. 9, 2011) ................................. 15

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
   749 F. Supp. 2d 210 (D. Del. 2010) ..................................................... 15

*Brooks v. Price*,
   121 Fed. Appx. 961 (3d Cir. 2005) ...................................................... 8

*Cybor Corp. v. FAS Techs., Inc.*, 138
   F.3d 1448 (Fed. Cir. 1998) ............................................................ 19

*Dag Enters., Inc. v. Exxon Mobil Corp.*,
   226 F.R.D. 95 (D.D.C. 2005) .......................................................... 17

*Finch v. Hercules Inc.*,
   C.A. No. 92-cv-251, 1995 WL 785100 (D. Del. Dec. 22, 1995) ........................... 16

*Hayes v. Smithkline Beecham Corp.*,
   No. 07-CV-682, 2009 WL 3415210 (N.D. Okla. Oct. 26, 2009) ........................... 16

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
   C.A. No. 02-272, 2007 U.S. Dist. LEXIS 756 (D. Del. Jan. 8, 2007) .................... 14

*Key Pharm. v. Hercon Labs. Corp.*,
   161 F.3d 709 (Fed. Cir. 1998) ........................................................ 19

*Loral Fairchild Corp. v. Victor Co. of Japan Ltd.*,
   911 F. Supp. 76 (E.D.N.Y. 1996) .................................................. 11-12

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) .................................................................. 19

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
   559 F.2d 894 (3d Cir. 1997) *overruled on other grounds, Goodman v. Lukens Steel
   Co.*, 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987) ...................... 15

*Newman v. GHS Osteopathic, Inc.*,
   60 F.3d 153 (3d Cir. 1995) ........................................................... 15

*Nicholas v. Pa. State Univ.*,
    227 F.3d 133 (3d Cir. 2000) ........................................................................8

*Procter & Gamble Co. v. McNeil-PPC, Inc.*,
    615 F. Supp. 2d 832 (W.D. Wis. 2009) ...........................................................9

*Rambus, Inc. v. Infineon Techs. AG*,
    145 F. Supp. 2d 721 (E.D. Va. 2001) .........................................................9, 11

*Smithkline Beecham Corp. v. Ranbaxy Labs., Ltd.*,
    No. 03-2158 (MLC) (D.N.J. Feb. 22, 2006) ...................................................16

*St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*,
    No. 2009-1052, 2011 U.S. App. LEXIS 515 (Fed. Cir. January 10, 2011) ................... *Passim*

*Thomas v. Arn*,
    474 U.S. 140 (1985) .................................................................................12

*Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*,
    109 F.3d 739 (Fed. Cir. 1997) ....................................................................15

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    270 F. Supp. 2d 519 (D. Del. 2003) ........................................................ *Passim*

*Xerox Corp. v. Google, Inc.*,
    No. 10-136 (LPS) (D. Del May 19, 2011) .........................................................9

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 636(b)(1)(C) ...............................................................................12

Fed. R. Civ. P. 16 .......................................................................................17

Fed. R. Civ. P. 26 ....................................................................................2, 17

Fed. R. Civ. P. 26(a) .....................................................................................7

Fed. R. Civ. P. 26(a)(2)(D) ............................................................................17

Fed. R. Civ. P. 26(e) ................................................................................17, 18

Fed. R. Civ. P. 26(e)(1) ...............................................................................17

Fed. R. Civ. P. 37 ................................................................................. *Passim*

Fed. R. Civ. P. 37(c)(1) ..................................................................................7

**OTHER AUTHORITIES**

8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2049.1 (3d. ed. 2010)..............18

Defendants oppose plaintiff St. Clair Intellectual Property Consultants, Inc.'s ("St. Clair") belated assertion of an allegedly new theory of infringement against a different product functionality, through newly identified experts expressing previously undisclosed opinions, in an attempt to revisit its own prior tactical choices. St. Clair's motion to supplement expert reports should be denied.

## I.  NATURE AND STAGE OF THE PROCEEDINGS

These lawsuits have been pending for six or seven years. During that time, the parties conducted expensive fact and expert discovery, and filed summary judgment motions and pretrial statements. Less than two months before trial, this case was stayed pending the outcome of a related case, *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, No. 2009-1052, 2011 U.S. App. LEXIS 515 (Fed. Cir. January 10, 2011) ("*Fujifilm*"), involving the same patents-in-suit, claim constructions, and infringement theories. In *Fujifilm*, the Federal Circuit reversed the District Court's construction of two key terms of the patents-in-suit, holding that the specification limited each "data format" to a format for "a single still image or picture" and that the asserted claims required a one-to-one correspondence between each data format and a computer architecture, such as Mac or IBM. *Id.* at *17-19. The Federal Circuit's constructions of the patents-in-suit wholly foreclose any possibility of infringement by Defendants under the theory St. Clair advanced prior to April of this year.

Accordingly, Defendants sought to bring this litigation to a conclusion. St. Clair refused to stipulate to non-infringement, although it acknowledged that it had no infringement case against any cameras that did not include cell phone functionality. To finally resolve this case, Defendants moved for summary judgment of non-infringement, relying on admissions from St. Clair's expert in addition to documentary evidence. In order to oppose Defendants' motions, St. Clair formulated an allegedly new infringement theory based on previously unaccused

functionality, located new experts, and prepared new expert declarations. St. Clair then filed the present motion to supplement its expert reports.

## II.   SUMMARY OF ARGUMENT

St. Clair should not now, after six years of litigation, be permitted to serve new expert reports containing new opinions on a new infringement theory. Its motion to "supplement" is actually a motion to replace wholesale both its experts and its infringement theory, and to extend and expand expert discovery. St. Clair was obligated to disclose any and all infringement theories and expert opinions—under Defendants' proposed constructions as well as its own— during discovery, as the Court did not enter its decision on claim construction until after St. Clair had served its opening expert report on infringement. Despite the fact that claim construction was a live issue at the time, despite its knowledge of Defendants' proposed constructions, which had previously been adopted by the U.S. Patent and Trademark Office, and despite the fact that the Court's previous claim construction was on appeal to the Federal Circuit, St. Clair made the deliberate decision to assert only a single infringement theory.

Now that its theory has been rejected by the Federal Circuit, St. Clair should not be able to rewind the clock. Given that St. Clair failed to fulfill its Rule 26 disclosure obligations, under Rule 37 it may not use its new experts or their new opinions to oppose Defendants' pending motions for summary judgment. St. Clair's failure to disclose these experts or their opinions was far from harmless; if St. Clair is permitted now to offer these opinions, Defendants will be thrust back into fact and expert discovery, imposing for a second time the cost and burden of fact and expert discovery and motion practice on Defendants. Permitting St. Clair to redo fact and expert discovery, moreover, would also burden the Court and entrench in precedent the prospect that a plaintiff whose first infringement theory fails can simply start over with a new one, ensuring that no case ever needs to reach a final conclusion. St. Clair's motion is nothing more than a

desperate attempt to prolong this case—using new experts, new opinions, and even new

counsel—after the Federal Circuit soundly rejected the only theory it chose to proceed on during

expert discovery.

Further, St. Clair can offer no justification for its years-long delay in disclosing these new

experts and opinions.  Because the November 2009 Report and Recommendation was not the

final claim construction decision in this lawsuit, no party's claim construction proposal had been

adopted at the time St. Clair served its opening expert report on infringement.  Nor were

Defendants obligated to move to compel St. Clair to disclose another infringement theory.[1]

Indeed, St. Clair recognized its obligation to address this potential outcome and explicitly

mentioned email and MMS in its infringement contentions.  In addition, once St Clair saw that

Defendants had provided expert reports that addressed both parties' proposed constructions, the

onus was on St. Clair to timely provide any supplementation.  The fact that St. Clair believes it

does not have a case to move forward on without new expert opinions does not excuse its prior

failure to disclose those opinions in a timely fashion; at some point this case must end and

Defendants are entitled to a final decision of non-infringement.

## III.   STATEMENT OF FACTS

The parties have explained the factual and procedural background of this dispute in

fulsome detail.  *See, e.g.*, Memorandum in Support of Defendant HP's Motion for Summary

Judgment or Summary Adjudication of Non-infringement (D.I. 1073) pp. 1-9; Nokia's Opening

Brief in Support of Its Motion for Summary Judgment of Non-Infringement Pursuant to the U.S.

Court of Appeals for the Federal Circuit's Decision on Claim Construction (D.I. 1076) at pp. 2-6.

---

[1] Some Defendants explicitly and repeatedly informed St. Clair that it objected to such an assumption. (*See, e.g.*, Ex. 9 to D.I. 1077, ("Nokia objects to St. Clair's assumption that all claim construction issues are resolved for the patents-in-suit based on prior litigation between St. Clair and third parties.").)

For the purposes of the present motion, however, a simple timeline suffices:

- August 10, 2005: During reexamination, the USPTO interprets the Roberts patents to require a one-to-one correspondence between each different data format and a particular, different type of computer architecture. (Declaration of Bryan A. Kohm In Support of Defedant's Joint Opposition to St. Clair's Motion to Supplement Exert Reports ("Kohm Opp. Decl."), Ex. 1, August 10, 2005 PTO Office Action in the Reexamination of U.S. Patent No. 5, 138, 459 at ¶ 6 (hereafter, "the Computer Architecture Construction").

- October 24, 2008: Fujifilm files a notice of appeal specifically stating that its appeal "includes . . . the Court's August 31, 2004 Memorandum Opinion and Order on claim construction issues (D.I. 749)," which included a construction of the plurality of different data formats claim terms. (D.I. 1043, C.A. No. 03-241-JJF, ("2008 Notice of Appeal").)

- January 15, 2009: St. Clair serves its infringement contentions stating that its contentions include those under the Computer Architecture Construction:



  (Kohm Opp. Decl., Ex. 2, January 15, 2009 Letter from Seth Northrop.)[2]

- April 23, 2009: The parties file their briefs in support of their claim construction proposals. Defendants assert the Computer Architecture Construction.

- November 13, 2009: Magistrate Judge Stark issues Report and Recommendation regarding Claim Construction (D.I. 531)

- December 4, 2009: Defendants object to the Report and Recommendation, asserting that the Court should adopt the Computer Architecture Construction.

- December 9, 2009: Second Notice of Appeal filed in *Fujifilm.*[3]

- December 18, 2009: Fact discovery closes

---

[2] St. Clair's infringement contentions also expressly contemplate the MMS and e-mail functionality St. Clair now accuses. *See, e.g.*, Declaration of Bryan A. Kohm In Support of HP's Motion for Summary Judgment of Summary Adjudication of Non-Infringement (D.I. 1075) ("Kohm Opening Decl."), Ex. 8 (Plaintiff's Preliminary Infringement Contentions chart for the HP iPAQ 510). St. Clair was demonstrably aware of this functionality well before expert reports.

[3] The 2008 Notice of Appeal was determined to be ineffective because St. Clair filed two post-judgment motions. Those motions were denied and an amended final judgment was entered on November 19, 2009. (D.I. 1078, C.A. No. 03-241-JJF-LPS.) Fujifilm filed a second notice of appeal on December 15, 2009. (D.I. 1079, C.A. No. 03-241-JJF-LPS.)

- January 11, 2010: St. Clair serves its opening expert report on infringement, alleging infringement only by the presence of one still image format and one movie format in the accused devices

- ***February 24, 2010: District Court issues claim construction order (D.I. 719)***

- March 8, 2010: Fuji files its opening appeal brief, revealing that the Federal Circuit will review the construction of the plurality of data formats limitations

- March 12, 2010: Expert discovery closes

- ***January 10, 2011: Federal Circuit issues decision in* Fujifilm,** adopting the Computer Architecture Construction.

The two events that changed the claim construction in this action are highlighted. Prior to February 25, 2010, neither party's claim construction had been adopted in this case.

## IV.   ARGUMENT

St. Clair's hail-Mary motion to be allowed to supplement its expert reports rests on a few key misstatements of fact and misapprehensions of law. First, while St. Clair asserts that it had no obligation to disclose its present infringement theory during discovery in this action, in fact it did so in its infringement contentions, and its decision to abandon that alternate theory in its expert reports was tactical. Second, St. Clair could have disclosed—and therefore was obligated to disclose—any text messaging infringement theory either under its own constructions or under Defendants' constructions, as the Court had not entered a claim construction decision in this case until after St. Clair served its expert report on infringement. Third, St. Clair argues that it should not be barred under Rule 37 from proffering this new testimony, arguing that its failure to timely disclose was substantially justified and harmless. It was neither. St. Clair cannot justify its tactical decision not to assert this infringement theory by reference to cases against other, unrelated parties. Permitting St. Clair to serve new expert reports now would force the other parties and the Court to re-litigate this case from expert discovery, imposing on them the burden caused by St. Clair's own strategic decision. Finally, St. Clair raises several other straw-

man doctrines in order to argue that they do not apply, to distract from the very real violation of its discovery obligations and the burden it now seeks to impose on the other parties and the Court.

A.     **There is Nothing "New" About St. Clair's Proposed Infringement Theories That Is Impacted By The Federal Circuit's Decision In Fujifilm And Therefore Necessitating New Infringement Expert Reports**

St. Clair's new infringement theory—that MMS is one file format, corresponding to cell phones, and SMTP is another format, corresponding to computers—could have been asserted under St. Clair's own proposed claim constructions. Under those constructions:

> (1) a 'data format' is the arrangement of digital data in a file including image, audio, text or other data and includes, at least, MPEG, JPEG, GIF, TIFF, PICT, BMP, JFIF, DCF, TXT, DOC, WPD and WAV, and (2) a 'computer apparatus' is a computer and any operating system or application software loaded on the computer. Computer apparatus are 'different types' within the meaning of the claims if they are loaded with different application software, even if they are otherwise the same."

Plaintiff's Opening *Markman* Brief (D.I. 266) at 16. According to St. Clair's current theory, MMS and SMTP are arrangements of digital data in a file including image, audio, text or other data. St. Clair's Memorandum in Opposition to HP's Motion for Summary Judgment or Summary Adjudication of Non-infringement (D.I. 1089) ("St. Clair's Opp."), Ex. 3 (Drake Decl.) ¶¶ 19, 22[4]. According to St. Clair, these formats are "for different types of computer apparatus" because cell phones are loaded with certain application software, namely software to permit the sending and receiving of MMS messages, whereas some computers may be loaded with other software which can send and receive email but not MMS. *See* St. Clair's Opp., Ex. 3

---

[4] ¶ 19 ("The MMS text message file, header, and associated JPEG image file (with reduced pixels) is an 'arrangement of digital data in a file including image, audio, text or other data' and is, therefore, a particular 'data format' under the CAFC's decision."); ¶ 22 ("The SMTP e-mail file with header and JPEG image with conversion to the MIME format is a specific 'data format' since it is an 'arrangement of digital data in a file including image, audio, text or other data'.").

(Drake Decl.) ¶¶ 12, 22[5]; Ex. 4 (Mangione-Smith Decl.) ¶¶ 18, 19[6].

St. Clair claims that its expert reports were "complete" under the old constructions. Yet it failed to include any opinions regarding infringement by the presence of MMS and SMTP formats on any accused device, despite having ample information available to it explaining this functionality, and despite the fact that it did not even *require* Defendants' confidential information to prepare new expert declarations about the theory. *Id.* Ex. 3 (Drake Decl.) ¶¶ 3, 10; Ex. 4 (Mangione-Smith Decl.) ¶¶ 3, 10. Moreover, St. Clair was indisputably aware of the presence of this functionality in Defendants' products, as it explained in its infringement contentions that "███████████████████████████████████████████ ████████████████████████████████████████████" *See, e.g.,* Kohm Opening Decl. (D.I. 1075), Ex. 8 (Plaintiff's Preliminary Infringement Contentions chart for the HP iPAQ 510). As St. Clair readily admits, St. Clair's and the District Court's constructions did not foreclose infringement under this new theory; accordingly, St. Clair's decision not to assert it was therefore a deliberate tactical choice.

## B. St. Clair's New Expert Reports Should Be Precluded Under Rule 37.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

---

[5] ¶ 12 ("Each of the accused products is preloaded with a messaging application."), ¶ 20 ("Further, when a user selects the SMTP data format, he/she 'makes a decision based on the desired architecture-not a particular data format'. That is, when a user wants to send a picture in an e-mail format, he/she does so because he/she wants to send the picture to a device with a particular computer architecture (i.e., a personal computer) that is different from a wireless phone, not because of the particular data format.")
[6] ¶ 18 ("The MMS text message file is designed to send information only to another cell phone."), ¶ 19 (Cell phones "include specific technology (e.g.... MMS messaging) that were developed and deployed for commercial use in a manner that is fundamentally different from personal computers.")

justified or is harmless." *See also Brooks v. Price*, 121 Fed. Appx. 961, 964-65 (3d Cir. 2005) (affirming exclusion of expert witness who did not serve a timely report). In the Third Circuit, the determination of whether a party's failure to make required disclosures was substantially justified or harmless is guided by consideration of:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Here, St. Clair should be precluded from offering entirely new infringement theories at the eleventh hour. For at least three years, St. Clair has litigated these cases knowing that the Federal Circuit could change the claim construction that formed the basis of its infringement theory. Notwithstanding that risk, throughout fact and expert discovery St. Clair chose to disclose and pursue only one infringement theory—now soundly rejected. St. Clair did so despite the fact that: (1) in 2005, the PTO applied the Computer Architecture Construction during reexamination of the patents-in-suit; (2) St. Clair had notice at least twelve months before the close of fact discovery and fourteen months before the deadline for expert disclosures that its preferred claim construction was going to be appealed; and (3) *claim construction in this case had not been resolved at the time expert reports were exchanged*. If St. Clair had an alternative infringement theory under the Computer Architecture Construction (as it now suggests), it could have and should have disclosed that theory during fact and expert discovery. St. Clair has offered no justification for its failure to do so, and allowing St. Clair to add new infringement theories and expert testimony will impose substantial burdens on Defendants. Therefore, the Court should preclude St. Clair's request under Rule 37.

1.   St. Clair Created This Situation By Choosing Not To Assert Alternative
Infringement Theories.

In this district, when claim construction remains an open issue at the time the parties are

scheduled to serve expert reports, the parties have an obligation "to prepare for the fact that the

court may adopt the [other party's claim] construction." *Union Carbide Chems. & Plastics Tech.*

*Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519, 523-524 (D. Del. 2003).   If a party fails to do so by,

for example, declining to assert alternative infringement theories, Rule 37 prohibits the party

from belatedly asserting a new infringement theory later in the case.   *Id.; see also* Transcript of

Claim Construction Hearing at 11, *Xerox Corp. v. Google, Inc.*, No. 10-136 (LPS) (D. Del May

19, 2011) (noting that parties "regularly" have to write expert reports with alternative

constructions when the Court does not issue its claim construction decision before expert reports

are due); *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 731-32 (E.D. Va. 2001)

(Given that the *Markman* hearing would be conducted after expert discovery, "it was incumbent

upon [the patentee] to have [its expert] examine [defendant's] claim construction and offer

alternative opinions on infringement and validity.").   As one court explained, faced with a

patentee who attempted to "supplement" its expert reports with new theories based on

defendant's claim constructions and the doctrine of equivalents:

> [Plaintiff's] experts had the benefit of defendant's claims construction briefs and
> knew what limitations could be found in the disputed claim terms.   Although they
> did not believe that any of these limitations were present, they were not precluded
> from offering their opinions on the proposed constructions in the alternative.   In
> addition, if plaintiff's experts believed in December that the accused product
> infringed under the doctrine of equivalents, they should have said so at that time.
> ***The failure to address these issues in the initial expert reports was plaintiff's***
> ***choice.   It was not dictated by defendant or this court.   Plaintiff cannot now***
> ***seek to alter its strategy without a showing of good cause, which it has failed to***
> ***make***.

*Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 838-40 (W.D. Wis. 2009)

(emphasis added).

This is such a case. St. Clair could have and should have asserted its "new" infringement theory in the Gafford Report, in the alternative, to preserve its argument in the event that Defendants' Computer Architecture Construction was adopted—either by this Court or the Federal Circuit. Instead, St. Clair chose to file expert reports on one infringement theory, *despite knowing that claim construction had not yet been resolved in this case*, and despite knowing that Defendants were asserting the similar Computer Architecture Construction that was adopted by the PTO and being advanced on appeal by Fujifilm. Indeed, St. Clair discussed MMS and email in its initial and supplemental infringement contentions, in recognition of its obligation to disclose this theory, noting that "[l]ower-quality pictures require less storage space and may take less time when sending by Multimedia Messaging Service (MMS) or e-mail." *See, e.g.*, Kohm Opening Decl. (D.I. 1075), Ex. 8 (Plaintiff's Preliminary Infringement Contentions chart for the HP iPAQ 510). Its decision not to discuss MMS and email in its expert reports was deliberate and tactical. Under Rule 37, St. Clair's belated attempt to replace its sole infringement theory with entirely different reports by different experts should be precluded.

Judge Robinson's exclusion of new expert reports in *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519, 523-524 (D. Del. 2003), is particularly instructive here. In that case, expert discovery had closed before the court decided claim construction. *See id.* During claim construction, the parties offered competing constructions of a particular phrase. *Id.* at 523. The district court adopted the defendants' construction. *Id.* at 524. On appeal, the Federal Circuit reversed and adopted the plaintiff's construction. *Id.* at 523-524. On remand, the defendants attempted to introduce new theories through additional expert reports. *Id.* at 524. Defendants argued that the new theories were permissible because "[w]hen the Federal Circuit changed the court's claim construction, it changed the rules of the game and defendants should be entitled to submit evidence on new defenses it now has as a result of the

new claim construction." *Id.* Judge Robinson rejected the defendants' argument and struck the

new reports:

> Both parties' experts submitted their proposed claim constructions
> in August 2000. Therefore, ***defendants were on notice of
> plaintiff's proposed construction*** of the phrase "characterized by
> the efficiency equation" ***and had the opportunity to prepare for
> the fact that the court may adopt plaintiff's construction***. In fact,
> in its rebuttal reports, defendants addressed plaintiff's proposed
> construction and were able to prepare for the fact that the court
> may adopt that construction. Defendants now, with the benefit of
> hindsight and the Federal Circuit's ruling, want to completely
> reopen discovery on the issue and start over. The court concludes
> that this exercise is improper.

*Id.* (emphasis added).

For similar reasons the court precluded a patent holder from offering new theories of

liability after a new claim construction had entered in *Rambus, Inc. v. Infineon Techonologies

AG*, 145 F. Supp. 2d 721 (E.D. Va. 2001). Like the defendants in *Union Carbide*, the patent

holder's new liability theories came four months after the date for expert disclosures under the

scheduling order, and more than a month after the close of expert discovery. *Id.* at 723, 727.

"The principal excuse offered by [the patent holder] for the delay in presenting all of these new

theories of liability [was] that 'a court's Markman ruling changes the landscape of [every patent]

case,' and therefore, [the patent holder] 'was *required* to alter its infringement analysis when the

Court adopted a different claim construction.'" *Id.* at 730 (emphasis in original). In precluding

the patent holder's new theory of liability the court explained:

> At least as early as December 2000, ***it was obvious that the
> Markman hearing would be conducted after the conclusion of
> expert discovery. It would seem to be an equally obvious
> proposition that the expert reports, therefore, needed to respond
> to the possibility that the claim construction opinion might reject
> the interpretations advanced by Rambus.*** Rambus chose not to
> acknowledge that possibility.

*Id.* at 732 (emphasis added); *see also Loral Fairchild Corp. v. Victor Co. of Japan Ltd.*, 911 F.

Supp. 76, 80 (E.D.N.Y. 1996) (Rader, J., sitting by designation) (rejecting patent holder's attempt to assert new infringement expert reports based on a claim construction: "At the outset of this litigation, Loral could have proceeded under alternative theories . . . [it] chose not to follow this path.").

In ignorance of this case law from this Court and others—all of which were cited in Defendants' briefs for summary judgment of non-infringement—St. Clair repeatedly and incorrectly asserts that the District Court's claim construction was the "law of the case" during discovery, so St. Clair was not obligated to offer infringement contentions or disclose an infringement theory under Defendants' proposed constructions.[7] St. Clair's position is contrary to the posture of this case at the time it served its infringement expert report on January 11, 2010. There was no order controlling claim construction in this case. Rather, there was a Report and Recommendation regarding claim construction that was objected to by Defendants, ***but had not been ruled on by the Court****. See, e.g.*, 28 U.S.C. § 636(b)(1)(C) (requiring *de novo* review by the district court of any issues or recommendations to which a party objects); *Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Indeed, the Court did not enter a claim construction order until February 25, 2010, ***six weeks after St. Clair served its infringement expert report***.

Judge Robinson's decision in *Union Carbide* makes clear that when claim construction remains an open issue at the time the parties are scheduled to serve expert reports, that the parties have an obligation "to prepare for the fact that the court may adopt the [other party's] claim

---

[7] St. Clair also protests that it "could not have been expected to address proposed claim constructions that were all different" (Br. at 11), but Defendants in this case submitted one Markman brief that advanced one claim construction:  the Computer Architecture Construction.

construction." *Union Carbide*, 270 F. Supp. 2d at 523-524.  The Defendants served expert

reports that addressed St. Clair's preferred claim construction.  St. Clair could have and should

have served expert reports that addressed Defendants' Computer Architecture Construction.

That St. Clair did not, was its own choice, and St. Clair should not be able to reopen expert

discovery and assert new theories that it could have asserted years ago simply because it made a

deliberate decision that turned out to be a mistake.

St. Clair contends that it could not have anticipated the Federal Circuit's construction,

because the Federal Circuit used slightly different wording in adopting the Computer

Architecture Constructions.  For example, where Defendants proposed that each data format

must be in "***one-to-one correspondence***" with a particular computer architecture, the Federal

Circuit instead held that each data format "***corresponds on a one-to-one basis***" to a particular

computer architecture.  *See Fujifilm*, 2011 U.S. App. LEXIS 515 at *7; Defendants' Opening

Brief on Claim Construction (D.I. 272) at 12-23; Joint Claim Construction Chart (D.I. 248.2).

Despite the addition of "basis" in the Federal Circuit's construction, there can be no dispute that

the Defendants and the Federal Circuit all agreed that each of the plurality of data formats must

correspond on a one-to-one basis with a particular computer architecture.  The Federal Circuit

was clear in stating, "we hold that the term 'computer apparatus' refers to computer architecture.

Each data format code 'corresponds respectively to one of a like plurality of different data

formats for different types of computer apparatus' only if 'each data format' corresponds on a

one-to-one basis to a different type of computer architecture (e.g., in the way that GIFF

corresponds to IBM and PICT corresponds to Apple)." *Fujifilm*, 2011 U.S. App. LEXIS 515, at

*6-7.

Moreover, St. Clair presents only a single sentence of the Federal Circuit's *Fujifilm*

decision as its claim construction ruling, on that basis argues that the Federal Circuit left the

construction of "data format" undisturbed. *See* St. Clair's Opp., Ex. 5. If this were true, it would only provide further reason why St. Clair could have and should have disclosed its new infringement theory in its prior expert reports. St. Clair's argument, however, plainly disregards the fact that the Federal Circuit expounded at length on the meaning of the disputed claim terms, and it is incorrect to ignore the bulk of its discussion of these terms in favor of a single sentence which sums up that analysis. *See, e.g., Fujifilm*, 2011 U.S. App. LEXIS 515, at *7-19 (explaining that the problem the inventors sought to solve was "computer architecture incompatibility, not data format incompatibility," and that they did so by providing a "one-to-one correspondence between computer architecture and format code."). Furthermore, St. Clair's infringement theory relating to MMS and SMTP is based on a misreading of the Federal Circuit's decision. St. Clair incorrectly argues that the Federal Circuit held that there need not be more than one still **image** file format, but only multiple **data** formats. This is in direct contradiction to the Federal Circuit's decision. Specifically, the Federal Circuit explicitly noted that the specification of the four patents-in-suit describes a single invention and that these inventions related to digital **image** signals. *Id.* at 10-11. St. Clair also ignores the obvious point that the Federal Circuit construed data format to exclude movie formats. *Id.* at *20-21.

None of the cases cited by St. Clair are contrary to Judge Robinson's decision in *Union Carbide*. First, *Abbott Labs. v. Lupin Ltd.*, C.A. No. 09-152, 2011 U.S. Dist. LEXIS 53846 (D. Del. May 19, 2011) involved submission of expert reports on new factual issues *while expert discovery was still ongoing*. *See id.* at *10. Second, *Inline Connection Corp. v. AOL Time Warner, Inc.*, C.A. No. 02-272, 2007 U.S. Dist. LEXIS 756 (D. Del. Jan. 8, 2007), involved the supplementation of an expert report to include additional prior art references that were not discovered until after the close of fact discovery. Here, St. Clair seeks to replace, *wholesale*, its expert reports with entirely new arguments based on a claim construction that it had notice of

- 14 -

well before the date that its expert reports were due under the scheduling order. For the same

reasons, St. Clair's reliance on *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d

894, 905 (3d Cir. 1997) *overruled on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113

(3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987) (challenged evidence was only discovered after the

close of discovery), *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995)

(challenged information was disclosed during discovery), and *B. Braun Melsungen AG v.

Terumo Med. Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010) (same), is misplaced.

Furthermore, *Altair Engineering, Inc. v. LEDdynamics, Inc.*, No. 2010-1118, 2011 WL

836440 (Fed. Cir. Mar. 9, 2011) did not even deal with belated supplementation of expert

reports. Rather, the case addressed only judicial estoppel. Specifically, the Federal Circuit held

that a patentee could not be judicially estopped from arguing that the accused products included

closely-spaced LEDs because it had argued for a contrary construction of the term during the

*Markman* proceedings. *Id.* at *2. *Altair* did not address the propriety of new expert opinions

under Rule 37 or 26. In fact, the district court **denied the patentee's motion to amend its**

**infringement allegations**, finding that it lacked good cause to do so after the Scheduling Order

deadline, and that issue was not appealed. *Id.*

### 2.   Re-opening Expert Discovery Would Severely Prejudice Defendants and Would Unduly Burden the Court

Reopening fact and expert discovery would be severely prejudicial to Defendants.

"When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay

and resultant expense." *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739,

745 (Fed. Cir. 1997) (affirming exclusion of expert affidavit and report containing new opinions

and information, which were submitted after the deadline for expert reports). In particular,

expert discovery in patent cases "must be done in an orderly fashion so as not to incur duplicate

costs.... [A]llowing additional reports on new opinions would unduly prejudice the parties and would disrupt the orderly and efficient trial of the case." Memorandum Opinion at 7, *Smithkline Beecham Corp. v. Ranbaxy Labs., Ltd.*, No. 03-2158 (MLC) (D.N.J. Feb. 22, 2006). "Allowing the use of new materials even to support existing opinions could trigger an endless wave of supplemental reports and the need for additional depositions, all of which would be costly for defendant." *Hayes v. Smithkline Beecham Corp.*, No. 07-CV-682, 2009 WL 3415210, at *2 (N.D. Okla. Oct. 26, 2009). Defendants have already incurred once the burden and expense of producing documents, explaining their non-infringement positions, preparing expert reports, conducting expert depositions, drafting summary judgment motions, and preparing pretrial filings, including selecting trial exhibits. Forcing Defendants to repeat much of that work and incur the expense of trial preparation twice over would constitute serious prejudice. Moreover, the prejudice of conducting repeat litigation cannot be cured by postponing trial or permitting Defendants to supplement their own expert reports. It would be especially unfair to impose this burden on Defendants for the sole reason that St. Clair chose at the outset of the lawsuit to rest its case on its own claim construction, as opposed to the alternative constructions proposed by Defendants. After six years of litigation, Defendants are entitled to a final decision that their products do not infringe.

The lawsuits between St. Clair and Defendants have been pending for six years, and were less than two months from trial when they were stayed. Permitting St. Clair to identify new experts, introduce new opinions, and proceed on a new infringement theory now would impose an unfair burden not only on Defendants, but also on the Court: "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities... Accordingly, the flouting of discovery deadlines causes substantial harm to the judicial system." *Finch v. Hercules Inc.*, C.A. No. 92-cv-251, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995)

(internal citations and quotations omitted).   Moreover, permitting a party to proceed nearly to trial on one infringement theory, and when it fails to try again with a new theory, is a recipe for never-ending litigation.  If St. Clair's new theory proves as non-viable as its last theory, will it again seek leave to supplement its expert reports to accuse different functionality in Defendants' products on a third theory?  If St. Clair is permitted to assert a new infringement theory with new experts and new reports, what is to stop any other plaintiff from reopening expert discovery every time its infringement theory fails?  What St. Clair proposes is the antithesis of orderly and efficient case management, and the Court should no more suffer the burden of repetitive litigation than Defendants.  The Court should preclude St. Clair's expert reports under Rule 37.

3.      St. Clair Cannot Justify Its New Experts and New Opinions as
        Supplementation Under Rule 26

St. Clair contends that Rule 26(e) authorizes—even requires—it to supplement its expert report because its report is incomplete in light of the *Fujifilm* claim construction. Notwithstanding the fact that St. Clair could have asserted infringement under its own or Defendants' constructions in discovery, Rule 26 neither compels nor permits St. Clair's supplementation.  Expert disclosures under Rule 26 must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  *See also* Fed. R. Civ. P. 16 (expressly empowering the Court to modify the timing of disclosures under Rules 26(a) and 26(e)(1)).  "Plaintiffs' obligation to supplement their expert reports does not give them the right to ignore the Court's deadlines, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages."  *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005).  Supplementation under Rule 26(e) is meant to permit a party to correct inaccuracies, not substitute entire new theories; the Court's scheduling order would be meaningless if a party could justify any late disclosure of expert opinion as a supplementation

- 17 -

under Rule 26(e). As one leading treatise explains:

> Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment. Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report.

8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2049.1 (3d. ed. 2010) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630-31 (E.D. N.C. 2008) (citations omitted)). Yet that is precisely what St. Clair attempts to do: abandon its previous technical expert, disregard its previous infringement theory, and offer entirely new opinions from newly retained experts. St. Clair's previous infringement theory was the same for both cameras and cell phones which included camera functionality; its new infringement position is now device-dependent. St. Clair is not simply correcting or supplementing its prior expert's report or testimony, but instead offering opinions from entirely new experts well after the close of expert discovery in an obvious attempt to avoid Mr. Gafford's dispositive admissions on infringement. Rule 26(e) does not permit, much less require, St. Clair's efforts to completely replace both its infringement expert and infringement opinions with new experts and new theories at this late stage in the litigation.

### C.    St. Clair's Other Arguments Are Irrelevant

St. Clair raises two other straw-man arguments in order to argue that they do not preclude supplementation. First, it asserts that it is not collaterally estopped by the finding of non-infringement in *Fujifilm* from contesting infringement in this case. (Br. at 18-19.) However, that is not the basis for the pending motions for summary judgment; those are based on issues of law that were definitely resolved in the Federal Circuit appeal. The Federal Circuit construed the claims in such a way that St. Clair admits Defendants' cameras can no longer infringe, and Defendants submit that under those same constructions, their remaining products cannot infringe.

Thus, *stare decisis* is the applicable principle, and one which St. Clair cannot escape. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996) (holding that claim construction is a purely legal issue in part because it would promote "intrajurisdictional certainty through the application of stare decisis"); *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998) ("We do not take our task lightly in this regard, as we recognize the national stare decisis effect that this court's decisions on claim construction have."); *Cybor Corp. v. FAS Techs., Inc.*,138 F.3d 1448, 1455 (Fed. Cir. 1998) (In *Markman*, "the Supreme Court endorsed this court's role in providing national uniformity to the construction of a patent claim.").

Second, St. Clair asserts that judicial estoppel does not apply to bar it from presenting its new infringement theory and new expert testimony. However, St. Clair misstates the point. Defendants do not seek to bar St. Clair from arguing infringement under the new claim construction because St. Clair prevailed in convincing the Court to adopt the prior claim construction. Rather, Defendants seek to bar St. Clair from introducing a *new, untimely infringement theory* which it could have and should have asserted during discovery, and from offering *new, untimely expert opinions* which it could have disclosed during discovery, where such late disclosures are both wholly inconsistent with the prior explanations provided by St. Clair's technical experts of why there is infringement, and would severely prejudice Defendants and impose undue burden on the Court.

## V.   CONCLUSION

St. Clair has offered no reason other than its own tactical misstep to permit it to supplement its expert reports to assert a theory which it could have, and should have, disclosed during discovery in this case. St. Clair seeks to start this case over again from the expert discovery phase, despite the time, effort, and money Defendants have already expended defending themselves against St. Clair's baseless infringement allegations the first time through.

Defendants should not be forced to repeat this process simply because St. Clair made the deliberate decision to assert only a single infringement theory, which failed to pan out. Permitting supplementation in such a situation is a recipe for eternal litigation. St. Clair's motion should be denied.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Charlene M. Morrow
Virginia DeMarchi
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Heather N. Mewes
David D. Schumann
Bryan A. Kohm
Jeffrey V. Lasker
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

By:  /s/ David E. Moore
        Richard L. Horwitz  (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE 19899-0951
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant*
*Hewlett-Packard Company*

*Filed on Behalf of All Defendants*

Dated:  August 1, 2011
Public Version Dated: August 8, 2011
1023157 / 28641

- 20 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 8, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on August 8, 2011, the attached document was electronically mailed

to the following person(s)

| | |
|---|---|
| James S. Green<br>Patricia Pyles McGonigle<br>Jared T. Green<br>Seitz, Van Ogtrop & Green, P.A.<br>222 Delaware Avenue, Suite 1500<br>P.O. Box 68<br>Wilmington, DE  19899<br>jgreen@svglaw.com<br>pmcgonigle@svglaw.com<br>jtgreen@svglaw.com | R. Terrance Rader<br>Charles W. Bradley<br>Glenn E. Forbis<br>Rader, Fishman & Grauer, PLLC<br>39533 Woodward Avenue<br>Bloomfield H ills, MI  48304<br>rtr@raderfishman.com<br>cwb@raderfishman.com<br>gef@raderfishman.com |
| Frederick L. Cottrell , III<br>Chad Michael Shandler<br>Laura D. Hatcher<br>Richards, Layton & Finger, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>cottrell@rlf.com<br>shandler@rlf.com<br>hatcher@rlf.com | Jack B. Blumenfeld<br>Julia Heaney<br>Morris, Nichols, Arsht & Tunnell<br>1201 N. Market Street<br>P. O. Box 1347<br>Wilmington, DE  19899<br>jblumenfeld@mnat.com<br>jheaney@mnat.com |

Robert F. Perry
Alexas D. Skucas
Allison H. Altersohn
Susan A. Kim
Daniel C. Miller
King & Spalding LLP
1185 Avenue of the Americas
New York, NY  10036-4003
rperry@kslaw.com
askucas@kslaw.com
aaltersohn@kslaw.com
skim@kslaw.com
dmiller@kslaw.com

John G. Day
Tiffany Geyer Lydon
Lauren Maguire
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE  19899
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

John W. Shaw
Karen E. Keller
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
kkeller@ycst.com

Kevin F. Brady
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801
kbrady@cblh.com

Huan-Yi Lin
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA  90067
hlin@steptoe.com

Thomas G. Pasternak
Steptoe & Johnson LLP
115 South LaSalle Street, Suite 3100
Chicago, IL  60603
tpasternak@steptoe.com

David C. Doyle
M. Andrew Woodmansee
Gregory W. Reilly
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
ddoyle@mofo.com
mawoodmansee@mofo.com
greilly@mofo.com

Dominic Massa
Christopher R. Noyes
Kevin S. Prussia
WilmerHale
60 State Street
Boston, MA  02109
dominic.massa@wilmerhale.com
christopher.noyes@wilmerhale.com
kevin.prussia@wilmerhale.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

895268 / 28641