IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04-1436-LPS |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, L.P.; MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; MATSUSHITA ELECTRIC CORPORATION OF AMERICA; VICTOR COMPANY OF JAPAN, LTD.; JVC COMPANY OF AMERICA; NOKIA CORPORATION; NOKIA, INC.; HEWLETT-PACKARD COMPANY; EASTMAN KODAK COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SECOND DECLARATION OF WILLIAM HENRY MANGIONE-SMITH
IN SUPPORT OF ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.'S
LETTER BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT OR SUMMARY ADJUDICATION OF NON-INFRINGEMENT**

I, William Henry Mangione-Smith, declare as follows:

1. I provided earlier declarations in this matter, one directed to each of the Defendants, which I hereby re-affirm. I now make this supplemental declaration in support of Plaintiff St. Clair's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment. This supplemental declaration is directed only to the issue of "one-to-one correspondence" and repeats and amplifies my opinions on this topic from my earlier declarations. The statements made herein are based on my personal knowledge, and if called to testify in Court, I could and would testify competently and truthfully with regard to these facts.

2. In my earlier declarations, I pointed out (in paragraph 8) that the Federal Circuit did not re-define "data format," leaving unchanged the District Court's definition of "data format" to mean "the arrangement of digital data in a file including image, audio, text or other data and includes at least MPEG, JPEG, GIF, TIFF, PICT, BMP, JFIF, DCF, TXT, DOC, WPD and WAV."

3. In my earlier declarations, I acknowledged (in paragraph 7.ii.) that the Federal Circuit's claim construction relating different "file formats" to "computer apparatuses" requires that each of the data formats each have a "one-to-one correspondence" to a different "computer architecture." In that regard, I responded to the only technical argument presented by the Defendants with respect to the "one-to-one correspondence" issue, namely that the JPEG data format is the only "image format" and that the JPEF data format does not have a one-to-one correspondence to a particular computer architecture.

1

4. In paragraphs 15-23 of my earlier declarations, I described how, contrary to the Defendants' subsequent arguments, MMS and SMTP are both "data formats" and also how they are "different" data formats relative to each other, more specifically, how the MMS and SMTP data formats have a one-to-one correspondence with cellular phone computer architecture and conventional personal computer architecture, respectively.

5. It is my understanding that Nokia and RIM (in their reply briefs and at the oral hearing) and the other defendants (at the oral hearing) presented a different "one-to-one correspondence" argument after I submitted my earlier declarations. The defendants argued that the MMS and SMTP data formats do not have a "one-to-one correspondence" to a particular computer architecture – and therefore are not "different" data formats corresponding to different computer apparatuses – because the MMS and SMTP data formats can *both* be received and viewed on a smart phone. RIM also argued that its Blackberry devices can send MMS data formats to *both* a cellular phone computer architecture (by addressing the MMS file to a telephone number) *and* to a personal computer, thereby allegedly undercutting the one-to-one correspondence of the MMS and SMTP data formats with particular computer architectures.

6. I opined in my earlier declarations – and I re-affirm here – that the MMS and SMTP data formats are different data formats under the Federal Circuit's claim construction because there is a one-to-one correspondence between the MMS data format and cellular phone computer architecture, as well as between the SMTP data format and conventional personal computer architecture. Had the defendants taken the position

2

in their original motions and briefs that the MMS and SMTP data formats do not satisfy the one-to-one correspondence requirement just because smart phones can receive and display *both* types of data formats, as they did after I submitted my earlier declarations, I would have further explained at that time why the defendants' position is wrong. Now, in response to defendants' arguments, I further amplify the points in my original declarations with respect to why there is a one-to-one correspondence between the MMS and SMTP data formats and cellular phone computer architecture and conventional personal computer architecture, respectively, notwithstanding the fact that smart phones can receive and display both data formats.

7. As set forth in paragraphs 14-23 of my original declarations, a picture may be output from a smart phone via multiple methods, including (i) via email, and (ii) via text messaging (i.e. MMS). A picture output and sent via email is formatted by the smart phone into an SMTP data format. A picture sent via text messaging is formatted by the smart phone into an MMS data format. The SMTP and MMS files are temporarily stored in the memory of the sending smart phone before the files are output and sent.

8. As I stated in paragraphs 20-23 of my earlier declarations, the SMTP data format is different from the MMS data format in a number of areas including how the image is embedded into an enveloping message and the addressing scheme used to identify both the sender and the receiver. Further, a picture file that is sent via MMS is normally compressed and reformatted to be optimized for the smaller screen on a cell phone or smart phone (as compared to a computer screen). These differences exist because the SMTP data format has a one-to-one correspondence to a conventional

3

computer architecture and the MMS data format has a one-to-one correspondence to a cellular phone computer architecture. For example, an SMTP message is addressed to a computer on the Internet using one naming scheme while an MMS message is addressed to a phone number employing a distinct and different naming scheme.

9. The SMTP data format was originally developed to send email over the Internet to email servers, from which conventional personal computers (e.g., desktop and laptop computers) were able to retrieve such email data files. The MMS data format was originally developed years later to enable cellular phones to send data files (including pictures) over the cellular network to another cellular phone.

10. A computer architecture is a combination of hardware, an operating system and lower level software that controls the hardware and basic operations of the system.

11. Basic cellular phones were/are only capable of receiving pictures in the MMS data format.[1] Conventional personal computers are only capable of receiving SMTP data formats via email over the Internet. That is because cellular phones have a specific computer architecture for receiving and processing MMS files, but no computer architecture for receiving and processing SMTP files. In contrast, personal computers have a computer architecture for receiving and processing SMTP files (which is different from the computer architecture for receiving and processing MMS files), but no computer architecture for receiving and processing MMS files.

12. The portion of a cellular phone architecture, along with a messaging application, directed to receiving and processing MMS files is shown in the adjacent figure. At

---

[1] It is notable that a person wanting to send a picture from a smart phone to a basic cellular phone (which does not have email capability) would invariably choose to send the picture using the MMS data format because a basic cellular phone cannot receive an SMTP file format.

4

the very top of the figure is an application that the user interacts with to create and address messages. This application passes the message information, such as the message body and the phone number of the destination, on to a set of libraries that format the information into a specific set of SMS (short messaging system, the progenitor of MMS) and MMS message. This message is processed by underlying cellular network software libraries which prepare it for transmission on the cellular phone network. All of these software based applications and libraries execute on top of a central processing unit (CPU) and memories. Finally, once the message is completely formatted and prepared by software, it is passed onto the cellular radio hardware that transfers it to the wireless cellular network. When a message is received at the destination phone the process just described is reversed.

| SMS and MMS Application |
| --- |
| SMS and MMS Network Protocol Libraries |
| Cellular Network Protocol Services |
| CPU and Memories |
| Cellular Radio (RF) Hardware |

Architecture of an SMS/MMS Cellular Handset with Messaging Application

13. The portion of a personal computer architecture directed to receiving and processing SMTP files, along with an email application that executes on this architecture, is illustrated below. The person who desires to send an email interacts with the email application in order to enter the necessary information, e.g. the Internet destination, subject, message, and any included files. The application passes this information to a set of SMTP libraries, which format the information into an SMTP message that

5

conforms to the specific requirements of the SMTP protocol. The complete SMTP message is then passed onto the TCP-IP protocol software, which is used to implement the fundamental network protocols used in the Internet. All of these software based applications and libraries execute on top of a central processing unit (CPU) and memories. Finally, once the message is completely formatted and prepared by software, it is passed onto the network hardware (typically either Wifi or Ethernet), which transfers it to the Internet. When a message is received at the destination computer the process just described is reversed.

| Email Application |
| SMTP Protocol Libraries |
| TCP-IP Protocol Software |
| CPU and Memories |
| Wifi or Ethernet Hardware |

Architecture of an Internet Connected Terminal with Email Application

14. Unlike conventional cellular phones and personal computers, Modern smart phones (i.e., cellular phones that include email capabilities) are capable of receiving files in *both* the MMS data format and files in the SMTP data format. Modern smart phones accomplish this feat by incorporating the different computer architectures from *both* cellular phones *and* personal computers (as shown above in paragraphs 12 and 13). That is, modern smart phones use cellular phone computer architecture to receive and process files in the MMS data format, and, independently, they use personal computer architecture to receive and process files in the STMP data format. These two different architectures remain as distinct physical and logical architectures and they

function in parallel in modern smart phones. In essence, vis-à-vis their ability to receive and process MMS and STMP data formats, modern smart phones are analogous, relative to the IBM/Apple example in the Roberts patents, to incorporating both an IBM and an Apple architecture (i.e., an IBM motherboard and operating system and an Apple motherboard and operating system) in the same computer housing that operate in parallel to each other to receive and process different data formats.

15. Therefore, contrary to what the Defendants argue in this case, the fact that a single device, e.g., a smart phone, can receive and process both SMTP files and MMS files does not lead to the conclusion that the MMS file format and the SMTP file format do not have one-to-one correspondences with cellular phone architecture and personal computer architecture, respectively. The fact that the defendants have, in effect, packaged two different and independent computer architectures in the same housing does not change the one-to-one correspondence between the MMS file format and cellular phone architecture on the one hand, and the SMTP file format and personal computer architecture on the other.

16. Further, RIM's position that there is no one-to-one correspondence because its Blackberry devices can output and send an MMS file to both a cellular phone number and an email address is misleading and wrong. While it is true that smart phones can output and send MMS files to both a cellular phone number and an email address, an MMS file sent from a smart phone to an email address is *not received by the computer (or other smart phone) in the MMS file format.* Rather, when a smart phone sends an MMS file to an email address, the MMS file is translated and converted to

an SMTP file format at a point in the communication network before the file reaches the receiving personal computer (or other smart phone). Accordingly, when the file that was originated as an MMS file by a smartphone ultimately reaches the receiving personal computer (or other smart phone), the file is in the SMTP data format. The conversion is necessary because personal computers do not incorporate the computer architecture required to receive and process files in the MMS data format.

17. The process by which MMS files sent to an email address are translated and converted to the SMTP format prior to being received by a personal computer is no different from the process recognized in the prosecution history of the Roberts patents as being known prior to the Roberts patents, namely, the conversion of a GIFF file format into a PICT file format after the GIFF file is output from the camera, and visa-versa. To that end, the Roberts applicants acknowledged during prosecution (cited in the Federal Circuit's opinion) that prior to the invention in the Roberts patents, "...data formatted for one such PC-type machine must be *converted* to be compatible with another machine." *Fed. Cir. Opinion, p. 9; see also, Dissenting Opinion, p. 5.* I also have personal knowledge that, prior to 1990, there were software programs that converted GIFF files to PICT files, and visa-versa. The fact that MMS files can be translated and converted to SMTP files after they have been output and sent by the originating device does not destroy the "one-to-one correspondence" any more than the acknowledged ability of certain software to translate and convert GIFF files to PICT files after leaving the camera when the Roberts patent applications were filed.

18. For the reasons set forth above, it still my opinion that the accused products infringe the asserted claims of the Roberts patents. The fact that a smartphone can receive

both MMS files and SMTP files (by separately incorporating both cellular phone architecture and personal computer architecture) and the fact that smart phones can output and send MMS files to both cellular phone numbers and email addresses does not change the fact that the MMS data format has a one-to-one correspondence to cellular phone architecture or the fact that the SMTP data format has a one-to-one correspondence to personal computer architecture.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this __14__ day of November 2011.

By: _____
William Henry Mangione-Smith