# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-1436-LPS |
| | : | |
| MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD; MATSUSHITA ELECTRIC CORPORATION OF AMERICA; JVC AMERICAS CORPORATION; NOKIA CORPORATION; NOKIA, INC.; HEWLETT-PACKARD COMPANY, | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 06-404-LPS |
| | : | |
| PALM, INC.; KYOCERA WIRELESS CORPORATION; KYOCERA COMMUNICATIONS, INC.; VIVITAR CORPORATION; PETTERS GROUP WORLDWIDE, L.L.C.; POLAROID CONSUMER ELECTRONICS, L.L.C.; POLAROID HOLDING COMPANY; POLAROID CORP.; HTC CORPORATION; H.T.C. (B.V.I.) CORP.; HTC AMERICA, INC., | : | |
| Defendants. | : | |

ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC.,

       Plaintiff,

       v.

RESEARCH IN MOTION LTD.;
RESEARCH IN MOTION CORP.,
       Defendants.

:
:
:
:
:     C.A. No. 08-371-LPS
:
:
:
:

_____

Frederick L. Cottrell, III, Chad M. Shandler, Laura D. Hatcher, RICHARDS LAYTON &
FINGER P.A., Wilmington, DE; George H. Seitz, II, Jared Thomas Green, Patricia McGonigle,
SEITZ VAN OGTROP & GREEN, P.A., Wilmington, DE; R. Terrance Rader, Charles W.
Bradley, Glenn E. Forbis, RADER FISHMAN & GRAUER PLLC;
Attorneys for Plaintiff.

Jack B. Blumenfeld, Julia Heaney; MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, DE; Robert F. Perry, Alexas D. Skucas, Allison H. Altersohn, Susan A. Kim; KING
AND SPALDING LLP, New York, NY,
Attorneys for Defendants Nokia Corporation & Nokia, Inc.

Richard L. Horwitz, David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington,
DE; Charlene M. Morrow, FENWICK & WEST LLP, Mountain View, CA; Heather N. Mewes,
David D. Schumann, Bryan A. Kohm, Jeffery V. Lasker, FENWICK & WEST LLP, San
Francisco, CA,
Attorneys for Defendant Hewlett-Packard Company.

John W. Shaw, Karen E. Keller, SHAW KELLER LLP, Wilmington, DE; David C. Doyle, M.
Andrew Woodmansee, Philip A. Morin, Greg Riley, Christian Andreu-von Euw, MORRISON &
FOERSTER LLP, San Diego, CA,
Attorneys for Defendant Kyocera Wireless Corp. & Kyocera Communications, Inc.

John G. Day, Tiffany Geyer Lydon, Caroline Hong, ASHBY & GEDDES, Wilmington, DE;
Thomas G. Pasternak, Huan-Yi Lin, STEPTOE & JOHNSON LLP, Los Angeles, CA,
Attorneys for Defendants HTC Corporation, H.T.C. (B.V.I.) Corporation, and HTC America, Inc.

Collins J. Seitz, Jr., SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; John G.
Day, ASHBY & GEDDES, Wilmington, DE; Kevin F. Brady, CONNOLLY, BOVE, LODGE &
HUTZ, Wilmington, DE; William F. Lee, Dominic E. Massa, Christopher R. Noyes, WILMER
HALE, Boston, MA,
Attorneys for Defendants Research In Motion Corp. and Research In Motion, Ltd.

## MEMORANDUM OPINION

March 26, 2012
Wilmington, Delaware

*Lewis P. Stark* (signature)

**STARK, U.S. District Judge:**

Pending before the Court are Defendants' motions for summary judgment (C.A. No. 04-1436 D.I. 1071, 1072; C.A. No. 06-404 D.I. 775, 778, 781; C.A. No. 08-371 D.I. 482) and St. Clair's motion to supplement expert reports (C.A. No. 04-1436 D.I. 1086; C.A. No. 06-404 D.I. 792; C.A. No. 08-371 D.I. 487). For the reasons discussed below, the Court will grant Defendants' motions for summary judgment and deny St. Clair's motion to supplement.

## I.    BACKGROUND

### A.    Roberts Patents

These related actions[1] were filed by Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") alleging infringement of U.S. Patent Nos. 5,138,459 ("'459 patent"); 6,094,219 ("'219 patent"); 6,323,899 ("'899 patent"); 6,233,010 ("'010 patent") (collectively, the "Roberts patents") by Defendants Palm, Inc. ("Palm"), Kyocera Communications, Inc., Kyocera Wireless Corporation (together, "Kyocera"), Nokia Corporation, Nokia, Inc. (together, "Nokia"), Hewlett-Packard Company ("HP"), HTC Corporation, H.T.C. (B.V.I.) Corporation, HTC America, Inc. (together, "HTC"), Research in Motion, Ltd. and Research in Motion Corporation (together, "RIM") (collectively, "Defendants"). The Roberts patents share a common specification that describes an "electronic still camera" that "selectively formats the compressed digital image to a compatible format for either the IBM Personal Computer and related architectures or the Apple Macintosh PC architecture as selected by the operator." ('459 Patent, Abstract) The common specification explains that the user "select[s] the desired PC format (IBM PC/Clone or Apple Macintosh, etc.)" and the image is "formatted into either an IBM PC/Clone (such as GIFF) or

---

[1]The "related actions" are C.A. No. 04-1436, C.A. No. 06-404, and C.A. No. 08-371.

Apple Macintosh (such as PICT II) image file format." ('459 patent col.4 ll.168-col.5 ll.4, col.6 ll.42-45)

Each claim St. Clair asserts against Defendants includes a limitation requiring the ability to format an image in a plurality of what are referred to in the claims as "data formats," "file formats," or "computer formats" (herein, collectively referred to as "plurality of different data formats").[2]

## B. Related Proceedings and Federal Circuit Appeal

Litigation over the Roberts patents has been ongoing for more than a decade. St. Clair filed suit in this Court against Sony in 2001, alleging infringement of the Roberts patents. In September 2002, Judge Farnan held that the "plurality of different data formats" terms did not require correspondence "with different manufacturers' computers" but, instead, covered any two "arrangement[s] of digital data in a file," provided that each format was read by different application software. *See St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, 2002 WL 31051605, at *2-3 (D. Del. Sept. 3, 2002). The *Sony* case was eventually settled and, consequently, there was no appeal of the *Sony* claim construction order.

In 2003, St. Clair sued Canon and Fujifilm, among others, alleging infringement of the Roberts patents. *See St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, 2004 WL 1941340, at *1 (D. Del. Aug. 31, 2004). The parties disputed whether the claims were "limited to formats relating to different computer architectures (e.g. formats for IBM or Apple computers)

---

[2]The exact terms used in the asserted claims are: (1) "plurality of different data formats for different types of computer apparatus" ('459 patent, claim 16); (2) "plurality of different data file formats for different types of computer apparatus" ('219 patent, claim 10); (3) "plurality of computer formats ('010 patent, claim 1); and (4) "plurality of computer image file formats" ('899 patent, claim 3).

2

or can also include formats relating to different computer software (e.g. formats for GIFF or PICT software)." *Id.* at \*2. The Court adopted the *Sony* construction, concluding that "the different formats . . . may correspond to different architectures or different software." *Id.* at \*3.

A jury verdict of infringement against both Canon and Fujifilm followed. *See St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, 412 Fed. Appx. 270, 272 (Fed. Cir. Jan. 10, 2011) (hereinafter, "*Fujifilm*"). While entry of judgment against Fujifilm was stayed pending resolution of a state court dispute, and subsequently delayed pending resolution of St. Clair's motion for a new trial on damages, Canon settled. (C.A. No. 06-404 D.I. 776 at 5) Final judgment was entered against Fujifilm on November 19, 2010, from which Fujifilm immediately appealed. *See Fujifilm*, 412 Fed. Appx. at 272.

In the meantime, the Patent and Trademark Office ("PTO") undertook a reexamination of the Roberts patents, which included addressing the proper construction of the "plurality of different data formats" term. (C.A. No. 06-404 D.I. 779 at 5) "During reexamination, five different examiners, including three different Supervisory Patent Examiners, rejected the *Sony* court's interpretation of the claim language," instead construing the asserted claims of the Roberts patents as "limited to different data formats for different types of computer architecture." *Fujifilm*, 412 Fed. Appx. at 276.

On January 10, 2011, the Federal Circuit addressed the proper construction of the "plurality of different data formats" limitation. *See id.* at 278. The Federal Circuit construed "plurality of different data formats" in the '459 and '219 patents to require that "'each data format' corresponds on a one-to-one basis to a different type of computer architecture (e.g., in the way that GIFF corresponds to IBM and PICT corresponds to Apple)" and that "the similar terms

3

in the '010 and '899 patents should be construed as limited to different computer architectures."
*Id.* at 273, 277. The Federal Circuit further concluded that the claims of the Roberts patents are limited to "still picture formats" and "that movie formats do not satisfy the 'plurality of data formats' limitation." *Id.* at 278. Applying these constructions, the Federal Circuit held that the Fujifilm products do not satisfy the "plurality of different data formats" limitation by virtue of having "both a still picture data format and a movie data format." *Id.* at 277. Based on its claim construction, the Federal Circuit further held that "judgment as a matter of law of non-infringement should have been granted." *Id.* at 278.

The Federal Circuit did not alter this Court's construction of the term "data format," which this Court had construed as "the arrangement of digital data in a file including image, audio, text or other data and includes, at least, MPEG, JPEG, GIF, TIFF, PICT, BMP, JFIF, DCF, TXT, DOC, WPD and WAV." *Id.* at 272.

## C.  Procedural Posture of the Present Actions

On November 9, 2004, St. Clair filed suit against Nokia and HP. (C.A. No. 04-1436 D.I. 1) On June 26, 2006, St. Clair filed suit against Palm, Kyocera, and HTC. (C.A. No. 06-404 D.I. 1) On June 20, 2008, St. Clair filed suit against RIM. (C.A. No. 08-371 D.I. 1) The Court coordinated these actions in 2008.[3] (*See* C.A. No. 06-404 D.I. 52)

The Court held a *Markman* hearing for the related actions on June 11, 2009. *See St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2009 WL 3834541, at *2 (D. Del. Nov. 13, 2009). Subsequently, on November 13, 2009, the Court issued its Report and

---

[3]Each of these actions initially included other defendants who are no longer parties to the present proceedings.

4

Recommendation Regarding Claim Construction ("R&R"). *See id.* at *1. The R&R

recommended that the "plurality of different data formats" term be given the same construction

that had been adopted by this Court in the *Fujifilm* case. *See id.* at *5. Judge Farnan overruled

Defendants' objections and adopted the R&R in full on February 24, 2010. *See St. Clair

Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2010 WL 681686, at *2

(D. Del. Feb. 24, 2010).

After the claim construction ruling, fact and expert discovery continued in the related

actions in accordance with the Court's Scheduling Order for each action.[4] (*See* C.A. No. 04-

1436 D.I. 166; C.A. No. 06-404 D.I. 71; C.A. No. 08-371 D.I. 44) Then, in July 2010, the Court

stayed the related actions pending the Federal Circuit's decision in *Fujifilm*.

The parties advised the Court of the Federal Circuit's *Fujifilm* decision by letters dated

January 20 and 26, 2011. (*See* C.A. 04-1436 D.I. 1055, 1056) In their letter, Defendants argued

they were now entitled to judgment of non-infringement. (*See* C.A. No. 04-1436 D.I. 1056 at 3)

Defendants suggested that "[i]f St. Clair will not concede that the Federal Circuit's claim

construction is dispositive, the Court should consult with counsel for the parties to set a briefing

schedule for Defendants' motions for summary judgment of non-infringement." (*Id.*)

The Court held a scheduling conference on April 19, 2011. (*See* C.A. 04-1436 D.I. 1068)

At this conference, St. Clair recommended that it provide new technical expert reports in view of

the Federal Circuit's decision on claim construction, with Defendants also having a chance to

---

[4]Prior to the stay, the parties in all related actions exchanged infringement contentions, expert reports, and rebuttal expert reports. In two of the related actions, prior to granting a stay, the Court held a pre-trial conference and scheduled a trial. (*See* C.A. 06-404 D.I. 779 at 7; C.A. 04-1436 D.I. 1076 at 4)

5

submit new reports. *(See id.* at 12-13) Defendants responded that they preferred to submit summary judgment papers. *(See id.* at 18-19)

Subsequently, Defendants filed motions for summary judgment of non-infringement. *(See* C.A. No. 04-1436 D.I. 1071, 1072; C.A. No. 06-404 D.I. 775, 778, 781; C.A. No. 08-371 D.I. 482) On July 15, 2011, St. Clair filed a motion to supplement expert reports. *(See* C.A. No. 04-1436 D.I. 1086; C.A. No. 06-404 D.I. 792; C.A. No. 08-371 D.I. 487) The parties completed briefing on these motions on August 26, 2011. The Court held oral argument on October 31, 2011. *(See* Motions Hr'g Tr., Oct. 31, 2011 (C.A. No. 04-1436 D.I. 1111) (hereinafter "Tr."))

## II.  LEGAL STANDARDS

### A.  Failure to Disclose or Supplement

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In determining whether a party's failure was "substantially justified" or "harmless," courts consider various factors, including (1) the importance of the information withheld, (2) the prejudice or surprise to the party against whom the evidence is offered, (3) the likelihood of disruption of the trial, (4) the possibility of curing the prejudice, (5) the explanation for the failure to disclose, and (6) the presence of bad faith or willfulness in not disclosing the evidence (the "*Pennypack* factors"). *See Konstantopoulos v. Westvaco Corp.*, 112 F.2d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

Excluding "critical evidence, such as an expert report," is an "extreme sanction, not

6

normally to be imposed absent a showing of wilful deception or flagrant disregard of a court order." *Abbott Labs v. Lupin Ltd.*, 2011 WL 1897322, at \*3 (D. Del. May 19, 2011) (internal quotation marks omitted). The determination of whether to exclude evidence or defenses is committed to the discretion of the Court. *Id.*

## B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

7

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005)

("[The nonmovant] must present more than just bare assertions, conclusory allegations or

suspicions to show the existence of a genuine issue.") (internal quotation marks omitted).

However, the "mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating

entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in

support of the non-moving party's position is insufficient to defeat a motion for summary

judgment; there must be "evidence on which the jury could reasonably find" for the non-moving

party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Motion to Supplement

Although styled as a motion to supplement, St. Clair's request to file supplemental expert

reports is also a request to add additional infringement theories. St. Clair is seeking to add these

new infringement theories to the case beyond the Scheduling Order's January 19, 2009 deadline

for serving infringement contentions. (*See* C.A. No. 04-1436 D.I. 166 at 7; C.A. No. 06-404 D.I.

8

71 at 7; C.A. No. 08-371 D.I. 44 at 7) Thus, prior to reaching the merits of the motion to supplement, the Court will first address whether St. Clair has demonstrated that amendment of its infringement contentions is appropriate under Federal Rule of Civil Procedure 16. *See In re Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 8 (D.D.C. 2011) ("The good cause standard under Federal Rule of Civil Procedure 16(b) applies to a request to amend asserted claims and infringement contentions."); *Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 839 (W.D. Wis. 2009) (opining that "failure to address [defendant's claim constructions and expert reports in support thereof] was plaintiff's choice [and] was not dictated by defendant or this court" and, therefore, "[p]laintiff cannot now seek to alter its strategy without a showing of good cause").

### 1. Rule 16

If a "party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is implicated." *WebXchange Inc. v. Dell Inc.*, 2010 WL 256547, at \*2 (D. Del. Jan 20, 2010). Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). "[T]he good cause standard under Rule 16(b) hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Id.*

The Court concludes that St. Clair has not demonstrated diligence in its assertion of its infringement contentions. Specifically, at the time that St. Clair served its infringement contentions and expert reports, claim construction in this case had not yet been resolved. When

9

claim construction remains an open issue at the time the parties serve expert reports and infringement contentions, the parties have an obligation "to prepare for the fact that the court may adopt [the other party's claim] construction." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519, 524 (D. Del. 2003); *see also Xerox Corp. v. Google, Inc.*, Claim Constr. Hr'g. Tr. (C.A. No. 10-136 D.I. 197 at 11) (observing that within District of Delaware, parties "regularly" have to write expert reports addressing alternative constructions when Court does not issue its final claim construction ruling until after expert reports are due); *see generally Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667-68 (E.D. Tex. 2007) ("A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions."); *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 731-32 (E.D. Va. 2001) (recognizing that because *Markman* hearing would be conducted after close of expert discovery, "it was incumbent upon [the patentee] to have [its expert] examine [defendant's] claim construction and offer alternative opinions on infringement and validity").

Here, St. Clair made a tactical decision to not assert its infringement theories under Defendants' proposed claim constructions. St. Clair made this decision despite the fact that: (1) in 2005, the PTO applied the Defendants' construction during the reexamination of the Roberts patents; (2) St. Clair had notice at least twelve months before the close of fact discovery and fourteen months before the deadline for expert disclosures that its preferred claim construction was going to be appealed to the Federal Circuit; and (3) claim construction in these related cases had not been resolved at the time expert reports were exchanged or infringement contentions were served.

10

Indeed, St. Clair opposed a stay of the case pending resolution of the *Fujifilm* appeal, indicating that "[e]ven if the Federal Circuit were to modify the Court's claim construction, St. Clair has never conceded that any defendant does not infringe the Roberts patents under . . . Defendants' proposed claim construction." (C.A. 06-404 D.I. 505 at 10) Thus, St. Clair was keenly aware of the possibility that *Fujifilm* may impact this case, yet it chose to proceed under its sole infringement theory and not address alternative theories of infringement based on Defendants' proposed constructions. (*See* C.A. 06-404 D.I. 49 at 3 (St. Clair acknowledging that "[p]atent infringement cases can and often do involve competing claim construction" while urging Court to allow case to proceed "independent of what happens with Fuji"))

A strategic mistake does not equate to a showing of good cause under Rule 16. *See Berger v. Rossignol Ski Co.*, 2006 WL 1095914, at \*5 (N.D. Cal. Apr. 25, 2006) (denying motion for leave to amend due to lack of good cause where "delay suggests that the omission of [certain patent infringement] contentions . . . were not 'errors,' but were instead a deliberate strategic course which plaintiffs now wish to change"). St. Clair relies on the fact that Defendants did not move to compel St. Clair to serve alternative infringement contentions. (*See* C.A. No. 06-404 D.I. 793 at 11) However, Defendants were not required to move to compel alternative infringement contentions from St. Clair, for reasons including that St. Clair had explicitly stated that even if the Court were to adopt Defendants' proposed constructions, the products still infringe for the reasons outlined in the claim charts. (*See* Tr. at 32) St. Clair also claims that it failed to assert alternative infringement theories because it was relying on the Court's earlier claim construction decisions and awaiting the Court's ruling on objections to the R&R, which recommended adoption of St. Clair's proposed claim constructions. (*See* C.A. No. 08-371 D.I.

11

488 at 4; Tr. at 74) However, no claim construction order governed *this case* at the time infringement contentions were served. Therefore, the Court finds St. Clair's explanation for its failure to disclose all its infringement theories does not rise to the level of "good cause."

Further, at the time infringement contentions were served and expert discovery occurred, the Defendants had filed objections to the pending R&R, which were being reviewed *de novo*, so there was no guarantee that the District Judge would adopt the R&R. Moreover, at the time St. Clair served its infringement contentions and expert reports, it already had access to documents and information on which it now relies to prove its new theory of infringement (dealing with the MMS message capabilities of the various accused devices). (*See, e.g.*, C.A. No. 04-1436 D.I. 1076 at 12 (noting that Nokia made source code relating to MMS feature in accused product available to St. Clair for months prior to close of fact and expert discovery); C.A. No. 04-1436 D.I. 1073 at 5 (indicating HP produced various documents pertaining to MMS capability of its accused products); *id.* at 9 (noting that, in his infringement report, St. Clair's expert relied on numerous documents that discuss MMS capability of accused products); Tr. at 19-20 (discussing documents given to St. Clair which dealt with MMS capability of accused products)) Accordingly, the Court finds that St. Clair has failed to demonstrate good cause to amend its infringement contentions outside of the time limit imposed by the Court's Scheduling Orders.

### 2. Rule 37

Having determined that there is not good cause to amend the Scheduling Orders, the Court will now consider whether exclusion of the supplemental expert reports is appropriate under Federal Rule of Civil Procedure 37. *See Rowe v. E.I. duPont de Nemours & Co.*, 2010 WL 703210, at \*4 (D.N.J. Feb. 24, 2010) (noting that *Pennypack* factors should be evaluated if denial

12

of request to amend Scheduling Order would have "practical effect of excluding" expert testimony).

Having considered the record and the pertinent factors, the Court concludes that exclusion of St. Clair's supplemental expert reports is an appropriate sanction for St. Clair's failure to comply with the Court's Scheduling Orders. On balance, the various *Pennypack* factors weigh in favor of prohibiting St. Clair from supplementing its expert reports.

First, the Court recognizes that St. Clair's expert reports are extremely important to its case, because without updated expert reports and infringement contentions this litigation cannot go forward, as the Federal Circuit's holding in *Fujifilm* forecloses St. Clair's timely disclosed infringement theories. However, the impact of exclusion in this case is lessened because the Court has considered the expert declarations and new infringement theories that St. Clair seeks to introduce (*see infra*).[5] *See Allen v. Parkland Sch. Dist.*, 230 Fed. Appx. 189, 194 (3d Cir. 2007) (concluding partial exclusion of expert testimony was "not too harsh of a sanction" and emphasizing that "it should be noted that the District Court did not exclude all of [expert]'s testimony"). Although the sanction here is, nonetheless, extreme, the fact remains that St. Clair violated the Scheduling Orders when it failed to raise all of its infringement contentions at the appropriate time. *See United States v. 68.94 Acres of Land,* 918 F.3d 389, 396 (3d Cir. 1990) ("This Court has upheld the exclusion of expert witnesses as an appropriate sanction for a party's violation of a discovery order or some other pre-trial order."); *see also Union Carbide*, 270 F. Supp. 2d at 524 (excluding new expert reports, as Defendants "had adequate opportunity" at

---

[5]St. Clair admitted that its expert reports would be "substantively the same" as the expert declarations it submitted in opposition to summary judgment. (*See* Tr. at 82)

13

earlier point in litigation to address issues they now tried to raise, and Defendants "are not prejudiced by being precluded from introducing [their] voluminous new discovery"). Therefore, on balance, this factor is neutral.

Second, the Court finds that the Defendants will likely suffer prejudice if St. Clair is allowed to supplement its expert reports because Defendants will have to spend additional time and money to refute St. Clair's new theories. *See Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense."); *Smithkline Beecham Corp. v. Ranbaxy Labs, Ltd.*, No. 03-2158 (MLC) (D.N.J. Feb. 22, 2006) (concluding that "allowing additional expert reports on new opinions would unduly prejudice the parties and would disrupt the orderly and efficient trial of the case"); *see also* Tr. at 35 (Defendants' counsel discussing time and resources Defendants would need to expend on conducting new discovery if Court were to allow supplementation). Thus, this factor disfavors supplementation.

Third, although no trial date is set in these related actions, two of these cases were set to go to trial prior to the Court's grant of a stay.[6] These two cases will suffer further delay and prolonged disruption if the Court allows additional expert reports and discovery at this time. Therefore, this factor disfavors supplementation.

Fourth, although the prejudice Defendants will suffer can be partially cured by allowing Defendants to file rebuttal expert reports and, if warranted, new motions for summary judgment, the Court finds that the prejudice Defendants face cannot be wholly cured. *See Convolve, Inc. v.*

---

[6]Specifically, a trial had been scheduled in C.A. No. 04-1436 and C.A. No. 06-404 for June 14, 2010 (C.A. No. 04-1436 D.I. 166 at ¶ 21; C.A. No. 06-404 D.I. 71 at ¶ 21)

14

*Compaq Computer Corp.*, 2006 WL 2527773, at \*6-7 (S.D.N.Y. Aug. 31, 2006) (observing that long extension of deadlines cannot cure prejudice to other side when adversely affected party, having already spent substantial time and expense of opposing one set of contentions, would be forced to spend additional time and money to respond to newly disclosed infringement contentions); *see also Union Carbide*, 270 F. Supp. 2d at 524 (agreeing with Plaintiff's contention that it would "be severely prejudiced" if parties were allowed to introduce voluminous new discovery, even though there was time for response to new discovery prior to new trial date). Thus, this factor disfavors supplementation.

Fifth, St. Clair fails to present a valid explanation for its failure to disclose its infringement contentions and supporting expert reports in accordance with the deadline set by the Scheduling Orders. St. Clair asserts that it was operating under the Court's claim construction order in place at the time, but this is mistaken. When St. Clair served infringement contentions and expert reports, the Court had yet to adopt the pending R&R regarding claim construction and St. Clair was aware that Defendants had filed objections to the R&R. The R&R was not an order of the Court – and, indeed, was in the midst of *de novo* review. Accordingly, this factor disfavors supplementation.

Finally, Defendants have made no allegation of bad faith or willfulness and there is no evidence of any such conduct. (*See* Tr. at 36) Thus, this factor favors permitting supplementation.

On balance, the *Pennypack* factors indicate that St. Clair should not be granted leave to amend its expert reports and file new infringement contentions. Therefore, St. Clair's motion to

15

supplement will be denied.[7]

## B. Motion for Summary Judgment

Defendants individually seek summary judgment of non-infringement of the asserted claims of the Roberts patents. In evaluating these motions, the Court will first address summary judgment related to St. Clair's timely raised infringement theories. Next, the Court will address the timeliness of St. Clair's attempt to raise new infringement theories involving MMS text and SMTP email formats. Finally, the Court will address the substantive merits of St. Clair's new infringement theories.

When an accused infringer moves for summary judgment of non-infringement, such relief may only be granted if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also Techsearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of non-infringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue whether the accused product is covered by the claims. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

### 1. Previously Asserted Theories of Infringement

---

[7]Because the Court has determined that St. Clair's motion to supplement should be denied under a Rule 16 and *Pennypack* analysis, the Court will not address Defendants' additional arguments relating to judicial estoppel and collateral estoppel.

Each of the asserted independent claims of the Roberts patents, though using different language, requires a "plurality of different data formats." St. Clair's timely asserted infringement theories stated that the accused products satisfied the "plurality of data formats" limitation because the accused products are able to format a digital image signal in both a still and movie image format.[8] However, in *Fujifilm*, 412 Fed. Appx. at 278, the Federal Circuit held that the claims of the Roberts patents are limited to "still picture formats" and "that movie formats do not satisfy the 'plurality of data formats' limitation." Therefore, St. Clair's timely asserted infringement theories are not viable in light of the Federal Circuit's ruling in *Fujifilm*. It is undisputed that all of the accused products, with the exception of two HTC products,[9] have only

---

[8]Specifically, in its infringement contentions, St. Clair asserted that each accused Palm and Kyocera product satisfies the plurality of different data formats limitation because it "records still picture and videos" and "can format a digital image in a still and video image format." (C.A. No. 06-404 D.I. 777, Ex. 9 at A93-97; C.A. No. 06-404 D.I. 780, Ex. 9 at A93-97) St. Clair asserted that each accused Nokia product satisfied the plurality of different data formats limitation because each accused product can "format a digital image signal in a JPEG and 3GP image file format." (C.A. No. 04-1436 D.I. 1077, Ex. 7 at 13) St. Clair asserted that the accused RIM products satisfy the plurality of data formats limitation because they are able to capture, format, and store both still images and videos. (C.A. No. 08-371 D.I. 484, Ex. I at 2) St. Clair asserted that the HTC products satisfy the plurality of different data formats limitation because they are able to "capture a digital image signal in BMP, JPEG, AVI, MP4, and 3GP image file format." (C.A. No. 06-404 D.I. 782, Ex. E at 7) Finally, St. Clair's expert's report indicated that the accused HP products meet the plurality of different data formats limitation based upon their ability to capture still images in a single format, JPEG, and video files in a different format. (C.A. No. 04-1436 D.I. 1073 at 7)

[9]The two HTC products that contain more than one still image format are the Sprint PPC6700 and Audiovox XV6600. (C.A. No. 06-404 D.I. 782 at 13) However, these two products also do not infringe the Roberts patents because they do not correspond on a one-to-one basis to different types of computer architecture. These two products have two still image file formats – JPEG and BMP. (*See* C.A. No. 06-404 D.I. 782 at 13 (collecting evidence demonstrating that JPEG and BMP are only two still image file formats contained in these two HTC products)) It is undisputed that both JPEG and BMP are public standards and do not correspond on a one-to-one basis to a different type of computer architecture, as is required by the claim limitations. *See id.* at 14 (collecting evidence). Thus, the Sprint PPC6700 and

17

one still image file format and, thus, cannot meet the claim limitation requiring a plurality of different data formats. Accordingly, the Court will grant summary judgment of non-infringement with respect to St. Clair's timely asserted infringement claims.[10]

## 2. Timeliness of St. Clair's New Infringement Theories

The Court has determined St. Clair's new infringement theories are untimely. Nevertheless, the Court will proceed to consider these new infringement theories in assessing whether Defendants are entitled to summary judgment of non-infringement. *See generally Krupski v. Costa Crociere S.p.A.*, --- U.S. ---, 130 S. Ct. 2485, 2488 (2010) (indicating that there is "a preference of the Federal Rules of Civil Procedure in general . . . for resolving disputes on their merits"). After oral argument, St. Clair submitted a letter to the Court requesting the opportunity to submit a three-page letter brief with supporting expert testimony limited to the issue of whether Defendants' accused devices satisfy the Roberts patents claim limitation of one-to-one correspondence between a particular data format and a particular computer architecture

---

Audiovox XV6600 do not infringe the Roberts patents.

[10]In its briefing and at the motions hearing, HP requested that the Court grant summary judgment of non-infringement with respect to accused cameras and personal digital assistants (PDAs) without cell phone capability. (C.A. No. 04-1436 D.I. 1073 at 2; Tr. at 8) St. Clair does not dispute that devices lacking cell phone capability do not infringe the Roberts patents. In fact, St. Clair has admitted to HP that "St. Clair is no longer asserting the Roberts patents against products that do not include both a camera and phone functionality." (C.A. No. 04-1436 D.I. 1075 Ex. 2 at 1; *see also id.* Ex. 1 at 26 ("[W]e're not going to proceed against digital cameras . . . .")) At the motions hearing, St. Clair stated that it was willing to enter into a stipulated judgment with HP regarding digital camera products without cell phone capability. (Tr. at 59) HP indicated that St. Clair has previously refused to enter into a stipulated judgment and requested that this Court issue a decision. (*See* C.A. No. 04-1436 D.I. 1073 at 1-2; Tr. at 102) The Court will grant summary judgment of non-infringement to HP with respect to its accused cameras and PDAs without cell phone capability.

(the "1:1 Correspondence Criteria"). (*See* C.A. No. 04-1436 D.I. 1107)[11] In its letter, St. Clair argued that "[t]he 1:1 Correspondence Criteria was not raised in defendants' moving papers and first appeared in the reply brief filed by" RIM. (*Id.* at 1) The Court granted St. Clair's request for additional briefing on the 1:1 Correspondence Criteria. (C.A. No. 04-1436 D.I. 1110) However, when it granted this request, the Court explicitly stated that it was not holding that it agrees with St. Clair's assertion that Defendants only belatedly raised and expounded on the 1:1 Correspondence Criteria issue or that St. Clair's letter brief on this issue would be deemed timely. (*Id.*)

Having reviewed the parties' letters, the Court concludes that St. Clair's letter brief on the 1:1 Correspondence Criteria issue is untimely. Specifically, St. Clair should have raised any arguments that it had with respect to the 1:1 Correspondence Criteria issue in its reply briefing related to Defendants' motions for summary judgment. Contrary to St. Clair's assertion, Defendants did timely raise the issue of 1:1 Correspondence Criteria in their initial briefing in support of their motions for summary judgment. (*See* Nokia's Opening Brief (C.A. No. 04-143 D.I. 1071 at 1) ("[T]here is no possibility based on the manufacture, use or sale of the accused devices, which indisputably use only one image file format and have no one-to-one correspondence with different computer architectures . . . ."); HP's Opening Brief (C.A. No. 04-1436 D.I. 1073 at 13) ("The accused HP iPAQ devices do not format images in file formats corresponding to particular computer architectures."); *see also* RIM's Opening Brief (C.A. No.

---

[11]St. Clair is represented by different Delaware counsel in certain of these actions, resulting in St. Clair filing two letters instead of one. (C.A. No. 08-371 D.I. 503; C.A. No. 04-1436 D.I. 1107). Because the letters contain identical substantive content, for ease of reference the Court will cite to the letter filed in C.A. 04-1436.

08-371 D.I. 485) (discussing 1:1 Correspondence Criteria issue with respect to St. Clair's timely asserted infringement theory); Kyocera's Opening Brief (C.A. No. 06-404 D.I. 776 at 12) (same); Palm's Opening Brief (C.A. No. 08-371 D.I. 779 at 11-12) (same); HTC's Opening Brief (C.A. No. 06-404 D.I. 782 at 10-14) (same)) Additionally, St. Clair cannot plausibly insist that Defendants should have provided extensive detail criticizing St. Clair's new MMS text message/SMTP email 1:1 Correspondence Criteria theory because St. Clair itself had not yet provided details of this new theory when Defendants were preparing their opening briefs. (C.A. No. 04-1436, D.I. 1108)

Although St. Clair's letter brief on the 1:1 Correspondence Criteria is untimely, in resolving the summary judgment motions – in the interest of addressing disputes on their merits – the Court will consider St. Clair's and Defendants' arguments relating to the 1:1 Correspondence Criteria issue.

### 3. St. Clair's New Infringement Theories

#### a. Plurality of Different Data Formats Requirement

Each of the asserted independent claims of the Roberts patents, though using different language, requires a "plurality of different data formats." Despite the varying language used within the patents, the patent specification indicates that the required "plurality of different data formats" must be image formats. The specification states:

> It should be noted that a large number of *image formats* for PCs exist. PICT and GIFF are the most common for Apple and IBM PC's and therefore the preferred formats for the present invention although other formats can easily be incorporated into the design by changing software format routines. These software *image formats* are commercially available from many sources most notably Apple computers for PICT and IBM for GIFF.

20

('459 patent col.1 ll.36-43) (emphasis added) The patent specification also states that the "invention generally relates" to formatting a "still picture" into a "Personal Computer (PC) compatible format." (*Id.* at col.1 ll.8-17)

In an earlier case involving the Roberts patents, Judge Farnan "conclude[d] that the patents-in-suit teach the selection of different *image file formats*." *See St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, 2002 WL 31051605, at *1-2 (D. Del. Sept. 3, 2002) (emphasis added). In fact, St. Clair itself agreed that the asserted claims required a plurality of image formats. *See id.* ("St. Clair contends [that] the asserted claims cover cameras that allow the user to select among different 'image file formats.'"). In its briefing to the Federal Circuit, St. Clair also represented that the inventors "invent[ed] a camera that can output images in a plurality of different image file formats" and that "the plain language [of the asserted claims] recites variations on storing an image, image data, or pictures in a selected image file format." (C.A. No. 06-404 D.I. 803, Ex. 18 at A151-53) Moreover, St. Clair's expert, Thomas Gafford, opined that "the full scope of the asserted claims related to the programming of a camera to allow the selection between one of a plurality of image file formats in the camera." (C.A. 06-404 D.I. 629 Ex. A at 22-23)[12]

The Federal Circuit's opinion in *Fujifilm* held that each of the asserted claims requires a plurality of image formats and further held that each format must be a still image format. *See Fujifilm*, 412 Fed. Appx. at 277 (opining that "the use of the words 'still' and 'image' throughout the patents-in-suit limits the claims to a single image or picture"). The Federal Circuit cited with

_____

[12]At the motions hearing, counsel for St. Clair indicated that, despite entering new seemingly inconsistent expert reports, it was permissible for the Court to rely on Mr. Gafford's expert report. (*See* Tr. at 79)

approval the PTO's view "that the language of the '459 patent meant the image file formats provided for selection (PICT II or GIFF) are in one-to-one correspondence with a particular type of computer system (Apple Macintosh or IBM PC) respectively." *Id.* at 276-77 (quoting reexamination history). Further, the Federal Circuit stated that the Roberts patents contained an "explicit limitation to still picture formats." *Id.* at 278.

St. Clair asserts that the accused products include a "plurality of different data formats." (*See* C.A. No. 04-1436 D.I. 1089 at 2; C.A. 06-404 D.I. 794 at 2; C.A. No. 08-731 D.I. 489 at 2) St. Clair argues that the accused products literally infringe the Roberts patents because the accused products "are capable of selectively outputting image data in both a text message MMS data format and an SMTP/MIME email data format." (*Id.*) In support of its new infringement theory and opposition to summary judgment, St. Clair presented expert declarations from Ted Drake and William Henry Mangione-Smith. (*See* C.A. No. 08-371 D.I. 489, Exs. 3 & 4; C.A. No. 04-1436 D.I. 1113) These declarations assert that the accused products "have particular computer architectures, including processors, memory devices, and operating systems that are different and distinct from the computer architectures used in personal computers" and, therefore, satisfy the claim limitation of "selecting formats for different types of computer architecture." (*Id.* Ex. 3 at ¶¶ 26-28 & Ex. 4 at ¶¶ 27-29) The expert declarations also assert that the MMS text message file, header, and associated JPEG image data and the SMTP email file with header and JPEG image with conversion to the MIME format are particular data formats under the Federal Circuit's decision. (*Id.* Ex. 3 at ¶¶ 19, 22 & Ex. 4 at ¶¶ 20, 23) Finally, the expert declarations opine that under the Federal Circuit's claim construction ruling, the accused products literally infringe the Roberts patents. (*Id.* Ex. 3 at ¶ 28 & Ex. 4 at ¶ 29; C.A. No. 04-1436 D.I. 1113 at 8-

22

9)

In its briefing and supplemental expert reports, St. Clair does not dispute that all accused products (with the exception of two HTC products) contain only one still image format. St. Clair's mere articulation of an infringement theory and submission of supporting expert affidavits are, in the instant case, insufficient to create a genuine dispute of material fact to defeat a motion for summary judgment. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) ("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that . . . summary judgment is appropriate."); *Dyancore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277-78 (Fed. Cir. 2004) (holding that affidavits of two experts did not create material factual dispute where expert declarations "contribute[d] little other than . . . conclusory opinion[s]"). Because the Federal Circuit has concluded that the claim limitations require a plurality of image formats, even under St. Clair's new infringement theory, the accused products are not capable of producing more than one still image format. Therefore, Defendants are entitled to judgment of non-infringement as a matter of law.

### b. Correspond on a One-to-One Basis with a Particular Computer Architecture

Each of the asserted independent claims of the Roberts patents requires that each data format "correspond respectively to one of a like plurality of different data formats for different types of computer apparatuses." In *Fujifilm*, the Federal Circuit held that this limitation could be met "only if 'each data format' corresponds on a one-to-one basis to a different computer architecture (e.g., in the way that GIFF corresponds to IBM and PICT corresponds to Apple)."

412 Fed. Appx. at 273.

St. Clair argues that its new theory of infringement meets this limitation because "[t]he MMS data format corresponds on a one-to-one basis to a particular computer architecture, i.e. a wireless phone" while the "SMTP [email] data format corresponds on a one-to-one basis to a different type of computer architecture – i.e. a personal computer." (C.A. No. 06-404 D.I. 795 Ex. 3 at ¶ 23 & Ex. 4 at ¶ 24; *see also* C.A. No. 04-1436 D.I. No. 1112 at 2) Although the accused smart phones combine a wireless phone architecture and a personal computer architecture, St. Clair asserts the accused smart phones still meet the 1:1 Correspondence Criteria. (*See* C.A. No. 04-1436 D.I. 1112 at 2; C.A. No. 04-1436 D.I. 1113 at ¶ 6) St. Clair argues that the Federal Circuit imposed a 1:1 Correspondence Criteria between data formats and associated computer architectures,[13] not between data formats and physical devices. (C.A. No. 04-1436, D.I. 1112 at 2) Specifically, St. Clair states that the portion of the personal computer architecture directed to receipt and processing of SMTP files is present in the smart phone to receive SMTP email files, and, similarly, the portion of a cellular phone computer architecture directed to receipt and processing of MMS text message files is present to receive the MMS text messages. (*See* C.A. No. 04-1436 D.I. 1112 at 2; *see also* C.A. No. 04-1436 D.I. 1113 at ¶ 14) According to St. Clair, therefore, the accused products meet the 1:1 Correspondence Criteria.

The Court disagrees with St. Clair and concludes that the accused products do not meet the 1:1 Correspondence Criteria. First, St. Clair's assertion that there is a single "personal computer architecture" and a single "cell phone architecture" does not comport with the Federal

---

[13]St. Clair defines a computer architecture as "the combination of hardware, an operating system and the lower level software code that controls the hardware." (C.A. No. 04-1436 D.I. 1112)

24

Circuit's definition of computer architecture in *Fujifilm*.[14] In *Fujifilm*, the Federal Circuit indicated that, based on the specification of the Roberts patents, there was no single "personal computer architecture." *See Fujifilm*, 412 Fed. Appx. at 273. The Roberts patents themselves distinguish the Apple computer architecture and the IBM computer architecture. (*See* '459 Patent col.12 ll.46 - col.13 ll.13) Thus, contrary to St. Clair's assertion, SMTP email messages are not in one-to-one correspondence with a single personal computer architecture, but instead can be received by multiple different types of personal computer architectures (e.g., IBM or Apple).[15] (*See* Tr. at 41-42 (stating that email does not correspond to one computer architecture, but rather to many different computer architectures because various computers can receive email)) The same is true with respect to MMS text messages – they can be received by multiple "cell phone architectures." (*See* C.A. No. 08-371 D.I. 508 (stating that RIM's Blackberry devices have different cellular phone computer architecture than other smart phones, such as Android, and yet both can receive MMS text messages); Tr. at 54 ("Like RIM's mobile phones, Nokia's mobile phones, Apple's iPhone, and THC mobile phones . . . all have different architectures, different operating system combined with different hardware."); *id.* ("MMS is standard transmission format for all kinds of mobile phones with different operating systems combined with different hardware. So MMS is not exclusively associated with any specific mobile

---

[14]In *Fujifilm*, the Federal Circuit did not explicitly define the term "computer architecture," but rather indicated that IBM and Apple were examples of different computer architectures; the Court also rejected a definition of computer architecture that would encompass "all permutations of hardware, operating systems, and different application software." *See Fujifilm*, 412 Fed. Appx. at 273 (internal quotation marks omitted).

[15]The mere fact that St. Clair's expert opines that the accused products meet the 1:1 Correspondence Criteria is not sufficient to prevent summary judgment. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046-47 (Fed. Cir. 2000).

phones.")) Accordingly, there is no single cell phone architecture or personal computer architecture; thus, St. Clair's new infringement theory fails.[16]

Moreover, St. Clair's new infringement theory fails to comply with the order of steps required by the claims. St. Clair's new infringement theory requires a user to select a particular data format and apply that format to a JPEG image file already stored on the accused device. (*See* C.A. No. 08-371 D.I. 489 Ex. 4 at ¶ 16 ("If the user decides to send a text message with the stored image, the image is retrieved from memory.")) However, the asserted claims require selection of a data format, and formatting image data based on that selection, before that image data is stored on a device. (*See* C.A. No. 08-371 D.I. 509 ¶¶ 23-31) The Federal Circuit ruling in *Fujifilm* did not alter this Court's determination that claim 16 of the '459 patent "requir[es] that the 'generating,' 'converting,' and 'selecting' steps occur before the 'storing' step." *St. Clair Intellectual Property Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2009 WL 2824541, at *15 (D. Del. Nov, 13, 2009); *see also* Tr. at 57 (noting that issue of order of steps was not disputed or raised in *Fujifilm* appeal). Accordingly, the Court will grant Defendants' motion for summary judgment of non-infringement.

---

[16]The Court is aware that Defendants dispute that smart phones have both a wireless phone computer architecture and a personal computer architecture contained within the smart phone device. (*See* C.A. No. 06-404 D.I. 822 at 3; C.A. No. 06-404 D.I. 823 at 3; C.A. No. 04-1436 D.I. 1114 at 3) However, for purposes of its infringement analysis, the Court presumes, without holding, that a smart phone contains both a wireless phone computer architecture and a personal computer architecture. Even making this assumption, St. Clair's infringement theory fails as a matter of law as these computer architectures to not correspond on a one-to-one basis with either the MMS or SMTP formats.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court will deny St. Clair's motion to supplement and grant

Defendants' motions for summary judgment.  An appropriate Order follows.

27